IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: AMERICAN INVESTORS        :
LIFE INSURANCE CO. ANNUITY       :    MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES    :
LITIGATION                       :
                                 :
Relates to:                      :
                                 :
STUDLEY, et al. v. AMERUS        :
CIVIL ACTION NO. 05-5886         :


MEMORANDUM AND ORDER


McLaughlin, J.                                    May 30, 2008

        This case is part of a multidistrict litigation, in
which two putative classes and three sets of individual
plaintiffs allege that the defendants engaged in a fraudulent
scheme to sell senior citizens unsuitable estate planning
instruments and annuities.  The two putative classes are made up
of (1) seniors and their representatives who bought the trusts
and annuities (Stein v. AmerUs) and (2) beneficiaries of
annuities and trusts that the defendants sold to seniors who have
since passed away and who would otherwise be members of the Stein
class (Studley v. AmerUs).  This case concerns this second class
("the beneficiary class").  The plaintiffs seek damages and
injunctive relief against a single defendant under the Racketeer
Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §
1961 et seq., as well as under various state law causes of
action.

The defendant has moved to dismiss the beneficiary class complaint on the grounds that the plaintiffs lack standing and have failed to state a claim.  The Court will grant the motion.

I.   Factual Background

In a previous decision on the motions to dismiss in Stein and the individual cases, the Court laid out at length the fraudulent scheme in which the plaintiffs in this MDL allege the MDL defendants engaged.  In re American Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig., MDL No. 1712, 2007 WL 2541216 (E.D. Pa. Aug. 29, 2007) [hereinafter Stein].  This complaint's general allegations about a fraudulent scheme are the same in substance as the Stein complaint's general allegations. The Court will therefore focus the fact section on the specific allegations of the plaintiffs in the instant case.  Unless otherwise noted, the Court will adopt its description in Stein of the allegations of a fraudulent scheme.

According to the First Consolidated and Amended Class Action Complaint on Behalf of the Beneficiary Class ("the complaint"), the plaintiffs are the Alice A. Studley Revocable Living Trust ("the trust"), Glen Studley, Mary Ann Quas, and Veda Schreiber.  The trust is the beneficiary of two annuities that Alice Studley ("Ms. Studley") purchased in 2001 and 2002.  The

2

three individual plaintiffs are named beneficiaries of the trust.
Glen Studley ("Mr. Studley") is also the Successor Trustee of the
trust and is Ms. Studley's son.  Mr. Studley and Quas are
residents and citizens of Illinois.  Schreiber is a resident and
citizen of Arizona.  Ms. Studley died on January 26, 2005.
Compl. ¶¶ 10-13.

The defendant is American Investors Life Insurance
Company ("AILIC").  AILIC is a Kansas corporation with a
principal place of business in Kansas.  It is a wholly owned
subsidiary of AmerUS Annuity Group Company ("AAG"), which is a
wholly owned subsidiary of AmerUs Group Company ("AMH"), a
holding company whose subsidiaries are engaged in the business of
marketing, underwriting, and distributing a broad range of life
insurance and annuity products nationwide.  Compl. ¶¶ 14-15.

The complaint describes several "other parties of
interest" that are not named in this suit.  Among these parties,
of particular relevance to the sale of annuities to Ms. Studley
is Asset Preservation Specialists, Inc. ("APSI"), an Arizona
corporation with a principal place of business in Arizona.  APSI
advertises, markets, promotes, sells, and brokers annuities and
other financial services underwritten by AILIC and related
corporate entities.  Compl. ¶¶ 18-19.

Ms. Studley resided in Pontiac, Illinois, and was a
citizen of Illinois until she passed away on January 26, 2005.

3

In 2001, Ms. Studley purchased a living trust form from Janalee Sneva of APSI.  Ms. Studley paid approximately $2,000.  She was 85 years old and legally blind at the time.  Compl. ¶¶ 83-84.

Subsequently, in 2001 and 2002, Ms. Studley purchased two AILIC deferred annuities.  AILIC's licensed agent Bramwell sold her the first annuity for an initial premium of $92,274.59.  AILIC's licensed agent Stone sold her the second annuity for an initial premium of $22,961.38.  Bramwell and Stone were also employees or agents of APSI when they sold the annuities to Ms. Studley.  Compl. ¶¶ 84-85.

The date the distributions from the annuities were to start was well past Ms. Studley's actuarial life expectancy.  The policy imposed surrender charges for 11 years, which was also well past Ms. Studley's actuarial life expectancy.  Those surrender charges ranged from 12.00% in the first policy year down to 1.00% in the eleventh policy year.  The policy provided that the death benefit was less then the Accumulated Value of the annuity if the policy was subject to a surrender charge at the time of the purchaser's death.  The beneficiary could elect to take a smaller amount, the Cash Surrender Value, in a lump sum, or could elect to take the Accumulated Value stretched over the course of several years.  Compl. ¶¶ 85-90.

