## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re AMERICAN INVESTORS LIFE INSURANCE CO. ANNUITY MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1712 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
## SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND
## ORDER DIRECTING ISSUANCE OF NOTICE TO THE CLASS

Counsel for Plaintiffs, on behalf of a putative nationwide Class, respectfully submit this Memorandum of Law in support of their Unopposed Motion for an Order preliminarily approving the settlement, including the proposed notice provisions, and certifying the Settlement Class.

## I.      INTRODUCTION

This consolidated multi-district class litigation – *In Re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*, MDL 1712 – has been pending before the Court for almost four years.   Plaintiffs have now reached a proposed settlement with Defendants.[1]   The Stipulation of Settlement,[2] attached hereto as Exhibit 1, provides for resolution

---

[1] The Action that is the subject of this Settlement involves the following consolidated putative class action lawsuits: (1) *Beryl Price, Charlotte Price and Joseph Healy v. AmerUs Group Company, AmerUs Annuity Group Company, American Investors Life Insurance Company, Inc, Barry O. Bohmueller, Brian J. Newmark, Estate Planning Advisors Corp., BEN Consulting Co., Funding & Financial Services, Victoria Larson and Kenneth Krygowski*, No. 04-cv-03329 (E.D. Pa. July 15, 2004); (2)  *George Miller v. AmerUs Group Company, AmerUs Annuity Group*

*Footnote continued on next page*

of this litigation in exchange for benefits to Class Members consisting of, *inter alia*, (1) for eligible annuity policies that are in deferral, (a) the right to receive a bonus credited on the accumulation values coupled with earlier annuitization without application of surrender charges, and (b) the reduction of surrender charges on death benefits by 50%, and (2) in the alternative, a claim review process under which Class Members may seek larger bonuses than those otherwise available as well as, where applicable, cash payments based on a percentage of surrender charges previously incurred by the policy owners.

The proposed form of Notice of the class action settlement, attached as Exhibit C to the Stipulation of Settlement, and dissemination of such Notice, by first class mail directly to the Class Members as identified by the Defendants, along with internet publication on the world wide web, complies with Rules 23(c)(2) and 23(e) and the Due Process Clause of the U.S. Constitution, as it constitutes the best notice practicable under the circumstances.

At this juncture, the Court need only determine whether the proposed settlement is sufficiently fair, reasonable and adequate to allow Notice to be disseminated. Plaintiffs submit that the proposed settlement amply satisfies the required standards, and respectfully request that the Court authorize dissemination of notice pursuant to Rules 23(c)(2) and 23(e) of the Federal

---

*Company, American Investors Life Ins. Co., National Western Life Ins. Company, American Equity Invest. Life Ins. Co., Brian J. Newmark, Estate Planning Advisors Corp., BEN Consulting Co., Funding & Financial Services, Patriot Group, Addison Group, Brett Weinstein, Victoria Larson and Stephen Strope*, No. 2:04-cv-03799-MAM (E.D. Pa. Aug. 11, 2004); (3) *Richard Stein, Dena Stein and Mary Lynch v. AmerUs Group Co., AmerUs Annuity Group Co., American Investors Life Ins. Co., Inc., Creative Marketing International Corp., Insurance Agency Marketing Services, Inc. and American Investors Sales Group, Inc.*, No. 02:05-cv-02391 (E.D. Pa. May 19, 2005); (4) *Dorothy Eddy v. AmerUs Life Ins. Co.*, No. 6:05-cv-01006-JA-JGG (M.D. Fla. July 7, 2005); (5) *Evelyn Edwards v. AmerUs Group Co., AmerUs Annuity Group Co., American Investors Life Insurance Co., Inc., and Senior Benefit Services of Kansas, Inc.*, 8:05-cv-1590-T27-TBM (M.D. Fla. Aug. 26, 2005); (6) *Jean Ryles v. AmerUs Life Insurance Company, American Investors Life Insurance Company, Inc., AmerUs Annuity Group Co. and AmerUs Group Co.*, No. 2:05-cv-06340-MAM (E.D. Pa. Dec. 8, 2005).

[2] To the extent that defined terms of the Stipulation of Settlement are used within this memorandum and the motion it accompanies, it is intended that such terms shall have the meaning set forth within the Stipulation of Settlement.

Rules of Civil Procedure.

The proposed Class for this settlement, consisting of all purchasers and owners of one or more of certain deferred annuity products[3] that were issued by either American Investors Life Insurance Company, Inc., or AmerUs Life Insurance Company[4] from January 1, 1998 to the Preliminary Approval Date, should also be certified for the purpose of settlement.  Plaintiffs submit that the proposed Class clearly satisfies all four components of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3).[5]

II.   **FACTUAL BACKGROUND**

A.   **THE LITIGATION**

The case covered by the proposed settlement involves several putative class action complaints that were brought against the Defendants and others.  These complaints alleged, among other things, that sales agents, marketing organizations, trust attorneys, and annuity companies marketed and sold annuity policies that were unsuitable given the circumstances of the purchasers or the annuitants under the policies, and that those marketing and sales efforts in some cases included the provision of estate or financial planning services.  These complaints also alleged that defendants named therein failed to disclose substantial surrender charges associated with the annuities sold; failed to disclose that the annuities had maturity dates beyond the annuitants' life expectancies; collectively represented the annuities as suitable investments for the purchasers notwithstanding the alleged fact that, because of various factors including the

---

[3] The full list of annuity products included in the settlement is set forth in Exhibit A to Stipulation of Settlement.
[4] AmerUs Life Insurance Company is now known as Aviva Life and Annuity Company.
[5] Defendants have indicated they do not oppose this motion for purposes of the proposed settlement, but reserve all objections and arguments concerning why certification of a non-settlement Class in this matter would not be appropriate.

illiquidity of the annuities and the actual rate of return on purchasers' funds, the annuities were unsuitable investments for the purchasers; and failed to fully and accurately represent to purchasers the benefits under the annuities.  Certain of these complaints also alleged that defendants named therein engaged in churning activities by persuading purchasers to surrender existing annuities and investments or to borrow against the cash value in existing insurance policies, and that such defendants failed to train and supervise their annuity sales force.  Several of the complaints further alleged that the sale of certain annuities was improper because, given the age of the purchasers or the annuitants, their normal life expectancies were shorter than the surrender charge and deferral periods under the annuities, rendering the annuities per se unsuitable.

The Third Amended Consolidated Class Action Complaint (the "Complaint"), a copy of which is attached to the Stipulation of Settlement as Annex B, purports to bring a nationwide class action on behalf of all persons who purchased or owned deferred annuities that were issued by Defendants since January 1, 1998.  The Complaint claims, *inter alia*, that annuities sold to certain members of the putative class were *per se* unsuitable for them for the reasons set forth above, and asserts five causes of action: (i) violation of RICO; (ii) conspiracy to violate RICO; (iii) breach of fiduciary duty in respect of a putative living trust subclass; (iv) negligence; and (v) unjust enrichment.

The proposed settlement includes persons and entities that purchased or owned approximately 360,000 annuities.