The plaintiffs emphasize that the defendant designed the annuities in such a way as to target and harm the

4

beneficiaries.   They allege that the defendant knew that because the seniors' life expectancy was shorter than the surrender periods and/or maturity dates of the annuities, the annuities would likely serve as wealth transfer vehicles by default.   The defendant therefore sold the annuities to the seniors with the expectation that "it would be the Beneficiary Class that would suffer the consequences of receiving the death benefits under the Annuities that were illiquid investments for the Seniors in the first place.   Accordingly, Defendant designed the death benefits under the Annuities to cause the Beneficiaries to suffer loss." Compl. §§ 3-4.

In particular, the plaintiffs allege that the defendant "directly targets and derives profits from the Beneficiary Class" by imposing large surrender charges, forcing the beneficiary class to receive funds over a period of years, "or by having significantly less value when inherited by the Beneficiary Class members than alternative financial products that would have been more suitable and profitable for the Seniors."   The annuities were designed so that the beneficiaries would be forced to choose between taking a reduced lump sum or taking the accumulated value over a period of years, "thereby, by design, targeting and harming the beneficiaries to the annuities."   Compl. §§ 37, 38, 59, 90-94.

The complaint makes four claims for relief.   Count 1

5

alleges violation of RICO, 18 U.S.C. § 1961, et seq.  Count 2
alleges conspiracy to violate RICO.  Count 3 alleges negligence.[1]
Count 4 alleges unjust enrichment.  Compl. ¶¶ 102-58.


II.  The Motion to Dismiss

        The defendant moves to dismiss on several grounds: (1)
the plaintiffs lack standing under either Article III of the
Constitution or RICO; (2) the plaintiffs have failed to state a
RICO claim; (3) the McCarran-Ferguson Act bars the plaintiffs'
RICO claims; (4) the plaintiffs have failed to state a claim for
negligence; (5) the plaintiffs have failed to state a claim for
unjust enrichment; and (6) the applicable statutes of limitations
bar the plaintiffs' state law causes of action.

        The Court agrees that the plaintiffs cannot demonstrate
standing under either Article III or RICO.  In addition, the
plaintiffs fail to plead that any AILIC personnel or any alleged
agent of AILIC made any deceptive or fraudulent representations,
indeed any representations at all, to Ms. Studley before she
bought the annuities.  For the reasons stated in the Court's
Order of February 19, 2008, dismissing plaintiffs Newcomer and
Upchurch from the Stein case, this failure to plead

---

        [1]  The negligence count alleges breach of a duty to
supervise and appropriately train the sales agents promoting the
annuities and to ensure that the agents did not sell
inappropriate annuities.  Compl. §§ 142-53.

misrepresentations is fatal to the <u>Studley</u> plaintiffs' claims.
The <u>Studley</u> plaintiffs have also failed to allege specific uses
of the mails or wires, so as to bring the defendants' conduct
within the federal mail and wire fraud statutes, 18 U.S.C. §§
1341, 1343.  For the reasons described in <u>Stein</u>, this failure,
too, is fatal to the plaintiffs' RICO claims.  <u>Stein</u>, 2007 WL
2541216, at *19-*20, *22.  The plaintiffs' state law claims also
fail, for reasons similar to those stated in <u>Stein</u>.  <u>Id.</u> at *29-
*30.

　　　The plaintiffs have requested leave to plead with more
specificity if the Court finds their complaint deficient.  If the
only defects in the plaintiffs' complaint had been the failure to
allege mail or wire fraud or fraudulent misrepresentations, it is
possible that the plaintiffs would have been able to cure such
deficiencies by filing an amended complaint.  No amendment,
however, can cure the fundamental failure of the concept of a
beneficiary class in this case.

　　　Article III standing is a question of subject matter
jurisdiction.  <u>Society Hill Towers Owners' Ass'n v. Rendell</u>, 210
F.3d 168, 175 (3d Cir. 2000); <u>see also</u> <u>Maio v. Aetna, Inc.</u>, 221
F.3d 472, 482 n.7 (3d Cir. 2000).  Therefore, the Court will
dismiss the complaint under Federal Rule of Civil Procedure
12(b)(1).

III. <u>Analysis</u>

    A.   <u>Article III Standing</u>

        In order to have Article III standing, a plaintiff must show:

> (1) injury-in-fact, which is an invasion of a
> legally protected interest that is (a)
> concrete and particularized, and (b) actual
> or imminent, not conjectural or hypothetical;
> (2) a causal connection between the injury
> and the conduct complained of; and (3) it
> must be likely, as opposed to merely
> speculative, that the injury will be
> redressed by a favorable decision.