## B.    THE PARTIES

The Third Amended Consolidated Class Action Complaint (the "Complaint") filed and encompassed in this Action is styled *Richard M. and Dena F. Stein, Mary Lynch, Charlotte and*

*Beryl Price, Estate of Joseph Healy, George J. Miller, Jean Ryles, Evelyn K. Edwards, and Michael J. and Catherine M. Quinn v. AmerUs Group Company, AmerUs Annuity Group Co., American Investors Life Insurance Company, Inc., AmerUs Life Insurance Company, Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc.*

### 1.     The Defendants

The Defendants consist of AmerUs Group Company, now known as Aviva USA Corp. ("AMH"); AmerUs Annuity Group Co. ("AAG"); American Investors Life Insurance Co., Inc. ("AILIC"); AmerUs Life Insurance Company, now known as Aviva Life and Annuity Co., Creative Marketing International Corporation ("CMIC"); and Insurance Agency Marketing Services, Inc. ("IAMS").   Defendant AMH is a holding company whose subsidiaries are primarily engaged in the business of marketing, underwriting, and distributing a broad range of individual life, annuity, and insurance products to individuals and businesses. AAG is a wholly owned subsidiary of AMH. AILIC, AISG, CMIC, and IAMS are, in turn, wholly owned subsidiaries of AAG. AILIC is in the business of underwriting and issuing annuities. AISG, CMIC, and IAMS are engaged in the business of marketing, underwriting, and distributing a broad range of life insurance and annuity products.  *See Gilmour v. Bohmueller*, 2007 U.S. Dist. LEXIS 64967 (E.D. Pa. 2007).

### 2.     The Named Plaintiffs

The Named Plaintiffs representing the putative class on the Third Amended Consolidated Class Action Complaint ("Complaint") are Richard M. and Dena F. Stein, Mary Lynch, Charlotte and Beryl Price, Estate of Joseph Healy, George J. Miller, Jean Ryles, Evelyn K. Edwards and Michael J. and Catherine M. Quinn.

a.     Richard and Dena Stein

Richard and Dena Stein allegedly liquidated $20,147.88 held in an IRA to purchase an AILIC annuity.  According to Plaintiffs' allegations, no one informed the Steins that the annuity was a fifteen-year deferred annuity whose payments would not start until Mr. Stein turned 90. Defendants allegedly also failed to disclose the large penalties for any withdrawal that occurred earlier than that date.  Finally, it was purportedly represented that the annuity would be available to Mrs. Stein, the beneficiary, immediately following Mr. Stein's death, despite the fact that the money would have to be left with the Defendants for five years after Mr. Stein's death to avoid paying substantial penalties.  It is alleged that at all material times, the Steins had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶ 97 - 113.

b.     Mary Lynch

Mary Lynch allegedly liquidated $65,000 to purchase an AILIC annuity in 2003. According to Plaintiffs' allegations, at the time Lynch purchased the annuity, no one disclosed the fact that payments on the annuity would not begin until Lynch reached 125 years of age. Defendants allegedly also failed to disclose the substantial charges associated with early withdrawal of the principal invested.  Finally, it was purportedly represented that the annuity funds would be available to her beneficiaries immediately following her death, when, in truth, the funds would need to be left with the defendants for five years after Lynch's death to avoid the beneficiaries' incurring substantial penalties.  It is alleged that at all material times, she had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010. *See* Complaint at ¶¶ 114 - 133.

c.      Beryl and Charlotte Price

The Prices allegedly liquidated a total of $61,000 from their IRA accounts to purchase two AILIC annuities.  According to Plaintiffs' allegations, it was represented that 25% of this investment would be available for distribution the following year, but it was not disclosed that the annuities imposed penalties for early withdrawals.  It is alleged that at all material times, they had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶ 134 – 157.

d.      Estate of Joseph Healy

Plaintiff's Decedent Joseph Healy allegedly purchased an AILIC deferred annuity with an initial premium of $106,916.87.  According to Plaintiffs' allegations, it was not disclosed that payments on the annuity would not begin for fifteen years after purchase or that any withdrawals of principal in the first ten years after purchase would be subject to substantial penalties.  It is alleged that at all material times, he had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶ 158 – 172.

e.      George J. Miller

George Miller allegedly purchased an annuity from AILIC.   According to Plaintiffs' allegations, it was not disclosed that this annuity would not make payments for fifteen years or that it also imposed early-withdrawal penalties.  It is alleged that at all material times, he had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶  182 – 199.

f.      Jean Ryles

Jean Ryles allegedly purchased two AILIC annuities whose initial premiums totaled over $ 80,000.  According to Plaintiffs' allegations, no one disclosed to Ryles that the

annuities contained early-withdrawal penalties.  It is alleged that at all material times, she had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶ 173 - 181

g.      Evelyn K. Edwards

Evelyn Edwards allegedly purchased an AILIC annuity, for an initial payment of $12,000, followed by a second payment of $15,000.  According to Plaintiffs' allegations, the risks and adverse information associated with the purchase of this deferred annuity were not fully disclosed.  It is alleged that at all material times, she had total assets that were under the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶ 200 – 203.

h.      Michael J. and Catherine M. Quinn

Mr. and Mrs. Quinn allegedly purchased an AILIC annuity for an initial payment of $350,000.  According to Plaintiffs' allegations, the AILIC agent who sold them this annuity did not fully disclose the significant risks and adverse information relating to the purchase of its deferred annuity for persons of the Quinns' age and circumstances.  It is alleged that at all material times, they had total assets that were over the unified tax credit against estate tax as specified in 26 U.S.C. § 2010.  *See* Complaint at ¶¶ 204 – 206.

**C.      PLAINTIFFS' POSITION**

Plaintiffs allege that Defendants defrauded tens of thousands of senior citizens and other vulnerable purchasers through their scheme to induce these people to purchase unsuitable investments called long term deferred annuities (LTDAs).   Plaintiffs further allege that Defendants targeted seniors of modest means, and other vulnerable persons, with a scheme that employed "independent" sales agents who sold Defendants' LTDAs through their seemingly objective representations that the LTDAs were suitable investments.   Defendants also

purportedly required their "independent" agents to distribute uniform written materials that grossly misrepresented or omitted features of the LTDAs, promising security, high returns and tax advantages that were simply nonexistent.

Plaintiffs allege that Defendants made uniform misrepresentations and omissions regarding the LTDAs, which allegedly included the following:

1.    The LTDA is a suitable investment for seniors of modest means and all other purchasers.  Plaintiffs allege that this representation was false when made.

2.    The LTDA has "tax benefits."   Plaintiffs allege that, in fact, the many tax detriments of LTDAs swamp any benefits they may offer.

3.    The LTDA is sold with a money-back guarantee.  Plaintiffs allege that Defendants attempted to frustrate requests for refunds, and allegedly had a policy that required that such requests be forwarded to the selling agents in an alleged effort to convince the purchaser to maintain the policy.

4.    The LTDA sales agent is an objective professional who is recommending the purchase of the LTDA based upon an objective assessment of suitability. Plaintiffs allege that the titles employed by the sales agents denoting objectivity are meaningless and the Defendants incent the sales agents to sell LTDAs  to anyone and everyone without regard to suitability.

Based upon these alleged uniform misrepresentations, Plaintiffs moved for class certification on June 16, 2008.

Plaintiffs' Counsel and their experts have conducted a thorough investigation of the facts relating to the products that are the subject of, and the claims asserted in, the Action.  Plaintiffs' Counsel have evaluated the relevant law and facts to assess the merits of Plaintiffs' claims, and the likelihood of success at trial.  Based upon their extensive discovery, investigation, and evaluation of the facts and the law concerning the matters alleged in and relating to the Action, the Named Plaintiffs and Plaintiffs' Counsel have agreed to settle the Action pursuant to the provisions of the Stipulation of Settlement, after considering, among other things:  (a) the fairness, reasonableness, and adequacy of this Agreement; (b) the substantial risks and

uncertainties of protracted litigation and trial, especially in complex actions such as this, as well as the difficulties, delays, and risks of adverse results inherent in such litigation; (c) the needs and interests of the Class Members; and (d) the desirability of consummating this Agreement promptly, in order to provide effective relief to the Class Members.