<u>Danvers Motor Co., Inc. v. Ford Motor Co.</u>, 432 F.3d 286, 290-91

(3d Cir. 2006) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S.

555, 560-61 (1992)).  The plaintiffs bear the burden of proving

standing.  The definition of an injury-in-fact is generous; "some

specific, identifiable trifle of an injury" suffices.  The Court

must accept all material allegations of the complaint as true and

must construe them in the plaintiffs' favor.  <u>Id.</u> at 288, 290,

294 (internal quotations omitted).

        The plaintiffs fail to plead the invasion of a legally

protected interest.  Indeed, the complaint reveals a fundamental

logical flaw in the plaintiffs' theory of the case.  The

plaintiffs argue that their claims are as valid as those of the

<u>Stein</u> plaintiffs - original purchasers of the defendant's living

trusts and annuities - because the beneficiary class is made up

of the successors in interest to those original purchasers.  This

8

argument, however, ignores a crucial distinction.  Before the

Stein plaintiffs bought the living trusts and annuities at issue,

they had a right to the money that they ultimately paid as

premiums to the defendant.  It was their money and their

property.  In contrast, before Ms. Studley and similarly

situated, since-deceased seniors, bought the living trusts and

annuities at issue, the beneficiary class had no right to the

money that was ultimately paid as premiums to the defendant or

its agents.  The allegedly unsuitable annuity contracts

themselves are the only source of the plaintiffs' rights to those

funds.  The plaintiffs have not alleged that the money Ms.

Studley used to buy the annuities was previously in a more

appropriate or profitable investment, of which they were named

beneficiaries, or that they would otherwise have received those

funds upon her death.

        The plaintiffs did not suffer an injury in fact under

Article III as a result of the defendant's conduct.  The

plaintiffs had no property right in the money that Ms. Studley

paid to the defendant or its agents.  Therefore, even if the

defendants acted fraudulently, the plaintiffs had no fewer

property rights in the annuities' proceeds after they became

beneficiaries than they did in the premiums before Ms. Studley

bought the annuities.  Moreover, as the defendants point out, one

of the plaintiffs' main arguments for why the annuities were

unsuitable for Ms. Studley and others similarly situated is that
the annuities were illiquid and prevented the seniors from
accessing the money for living and healthcare expenses.  If the
money had been in a liquid investment vehicle, however, the
implication is that the seniors would have spent more of it
during their lifetimes – leaving less for the beneficiaries to
inherit.

The allegation that the annuities and living trusts
were presented to the seniors as an efficient wealth transfer
vehicle is of a somewhat different character because it raises
the question of whether the seniors may have bought the annuities
with the intent of providing for the plaintiffs, thus making the
plaintiffs third-party beneficiaries of the contract.  The
beneficiaries' claims nonetheless fail.  The plaintiffs do not
allege that Ms. Studley intended to use the trust and annuities
as a wealth transfer vehicle, nor that the defendant or its
agents made any representations about the instruments'
appropriateness as a wealth transfer vehicle.  Even assuming the
plaintiffs could sue as third-party beneficiaries of the
contract, they do not allege that the defendant has failed to
perform under the contract.


B.    Substantive Claims

The Court's holding that the plaintiffs lack Article

10

III standing to bring this case applies all of their claims.
Even leaving aside the issue of standing, however, this Court
would dismiss each of the counts of the complaint for failure to
state a claim.

### 1.   RICO and Conspiracy to Violate RICO

The standard for RICO standing is more demanding than
that for Article III standing.  As this Court noted in Stein,

> A plaintiff has standing to bring a RICO
> claim if, and can recover only to the extent
> that, he has been injured in his business or
> property by the conduct constituting the
> violation.  As explained by the United States
> Court of Appeals for the Third Circuit, this
> "injury to business or property" element of a
> RICO claim requires the plaintiff to plead a
> concrete financial loss and not mere injury
> to a valuable, intangible property interest.

Stein, 2007 WL 2541216, at *24 (citing Sedima, S.P.R.L. v. Imrex
Co., 473 U.S. 479, 496 (1985); Maio, 221 F.3d at 483).

This Court held in Stein that the seniors who bought
the annuities at issue had adequately pled injury to their
business or property because, as a result of undisclosed deferral
periods and surrender charges, they had received less than they
had been promised as part of the annuities contracts.  Id. at
*26.