The Named Plaintiffs and Plaintiffs' Counsel agree that the proposed settlement is fair, reasonable, and adequate because it provides substantial benefits to the Class Members, is in the best interests of the Class Members, and fairly resolves the claims alleged in the Action.

### D.   DEFENDANTS' POSITION

Defendants deny any and all wrongdoing alleged in the pleadings in the Action and do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against them in the Action. Defendants contend that Plaintiffs' claims are improper as a matter of fact and law.  In addition, Defendants contend that Plaintiffs would suffer failures of proof at trial that would be fatal to both their individual and class claims, and that it would be impossible to prove many of the elements of their claims on a class-wide basis.  In this regard, Defendants specifically contend that it would be inappropriate to certify a litigation class in this matter, in part due to the manageability and superiority problems inherent in presenting this case in a trial involving thousands of individualized sales.  However, Defendants do believe, in light of *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2248 (1997), that such considerations do not apply to certification of settlement classes, and that acceptable procedural safeguards have been incorporated into this settlement.

Defendants contend that the descriptions of Company Annuities in their marketing materials are not misleading, and that they have completely fulfilled their various obligations to

Owners of the Company Annuities as promised in the applicable annuity contracts. Defendants dispute any contention that persons and entities in the Class purchased Company Annuities without disclosure of deferral periods or other withdrawal provisions, including surrender charges, or that any Company Annuities sold to the Class were per se or otherwise unsuitable. Defendants also contend that persons and entities in the Class have not suffered any damage or loss as a result of the conduct alleged in the Complaint. Defendants further contend that the offers and sales of all Company Annuities offered and/or issued by the Companies were and are legal in all respects.

Nonetheless, Defendants consider it desirable for this Action to be settled and dismissed because this Settlement will: (i) provide substantial benefits to the Class Members; (ii) finally put Plaintiffs' claims and the underlying matters to rest; and (iii) avoid the substantial expense, burdens, risks, and uncertainties associated with the continued litigation of the Action.

### E.    SETTLEMENT NEGOTIATIONS

The proposed settlement is the product of extensive and intensive negotiations over more than a year. The parties worked with a mediator, Eric Green, of Resolutions LLC, who is one of the most experienced mediators in the country, particularly with large and complex cases. The settlement negotiations included many meetings in various locations (including Philadelphia, Washington, Boston, and New York) and numerous telephone conferences.

### F.    BASIC TERMS OF THE SETTLEMENT RELIEF

The relief to Class Members under the proposed settlement includes basic and enhanced General Policy Relief. Alternatively, Class Members may seek to qualify for Claim Process Relief by electing to participate in a Claim Review Process. The General Policy Relief and Claim Process Relief are mutually exclusive; any one eligible policy may receive General Policy

Relief or Claim Process Relief, but not both.

Under the proposed General Policy Relief, current owner(s) of eligible policies that are in deferral will have the right to elect to have the accumulation value of the policy increased by a specified bonus amount, and, concurrently, to have that accumulation value, as increased by the bonus, paid to the annuitant under the policy in equal annual installments over a defined payment period, with no surrender charges. For policies in deferral that have been in force for at least five years, the payment period will end no later than the end of the surrender charge period for the relevant policy. For an eligible policy in deferral that also qualifies as a "65-and-Over Contract" (meaning that each original owner of the policy when it was issued, or the annuitant of the policy if no original owner was a natural person, was at least 65 years of age when the policy was issued), the specified bonus under the basic General Policy Relief if the owner(s) elect to implement the relief will equal 0.40% of the policy's accumulation value; for other eligible policies in deferral, the specified bonus under the basic General Policy Relief if the owner(s) elect to implement the relief will equal 0.15% of the policy's accumulation value. Owners of eligible policies in deferral may elect to implement the General Policy Relief any time after the first anniversary of the policy and while it remains in deferral.

Under the proposed General Policy Relief, current owner(s) of eligible policies that are in annuitization will have the right to elect to receive a bonus, based on the accumulation value of the policy when it was annuitized, paid in equal installments with the remaining annuity payments. Again, the applicable bonus percentage is 0.40% for eligible policies that are 65-and-Over Contacts, and 0.15% for eligible policies that are not 65-and-Over Contacts. Owners of eligible policies in annuitization may elect to implement the General Policy Relief any time while the policy remains active and is still the subject of continuing payments.

Under the proposed General Policy Relief, Class Members who were owners at the time of annuitization of eligible policies that are categorized for the purposes of the settlement as fully annuitized will receive lump-sum payments. The payments will equal 0.40% of the policies' respective accumulation values at annuitization for eligible policies that are 65-and-Over Contacts, and 0.15% of such accumulation value for eligible policies that are not 65-and-Over Contacts.

For each policy in deferral, the basic General Policy Relief also will include a benefit that will be calculated as being equivalent to a 50% reduction in the amount of surrender charges (if any) that otherwise would apply under the policy on or in connection with a future death benefit payable under the policy upon the death of the owner or the annuitant.

For eligible policies that are categorized for purposes of the settlement as in deferral, in annuitization, or fully annuitized *and* are 65-and-Over Contracts, the owners may elect to qualify their policies for enhanced General Policy Relief. The enhanced General Policy Relief for an eligible 65-and-Over Contract is the same as the basic General Policy Relief, except that the amount of the bonus may be higher, ranging from 0.40% to 2.0%, depending on two factors: (a) whether, and the extent to which, the original owner's remaining life expectancy exceeded the surrender charge period under the policy; and (b) how large a fraction of the original owner's liquid net worth was used to purchase the policy. In general, the shorter the original owner's life expectancy as compared to the surrender charge period, and the more of the original owner's liquid net worth used to purchase the policy, the higher the potential bonus.

Instead of the General Policy Relief, owners of eligible policies may seek to qualify for Claim Process Relief by electing to participate in a Claim Review Process. The Claim Process Relief, and the related Claim Review Process, is intended for Class Members who believe that

they can prove that they have been harmed by the way a policy was marketed and sold and/or because the policy was unsuitable for the original owner.  The Claim Review Process allows participating Class Members to submit a Claim Form and proof of alleged misconduct by Defendants or the salespersons involved in the sale.  Class Members who participate in the Claim Review Process must prove their claim in order to receive any Claim process Relief.

The Claim Process Relief consists of two general components.  The first general component is a cash payment that will be calculated based on surrender charges, if any, that were incurred by an owner of the policy prior to the Preliminary Approval Date.  The second general component is a bonus payment that in most cases is based on the policy's accumulation value and paid with annuity payments over a specified payment period.  The specific nature of the Claim Process Relief for a particular policy varies depending on the status of that policy and the score assigned to the corresponding claim.  To receive the bonus payment component of this relief, owners of eligible policies that are in deferral or in annuitization must elect to implement the relief within 60 days after they receive notice of the final score assigned to their respective claims.

The proposed settlement also includes "non-economic" relief in the form of undertakings made by the Defendants relating to the manner in which annuities and other insurance products offered by American Investors Life Insurance Company and AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company) are marketed and sold.

### G.    DEADLINES AND NOTICE PROVISIONS

#### 1.    Notice in General

The entire Class Notice Package consists of a cover letter attached to the Stipulation of Settlement as Exhibit B, the Notice of Class Action, Proposed Settlement, and Fairness Hearing

attached to the Stipulation of Settlement as Exhibit C, and an Election Form (for enhanced General Policy Relief or to participate in the Claim Review Process) attached to the Stipulation of Settlement as Exhibit D.