The beneficiary class cannot clear this hurdle.  As a
preliminary matter, the plaintiffs do not make any specific
allegations that Ms. Studley was misled or that the defendant or

11

its agents did not disclose the deferral periods and surrender charges in her annuities.  They make only general allegations about the way the scheme to defraud generally operated.  Until a class is certified, the Court must judge the sufficiency of allegations of fraud and misrepresentation by examining the allegations concerning the named plaintiff, not general class allegations.  Lum v. Bank of Am., 361 F.3d 217, 225-26 (3d Cir. 2004).  The allegations here do not satisfy the specificity requirement of Rule 9(b).  Moreover, for the reasons stated in the section on Article III standing, the plaintiffs cannot show that they have suffered a concrete financial loss because they are no worse off than they were before Ms. Studley bought the trust and annuities at issue.

Without a RICO claim, the plaintiffs' conspiracy to commit RICO claim fails, as well.


### 2.   Negligence

The Court adopts its reasoning in Stein as to why the plaintiffs' claims for negligent supervision fail.  Stein, 2007 WL 2541216, at *29.  The plaintiffs urge that their negligence count encompasses other forms of negligence, as well, primarily the breach of a duty to ensure the suitability of the annuities. The plaintiffs fail to allege that the defendant had any duty toward them to ensure suitability.  The plaintiffs cite one case

12

for the proposition that an insurer owes a duty of care to a
prospective beneficiary.  <u>Jones v. Hartford Life & Accident Ins.</u>
<u>Co.</u>, 443 F. Supp. 2d 3 (D.D.C. 2006).  This case and the
supporting cases it cites, however, stand for a much narrower
proposition: that an intended beneficiary may sue the insurer for
failure to maintain proper records or to designate the
beneficiary as directed, causing the beneficiary to be denied the
benefit of the insurance policy.  This scenario is not the case
here.


            3.   <u>Unjust Enrichment</u>

            As the Court explained in <u>Stein</u>, to state a claim for
unjust enrichment, a plaintiff must allege (i) that the plaintiff
conferred a benefit on the defendant, (ii) that the defendant
appreciated the benefit, and (iii) that the defendant accepted
and retained the benefit under circumstances such that it would
be inequitable for defendant to retain the benefit without
payment of value.  <u>Stein</u>, 2007 WL 2541216, at *29 (citing
<u>Mitchell v. Moore</u>, 729 A.2d 1200, 1202 (Pa. Super. 1999)).  The
existence of an enforceable and binding contract defeats a claim
for unjust enrichment, but the plaintiff may plead in the
alternative if the validity of the contract is in question.  <u>Id.</u>
(citing <u>Indep. Enter. Inc. v. Pittsburgh Water & Sewer Auth.</u>, 103
F.3d 1165, 1175 (3d Cir.1997); <u>Matter of Pa. Ctr. Transp. Co.</u>,

831 F.2d 1221, 1230 (3d Cir. 1987); and Schott v. Westinghouse
Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)).  The Court upheld the
Stein plaintiffs' unjust enrichment claim because those
plaintiffs had alleged that the annuities contracts were
fraudulent and therefore possibly invalid.  The Court held that
the plaintiffs in the individual cases - Gilmour, Trimble, and
Treitz - failed to plead unjust enrichment.  Those plaintiffs did
not plead adequately that they conferred a benefit on the
defendants because any payments they made to the defendants were
made under, and therefore were governed by the terms of, the
annuity contracts.  Id. at *29-*30.

In the instant case, the plaintiffs do not plead that
they made any payments to the defendant at all.  Instead, they
rely on the general equitable principles behind unjust
enrichment, arguing that an unjust enrichment claim is
appropriate when the defendant has received a benefit from anyone
when it would be unjust for the defendants to retain it and not
to tender it to the plaintiffs.  Pl. Opp. at 44-45.  This
argument is unavailing and misstates the law.

An appropriate Order follows.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: AMERICAN INVESTORS        :
LIFE INSURANCE CO. ANNUITY       :    MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES    :
LITIGATION                       :
                                 :
Relates to:                      :
                                 :
STUDLEY, et al. v. AMERUS        :
CIVIL ACTION NO. 05-5886         :

## ORDER

AND NOW, this 30th day of May, 2008, upon consideration of the defendants' Motion to Dismiss (Docket No. 17 in Case No. 05-5886, Docket No. 184 in Case No. MDL-1712), the plaintiffs' opposition, the defendants' reply, and the plaintiffs' surreply, and after oral argument held on February 14, 2008, IT IS HEREBY ORDERED that the motion is GRANTED.  The claims of the plaintiffs in Studley are dismissed under Fed. R. Civ. P. 12(b)(1).  Case No. 05-5886 is closed.

BY THE COURT:

MARY A. McLAUGHLIN, J.