Subject to the requirements of any orders entered by the Court, Defendants shall cause the Settlement Administrator to send the Class Notice Package by first-class mail (or comparable postal method for Class Members with addresses outside of the United States of America and its territories), postage prepaid, to the last known address of each reasonably identifiable person and entity in the Class.  In cases of pending litigation against Defendants relating to the Released Transactions, the Class Notice Package will be sent also to any legal counsel (other than Plaintiffs' Counsel) known by Defendants as of the Preliminary Approval Date to represent a person or entity in the Class with respect to a Contract.

Prior to the mailing of the Class Notice, the mailing list for the Class Notice shall be run through the U.S. Postal Service's National Change of Address Database for verification and correction of addresses, at Defendants' expense, to attempt to reduce the number of returned mail items.  In the case of Class Notices undelivered and returned by the U.S. Postal Service, the Settlement Administrator shall:  (1) re-mail any Class Notice so returned with a forwarding address, and (2) make reasonable efforts to attempt to find an address for any returned Class Notice that does not include a forwarding address, or retain a commercial address verification service and provide a copy of such returned Class Notices to the address verification service as soon as practicable following receipt.  Any retained address verification service shall provide to the Settlement Administrator in connection with each such returned Class Notice provided to it, as soon as is practicable, either an updated address or a statement that, following due research, it has been unable to obtain an updated address.  The Settlement Administrator shall re-mail the

Class Notice to every person and entity in the Class for which it or the address research service provides an updated address.

Information concerning the settlement will also be available on the internet.  The Settlement Administrator shall maintain an internet web site containing the following information: (a) a brief description of the Action; (b) a copy of the Class Notice Package; (c) a copy of the order entered by the Court giving preliminary approval to the proposed Settlement (if and when the Court issues such an order); (d) a copy of the order granting final approval of the Settlement (if and when the Court issues such an order); (e) a copy of an Election Form; (f) a copy of a Claim Form; (g) contact information for the toll-free class call center; (h) contact information for Plaintiffs' Counsel; (i) any information identified as  being available on the web site in any of the Exhibits hereto; and (j) any other information agreed upon by the Parties or Parties' Counsel.  The internet web site shall be maintained starting no later than the date of mailing of the Class Notice, and shall be maintained until the Claim Review Completion Date. No text or documents shall be posted on the web site without the approval of Plaintiffs' Counsel and counsel for Defendants.

### 2.    Deadlines

#### a.    Enhanced Policy Relief Election Deadline

As the Notice explains, the General Policy Relief contemplates two levels of potential relief for eligible 65-and-Over Contracts – basic and enhanced.  To qualify an eligible 65-and-Over Contract for enhanced General Policy Relief , a Class Member must submit a properly completed and signed Election Form, including certain information concerning the original owner(s) of the applicable Contract as specified in the Election Form, postmarked by the

Election Filing Deadline specified in the Election Form, which deadline shall be 20 days after the date originally scheduled for the Fairness Hearing.

b. Claims Review Process Election Deadlines

The Notice also explains that Class Members who wish to participate in the Claim Review Process must return their Election Forms, properly signed and completed to indicate the election of the Claim Review Process, postmarked by the date specified in the Election Form, which date shall be 20 days after the date originally scheduled for the Fairness Hearing.  Not later than 90 days after the Approval Date, subject to the requirements of any order entered by the Court, Defendants will send (or cause the Settlement Administrator to send) a mailing to all Class Members who properly elected to participate in the Claim Review Process.  The mailing will include a cover letter (in the form of Exhibit E to the Stipulation of Settlement) and a Claim Form (in the form of Exhibit F to the Stipulation of Settlement).

c. Deadline for exclusions

The Notice explains that persons and entities in the Class may exclude themselves from the settlement by submitting a written exclusion request postmarked no later than 45 days after the date of the Notice.

d. Deadlines to Object to the Settlement and File Notice of Intention to Appear at Fairness Hearing

(i) Deadline to file objection to settlement

The Notice explains that any Class Members who have not validly excluded themselves may object to the proposed Settlement by submitting to the Settlement Administrator, the Court, and Parties' Counsel a written statement of objections postmarked no later than 45 days after the date of the Notice.

17

Each such statement of objection must: (1) set forth the Class Member's full name, current address, telephone number, and applicable Contract number(s); (2) state that the Class Member objects to the Settlement, in whole or in part; (3) set forth a statement of the legal and factual basis for the objection; and (4) be accompanied by copies of any and all documents that the objecting Class Member has and will submit in support of his/her position.  A Class Member who does not submit a timely objection in accordance with the Stipulation of Settlement and the Class Notice, and as otherwise ordered by the Court, will not be treated as having filed a valid objection to the Settlement.  The Class Notice informs the Class of this requirement.  Parties' Counsel will  file copies of all objections with the Clerk prior to the Fairness Hearing, so that the Court may appropriately consider them.  Class Members may object either on their own or through an attorney hired at their own expense.  If a Class Member hires an attorney to represent him or her, the attorney must (i) file a notice of appearance with the Clerk of the Court no later than 45 days after the date of the Notice, and (ii)  mail to Plaintiffs' Counsel and counsel for Defendants, postmarked no later than 45 days after the date of the Notice, a copy of the same.

(ii)     Deadline to file notice of intention to appear at
Fairness Hearing

A Class Member who has filed and served a valid written objection to the proposed Settlement may, if he or she so requests, appear at the Fairness Hearing to object to the fairness, reasonableness, or adequacy of the proposed settlement, either personally or through counsel, provided that a Notice of Intention to Appear and Object must be mailed to Parties' Counsel, postmarked no later than 45 days after the date of the Notice, and filed with the Court no later than 45 days after the date of the Notice.

A Class Member who appears at the Fairness Hearing will be permitted to argue only those matters that were set forth in a written objection validly filed by such Class Member.  The

Notice explains that no Class Member will be permitted to raise matters at the Fairness Hearing that the Class Member could have raised in such a written objection, but failed to do so, and all objections to the Settlement that are not set forth in such a written objection are deemed waived. It further explains that any Class Member who fails to comply with the applicable provisions of this Agreement and the Class Notice, and as otherwise ordered by the Court, shall be barred from appearing at the Fairness Hearing.

The Parties may serve and file responses to written objections at any time prior to the Fairness Hearing, or as otherwise directed by the Court.


**III.    <u>PROPOSED FORM AND DISSEMINATION OF NOTICE IS ADEQUATE</u>**

Federal Rule of Civil Procedure 23(e) provides that "Notice of the proposed dismissal or compromise (of a class action) shall be given to all class members in such manner as the court directs." Federal Rule of Civil Procedure 23(c)(2) provides that in any class action maintained under subdivision (b)(3), the court shall direct to the class members the best notice practicable under the circumstances, including individual notice to all class members who can be identified through reasonable effort. Here, the parties propose providing individual first class mailed notice to all reasonably identifiable Class Members, based on last known addresses in the Defendants' records. The Notice will also be available to the Class Members on an internet web site maintained by a settlement administrator.

The content of the proposed Notice, and the proposed method of dissemination of the Notice, fulfill the requirements of Federal Rule of Civil Procedure 23(e) and Rule 23(c)(2) and the due process clause of the U.S. Constitution. The Notice advises each Class Member that (a) the court will exclude the member from the Class if the member so validly requests by a

specified date; (b) the judgment, whether favorable or not, will include all Class Members who do not validly request exclusion; and (c) any Class Member who does not validly request exclusion may, if the member desires, enter an appearance through counsel, as required by Rule 23(c)(2).  The Notice package includes all of the information and deadlines needed to make an informed decision regarding participation in the settlement.  Furthermore, the dissemination of the notice by first class mail and internet publication, as proposed, complies with the due process requirements of the U.S. Constitution and the Federal Rules of Civil Procedure.

Notice of this class action settlement by first class mail alone to the identifiable Class Members satisfies Rule 23's notice requirements.  In a similar class action against a defendant in the same industry, *Castello v. Allianz Life Insurance Company of North America*, MC 03-20405, the U.S. District Court for the District of Minnesota approved notice to 60,000 class members by mail and posting on a publicly available website.

There is a plethora of authority for the proposition that notice by mail only is sufficient. In *Fleury v. Richemont North America, Inc.*, 2008 U.S. Dist. LEXIS 88166 (N.D. Cal. 2008), notice was successfully mailed to about 75,000 out of 85,957 class members, and the court found that additional notice by publication was not required, noting that "'[i]ndividual mailings, even when only calculated to reach one third of prospective plaintiffs, and even without supplemental publication in newspapers, has been found to constitute adequate notice.'" Docket No. 278 (Order at 32) (quoting *Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 418 (S.D.N.Y. 2005); *also citing Grunin v. International House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975) (concluding that additional "notice by publication was unnecessary in this case for due process purposes and probably would have been of little value in alerting members of the class and subclass that were previously uninformed")).

The District Court in *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.D.C. 1992) held that it is beyond dispute that notice by first class mail alone ordinarily satisfies rule 23(c)(2)'s requirement that class members receive "the best notice practicable under the circumstances," even though the mail is not 100% reliable. *Id.*, citing *Trist v. First Federal Sav. & Loan Ass'n*, 89 F.R.D. 1, 2 (E.D. Pa. 1980); *Jenkins v. Raymark Indus., Inc.,* 109 F.R.D. 269, 281 (E.D. Tex. 1985), *aff'd,* 782 F.2d 468 (5th Cir. 1986); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 614 (W.D. Pa. 1983); *Piel v. National Semiconductor Corp.*, 86 F.R.D. 357, 375 (E.D. Pa. 1980); *Unicorn Field Inc. v. Cannon Group, Inc.*, 60 F.R.D. 217 (S.D.N.Y. 1973).

In *Berland v. Mack*, 48 F.R.D. 121 (S.D.N.Y. 1969), the District Court held that notice by publication, in addition to notice by first-class mail, was cost prohibitive, and that if the percentage of unidentified members proved to be small, notice by mail to all 16,000 identifiable class members may be "reasonably certain to reach *most* of those interested."

Notice of class action settlement by first class mail alone was also approved and deemed adequate in *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 294 (S.D.N.Y. 1969); *Moreno v. AutoZone, Inc.*, 2007 U.S. Dist. LEXIS 98250 (N.D. Cal. Dec. 6, 2007); *Sharer v. Tandberg, Inc.*, 2006 U.S. Dist. LEXIS 85480 (E.D. Va. Nov. 22, 2006); *Galloway v. Southwark Plaza Ltd. P'ship*, 2003 U.S. Dist. LEXIS 20212 (E.D. Pa. Oct. 28, 2003); and *Brandt v. Owens-Illinois, Inc.*, 62 F.R.D. 160, 166 (S.D.N.Y. 1974).

Based on these cases, it is clear that the proposed notice, by mailing and internet publication, is adequate.

## IV.  THE COURT SHOULD DETERMINE THAT THE PROPOSED SETTLEMENT IS SUFFICIENTLY FAIR, REASONABLE AND ADEQUATE TO AUTHORIZE DISSEMINATION OF NOTICE

### A.  GOVERNING STANDARDS

The process of preliminarily approving a class action settlement, in order that notice of the settlement may be disseminated to class members, and then conducting a fairness hearing before granting final approval, is a standard procedure which is regularly employed by numerous courts. *See*, *e.g.*, *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 117-120 (3d Cir. 1990).  The Manual for Complex Litigation (Third) § 30.41 (2001) provides the framework for a district court's preliminary evaluation of a proposed class action settlement:

> Approval of class action settlements involves a two-step process.  First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation. . .  If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*See also* 4 Newberg on Class Actions § 11.25 (4th ed. 2002); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002), *aff'd* 391 F.3d 516 (3rd Cir. 2004); *Grice v. PNC Mortgage Corp. of Am.*, 1998 WL 350581, *2 (D. Md. May 21, 1998); *In re NASDAQ Mkt. Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

To authorize the dissemination of notice, the district court must only find that the settlement is in the range of possible approval.  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 213 (5th Cir. 1981).  As noted by the court in *In re Traffic Executive Association-Eastern R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980), approving dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class

members and hold a full-scale hearing as to its fairness."  The requirement that a settlement fall within a "range of possible approval" under Rule 23 is satisfied by a determination that there is a conceivable basis for final approval of a settlement is that the settlement is fair, reasonable and adequate.  *See Stoetzner*, 897 F.2d at 118; *Walsh v. Great Atlantic & Pacific Tea Co., Inc.*, 726 F.2d 956, 965 (3d Cir. 1983).

Preliminary approval of a settlement and authorization to disseminate notice is not a "definitive proceeding on the fairness of the proposed settlement, and the judge must be careful to make clear that the determination permitting notice to members of the class is not a finding that the settlement is fair, reasonable, and adequate."  *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983).  Such a determination will await the final hearing on the fairness, reasonableness and adequacy of the proposed settlement and an analysis of the agreement under the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975).[6] *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1384; *see also Holden v. Burlington Northern, Inc.*, 665 F. Supp. 1398, 1403 (D. Minn. 1987) (in authorizing notice the court refrained from "expressing any opinion concerning the ultimate merits of the proposed settlement").

## B.   THIS SETTLEMENT IS ENTITLED TO A PRESUMPTION OF FAIRNESS

So long as there has been no fraud or collusion in resolving the case and the terms are

---

[6] The factors set forth in *Girsh*, to be analyzed on a motion for *final* approval of a settlement, include (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement ; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.  *Girsh*, 521 F.2d at 157.

fair, adequate and reasonable, the settlement should be approved.  *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  "A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery."  *In re Linerboard Antitrust Litig.*, 2003 WL 22006293 at *7, *citing Hanrahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997); *see also Rendler v. Gambone Bros. Dev. Co.*, 1999 WL 252395, at *4 (E.D. Pa. 1999).  Other courts have also deferred to the judgment of experienced counsel who have conducted arm's-length negotiations.  *See Fisher Bros. v. Phelps Dodge Indust., Inc.*, 604 F. Supp. 446, 452 (E.D. Pa. 1985) ("[T]he professional judgment of counsel involved in the litigation is entitled to significant weight"); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. at 254; *In re Residential Doors Antitrust Litig.*, 1998 U.S. Dist. Lexis 4292, at *17 (E.D. Pa. Apr. 2, 1998) (presumption of fairness and adequacy); *Stewart v. Rubin*, 948 F. Supp. 1077, 1099 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997); *Petruzzi's, Inc., v. Darling-Delaware Co.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995).  The presumption in favor of such settlements reflects courts' understanding that vigorous negotiation between seasoned and experienced counsel protects against collusion and satisfies the fairness requirements of Rule 23(e).

As described above in section II.E, the settlement reached here is the product of extensive arms-length negotiations undertaken in good faith for over a year, with the assistance of a professional mediator, in many face-to-face meeting and telephone conferences.  The parties themselves did not even explore negotiations until after more than 4 years of highly contested litigation in numerous forums, extensive discovery involving the production of  hundreds of thousands of pages of documents and over twenty total depositions; four years of motion practice, numerous discovery motions, two motions to dismiss, a fully briefed motion for

summary judgment and motion for class certification.   Generally, post-discovery settlements such as this are viewed as more likely to reflect the true value of the claims.   *See Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993).

Furthermore, this settlement was negotiated on behalf of the plaintiffs by counsel who have extensive experience in similar complex litigation, including Jonathan Auerbach, Jerome M. Marcus, and John R. Hargrove, each of whom has extensive experience prosecuting class actions and complex litigations.   Messrs. Marcus and Auerbach have litigated and settled several class actions cases against insurance companies, and Mr. Hargrove represented plaintiffs in the class action *Strube v. American Equity Investment Life Insurance Co.*, 2006 U.S. Dist. LEXIS 28582 (M.D. Fla. May 5, 2006), which challenged annuities and marketing practices much like those at issue in this case.   As noted above, negotiations involved face-to-face meetings in Philadelphia, New York, Boston and Washington, D.C.,, with professional mediator Eric Green, as well as numerous telephone conferences.   On the basis of a thoroughly informed assessment of their case, Plaintiffs' Counsel have concluded that the proposed settlement is fair, reasonable and adequate.

Nothing in the course of the negotiations or the substance of the settlement "disclose[s] grounds to doubt its fairness."   Manual § 30.41.   To the contrary, the arms-length nature of the negotiations and the participation of experienced advocates throughout the process strongly supports the conclusion that the proposed settlement is fair, reasonable and adequate to the Class. Thus, the presumption of fairness that applies to this settlement is well founded here.

### C.   THE PROPOSED SETTLEMENT FALLS WELL WITHIN THE RANGE OF POSSIBLE APPROVAL

Considering that at this stage it must only be demonstrated that that there is a *conceivable basis* that the proposed settlement will fall within a "range of possible approval" under Rule 23,

it should be clear that the proposed settlement should receive preliminary approval, in order that a final fairness hearing may be held. *Elkins v. Equitable Life Ins. of Iowa*, 1998 WL 133741, *25 (M.D. Fla. Jan. 27, 1998), sets forth the 7 factors to be considered in determining whether to finally approve a class settlement:  (1) the likelihood of success at trial and potential recovery; (2) the complexity, expense and duration of litigation; (3) the terms of the settlement; (4) the procedures afforded to notify the class members of the proposed settlement, and to allow them to present their views; (5) the judgment of experienced counsel for the plaintiff class; (6) the substance and amount of opposition to the settlement; and (7) the stage of the proceedings at which the settlement was achieved.  A concise analysis of these factors demonstrates that there is certainly a *conceivable basis* for presuming that this proposed settlement will satisfy the standard applied for final approval.

The agreement here provides financial benefits to the class more quickly than litigation of the numerous complex and complicated issues involved in this case could - an especially important aspect considering that many of the Class Members are elderly. Time is of the essence in this case.  When the complexity of the issues involved and the expense and duration of the litigation are considered in light of the composition of the Class, the advantages to an early and certain resolution are clear.

Furthermore, as described in depth in section IV.B above, the settlement was achieved well into the procedural history of the case.  From initial filing to the point of mediated settlement, the matter was vigorously litigated on both sides.  It was not until the parties and their lawyers had "a clear view of the strengths and weaknesses of their cases," (*In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)), that settlement negotiations even began, to culminate in the agreement now proposed,

subject to Rule 23(e) review.

Set against the significant and flexible benefits which can be made available to the Class quickly through the proposed settlement, is the daunting, time-consuming, and risky alternative – continued litigation.  The risks to Plaintiffs of litigating this case as a class action are great, and support a finding that this settlement is fair.  Not only could it take years for Plaintiffs to litigate this case to an ultimate conclusion, but this Court's rulings in this very case to date demonstrate the attendant risks of litigation.

Indeed, the claims of certain class representatives and sub-classes have already been dismissed:  This Court dismissed the beneficiary class complaint on the grounds that those plaintiffs lacked standing and failed to state a claim. *See In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 2008 U.S. Dist. LEXIS 43085, *3 (E.D. Pa. May 30, 2008).  This Court also granted the motions to dismiss all claims against defendants Chiavaroli, Ms. Strope, Newmark and AMH.  Plaintiffs anticipate that many additional issues of law and fact would be vigorously disputed in the trial of this case.  The attendant risks, as well as the likely duration, of litigation, certainly support preliminary approval of this settlement, especially considering the advanced age of many of the Class Members.

Most importantly in the consideration of the reasonableness is the fact that the terms of the settlement effectively and substantially address each and every allegation precipitating the filing of the suit.  All Class Members holding annuities in deferral or in annuitization can, if they so desire, receive immediate income from their annuities, the values of which would be enhanced because Class Members electing this relief will have bonuses credited on the accumulation values of their annuities.  Surrender charges on death benefits will also be mitigated.

Class Members who believe they can establish that they were injured through misleading

sales practices may elect to participate in a Claim Review Process, where the potential of even larger bonuses is available, as well as receipt of cash payments based on previously incurred surrender charges.

Finally, the prophylactic effect of the global resolution is that the sales practices complained of will be a thing of the past, as Defendants will make certain undertakings regarding the manner in which annuities and other insurance products offered by American Investors and Aviva Life and Annuity Company are marketed and sold.

Class Members who are not satisfied with these forms of relief are given the opportunity to completely opt out of the settlement and pursue their own remedies if they so desire.

This type of recovery is similar to and within the range of settlements that have been approved by other courts, in cases also involving annuity sales practices.   Many of these settlements employ this dual type of alternative recovery, offering a substantive bonus on the class member's benefit, accelerated return of premium with waiver of surrender charges, and the alternative of a simplified claims review process to pursue a larger bonus if that member feels so entitled.

In *Snell v. Allianz Life Insurance Company of North America*, 2000 U.S. Dist. LEXIS 13611 (D. Minn. Sept. 8, 2000), the District Court  granted final approval to a settlement which provided class members with a similar bonus, called a contributed insurance benefit, and also provided as an alternative that class members could participate in a Claims Review Process, which provided a cost-free simplified process to resolve any complaints they may have relating to their purchase of an insurance policy from the Defendants.  *Id.* at *15-18.   In *Grove v. Principal Mutual Life Insurance Co.*, 200 F.R.D. 434, 437-38  (S.D. Iowa 2001), the Southern District of Iowa granted final approval to an annuity class action settlement which provided class

members with Settlement Death Benefits in the form of free term life insurance for a period of years, or, in the alternative, would permit the class member to pursue a greater benefit through a simplified Claims Review Process.   The settlement in *Strube v. American Equity Life Insurance Company*, which received final approval from the U.S. District Court for the Middle District of Florida, also involved this two-tiered settlement structure, providing either an immediate 2% annuitization bonus or the opportunity to pursue more individualized relief in front of the Claims Review Panel.  2006 U.S. Dist. LEXIS 28582, at *7-8.  The relief offered by the settlement here - providing significant basic and enhanced bonuses, as well as an alternative Claims Review Process - clearly falls within the range of reasonableness when compared to the similar settlements approved in other annuity cases.

## V.       THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

The legitimacy of a settlement class was confirmed by the United States Supreme Court in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997).  The Supreme Court determined that the terms of a proposed settlement are relevant to a class certification analysis in large part because it alleviates the need to address potential management problems that might arise were the case to be tried.  *Id.* at 619-20.  The Supreme Court reiterated the "dominant factor" that governs such a Rule 23 analysis – "whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives."  *Id.* at 621.

Facts and evidence support the finding that the proposed class satisfies all four requirements of Rule 23(a):   (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class.  Plaintiffs submit that there is sufficient basis for finding that common issues predominate to warrant distribution of the Notice to the proposed Class, and evaluation of final certification of the Class on the Motion for Final Approval of the Settlement.  Defendants submit that the Supreme Court's decision in *Amchem* effectively eliminates the need to consider and make findings on predominance issues which relate to a class action that is to be litigated.  Finally, the parties here concur that, for settlement purposes, a class action is a superior method for the fair and efficient adjudication of this controversy through settlement.

Plaintiffs' assert that their claims are particularly amenable to class treatment because they arise from an alleged common fraudulent scheme to sell unsuitable LTDAs to senior citizens and other vulnerable purchasers through uniform misrepresentations and omissions.  *See* Fed. R. Civ. P. 23 advisory committee's note ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . . ."); *see also Rodriguez v. McKinney*, 156 F.R.D. 112, 115 (E.D. Pa. 1994).  Furthermore, Plaintiffs have asserted claims enforcing civil RICO, which are routinely certified as class actions.  *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 314-15 (3d Cir. 1998); *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); *Eisenberg v. Gagnon*, 766 F.2d 770, 785-86 (3d Cir. 1985), *cert. denied*, 474 U.S. 946 (1985); *Rodriguez v. McKinney*, 156 F.R.D. 112, 115 (E.D. Pa. 1994); *Grider v. Highmark, Inc.*, 2006 U.S. Dist. LEXIS 93085 (E.D. Pa. Dec. 21, 2006).

Several district courts have recently certified class actions asserting claims arising from fraudulent schemes to sell LTDAs to seniors.  *See Negrete v. Allianz Life Ins. Co. of North America*, 238 F.R.D. 482 (C.D. Calif. 2006); *Iorio v. Asset Marketing, Inc.*, 2006 U.S. Dist.

LEXIS 94948 (S.D. Calif. 2006); *Mooney v. Allianz Life Ins. Co. of North America*, 244 F.R.D. 531 (D. Minn. 2007).  Although the parties in these recent annuity class actions are different, the fraudulent schemes and the methods of executing them are practically identical to those presented here:  an insurance company and marketing organizations use independent agents to sell LTDAs to seniors through allegedly uniform misrepresentations and omissions allegedly controlled by the insurance company and the marketing organizations.  *Id.*

### A.     NUMEROSITY

The numerosity requirement is a low threshold requiring merely that the class be so numerous that joinder of all member is impracticable, meaning that it would be difficult or inconvenient to join all class members.  *D.W. v. Poundstone*, 165 F.R.D. 661, 670 (M.D. Ala. 1996); *Bradley v. Harrelson*, 151 F.R.D. 422, 426 (M.D. Ala. 1993).

Rule 23(a)(1) requires a finding that "the class is so numerous that joinder of all members is impracticable."  While there is no precise number for establishing numerosity, the Third Circuit has held that Rule 23(a)(1) is generally satisfied where the number of potential claimants exceeds forty.  *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d. Cir. 2001); s*ee also Peil v. Speiser*, 97 F.R.D. 657, 658-59 (E.D. Pa. 1983) (holding that common sense assumption that class numbered in the thousands in a securities action was sufficient to satisfy the numerosity requirement of Rule 23(a)); *Grider v. Highmark, Inc.*, 2006 U.S. Dist. LEXIS 93085 at *39 (E.D. Pa. 2006) (citing *Weiss v. York Hospital*, 745 F.2d 786, 808 (3d Cir. 1984)).  Because the proposed Class involves approximately 360,000 annuity policies, numerosity clearly is satisfied.

### B.     COMMONALITY

Rule 23(a)(2) requires that there be questions of law or fact common to the class.

Commonality is likewise a law threshold, requiring merely that there be at least one common issue of law or fact. *See Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997);  1 Newberg on Class Actions 4th § 3.10 (2002).  As such, courts have routinely ruled that where the lawsuit is based on an alleged "common scheme of deception" or "common or standardized conduct", commonality necessarily exists.  *Elkins,* 1998 WL 133741, at *12; *Duhaime,* 177 F.R.D., at 63 (commonality satisfied by "uniformly deceptive and misleading sales practices").

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of law or fact with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). There is no requirement that all class members share all issues of law and fact, and factual differences among class members do not defeat certification. *Id.* (*citing Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)); *see also In re IKON Office Solutions, Inc.*, 191 F.R.D. 457, 463 (E.D. Pa. 2000).  Given that one common issue will satisfy the commonality requirement, it is easily met. *Baby Neal*, 43 F.3d at 56.  The questions of law and fact involved in proving a RICO claim satisfy the commonality requirement of Rule 23(a)(2). *Rodriguez v. McKinney*, 156 F.R.D. at 114.

In *Elkins*, the Court found that the commonality requirement was satisfied under similar circumstances. *Id.*, 1998 WL 133741.  In *Elkins*, the plaintiffs alleged that the defendant insurance company had devised and implemented a scheme to sell, service and administer permanent life insurance policies through an untrained sales force across the country. *Id.* at *13. The court determined that the situation gave rise to numerous common questions of fact and law relating to the company's failure to supervise and train its agents, the deceptive nature of the standardized marketing materials distributed to agents, the company's failure to disclose material

terms of the policies to its customers, and its failure to disclose that the customers would incur cash penalties in liquidating their existing investments in order to purchase its policies. *Id.* at *12-13. The Court also observed that the existence of uniform written materials upon which the suit was based was a clear indicia of commonality. *Id.* at *12. Therefore, any differences in oral representations made by individual sales agents would not destroy commonality. *Id.*; *Duhaime*, 177 F.R.D. at 64. Plaintiffs assert that these decisions make clear that when the focus of the litigation is on alleged misconduct committed by an insurance company before its agent ever meets its customer, what occurs thereafter should not and cannot be used to defeat class certification. As the court in *Elkins* stated, "practices and policies allegedly were determined and implemented in a uniform fashion by [defendant's] home office management and would be proven at trial through common evidence." 1998 WL 133741, at *13.

The central theme of Plaintiffs' allegations is a course of business conduct which is common to the claims of all Class Members. The core of Plaintiffs' claims is Defendants' participation in a scheme to sell unsuitable deferred annuities to seniors through uniform misrepresentations and omissions of material facts about the annuities and whether they were suitable for Plaintiffs. (*See* Third Amended Consolidated Class Action Complaint ¶¶ 207 - 215.) Each of Plaintiffs' claims, including their RICO claims in Counts I and II, depends upon the propriety of selling Plaintiffs and other Class Members the deferred annuities at issue. (Third Amended Consolidated Class Action Complaint ¶¶ 224 - 287). Each of the common questions of law and fact listed by Plaintiffs in their complaint emanate from this fundamental issue. (*See* Third Amended Consolidated Class Action Complaint ¶ 218.) Plaintiffs' allegations satisfy the commonality requirement of Rule 23(a).

## C.	THE PLAINTIFFS' CLAIMS ARE TYPICAL OF THOSE OF THE CLASS

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Typicality is satisfied where the named plaintiffs' claims and those of the absent class members arise from the same course of conduct that give rise to the same legal theories.  *Baby Neal*, 43 F.3d at 57-58; *Eisenberg*, 766 F.2d at 786.  Typicality exists even where there may be differences in the types of injury among named plaintiffs and the class members, so long as those injuries arise from the same course of conduct.  *See Baby Neal*, 43 F.3d at 58.  "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals."  *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d at 311 (citing *Baby Neal*, 43 F.3d at 57).  So long as the cause of the disparate injuries is a common wrong, typicality is satisfied.  *Id.* at 312 (citing *Baby Neal*, 43 F.3d at 58).  Cases that challenge the same unlawful conduct that affects both the named plaintiffs and the members of the class satisfy typicality.  *Baby Neal*, 43 F.3d at 58.

The gravamen of Plaintiffs' claims is the fraudulent sale of LTDAs to seniors and other vulnerable purchasers through alleged uniform misrepresentations and omissions.  (Third Amended Consolidated Class Action Complaint ¶¶ 224 - 287.)  Typicality is easily satisfied in cases asserting a civil RICO claim arising from the same legal theory applied to the entire class.  *Rodriguez*, 156 F.R.D. at 114.  Plaintiffs are challenging the same course of conduct through each of their claims.  (Third Amended Consolidated Class Action Complaint ¶¶ 224 - 287.)  Even where there are factual distinctions among the Plaintiffs and members of the proposed class, as Defendants have suggested in their Motions to Dismiss, these distinctions fail to destroy the typicality of Plaintiffs' claims arising from the same course of conduct among the

Defendants. *Cullen*, 188 F.R.D. at 230; *see also Negrete*, 238 F.R.D. at 488 (holding that differences among class members with respect to their status or relationship to the selling agent and sophistication do not defeat typicality). Because this matter challenges Defendants' uniform course of conduct as it affects the entire class, typicality is satisfied.

       **D.**       **ADEQUACY OF REPRESENTATION**

       Rule 23(a)(4) requires a finding that "the representative parties will fairly and adequately protect the interests of the class." Adequacy of representation is a two-pronged analysis, testing the qualifications of counsel to represent the class and, second, to uncover conflicts between the named parties and the class they seek to represent. *In re The Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d at 312-13. As to the first question, the Plaintiffs' attorneys must be qualified, experienced and generally able to conduct the proposed litigation. *Hoxwort*, 980 F.2d at 923; *accord Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975), *cert. denied*, 421 U.S. 1011 (1975). As to the second prong, Plaintiffs must have no interests that are antagonistic to the class. *Id.*

       As to the first prong, Plaintiffs' counsel are experienced and able to conduct the litigation on behalf of the class. Jerome M. Marcus, Esq., Jonathan Auerbach, Esq. and John Hargrove, Esq., each have extensive experience prosecuting class actions and complex litigations. Mr. Marcus and Mr. Auerbach have served as lead counsel in several consumer class actions, including class actions involving insurance products. In addition to prosecuting and defending a variety of consumer class actions, Mr. Hargrove prosecuted *Strube v. American Equity Investment Life Insurance Co.*, *supra*, the first class action certified in any court that addressed equity-indexed annuity products. Resumes for the attorneys and their firms have been attached as exhibits 2 and 3 for the Court's review.

Plaintiffs have no conflicts with the Class Members or subclass members, as their claims arise from the same course of conduct by Defendants and seek the same remedies. As the Third Circuit Court of Appeals has noted, there is much overlap between the commonality, typicality and adequacy of representation requirements. *Eisenberg*, 766 F.2d at 786. Because Plaintiffs are challenging the same alleged unlawful conduct and seeking the same relief as other Class Members and subclass members, the second prong is satisfied. *Id.* The proposed class along with the qualified funds and living trust subclasses satisfy the adequacy of representation requirement posed by Rule 23(a)(4) and, thus, satisfies all requirements of Rule 23(a).

## E.     RULE 23(B)(3)

Rule 23(b)(3) requires that the court find "that the questions of law or fact common to Class Members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the Class Members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against Class Members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Certification of the proposed Class for settlement purposes is appropriate under Rule 23(b)(3) in light of the U.S. Supreme Court's decision in *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997), in which the Court held that issues of predominance as they affect manageability do not apply to certification of settlement classes, and in light of the fact that acceptable procedural safeguards have been incorporated into the proposed settlement. In addition, the Court may consider that (i) there is no indication that any Class Members have any interest in the individual

prosecution of their actions; (ii) there are very few other pending actions against Defendants brought by members of the class; and (iii) this forum is the most efficient and desirable location to resolve the issues in this lawsuit.  The individual Class Members are seniors of modest means and other vulnerable purchasers, and their individual claims, while substantial to them, simply do not provide sufficient incentive for individual prosecution in light of the costs of litigation and the magnitude of expected recovery.[7]  *See In re Prudential Ins. Co. of Am.*, 962 F. Supp. 450, 522-24 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998).   Courts regularly focus on the economic barriers to individual actions as a primary reason for finding superiority in the class action.  *See Cullen*, 188 F.R.D. at 235; *see also In re Prudential Ins. Co. of Am.*, 962 F. Supp. at 522-24.  Plaintiffs do not have to satisfy the manageability standard contained in Fed. R. Civ. P. 23(b)(3)(D).  *See Amchem Prods.*, 521 U.S. at 620; *see also In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortgage Loan Litig.*, 418 F.3d 277, 299 (3d Cir. 2005).

The absence of viable alternative means for Plaintiffs to pursue their claims coupled with the predominance of the common issues presented by those claims renders treatment of this matter as a class action superior almost as a matter of law.  *See In re Prudential*, 962 F. Supp. at 525 (discussing that courts regularly hold that where there no effective alternative to class action, it is clearly superior).  And, that there have been few individual suits in light of the thousands of claimants also supports a finding of superiority.  *Id*. at 524 (*citing Bentowski v. Marfuerza Compania Martima, S.A.*, 70 F.R.D. 401, 405 n.10 (E.D. Pa. 1976)).  A class action is not only

---

[7] While the individual claims may capture the life savings of many of the class members, the amounts of the claims simply pale in comparison to the costs of pursuing them.  Mr. and Mrs. Stein invested approximately $20,000.00 in their deferred annuity, for example.  (Third Amended Consolidated Class Action Complaint ¶ 105.)  Mary Lynch invested $65,000 of her $75,000 in life savings in her deferred annuity.  (*Id.* at ¶ 125.)  Mr. and Mrs. Price invested approximately $61,000 in two separate deferred annuities.  (*Id.* at ¶ 148.)  Dr. Healy invested approximately $107,000 in his deferred annuity.  (*Id.* at ¶ 147.)  Ms. Ryles invested approximately $80,000 in her deferred annuities.  (*Id.* at ¶ 174.)  Ms. Edwards invested approximately $27,000 in her deferred annuity.  (*Id.* at ¶ 200.)

the fairest and most efficient method of adjudication, it is, in reality, *the* only method of adjudication. *Id.* at 524-25.    A class is superior here, as in *Barel* and *Prudential*, because it provides a forum for Class Members unlikely to bring separate claims, while at the same time leaving members free to opt-out and pursue their own actions, if they wish. *See Barel*, at *13 – 14.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, Certification of Settlement Class, and Order Directing Issuance of Notice to the Class should be granted.

Dated: July 16, 2009

Respectfully submitted,

/s/ Jonathan Auerbach/JA1194
Jonathan Auerbach, Esquire
Jerome M. Marcus, Esquire
**MARCUS & AUERBACH LLC**
400 Greenwood Avenue, Suite 200
Wyncote, PA 19095
(215) 885-2250
(888) 875-0469 (fax)

John R. Hargrove, Esquire
**JOHN R. HARGROVE P.A.**
21 Southeast 5th Street, Suite 200
Boca Raton, FL  33432
(561) 391-9114
(561) 391-9448 (fax)

***Co-lead and Interim Class Counsel***