# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re AMERICAN INVESTORS LIFE INSURANCE CO. ANNUITY MARKETING AND SALES PRACTICES LITIGATION | MDL Docket No. 1712 |

## STIPULATION OF SETTLEMENT

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 2

     A.      The Action and Underlying Allegations ...................................... 2

     B.      The Background of the Settlement ................................................ 5

II.      DEFINITIONS AND CONSTRUCTION .................................................. 7

III.      SETTLEMENT PROCESS AND RELIEF GENERALLY ...................... 18

IV.      GENERAL POLICY RELIEF .................................................................. 28

     A.      General ......................................................................................... 28

     B.      Bonus On Accumulation Value ................................................... 29

     C.      Calculation Of GPR Bonus Percentage ...................................... 31

     D.      GPR Payment Period ................................................................... 35

     E.      Additional Benefit For Contracts In Deferral ............................ 36

     F.      Timing Of GPR Implementation ................................................ 36

V.      CLAIM REVIEW ..................................................................................... 37

     A.      Claim Review Process ................................................................. 37

     B.      Scoring Claims And Determining Relief Generally ................... 50

     C.      Scoring Guidelines ...................................................................... 50

     D.      Scoring Factors ............................................................................ 52

     E.      Arbitrator ..................................................................................... 55

VI.      CLAIM PROCESS RELIEF .................................................................... 56

     A.      General ......................................................................................... 56

     B.      Monetary Payment ...................................................................... 57

     C.      Bonus On Accumulation Value ................................................... 60

     D.      Calculation Of CPR Bonus Percentage ...................................... 64

     E.      CPR Payment Period ................................................................... 65

VII.      NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS .................................................................................. 66

     A.      Overview – Class Notice Package ............................................... 66

     B.      Class Notice ................................................................................. 67

     C.      Election Form .............................................................................. 70

     D.      Address Verification; Remailing ................................................ 71

**TABLE OF CONTENTS**
**(continued)**

**Page**

  E.  **Internet Site**.................................................................. 71

  F.  **Post-Settlement Mailing**................................................. 72

  G.  **Settlement Administrator** ............................................. 73

  H.  **Communication With Class Members, Claimants, And Contract Owners**................................................................. 75

  I.  **Media Communications**.................................................. 79

VIII. **REQUESTS FOR EXCLUSION** ...................................... 79

IX. **OBJECTIONS TO THE SETTLEMENT** ........................ 80

X. **RELEASE AND WAIVER; ORDER OF DISMISSAL** ................... 83

  A.  **Release And Waiver - Definitions** ............................... 83

  B.  **Release And Waiver** ..................................................... 85

  C.  **Order Of Dismissal**...................................................... 90

XI. **ATTORNEYS' FEES, COSTS, AND EXPENSES** ......... 91

XII. **ORDER OF NOTICE, SETTLEMENT HEARING, AND ADMINISTRATION**.................................................... 95

XIII. **FINAL APPROVAL AND FINAL ORDER AND JUDGMENT** ................. 100

XIV. **MODIFICATION OR TERMINATION OF THIS AGREEMENT**............. 104

XV. **GENERAL MATTERS AND RESERVATIONS** .......................... 108

**Annexes to Stipulation of Settlement**

Annex A: Complaints filed in constituent putative class actions
Annex B: Third Amended Consolidated Class Action Complaint

**Exhibits to Stipulation of Settlement:**

Exhibit A: List of Company Annuities included in Settlement
Exhibit B: Class Notice Package Cover Letter
Exhibit C: Form of Class Notice
Exhibit D: Election Form
Exhibit E: Post-Settlement Mailing Cover Letter for Claim Review
Exhibit F: Claim Form
Exhibit G: Form of Order granting preliminary approval of the Settlement
Exhibit H: Form of Final Order and Judgment
Exhibit J: Form of Escrow Agreement

IT IS HEREBY STIPULATED AND AGREED, by, between, and among Richard

M. and Dena F. Stein, Mary Lynch, Charlotte and Beryl Price, the Estate of Joseph

Healy, George J. Miller, Jean Ryles, Evelyn K. Edwards, Dorothy Eddy, and Michael J.

and Catherine M. Quinn, in their individual capacities and as representatives of the

putative class (collectively "Named Plaintiffs"), and American Investors Life Insurance

Company, Inc., AmerUs Group Co., AmerUs Annuity Group Co., AmerUs Life

Insurance Company, Creative Marketing International Corporation, and Insurance

Agency Marketing Services, Inc. (with their successor entities, collectively

"Defendants"), through their respective duly-authorized counsel, that the proceeding in

the United States District Court for the Eastern District of Pennsylvania captioned *In re*

*American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*,

No. 2:05-md-01712-MAM (E.D. Pa. Oct. 26, 2005), as it relates to all putative class

actions (but not including *Americus Digioia v. AmerUs Life Insurance Company,*

*American Investors Life Insurance Company, Inc., AmerUs Annuity Group Co., and*

*AmerUs Group Co.*, No. 2:05-cv-05878-MAM (E.D. Pa. Nov. 8, 2005) and not including

claims brought by beneficiaries in the action styled *Glen Studley et al. v. American*

*Investors Life Insurance Co.*) consolidated and/or centralized therein (the "Action"), and

the matters raised by and related to the Action, are settled, compromised, and dismissed

on the merits, and with prejudice, on the terms and conditions set forth in this Stipulation

of Settlement and the exhibits hereto, including the Release set forth herein, subject to the

approval of the Court.

## I.      INTRODUCTION

### A.      The Action and Underlying Allegations

1.      Certain capitalized terms in this Section I are used with the meanings ascribed thereto in Section II of this Agreement.

2.      The Action that is the subject of this Settlement involves the following consolidated putative class action lawsuits:

a.      *Beryl Price, Charlotte Price and Joseph Healy v. AmerUs Group Company, AmerUs Annuity Group Company, American Investors Life Insurance Company, Inc, Barry O. Bohmueller, Brian J. Newmark, Estate Planning Advisors Corp., BEN Consulting Co., Funding & Financial Services, Victoria Larson and Kenneth Krygowski*, No. 04-cv-03329 (E.D. Pa. July 15, 2004);

b.      *George Miller v. AmerUs Group Company, AmerUs Annuity Group Company, American Investors Life Ins. Co., National Western Life Ins. Company, American Equity Invest. Life Ins. Co., Brian J. Newmark, Estate Planning Advisors Corp., BEN Consulting Co., Funding & Financial Services, Patriot Group, Addison Group, Brett Weinstein, Victoria Larson and Stephen Strope*, No. 2:04-cv-03799-MAM (E.D. Pa. Aug. 11, 2004);

c.      *Richard Stein, Dena Stein and Mary Lynch v. AmerUs Group Co., AmerUs Annuity Group Co., American Investors Life Ins. Co., Inc., Creative Marketing International Corp., Insurance Agency Marketing Services, Inc. and American Investors Sales Group, Inc.*, No. 02:05-cv-02391 (E.D. Pa. May 19, 2005);

2

        d.      *Dorothy Eddy v. AmerUs Life Ins. Co.*, No. 6:05-cv-01006-JA-JGG (M.D. Fla. July 7, 2005);

        e.      *Evelyn Edwards v. AmerUs Group Co., AmerUs Annuity Group Co., American Investors Life Insurance Co., Inc., and Senior Benefit Services of Kansas, Inc.*, 8:05-cv-1590-T27-TBM (M.D. Fla. Aug. 26, 2005); and

        f.      *Jean Ryles v. AmerUs Life Insurance Company, American Investors Life Insurance Company, Inc., AmerUs Annuity Group Co. and AmerUs Group Co.*, No. 2:05-cv-06340-MAM (E.D. Pa. Dec. 8, 2005).

        3.      The various putative class action complaints in the actions that have been consolidated or centralized in the Action alleged, in part, that sales agents, marketing organizations, trust attorneys, and annuity companies marketed and sold to putative class members annuity policies that were unsuitable given the circumstances of the purchasers or the annuitants under the policies, and that such marketing and sales efforts in some cases included the provision of estate or financial planning services.  Such complaints also alleged that the defendants named therein failed to disclose substantial surrender charges associated with the annuities sold; failed to disclose that the annuities had maturity dates beyond the annuitants' life expectancies; collectively represented the annuities as suitable investments for the purchasers notwithstanding the alleged fact that, because of various factors including the illiquidity of the annuities and the actual rate of return on purchasers' funds, the annuities were unsuitable investments for the purchasers; and failed to fully and accurately represent to purchasers the benefits under the annuities. Certain of the complaints further alleged that defendants named therein engaged in

churning activities by persuading purchasers to surrender existing annuities and investments or to borrow against the cash value in existing insurance policies, and that such defendants failed to train and supervise their annuity sales force.  Several of the complaints further alleged that the sales of certain annuities were improper because, given the ages of the purchasers or the annuitants, their normal life expectancies were shorter than the surrender charge and deferral periods under the annuities, rendering the annuities per se unsuitable.  These complaints asserted various causes of action, as more specifically detailed in the copies of such complaints attached hereto as Annex A.

4.     The Third Amended Consolidated Class Action Complaint (the "Complaint") filed and encompassed in the Action is styled *Richard M. and Dena F. Stein, Mary Lynch, Charlotte and Beryl Price, the Estate of Joseph Healy, George J. Miller, Jean Ryles, Evelyn K. Edwards, and Michael James Quinn and Catherine Margaret Quinn v. AmerUs Group Company, AmerUs Annuity Group Co., American Investors Life Insurance Company, Inc., AmerUs Life Insurance Company, Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc.* The Complaint, a copy of which is attached hereto as Annex B, purports to bring a nationwide class action on behalf of all persons who purchased deferred annuities from one or more Defendants on or after January 1, 1998.  The Complaint claims, *inter alia*, that annuities sold to certain members of the putative class were per se unsuitable for them and asserts five causes of action: (i) violation of RICO; (ii) conspiracy to violate RICO; (iii) breach of fiduciary duty in respect of a putative living trust subclass; (iv) negligence; and (v) unjust enrichment.

4

5.    The Class to which this Settlement applies includes persons and entities that purchased and/or owned approximately 360,000 annuities.

**B.    The Background of the Settlement**

**1.    Plaintiffs' Position**

a.    Plaintiffs' Counsel and their experts have conducted a thorough investigation of the facts relating to the products that are the subject of, and the claims asserted in, the Action.  Plaintiffs' Counsel have evaluated the relevant law and facts to assess the merits of Plaintiffs' claims, and the likelihood of success at trial. Based upon their extensive discovery, investigation, and evaluation of the facts and the law concerning the matters alleged in and relating to the Action, the Named Plaintiffs and Plaintiffs' Counsel have agreed to settle the Action pursuant to the provisions of this Agreement, after considering, among other things:  (a) the fairness, reasonableness, and adequacy of this Agreement; (b) the substantial risks and uncertainties of protracted litigation and trial, especially in complex actions such as this, as well as the difficulties, delays, and risks of adverse results inherent in such litigation; (c) the needs and interests of the Class Members; and (d) the desirability of consummating this Agreement promptly, in order to provide effective relief to the Class Members.

b.    The Named Plaintiffs and Plaintiffs' Counsel agree that this Agreement is fair, reasonable, and adequate because it provides substantial benefits to the Class Members, is in the best interests of the Class Members, and fairly resolves the claims alleged in the Action.

5

## 2.    Defendants' Position

a.    Defendants deny any and all wrongdoing alleged in the pleadings in the Action and do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against them in the Action.  Defendants contend that Plaintiffs' claims are improper as a matter of fact and law.  In addition, Defendants contend that Plaintiffs would suffer failures of proof at trial that would be fatal to both their individual and class claims, and that it would be impossible to prove many of the elements of their claims on a class-wide basis.  In this regard, Defendants contend that it would be inappropriate to certify a litigation class in this matter, in part due to the manageability and superiority problems inherent in presenting this case in a trial involving thousands of individualized sales.  However, Defendants do believe, in light of *Amchem Products, Inc. v. Windsor*, 117 S. Ct. 2231, 2248 (1997), that such considerations do not apply to certification of settlement classes, and that acceptable procedural safeguards have been incorporated into this Settlement.

b.    Defendants contend that the descriptions of Company Annuities in their marketing materials are not misleading, and that they have completely fulfilled their various obligations to Owners of the Company Annuities as promised in the applicable annuity contracts.  Defendants dispute any contention that persons and entities in the Class purchased Company Annuities without disclosure of deferral periods or other withdrawal provisions, including surrender charges, or that any Company Annuities sold to the Class were per se or otherwise unsuitable.  Defendants also contend that persons

6

and entities in the Class have not suffered any damage or loss as a result of the conduct alleged in the Complaint.  Defendants further contend that the offers and sales of all Company Annuities offered and/or issued by the Companies were and are legal in all respects.

              c.       Nonetheless, Defendants consider it desirable for this Action to be settled and dismissed because this Settlement will:  (i) provide substantial benefits to the Class Members; (ii) finally put Plaintiffs' claims and the underlying matters to rest; and (iii) avoid the substantial expense, burdens, risks, and uncertainties associated with the continued litigation of the Action.

## II.      DEFINITIONS AND CONSTRUCTION

        A.      For the purposes of this Agreement:

        1.      "Accumulation Value" means, depending on the type of Company Annuity, the "Accumulation Value," "Accumulated Value," or "Total Accumulated Value" of a Contract, as defined in the base policy associated with the Contract (and without regard to any rider or endorsement associated with the Contract), as reflected in the business records of the Company that issued the Contract as of the date such value is to be calculated.  If "Accumulation Value," "Accumulated Value," or "Total Accumulated Value" is not defined in a Contract, "Accumulation Value" shall mean the value under such Contract determined based on the premium paid for the Contract, plus any bonus and any index or fixed interest credited to the Contract, less any withdrawals

taken from the Contract and charges incurred, as reflected in the business records of the Company that issued the Contract as of the date such value is to be calculated.

       2.      "Action" means the proceeding in the United States District Court for the Eastern District of Pennsylvania captioned *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*, No. 2:05-md-01712-MAM (E.D. Pa. Oct. 26, 2005), as it relates to all putative class actions (but not including *Americus Digioia v. AmerUs Life Insurance Company, American Investors Life Insurance Company, Inc., AmerUs Annuity Group Co., and AmerUs Group Co.*, No. 2:05-cv-05878-MAM (E.D. Pa. Nov. 8, 2005) and not including claims brought by beneficiaries in the action styled *Glen Studley et al. v. American Investors Life Insurance Co.*) consolidated and/or centralized therein, as described in Section I.A.

       3.      "Agent" means each sales agent (including, without limitation, independent sales agent), manager, broker, IMO or other marketing organization, insurance agency, and/or other person or entity that was employed by or represented the Company or any of the foregoing persons and entities, and participated in any way, directly or indirectly, in the marketing, sale, or servicing of a Contract.

       4.      "Agreement" means this Stipulation of Settlement, including the exhibits hereto.

       5.      "Annuitant" means the annuitant as designated in the Company Annuity in question.

       6.      "Approval Date" means the date on which the Court enters its Final Order and Judgment approving this Settlement.

7.     "Arbitrator" means an individual who, pursuant to Section V.E, has been mutually agreed to by Plaintiffs' Counsel and Defendants, or appointed by the Court, to consider and assign final scores to Claims that are the subject of written objections lodged pursuant to Section V.A.4.b.

8.     "Claim" means a claim submitted in accordance with the provisions of the Claim Review Process, as described in Section V.

9.     "Claimant" means a Class Member who has submitted a Claim.

10.     "Claim File" means the materials constituting the Claim File for a particular Claim as specified in Section V.A.4.a.

11.     "Claim Filing Deadline" means the date by which Class Members who validly elect to participate in the Claim Review Process must submit Claim Forms; the Claim Filing Deadline shall be 120 days after the Approval Date.

12.     "Claim Form" means the form that Class Members who participate in the Claim Review Process must submit to make and support their Claims, as described in Section V.A.3.  A copy of the Claim Form is attached hereto as Exhibit D.

13.     "Claim Packets" has the meaning ascribed thereto in Section V.A.5.a.

14.     "Claim Process Relief" means the relief, described in Section VI, available to Class Members pursuant to the Claim Review Process.

15.     "Claim Review Completion Date" means the date on which all of the Claims validly submitted to the Claim Review Process have been assigned final scores pursuant to the procedures set forth in Section V.A.4.

16.     "Claim Review Process" means the procedures by which Class Members may submit Claims for Claim Process Relief and the scoring of such Claims is conducted, as described in Section V.

17.     "Claim Scorer" means the person or persons designated by Defendants to score Claims, who shall be trained in accordance with Section V.A.5.c.

18.     "Class" means (a) all persons and entities that purchased Company Annuities issued during the Class Period and (b) all persons and entities to which an ownership interest in such Company Annuities was subsequently assigned or transferred, or that otherwise held any interest as an Owner in such Company Annuities, during the Class Period, excluding, however, in each case:  officers, directors, or employees of any Defendant; the affiliates, legal representatives, attorneys, successors, or assigns of any Defendant; any judge, justice, or judicial official presiding over the Action and the staff and immediate family of any such judge, justice, or judicial official; the Claim Scorer and the Arbitrator and members of their respective immediate families; and all persons and entities included in, and who did not exclude themselves from, the settlement class in the action styled "Cheves, et al. v. American Investors Life Insurance Company, Inc., et al.," Case No. 031024, which action was previously pending in the Superior Court of the State of California.

19.     "Class Members" means all persons and entities included in the definition of Class, excluding, however, all such persons and entities that submit a written request to be excluded from the Class in accordance with Section VIII.

20.    "Class Notice" means the notice concerning the proposed Settlement sent to the Class as a part of the Class Notice Package, as described in Section VII.B.

21.    "Class Notice Package" means the package of documents concerning the proposed Settlement sent to the Class, as described in Section VII.A.

22.    "Class Period" means the period commencing on January 1, 1998, and ending on the Preliminary Approval Date, inclusive.

23.    "Company" means American Investors Life Insurance Company, Inc., or AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company), and their respective predecessor and successor entities.

24.    "Company Annuity" means an annuity policy issued by a Company and having a plan code, product name, or policy form number listed on Exhibit A, excluding, however, any such annuity policy that was returned and/or cancelled pursuant to any applicable "free-look" provision.  The foregoing notwithstanding, (a) if and to the extent any information listed on Exhibit A relates to an annuity that is not a deferred annuity, such information shall be deemed to have been included in error and the related policy(ies) shall not be deemed to be Company Annuity(ies) and shall not otherwise be included in the Settlement, and (b) the plan codes listed on Exhibit A shall control when determining whether an annuity policy is a Company Annuity for the purposes of the Settlement.

25.    "Complaint" means the Third Amended Consolidated Class Action Complaint filed in the Action on or about the date of this Agreement, a copy of which is attached hereto as Annex B.

11

26.     "Confidential Information" means material designated as "Confidential Material" in accordance with the terms of the Protective Order entered in the Action on June 14, 2007.

27.     "Consumer Brochure" means any brochure or other informational document relating to a Company Annuity or annuities generally and distributed to purchasers or prospective purchasers of Company Annuities, including, without limitation, all versions of any such brochure or other informational document that related to any Contract and was distributed to any person or entity in the Class prior to or in connection with the purchase of a Contract.

28.     "Contract" means a Company Annuity issued during the Class Period to a person or entity in the Class and includes the base annuity policy (base policy) issued by the issuing Company, and all schedules, riders, endorsements, and other forms specifically made a part of the policy contract at the time of its issue, plus all riders, endorsements, supplements, addendums, and amendments thereto issued by the issuing Company thereafter.

29.     "Contracts In Annuitization" has the meaning ascribed thereto in Section III.B.2.

30.     "Contracts In Deferral" has the meaning ascribed thereto in Section III.B.1.

31.     "Court" means the court before which the Action is pending.

32.    "Day" or "day" means a single calendar day; <u>provided</u>, <u>however</u>, that the computation of time periods under this Agreement shall be made in accordance with Section XV.O.

33.    "Death Benefit Contracts" has the meaning ascribed thereto in Section III.B.5.

34.    "Defendants" means American Investors Life Insurance Company, Inc., AmerUs Group Co. (now known as Aviva USA Corp.), AmerUs Annuity Group Co., AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company), Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc., and their respective predecessor and successor entities.

35.    "Election Form" means the form that a person or entity in the Class must submit (a) to qualify an eligible 65-and-Over Contract for the enhanced General Policy Relief, as provided for in Section IV, or (b) to elect to participate in the Claim Review Process with respect to a Contract.  A copy of the Election Form is attached hereto as Exhibit D.

36.    "Election Filing Deadline" means the date by which Election Forms submitted to the Settlement Administrator must be postmarked; the Election Filing Deadline shall be 20 days after the date of the Fairness Hearing.

37.    "Execution Date" means the date on which this Agreement is fully executed and delivered by the Parties.

38.    "Fairness Hearing" means the hearing held by the Court on any motion(s) for final approval of the proposed Settlement.

13

39.     "Fees and Costs Award" has the meaning ascribed thereto in Section XI.A.2.

40.     "Final Order and Judgment" means the Court's order approving the Settlement and entering final judgment in the Action, as contemplated in Section XIII.

41.     "Final Settlement Date" means the date on which the Final Order and Judgment becomes final.  For purposes of this Agreement:

a.     if no appeal is taken from the Final Order and Judgment, "Final Settlement Date" means the date on which the time to appeal therefrom has expired; or

b.     if an appeal has been taken from the Final Order and Judgment, "Final Settlement Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been fully disposed of in a manner that affirms the Final Order and Judgment.

42.     "Fully Annuitized Contracts" has the meaning ascribed thereto in Section III.B.3.

43.     "General Policy Relief" means the relief, described in Section IV, available to Class Members for eligible Contracts that are not made the subject of the Claim Review Process.

44.     "IMO" means each independent marketing organization in which a Defendant, or any affiliate of a Defendant, directly or indirectly holds an ownership interest.

14

45.     "Named Plaintiffs" means Richard M. and Dena F. Stein, Mary Lynch, Charlotte and Beryl Price, the Estate of Joseph Healy, George J. Miller, Jean Ryles, Evelyn K. Edwards, Dorothy Eddy, and Michael J. and Catherine M. Quinn, in their individual capacities and as representatives of the putative class, and their heirs, assigns, and successors-in-interest.

46.     "Other Defendants" has the meaning ascribed thereto in Section X.A.3.

47.     "Owner" means any and all persons or entities having an ownership interest in a Contract under the terms of the Contract, as reflected in the business records of the issuing Company maintained in the ordinary course of business as of the time in question.

48.     "Parties" means, collectively, Plaintiffs and Defendants.

49.     "Parties' Counsel" means, collectively, Plaintiffs' Counsel and counsel for Defendants.

50.     "Plaintiffs" means, collectively, the Named Plaintiffs and all Class Members.

51.     "Plaintiffs' Counsel" means the attorneys appointed by the Court on June 12, 2006, to serve as Interim Co-Lead Counsel for the putative class plaintiffs under the Complaint:  Jerome M. Marcus, Esq., Jonathan Auerbach, Esq., and John R. Hargrove, Esq.  For the purposes of this Agreement, (a) the approval, agreement, signature, communication, or other action of or by any of Messrs. Marcus, Auerbach, or Hargrove in connection with this Agreement shall be deemed the agreement, approval,

15

signature, communication, or other action of or by Plaintiffs' Counsel; and (b) where this Agreement calls for the provision or delivery of any document, information, notice, or communication to Plaintiffs' Counsel, such document, information, notice, or communication shall be provided or delivered to each of Messrs. Marcus, Auerbach, and Hargrove at their respective addresses set forth in the notice provisions hereof.

52.     "Post-Settlement Mailing" means the mailing, described in Section VII.F, made after the Approval Date to Class Members who validly elected to participate in the Claim Review Process.

53.     "Preliminary Approval Date" means the date on which the Court enters the order granting preliminary approval of the proposed Settlement and directing that notice be sent to the Class, as contemplated in Section XII.A.

54.     "Releasees" has the meaning ascribed thereto in Section X.A.1.

55.     "Released Transactions" has the meaning ascribed thereto in Section X.A.2.

56.     "Scoring Factors" means the matters set forth in Section V.D.

57.     "Scoring Guidelines" means the matters set forth in Section V.C.

58.     "Settlement" means the settlement set forth in this Agreement.

59.     "Settlement Administrator" means the settlement administrator described in Sections III.K and VII.G.

60.     "Settlement Relief" means all relief available to Class Members under this Agreement, including the General Policy Relief and the Claim Process Relief.

16

61.     "Stipulated Fees and Costs" has the meaning ascribed thereto in Section XI.A.

62.     "Surrender Charges" means "Surrender Charges" or "Withdrawal Charges," as such terms are defined in the Contract in question.

63.     "Surrendered Contracts" has the meaning ascribed thereto in Section III.B.4.

64.     "Surrender Reduction Amount" means, with respect to a full or partial surrender of a Contract by its Owner, the Surrender Charges incurred by the Owner on such surrender; provided, however, that if the applicable Contract included a market value adjustment endorsement or rider, or an equivalent provision in the express terms of the base policy, and the amount received by the Owner on such surrender was increased or reduced by the application of such market value adjustment, the "Surrender Reduction Amount" means the Surrender Charges incurred on the surrender minus the amount of any such increase or plus the amount of any such reduction, as the case may be.

65.     "65-and-Over Contract" means a Contract as to which each original Owner of the Contract (or, if no such original Owner was a natural person, the Annuitant) was 65 years of age or older when the Contract was issued.

66.     The terms "he or she" and "his or her" include "it" or "its," where applicable.  Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

67.     All references herein to Sections, paragraphs, exhibits, and annexes refer to Sections, paragraphs, exhibits, and annexes of and to this Agreement, unless otherwise expressly stated in the reference.

## III.     SETTLEMENT PROCESS AND RELIEF GENERALLY

A.     Pursuant to and in accordance with this Agreement, Defendants will make available to Class Members two alternative and mutually exclusive types of relief:  the Claim Process Relief through the Claim Review Process and the General Policy Relief.

1.     As to each Contract owned by a Class Member, (a) the Class Member may elect to participate in the Claim Review Process, or (b) if such election is not made in accordance with the requirements specified herein, the General Policy Relief will be available for such Contract if and to the extent applicable to that Contract, in accordance with Section IV.  Settlement Relief is provided with respect to individual Contracts, and only one form of Settlement Relief will be provided with respect to each Contract, either Claim Process Relief or General Policy Relief.

2.     The Claim Review Process is described in Section V, and the Claim Process Relief is described in Section VI.  For Class Members who submit for their Contracts both an Election Form electing the Claim Review Process and a Claim Form, in each case in accordance with the requirements of this Agreement and the applicable form, the Settlement Relief available to them for those Contracts will be the applicable Claim Process Relief only.

18

3.      The General Policy Relief is described in Section IV.  For Class Members who decide not to seek Claim Process Relief for their Contracts or do not, in accordance with the requirements of this Agreement and the applicable forms, submit for their Contracts both an Election Form electing the Claim Review Process and a Claim Form, the Settlement Relief available to them for those Contracts will be the applicable General Policy Relief only.  The General Policy Relief includes a component, applicable only to certain eligible 65-and-Over Contracts, referred to herein as "enhanced" General Policy Relief, which is described more specifically in Section IV.  To qualify an eligible 65-and-Over Contract for such enhanced General Policy Relief, a Class Member must complete and submit Part I of the Election Form in accordance with the requirements of this Agreement and the Election Form, failing which the Class Member's 65-and-Over Contract(s) will be eligible only for the basic General Policy Relief described in Section IV, if and as applicable to such Contract(s).

B.      For purposes of the Settlement, each Contract first will be designated by the issuing Company as a 65-and-Over Contract or a Contract that is not a 65-and-Over Contract, and then will be placed by the issuing Company in one, and only one, of the five categories set forth below, in each case based on the business records of the issuing Company maintained in the ordinary course of business as of the applicable categorization date.  For each Contract as to which General Policy Relief is to be awarded, the applicable categorization date will be the Final Settlement Date.  For each Contract that is the subject of the Claim Review Process, the applicable categorization

date will be the implementation date of the Claim Process Relief (if any) awarded for that Contract.

1.     Contracts that, as of the applicable categorization date, were in force (i.e., active) and had not reached the annuity date or maturity date specified by the terms of the Contract as the date on which annuity payments are to begin ("Contracts In Deferral").

2.     Contracts that, as of the applicable categorization date, were in force and were the subject of continuing annuity payments upon having reached the annuity date or maturity date specified by the terms of the Contract as the date on which annuity payments are to begin ("Contracts In Annuitization").

3.     Contracts that, prior to the applicable categorization date, had been the subject of annuity payments upon having reached the annuity date or maturity date specified by the terms of the Contract as the date on which annuity payments are to begin, but were not in force as of the applicable categorization date because all annuity payments thereunder had been made ("Fully Annuitized Contracts").

4.     Contracts that were not in force as of the applicable categorization date due to the full surrender thereof ("Surrendered Contracts").

5.     Contracts as to which, as of the applicable categorization date, a death benefit was paid, is being paid, or is due to be paid as a result of the death of the Owner or the Annuitant ("Death Benefit Contracts").

For purposes of the Settlement, (i) a Contract that was fully surrendered in an exchange for another product that was issued at the time of the surrender by the same Company or

one of its affiliated entities will be categorized as a Surrendered Contract, with the exception only that a Contract that was so surrendered and exchanged for a single premium immediate annuity ("SPIA") that is in force as of the applicable categorization date will be categorized as a Contract In Annuitization, and (ii) Contracts In Deferral, Contracts In Annuitization, Fully Annuitized Contracts, and Surrendered Contracts shall not include any Contracts that qualify for categorization as Death Benefit Contracts.  The foregoing notwithstanding, where a Contract was surrendered in an exchange for a subsequent Contract, the first Contract will be eligible only for the Claim Process Relief, if any, applicable to Surrendered Contracts pursuant to Section VI.B.

C.      If anyone having an interest as an Owner of a Contract during the Class Period excludes himself or herself from the Class pursuant to Section VIII, such Contract shall be excluded from this Settlement regardless of whether other persons having an ownership interest in such Contract exclude themselves from the Class.

D.      A Class Member may not exclude from this Agreement and this Settlement some, but not all, Contracts in which he/she claims an interest as an Owner.  Any attempt by a Class Member to exclude from this Agreement and this Settlement some, but not all, Contracts in which the Class Member claims an interest as an Owner shall be deemed ineffective, resulting in such person or entity remaining a Class Member and no such Contracts being excluded from this Settlement.

E.      All persons or entities then having an interest as an Owner of a Contract must submit an Election Form and a Claim Form in accordance with the requirements of this Agreement and the applicable forms for the Contract to participate in the Claim

21

Review Process for the Claim Process Relief described in Section VI.C.  If all persons or entities then having an interest as an Owner of a Contract do not submit an Election Form and a Claim Form for that Contract in accordance with the requirements of this Agreement and the applicable forms for a Claim seeking the Claim Process Relief described in Section VI.C, and a person or entity that was an Owner of the Contract during the Class Period has not submitted an effective Election Form and Claim Form for that Contract seeking the Claim Process Relief described in Section VI.B, that Contract shall not participate in the Claim Review Process for any Claim Process Relief, but instead will be afforded General Policy Relief, if and to the extent applicable to that Contract, in accordance with Section IV.  To qualify an eligible 65-and-Over Contract for enhanced General Policy Relief, all persons or entities then having an interest as an Owner of the eligible 65-and-Over Contract must submit Part I of the Election Form in accordance with the requirements of this Agreement and the Election Form.

      F.      Each Class Member's right to receive Settlement Relief under this Agreement is personal to the Class Member and is governed solely by the terms of this Agreement and not by the terms of the Class Member's Contract, except to the extent that the terms of a Contract are deemed relevant in the Claim Review Process.  Class Members may not voluntarily assign rights to receive benefits under this Settlement Agreement.

      G.      If, as of the date any Settlement Relief is otherwise to be implemented for a Contract, an Owner of the Contract is a party to or is otherwise bound by a release of claims relating to the Contract or the termination of the Contract, that Contract will not be

22

entitled to any Settlement Relief unless the applicable release otherwise expressly provides.  Without limitation of the foregoing, if an Owner of the Contract is a party to or is otherwise bound by, or received or will receive any benefit as a result of, the terms of any previous settlement and release of any claim, action, or proceeding (including, without limitation, any claim, action, or proceeding brought by or on behalf of any private party or by or on behalf of any governmental or regulatory entity or authority) relating to the Contract, that Contract will not be entitled to any Settlement Relief unless the applicable release otherwise expressly provides.

H.     If, as of the date any Settlement Relief is otherwise to be implemented for a Contract, a Company provided a credit to the value of that Contract or made a cash payment with respect to that Contract, in either case based on a complaint submitted by the Class Member or Owner or in connection with any claim, action, or proceeding (including, without limitation, any claim, action, or proceeding brought by or on behalf of any private party or by or on behalf of any governmental or regulatory entity or authority), but the Class Member or Owner did not sign a release of claims or the Contract is not otherwise excluded from this Settlement under the immediately preceding paragraph G, the amount of the credit provided or the cash payment made by the Company shall be deducted from the Settlement Relief, if any, for that Contract.  If the amount of such credit or cash payment exceeds the value of any Settlement Relief applicable to the Contract, no Settlement Relief will be given for that Contract.

I.      If the deadline by which any Settlement Relief to be provided under this Agreement falls on a Saturday, Sunday, or holiday, the relief shall be provided by or on the next business day.

J.      The rights under this Settlement of a deceased Owner of a Contract may be exercised by the estate of the Owner, upon reasonable showing of proof of authority from the purported representative of the estate.

K.      The Parties have agreed that an independent Settlement Administrator will be retained, through a process mutually acceptable to Plaintiffs' Counsel and Defendants, to administer this Settlement in a neutral, non-partisan manner.  The tasks to be performed by the Settlement Administrator are set forth in Section VII.G.  Neither the Settlement Administrator, nor any employee or agent of the Settlement Administrator, shall:  (a) be an advocate for any disputed position advanced by either of the Parties; (b) encourage any persons or entities in the Class to exclude themselves from the Settlement; (c) encourage any persons or entities in the Class to object to the proposed Settlement; (d) encourage or discourage any persons or entities in the Class with respect to the filing of Election Forms or the elections made therein; (e) offer or give any persons or entities in the Class tax advice; or (f) offer or give any persons or entities in the Class legal advice.  Additional provisions concerning the Settlement Administrator's duties and responsibilities are set forth in Section VII.G.

L.      Parties' Counsel shall develop and agree on a question-and-answer sheet to be used by personnel manning a call center maintained by the Settlement Administrator in responding to questions from persons and entities in the Class, including questions

regarding the Election Form and Claim Form.  Any question posed to such call center

personnel that is not covered by a question-and-answer sheet approved by Parties'

Counsel shall be referred to Parties' Counsel, unless Parties' Counsel otherwise direct.

Parties' Counsel shall participate jointly in a training session for such call center

personnel, as necessary and appropriate, using agreed-on materials and a non-

argumentative presentation.

      M.    The Settlement also includes the following undertakings by Defendants

relating to the marketing and sale of products issued by the Companies, which

undertakings shall be effective during the period commencing 60 days after the Execution

Date and ending on the earliest to occur of the following events: the third anniversary of

the Execution Date; the date on which Rule 151A under the Securities Act of 1933

becomes effective; the date on which this Agreement is terminated pursuant to

Section XIV.

      1.    Defendants shall not, in any advertisements that they directly

disseminate to the public, characterize any public gathering or event where insurance

products issued by the Companies will be offered for sale as a "seminar," "class,"

"informational meeting," or substantially similar term without also stating that the public

gathering or event will involve a sales presentation for insurance products.

      2.    Defendants shall not misrepresent their status, or the status of any of

their agents, to consumers as being "investment advisors," "estate planning experts," or

substantially similar experts for the sole purpose of generating leads for an insurance

agent to contact such consumers for potential sales of insurance products issued by the

Companies.  This undertaking shall not preclude Defendants or their agents from using proper designations in appropriate circumstances.

3.     The Companies shall have and maintain appropriate internal guidelines and procedures for the evaluation of the suitability of annuities sold based upon information provided by the purchaser concerning the purchaser's stated financial condition and purchase objectives.  Such guidelines and procedures shall be subject to applicable laws and regulations governing the marketing and sale of annuities.

4.     The Companies shall have and maintain appropriate guidelines, procedures, and forms, for use by its agents in the sale of Company-issued annuities, relating to the evaluation of the suitability of annuities sold based upon information provided by the purchaser concerning the purchaser's stated financial condition and purchase objectives.  Such guidelines, procedures, and forms shall be subject to applicable laws and regulations governing the marketing and sale of annuities.

5.     The Companies shall have and maintain appropriate guidelines and procedures for its agents authorized to sell Company-issued insurance products that:

(a)     inform such agents of the undertakings made by the Companies pursuant to 1-4 above;

(b)     direct such agents not to characterize, in any advertisements that they disseminate to the public, the purpose of any public gatherings or events where insurance products issued by the Companies will be offered for sale as a "seminar," "class," "informational meeting," or substantially similar term without also stating that the public gathering or event will involve a sales presentation for insurance products;

26

(c)     direct such agents not to misrepresent their status to consumers as being "investment advisors," "estate planning experts," or substantially similar experts for the sole purpose of generating leads for the agent to contact such consumers for potential sales of insurance products issued by the Companies, provided, however, that agents shall not be precluded from using proper designations in appropriate circumstances;

(d)     in connection with the marketing and sale of Company-issued annuities, direct such agents to implement and follow the guidelines, procedures, and forms provided to them by the Companies relating to the evaluation of the suitability of annuities sold based upon information provided by the purchaser concerning the purchaser's stated financial condition and purchase objectives.

6.     The Companies in preparing and disseminating their disclosure materials relating to their respective annuity products shall provide sufficient information, in accordance with applicable law and regulations, to enable prospective purchasers to gain access to:

(a)     if the annuities include a bonus feature, the terms and timing of any bonus that may be credited to the annuities;

(b)     the right of the issuing Company to change the interest rates that will apply to the annuities, higher or lower, after the first year;

(c)     the minimum guaranteed interest rates that will apply to the annuities; and

(d)      penalties and charges applicable to withdrawals made by the purchasers from the annuities.

N.      This Agreement requires that Class Members who choose to submit certain items (e.g., Election Forms, Claim Forms, requests for exclusion) must send the item by U.S. mail within certain postmark deadlines.  Notwithstanding any provision herein requiring that Class Members use U.S. mail to send any item, if a Class Member resides outside the United States of America or its territories, the item may be sent alternatively by other governmental postal service or private international delivery service, but in each such case the item must bear a stamped postmark or similar mark showing when it was sent, and all postmark deadlines set forth herein shall still apply.

## IV.    GENERAL POLICY RELIEF

### A.    General

1.      Class Members who do not elect the Claim Review Process in accordance with the requirements of this Agreement will be entitled to the General Policy Relief as additional benefits that will be provided with respect to eligible Contracts in accordance with the following provisions of this Section IV.

2.      General Policy Relief will be available only for Contracts that are categorized (as of the Final Settlement Date) as Contracts In Deferral, Contracts In Annuitization, and Fully Annuitized Contracts.  General Policy Relief will not be available for any other Contracts, including, without limitation, Surrendered Contracts and Death Benefit Contracts.  The specific nature of the General Policy Relief for such

Contracts In Deferral, Contracts In Annuitization, and Fully Annuitized Contracts will

vary depending on the applicable category and whether the Contracts are 65-and-Over

Contracts, and shall be as set forth below.

> **B.**     **Bonus On Accumulation Value**

>> 1.     <u>Contracts In Deferral</u>:  For each Contract categorized as a Contract

In Deferral, in the event of and upon the effective date of the request by the Owner to

implement the relief provided in this paragraph as specified below in this paragraph,

(a) the Accumulation Value of the Contract will be credited with a bonus equal to the

then-applicable Accumulation Value multiplied by the applicable GPR Bonus Percentage

(as determined pursuant to Section IV.C below), and (b) the Annuitant under such

Contract will receive the Accumulation Value of the Contract, as so increased by the

bonus, in equal annual (or monthly, if the Owner so specifies when making the request to

implement the relief) installments over the applicable GPR Payment Period (as

determined pursuant to Section IV.D below).  The amount of such installment payments

will be determined as of the implementation date of such relief applying the interest rate

then used by the issuing Company for calculating annuity payments offered to the general

public over a period comparable to the applicable GPR Payment Period, but in no event

shall such interest rate be less than 2.0% or the minimum corresponding interest rate for

the calculation of annuity payments specified in the applicable Contract, whichever is

greater.  To implement the relief provided in this paragraph, the Owner must submit a

written request to the issuing Company, which request must be received before the

annuity date or maturity date specified in the Contract; <u>provided</u>, <u>however</u>, that such

relief may not be implemented before the first anniversary of the issue date of the Contract.  No change to this implementation request period shall be made absent the issuing Company's approval granted in its sole discretion.  No Surrender Charges shall apply on an Owner's election to implement the relief provided in this paragraph.  If the Contract includes a market value adjustment endorsement or rider, or an equivalent provision in the express terms of the base policy, no such market value adjustment shall apply on an Owner's election to implement the relief provided in this paragraph.

    2. <u>Contracts In Annuitization</u>:  For each Contract categorized as a Contract In Annuitization, in the event of and upon the effective date of the request by the Owner to implement the relief provided in this paragraph as specified below in this paragraph, a bonus equal to the GPR Bonus Percentage multiplied by the Accumulation Value at the time the Contract was annuitized (or, in the case of a Contract that was categorized as a Contract In Annuitization because it was surrendered and exchanged for a SPIA that is in force as of the applicable categorization date, a bonus equal to the GPR Bonus Percentage multiplied by the amount received on the surrender of the Contract and paid in as premium for the SPIA) will be paid, along with the remaining annuity payments, in equal installments (without interest) over the applicable GPR Payment Period.  To implement the relief provided in this paragraph, the Owner must submit a written request to the issuing Company, which request must be received by the issuing Company while the Contract (or, in the case of a Contract that was categorized as a Contract In Annuitization because it was exchanged for a SPIA that is in force as of the applicable categorization date, the corresponding SPIA for which the Contract was

30

exchanged) remains active and is still the subject of continuing annuity payments.  No change to this implementation request period shall be made absent the issuing Company's approval granted in its sole discretion.

        3.    <u>Fully Annuitized Contracts</u>:  For each Contract categorized as a Fully Annuitized Contract, a bonus equal to the GPR Bonus Percentage multiplied by the Accumulation Value at the time the Contract was annuitized will be paid in a lump sum, not later than 90 days after the Final Settlement Date, to the Owner of the Contract at the time the Contract was annuitized.  If the Contract was jointly owned when it was annuitized, the payment will be made payable jointly to all persons and entities that were Owners of the Contract when it was annuitized; <u>provided</u>, <u>however</u>, that in the event of the death of any such Owner, the payment may be made payable to the surviving such Owner(s) upon presentation of proper proof of death.

     **C.**    **Calculation Of GPR Bonus Percentage**

        1.    <u>65-and-Over Contracts</u>.

        a.    If the current Owner of a Contract that is both eligible for General Policy Relief and a 65-and-Over Contract does not submit Part I of the Election Form in accordance with the requirements of this Agreement and the Election Form, the GPR Bonus Percentage for such 65-and-Over Contract will be 0.40%.  If the current Owner of a Contract that is both eligible for General Policy Relief and a 65-and-Over Contract submits Part I of the Election Form in accordance with the requirements of this Agreement and the Election Form, the GPR Bonus Percentage for such 65-and-Over Contract will be not less than 0.40% and not greater than 2.00%, with the actual GPR

31

Bonus Percentage being calculated as set forth in the immediately following paragraph. As used in this Agreement, "enhanced" General Policy Relief refers to the GPR Bonus Percentage that is available for eligible 65-and-Over Contracts through the submission of Part I of the Election Form, and the related provisions of this Section IV governing the calculation of the bonus for a particular eligible Contract, how and when that bonus is credited or paid, and how and when that bonus can be received by the Contract Owner.

                b.      A Class Member who submits Part I of the Election Form for an eligible 65-and-Over Contract will be required to provide therein information concerning the age and liquid net worth of the original Owner (or, where no original Owner was a natural person, the Annuitant) at the time the Contract was issued.  The GPR Bonus Percentage for an eligible 65-and-Over Contract as to which a Class Member submits Part I of the Election Form in accordance with the requirements of this Agreement and the Election Form will be calculated based on two factors: (a) the ratio of the remaining actuarial life expectancy of the original Owner at the time the Contract was issued, as determined by the issuing Company based on the life expectancies then used by it to price annuity products and rounded up to the next whole number ("Remaining ALE"), to the length of the applicable Surrender Charge period under the Contract; and (b) the ratio of premium paid by the original Owner into the Contract to the original Owner's liquid net worth ("LNW") at the time the Contract was issued, with such LNW being determined in accordance with the definition of LNW set forth in the Election Form.  In the case of jointly-owned Contracts, the remaining actuarial life expectancy of the youngest original Owner, as so determined, shall constitute the applicable ALE, and

the combined liquid net worth of all original Owners, as so determined, shall constitute

the applicable LNW.  In the case of a Contract having no natural person as an original

Owner, the remaining actuarial life expectancy and liquid net worth of the Annuitant, in

each case as so determined, shall constitute the applicable ALE and LNW, respectively.

The specific GPR Bonus Percentage will be determined by such submitted information

and the corresponding ratios in accordance with the following table.  If a ratio is

unascertainable because the Class Member did not provide required information in the

Election Form, the GPR Bonus Percentage for the eligible 65-and-Over Contract in

question will be 0.40%.

### Enhanced GPR Table For Eligible 65-and-Over Contracts

| Ratio: Remaining ALE ÷ Length of Surrender Charge Period | | | | | | | |
|---|---|---|---|---|---|---|---|
| greater than or equal to 0 and less than 40.0% | 0.81% | 1.05% | 1.25% | 1.45% | 1.70% | 2.00% | |
| greater than or equal to 40.0% and less than 50.0% | 0.80% | 0.95% | 1.10% | 1.25% | 1.40% | 1.60% | |
| greater than or equal to 50.0% and less than 60.0% | 0.79% | 0.85% | 0.92% | 1.00% | 1.15% | 1.25% | |
| greater than or equal to 60.0% and less than 70.0% | 0.78% | 0.81% | 0.85% | 0.90% | 0.95% | 1.00% | |
| greater than or equal to 70.0% and less than 80.0% | 0.77% | 0.78% | 0.79% | 0.80% | 0.81% | 0.85% | |
| greater than or equal to 80.0% and less than 90.0% | 0.76% | 0.77% | 0.78% | 0.79% | 0.80% | 0.82% | |
| greater than or equal to 90.0% and less than 100.0% | 0.75% | 0.76% | 0.77% | 0.78% | 0.79% | 0.80% | |
| greater than or equal to 100.0% and less than 105.0% | 0.52% | 0.53% | 0.54% | 0.56% | 0.58% | 0.60% | |
| greater than or equal to 105.0% and less than 110.0% | 0.50% | 0.51% | 0.52% | 0.53% | 0.54% | 0.55% | |
| greater than or equal to 110.0% | 0.40% | 0.40% | 0.40% | 0.40% | 0.40% | 0.40% | |
| | less than 10.0% | greater than or equal to 10.0% and less than 20.0% | greater than or equal to 20.0% and less than 30.0% | greater than or equal to 30.0% and less than 40.0% | greater than or equal to 40.0% and less than 50.0% | greater than or equal to 50.0% | Ratio: Premium ÷ LNW |

2.    Contracts That Are Not 65-and-Over Contracts.

For Contracts eligible for General Policy Relief that are not 65-and-Over

Contracts, the GPR Bonus Percentage will be 0.15%.  As used in this Agreement, "basic"

General Policy Relief refers to a GPR Bonus Percentage equal to 0.40% for 65-and-Over

Contracts eligible for General Policy Relief and 0.15% for other Contracts that are eligible for General Policy Relief, and the related provisions of this Section IV governing the calculation of the bonus for a particular eligible Contract, how and when that bonus is credited or paid, and how and when that bonus can be received by the Contract Owner.

**D.    GPR Payment Period**

1.    <u>Contracts In Deferral</u>:  The applicable GPR Payment Period for a Contract In Deferral will be determined as follows:

a.    For a Contract In Deferral as to which the relief provided in Section IV.B.1 is implemented upon the Owner's request on or after the fifth anniversary of the issue date of the Contract, the GPR Payment Period will be the period of time remaining in the Surrender Charge schedule under the Contract at the effective date of such implementation or four years from the effective date of such implementation, whichever is shorter; <u>provided</u>, <u>however</u>, that in no event and for no such Contract In Deferral shall the GPR Payment Period be shorter than two years.

b.    For a Contract in Deferral as to which the relief provided in Section IV.B.1 is implemented upon the Owner's request after the first anniversary of the issue date of the Contract but before the fifth anniversary of such issue date, the GPR Payment Period will be seven years from the effective date of such implementation.

c.    The foregoing notwithstanding, the Owner of the Contract In Deferral will have the option at the time of such election to have the installment payments of the Accumulation Value, as increased by the applicable GPR Bonus Percentage, paid over the life of the Annuitant.

35

    2. <u>Contracts In Annuitization</u>:  The GPR Payment Period for a Contract In Annuitization will be the remaining annuity payment period under the Contract; <u>provided</u>, <u>however</u>, that for a Contract In Annuitization that was so categorized because it had been exchanged for a SPIA that is in force as of the applicable categorization date, the GPR Payment Period will be five years or the remaining payment period under the corresponding SPIA, whichever is longer.

    3. <u>Beneficiary Designation</u>:  The beneficiary(ies) named in the corresponding Contract (or in the corresponding SPIA in the case of a Contract In Annuitization that was so categorized because it had been exchanged for a SPIA that is in force as of the applicable categorization date) shall be the beneficiary(ies) in respect of the periodic payments to be made over the GPR payment period unless the Owner otherwise directs the issuing Company in writing in accordance with the Company's applicable procedures.

  **E. Additional Benefit For Contracts In Deferral**

    For each Contract categorized as a Contract In Deferral, the General Policy Relief ("basic" and "enhanced") also will include a benefit that will be calculated as being equivalent to a 50.0% reduction in the amount of future Surrender Charges (if any) that otherwise would apply under that Contract on a death benefit due in the event of the death of the Owner or the Annuitant.

  **F. Timing Of GPR Implementation**

    If the Court approves the Settlement, the General Policy Relief ("basic" and "enhanced") will be available for implementation by Owners of the eligible Contracts not

later than 90 days after the Final Settlement Date, subject in each case to the specific terms and conditions of the General Policy Relief and the other terms and conditions of this Agreement.

## V.   CLAIM REVIEW

### A.   Claim Review Process

1.   Claim Submission

a.   Class Members who desire to participate in the Claim Review Process with respect to a particular Contract must submit a Claim regarding that Contract. Claims submitted to the Claim Review Process shall be reviewed in accordance with this Section V, and relief shall be awarded for such Claims in accordance with Section VI.  A Claimant participating in the Claim Review Process will receive only the Claim Process Relief awarded (if any) for the applicable Contract(s).  A Contract cannot receive both Claim Process Relief and General Policy Relief; the General Policy Relief will not be available to any Claimant for any Contract submitted to the Claim Review Process.

b.   In order to participate in the Claim Review Process, a Class Member will be required to submit both an Election Form electing the Claim Review Process and, thereafter, a Claim Form, in each case in accordance with the requirements set forth herein and therein.

2.   Election Forms

a.   To submit a Claim to the Claim Review Process, a Class Member first must elect the Claim Review Process by submitting Part II of the Election

Form, completed in accordance with the requirements of this Agreement and the Election

Form, to the Settlement Administrator by U.S. mail, postmarked on or before the Election

Filing Deadline.

     b.  The Settlement Administrator shall review Election Forms

that are received to ascertain whether they have been properly completed and signed by

the appropriate Owner of the applicable Contracts and otherwise comply with the

requirements of this Agreement and the Election Form.  If the Settlement Administrator

determines that an Election Form has not been properly completed and signed or does not

otherwise comply with the requirements of this Agreement or the Election Form, or that

an Election Form contains information that is illegible or otherwise unintelligible, the

Settlement Administrator shall promptly provide written notification to the person who

submitted the Election Form and Parties' Counsel.  Any such defect may be cured by the

Class Member, provided that the corrections are sent to the Settlement Administrator by

U.S. mail and postmarked no later than the Election Filing Deadline or 15 days after the

date of the Settlement Administrator's notice of the defect, whichever is later.

     c.  A Class Member who for medical hardship is unable to

submit an Election Form in a timely manner may submit a written request for extension.

The request for extension must be sent by U.S. mail to the address to which completed

Election Forms are to be sent, must be postmarked on or prior to the Election Filing

Deadline, and must state in reasonable detail (1) the reason(s) for the inability of the

Class Member to comply with the Election Filing Deadline, and (2) the number of days

extension requested.  If Plaintiffs' Counsel and Defendants agree that an extension should

be granted based on medical hardship, a reasonable extension shall be granted based on the criteria set forth herein, and such an extension shall not be unreasonably withheld.  If Plaintiffs' Counsel and Defendants are unable to agree, an extension of 10 days shall be granted, unless the written request does not claim that medical hardship is present.  It is the intention of the Parties that extensions of the Election Filing Deadline shall be granted only where the written request supports that the Class Member is suffering from a serious medical condition, or that the Class Member's spouse or child is suffering a serious medical condition that requires the attention of the Class Member, which in either case makes it unduly burdensome for the Class Member to comply with the Election Filing Deadline.  In no event shall the Election Filing Deadline be extended for longer than 30 days.

          d.     A Class Member whose physical condition prevents him or her from obtaining notarization for an Election Form and who alternatively cannot provide a photocopy of a government-issued identification in accordance with the requirements of the Election Form may request to be excused from this requirement by including with an otherwise properly completed and timely submitted Election Form a written request for excuse that explains the attendant circumstances in sufficient detail to allow Plaintiffs' Counsel and Defendants to make an informed decision thereon.  If Plaintiffs' Counsel and Defendants agree that a Class Member should be excused, the Election Form will be processed by the Settlement Administrator, subject to the other requirements of this Agreement and the Election Form.  If Plaintiffs' Counsel and Defendants agree that an excuse is not appropriate, the Election Form shall be deemed

39

defective and ineffective unless the Class Member provides the notarization or the alternative government-issued identification (in each case in accordance with the requirements of the Election Form) to the Settlement Administrator by U.S. mail postmarked not later than 15 days after the date of the Settlement Administrator's notice to the Class Member informing him/her of the denial of the request for excuse. If Plaintiffs' Counsel and Defendants are unable to reach agreement on a request for excuse, the request shall be deemed granted unless Defendants refer the request to the Arbitrator, who shall render the final and binding decision thereon. The Settlement Administrator shall notify the applicable Class Member in writing in any case where the request for an excuse is denied. It is the intention of the Parties that excuses from the notarization and identification requirements shall be granted only where the written request clearly supports that the physical condition of the Class Member renders it unduly burdensome for him or her to obtain notarization and such Class Member does not possess any form of government-issued identification that satisfies the requirements of the Election Form.

e.      The requirements for completion of the Election Form, including required information, signatures, declarations, and notarization and/or other certification, shall be as set forth in the Election Form. Election Forms that are not properly completed in accordance with the requirements of this Agreement and the Election Form and/or not submitted by U.S. mail postmarked on or before the Election Filing Deadline will be deemed defective and ineffective, unless the defect is cured or excused in accordance with Section V.A.2.b, c, or d.

f.     If a Class Member submits an Election Form seeking to elect the Claim Review Process but the Election Form is deemed ineffective and all defects are not cured or excused in accordance with Section V.A.2.b, c, or d, (1) the Class Member shall not be eligible to participate in the Claim Review Process with respect to the corresponding Contract(s), and (2) the corresponding Contract(s) will be eligible for the basic General Policy Relief, if and to the extent applicable to such Contract(s), in accordance with Section IV.

g.     The provisions of Section V.A.2.b, c, d, and e above shall apply to all Election Forms that are submitted, whether submitted for enhanced General Policy Relief or to participate in the Claim Review Process.

3.     Claim Forms and Post-Settlement Mailings

a.     Not later than 90 days after the Approval Date, the Settlement Administrator shall mail a Post-Settlement Mailing, including a Claim Form, to each Class Member who validly elected to participate in the Claim Review Process.  The requirements for completing the Claim Form, including required information, signatures, declarations, and notarization and/or other certification, shall be as set forth in the Claim Form.

b.     A properly completed Claim Form must be sent by U.S. mail to the address listed on the Claim Form, postmarked no later than the Claim Filing Deadline, and must be accompanied by copies of all documents in the Claimant's possession (excluding, however, documents that constitute privileged attorney-client communications) regarding the Contract and the purchase of the Contract.  A Class

41

Member who elected the Claim Review Process may choose not to submit a Claim Form. If such a Class Member chooses not to submit a Claim Form, or does not submit a Claim Form in accordance with the requirements of this Agreement and the Claim Form, he or she will no longer be eligible for the Claim Review Process; instead, the basic General Policy Relief will be available, if and as applicable to the Class Member's Contract(s), in accordance with the provisions of Section IV.  The Claim Form shall advise Class Members of the provisions of this paragraph.

c.      All persons or entities then having an interest as an Owner of a Contract must sign the Claim Form for the Contract to participate in the Claim Review Process for a Claim seeking the Claim Process Relief described in Section VI.C.  A Claim Form seeking the Claim Process Relief described in Section VI.B must be signed by the Owner that incurred Surrender Charges on a full or partial surrender made by such Owner during the Class Period.

d.      Claim Forms that are not completed in accordance with the requirements of this Agreement and the Claim Form and/or not submitted by U.S. mail postmarked on or before the Claim Filing Deadline will be deemed defective and ineffective, unless the defect is cured or excused in accordance with Section V.A.3.e, f, or g below.

e.      The Settlement Administrator shall review Claim Forms and any supporting statements that are received to ascertain whether they have been properly completed and signed and otherwise comply with the requirements of this Agreement and the Claim Form.  If the Settlement Administrator determines that a Claim Form has not

42

been properly completed and signed or does not otherwise comply with the requirements

of this Agreement or the Claim Form, or that a Claim Form contains information that is

illegible or otherwise unintelligible, the Settlement Administrator shall promptly provide

written notice to the Class Member submitting the Claim Form and Parties' Counsel.

Any such defect may be cured by the Class Member, provided that the corrections are

sent to the Settlement Administrator by U.S. mail and postmarked no later than the Claim

Filing Deadline or 15 days after the date of the Settlement Administrator's notice of the

defect, whichever is later.  The foregoing notwithstanding, a Claimant's failure to answer

a question in Part II of the Claim Form will not require the Settlement Administrator to

notify the Claimant.

     f.  A Class Member who for medical hardship is unable to

submit a Claim Form in a timely manner may submit a written request for extension.  The

request for extension must be sent by U.S. mail to the address to which completed Claim

Forms are to be sent, must be postmarked on or prior to the Claim Filing Deadline, and

must state (1) the reason(s) for the inability of the Class Member to comply with the

Claim Filing Deadline, and (2) the number of days extension requested.  If Plaintiffs'

Counsel and Defendants agree that an extension should be granted based on medical

hardship, a reasonable extension shall be granted based on the criteria set forth herein,

and such an extension shall not be unreasonably withheld.  If Plaintiffs' Counsel and

Defendants are unable to agree, an extension of 15 days shall be granted, unless the

written request does not claim that medical hardship is present.  It is the intention of the

Parties that extensions of the Claim Filing Deadline shall be granted only where the

written request clearly supports that the Class Member is suffering from a serious

medical condition, or a Class Member's spouse or child is suffering a serious medical

condition that requires the attention of the Class Member, which in either case makes it

unduly burdensome for the Class Member to comply with the Claim Filing Deadline.  In

no event shall the Claim Filing Deadline be extended for longer than 30 days.

    g. A Class Member whose physical condition prevents him or

her from obtaining notarization for a Claim Form and who alternatively cannot provide a

photocopy of a government-issued identification in accordance with the requirements of

the Claim Form may request to be excused from this requirement by including with an

otherwise properly completed and timely submitted Claim Form a written request for

excuse that explains the attendant circumstances in sufficient detail to allow Plaintiffs'

Counsel and Defendants to make an informed decision thereon.  If Plaintiffs' Counsel

and Defendants agree that a Class Member should be excused, the Claim Form will be

processed by the Settlement Administrator, subject to the other requirements of this

Agreement and the Claim Form.  If Plaintiffs' Counsel and Defendants agree that an

excuse is not appropriate, the Claim Form shall be deemed defective and ineffective

unless the Class Member provides the notarization or the alternative government-issued

identification (in each case in accordance with the requirements of the Claim Form) to the

Settlement Administrator by U.S. mail postmarked not later than 15 days after the date of

the Settlement Administrator's notice to the Class Member informing him/her of the

denial of the request for excuse.  If Plaintiffs' Counsel and Defendants are unable to

reach agreement on a request for excuse, the request shall be deemed granted unless

Defendants refer the request to the Arbitrator, who shall render the final and binding

decision thereon.  The Settlement Administrator shall notify the applicable Class Member

in writing in any case where the request for an excuse is denied.  It is the intention of the

Parties that excuses from the notarization and identification requirements shall be granted

only where the written request clearly supports that the physical condition of the Class

Member renders it unduly burdensome for him/her to obtain notarization and where such

Class Member does not possess any form of the required government-issued

identification that satisfies the requirements of the Claim Form.

        h.     The Settlement Administrator shall provide to Parties'

Counsel and Defendants' designee a copy of all Claim Forms received by the Settlement

Administrator, and any documents, statements, and other materials received with the

Claim Forms, within seven (7) days after the receipt of such materials by the Settlement

Administrator.

        4.     Claim Review

        a.     After Defendants' designee receives from the Settlement

Administrator a copy of a Claim Form and materials submitted therewith, Defendants

will submit to the Claim Scorer any additional documents, statements, or other materials

Defendants wish to have considered for the Claim, which, along with the Claim Form and

materials properly submitted with the Claim Form by the Claimant, shall constitute the

Claim File for the Claim.  Based solely on the Claim File and the Claim Packets, the

Claim Scorer shall assign a score to the applicable Claim in accordance with the Scoring

Factors, Scoring Guidelines, and other applicable provisions of this Agreement.  The

Claim Scorer shall give written notice of such score to the Settlement Administrator, Parties' Counsel, and Defendants' designee, accompanied by a copy of the materials submitted by Defendants in connection with the Claim if not previously made available to them. The Settlement Administrator shall then give written notice of such score to the Claimant, accompanied by a copy of the materials submitted by Defendants in connection with the Claim.

   b. The Claimant (with the assistance of Plaintiffs' Counsel if the Claimant requests such assistance) or Defendants may contest the score assigned by the Claim Scorer by filing a written objection with the Settlement Administrator not later than 30 days after such notice is given. Such written objection shall state only that the objecting Party disagrees with the score assigned by the Claim Scorer and shall specify the score that the objecting Party asserts should be assigned to the Claim. The Settlement Administrator shall provide copies of each such written objection to the Claimant (if Defendants contest the score), the Arbitrator, the Claim Scorer, Parties' Counsel, and Defendants' designee.

   c. If a written objection is filed with the Settlement Administrator in accordance with the preceding paragraph, the Claim shall be reviewed by the Arbitrator pursuant to the procedures set forth below. Absent such written objection, the score assigned by the Claim Scorer shall be deemed final as to the applicable Claim for all purposes of this Agreement.

   d. For Claims subject to a written objection properly filed with the Settlement Administrator, the Arbitrator shall not solicit or accept written materials

46

that are not part of the Claim File, and shall not solicit or accept oral presentations with respect to the Claim.  Based solely on the information contained in the Claim File and in the Claim Packets, all of which shall be provided to the Arbitrator, the Arbitrator shall consider the Claim in accordance with the Scoring Factors, Scoring Guidelines, and other applicable provisions of this Agreement, shall assign a score to the Claim by selecting either the score originally assigned by the Claim Scorer or the score asserted by the objecting Party (being the Claimant or Defendants, as the case may be), and shall notify the Settlement Administrator, the Claim Scorer, Parties' Counsel, and Defendants' designee of the score he or she has assigned.  The Settlement Administrator shall then notify the Claimant of the score assigned by the Arbitrator.  The score as so assigned by the Arbitrator shall be deemed final as to the applicable Claim for all purposes of this Agreement.

e.      Notwithstanding anything herein, Claim Forms and/or supporting statements that are not completed, signed, and notarized or otherwise certified as required in this Agreement and the Claim Form shall not be considered by the Claim Scorer or the Arbitrator.

f.      Neither the Claim Scorer nor the Arbitrator shall have the authority to deviate from the Scoring Guidelines and Scoring Factors when considering a Claim or to award any Claim Process Relief different in any respect or to any degree from that specified in Section VI.

g.      Once a Claim has been assigned a final score in accordance with the foregoing procedures, Defendants shall provide the Claim Process Relief (if any)

47

corresponding to the final score in accordance with the terms and conditions of this Agreement.

h.      Except only as expressly provided herein, the Contract categorization, Claim scoring, Claim Process Relief and General Policy Relief, and all determinations made in connection with the Claim Review Process shall be final and binding, and Class Members, their successors and assigns, Plaintiffs' Counsel, Defendants, the Arbitrator, and any other party-in-interest may not appeal or seek review or vacatur of or otherwise challenge such matters, determinations, or awards with the Arbitrator, or in any court or administrative proceeding, including, without limitation, any proceeding under any applicable federal or state law, rule, or procedure.

i.      Defendants will pay the fees and costs associated with the Claim Review Process, including the reasonable fees and costs billed by the Arbitrator for his or her services in connection with the Claim Review Process, all postal charges and all reasonable fees and costs billed by the independent Settlement Administrator, but excluding, however, costs and fees (including attorneys' fees) incurred by or for any Plaintiff(s) or Plaintiffs' Counsel, or anyone retained by any Plaintiff(s) or Plaintiffs' Counsel, and Defendants shall have no responsibility or obligation whatsoever for such costs and fees.

j.      The Parties and Parties' Counsel will cooperate with each other and act with reasonable promptness to effect and complete the Claim Review Process no later than 365 days after the Final Settlement Date to the extent practicable given the volume of Claims and written objections lodged pursuant to Section V.A.4.b.

48

5.      Claim Packets

a.      No later than 45 days after the Approval Date, Parties' Counsel simultaneously will exchange with each other and submit to the Claim Scorer and the Arbitrator a packet of materials containing any briefs, affidavits, evidence, or other material that the submitting counsel believes will be useful to educate the Claim Scorer and the Arbitrator about the Action and anticipated Claims (the "Claim Packets").

b.      No later than 30 days after such exchange of Claim Packets, Parties' Counsel simultaneously will exchange and submit to the Claim Scorer and the Arbitrator supplemental materials to be included in the Claim Packets.  Each Party may include in its supplemental materials a written response to the other Party's submissions and any additional information, argument, or evidence that it believes will be useful to the Claim Scorer and the Arbitrator.

c.      After the Claim Packets have been fully submitted, Parties' Counsel shall jointly prepare and present a training session for the Claim Scorer and Arbitrator, during which Parties' Counsel shall have an opportunity to make a reasonable presentation concerning the Claim Review Process and the Claim Packets.  Thereafter, in the event of a change in the Claim Scorer or Arbitrator, each new Claim Scorer and Arbitrator shall be given similar joint training prior to commencing the performance of his or her duties.

d.      Notwithstanding any other provision of this Agreement, relevant material in the Claim Packets may be considered by the Claim Scorer and the Arbitrator in reviewing, scoring, and awarding Claim Process Relief for any Claim.

49

**B.      Scoring Claims And Determining Relief Generally**

Each Claim properly submitted to the Claim Review Process shall be evaluated based solely on the information in the Claim File and the Claim Packets.  Each such Claim shall be assigned a whole-number score ranging from "0" to "5" in accordance with the Scoring Guidelines, Scoring Factors, and other applicable provisions of this Agreement.  The final score assigned to a Claim pursuant to the procedures set forth in Section V.A.4 shall determine the relief, if any, to the Claimant for the Claim in accordance with Section VI.

**C.      Scoring Guidelines**

Claim scores shall be determined by applying the following Scoring Guidelines:

1.      A score of "5" means that the information, considered as a whole, supports the Claim by clear and convincing evidence, including clear and convincing evidence of each of the following:  (a) the Agent failed to conduct a suitability assessment for the original Owner with respect to the Contract, as appropriate under then-applicable insurance laws and regulations in the jurisdiction where the Contract was sold, and the Contract was unsuitable for the original Owner under the circumstances; (b) the Agent misrepresented to the original Owner the Surrender Charge provisions of the Contract or the rate of return provided by the Contract; (c) the original Owner also purchased a living trust in connection with the sale of the Contract, and in the course of the sale of the living trust the Agent did not disclose that he or she was an insurance salesperson, falsely represented that he or she was an employee of a lawyer, or otherwise engaged in improper practices.

50

2.      A score of "4" means that the information, considered as a whole, supports the Claim by clear and convincing evidence, including clear and convincing evidence of two of the following: (a) the Agent failed to conduct a suitability assessment for the original Owner with respect to the Contract, as appropriate under then-applicable insurance laws and regulations in the jurisdiction where the Contract was sold, and the Contract was unsuitable for the original Owner under the circumstances; (b) the Agent misrepresented to the original Owner the Surrender Charge provisions of the Contract or the rate of return provided by the Contract; (c) the original Owner also purchased a living trust in connection with the sale of the Contract, and in the course of the sale of the living trust the Agent did not disclose that he or she was an insurance salesperson, falsely represented that he or she was an employee of a lawyer, or otherwise engaged in improper practices.

3.      A score of "3" means that that the information, considered as a whole, supports the Claim by clear and convincing evidence, including clear and convincing evidence of one of the following: (a) the Agent failed to conduct a suitability assessment for the original Owner with respect to the Contract, as appropriate under then-applicable insurance laws and regulations in the jurisdiction where the Contract was sold, and the Contract was unsuitable for the original Owner under the circumstances; (b) the Agent misrepresented to the original Owner the Surrender Charge provisions of the Contract or the rate of return provided by the Contract; (c) the original Owner also purchased a living trust in connection with the sale of the Contract, and in the course of the sale of the living trust the Agent did not disclose that he or she was an insurance

51

salesperson, falsely represented that he or she was an employee of a lawyer, or otherwise engaged in improper practices.

4.      A score of "2" means that the information, considered as a whole, supports (a), (b), or (c) above relating to the Claim by a preponderance of the evidence.

5.      A score of "1" means that the information, considered as a whole, supports (a), (b), or (c) above relating to the Claim by substantial evidence, but less than a preponderance of the evidence.

6.      A score of "0" means that the information, considered as a whole, does not provide the support required for the Claim to be assigned a score of at least "1".

**D.     Scoring Factors**

The Scoring Factors set forth below shall be considered in the review and scoring of Claims.

1.      The original Owner's age when the Contract was issued.

2.      The Annuitant's age when the Contract was issued.

3.      At the time the Contract was purchased, the original Owner's monthly income, general financial condition, and requirements for access to the funds used to purchase the Contract.

4.      The original Owner's sophistication and experience regarding annuity products and other financial products and investments.

5.      Whether, before buying the Contract, the original Owner had previously owned another annuity (including another Company Annuity) and whether the original Owner surrendered such other annuity.

52

6.      The reasons and purposes for which the original Owner purchased the Contract.

7.      Whether the Contract included any bonus feature and the amount of any such bonus.

8.      Whether the original Owner incurred withdrawal or surrender charges or other charges or penalties in liquidating other assets, or in transferring funds from other assets or investments, to fund in whole or in part the purchase of the Contract.

9.      Whether the original Owner received advice regarding the Contract from a financial advisor, investment advisor, estate planning advisor, attorney, accountant, other professional, or family member in connection with the purchase of the Contract and, if so, the substance of that advice and the role such advice played in the decision to purchase the Company Annuity, and whether any such person was present at the sales presentation.

10.     The pattern of any withdrawals or attempted withdrawals from the Contract.

11.     The length of time the Contract was held in deferral and/or the amount of time remaining in the deferral period under the Contract (i.e., until the specified annuity date or maturity date).

12.     If the Contract was surrendered, the reason for the surrender.

13.     The amount of Surrender Charges (if any) incurred by the Claimant under the Contract.

14.     Whether the original Owner understood at the time he/she decided to purchase the Contract how the withdrawal features of the Contract, including the Surrender Charges, actually worked.

15.     Whether, prior to making the decision to purchase the Contract, the original Owner considered purchasing any other annuity product, and the information received and considered by the original Owner relating to such other annuity product.

16.     Whether the original Owner purchased a living trust in connection with the purchase of the Contract, and the circumstances in which such living trust was sold.

17.     Whether any living trust was part of a broader estate plan that was recommended to the original Owner by a professional who was not affiliated with the salesperson who sold the annuity.

18.     Whether any living trust was funded by the Contract or other assets.

19.     Whether the original Owner received a Consumer Brochure before making the decision to purchase the Contract.

20.     Any other written disclosures or other documents received and/or signed by the original Owner before making the decision to purchase the Contract or otherwise in connection with the purchase of the Contract.

21.     The recollection of the original Owner, an Agent, or others relating to whether the original Owner received a Consumer Brochure before making the decision to purchase the Contract.

22.     The recollection of the original Owner, an Agent, or others relating to any sales presentation, explanation, or other information provided to the original Owner about the Contract, or any of its relevant features, before the original Owner made the decision to purchase the Contract.

23.     The degree to which the original Owner relied on any alleged misrepresentations by the Agent in making the decision to purchase the Contract, and the substance of any such misrepresentation.

24.     The degree to which the original Owner relied on any statements made by Defendants in a Consumer Brochure, or any other statements, promises, or representations made by Defendants in making the decision to purchase the Contract, and the nature of such statements, promises, or representations.

25.     Whether, prior to the filing of any action consolidated into the Action, the original Owner or the Claimant submitted a written or oral complaint to a Defendant, an Agent, or a regulatory agency, and the substance of any such complaint.

26.     If the Claimant is not the original Owner, whether the Claimant has personal knowledge of the facts and circumstances covered in factors 1-6, 8, 9, 12, and 14-25, above.

27.     Whether the issuing Company sent the Claimant annual statements concerning the Contracts and the number of years such statements were sent.

**E.     Arbitrator**

The Arbitrator shall have the duties and responsibilities described in this Agreement with respect to the Arbitrator.  Plaintiffs' Counsel and Defendants jointly

shall select the initial Arbitrator, and if the appointment of a substitute or additional

Arbitrator becomes necessary during the term of this Agreement, Plaintiffs' Counsel and

Defendants jointly shall select each such Arbitrator.  If Plaintiffs' Counsel and

Defendants cannot agree on an Arbitrator, the Court shall select the Arbitrator.  The

reasonable fees and costs of the Arbitrator for the performance of his/her responsibilities

as set forth in this Agreement will be paid by Defendants.  Parties' Counsel shall jointly

prepare and present a training session for the Arbitrator in accordance with

Section V.A.5.c.

## VI.   CLAIM PROCESS RELIEF

### A.   General

1.      Class Members whose Claims are assigned final scores pursuant to

the procedures set forth in Section V.A.4 will receive the Claim Process Relief

corresponding to such scores for the applicable Contracts as additional benefits that will

be provided with respect to eligible Contracts, determined in accordance with the

following provisions of this Section VI.

2.      Claim Process Relief will be available for Contracts that are

categorized as Contracts In Deferral, Contracts In Annuitization, Fully Annuitized

Contracts, Surrendered Contracts, and Death Benefit Contracts.  The specific nature of

the Claim Process Relief for a Contract in each such category as to which a Claim is

assigned a final score pursuant to the procedures set forth in Section V.A.4 will vary

depending on the applicable category (determined for a Contract as of the date the Claim

Process Relief is implemented for that Contract) and whether the Contract is a 65-and-Over Contract, and shall be as set forth below.

### B.     Monetary Payment

1.     For all Contracts specified in Section VI.A.2 with respect to which full or partial surrenders were made by an Owner and Surrender Charges were incurred on such surrenders directly by the Owner prior to the Preliminary Approval Date and prior to the death of the Owner or the Annuitant, the Claim Process Relief will include monetary payments to Claimants who were the Owners of such Contracts and who incurred such Surrender Charges if the applicable surrender resulted in a Surrender Reduction Amount that is greater than zero (-0-).  Such Claim Process Relief will not be available with respect to any Surrender Charges on or in connection with any death benefits paid to beneficiaries pursuant to a Contract.  Such monetary payments shall be separate from the other Claim Process Relief, if any, that may be available to Claimants with respect to their Contracts under Section VI.C.  The amount of the payments will depend on the score assigned to the corresponding Claim in the Claim Review Process and whether the Contract is a 65-and-Over Contract, as follows:

a.     If the score is "5", the aggregate payment will be a dollar amount calculated by reference to the Surrender Reduction Amount incurred under the applicable Contract directly by the Owner on full or partial surrenders made by the Owner prior to the Preliminary Approval Date and prior to the death of the Owner or the Annuitant, and shall be equivalent to (1) 65% of such Surrender Reduction Amount for

65-and-Over Contracts, and (2) 20% of such Surrender Reduction Amount for Contracts that are not 65-and-Over Contracts.

b.      If the score is "4", the aggregate payment will be a dollar amount calculated by reference to the Surrender Reduction Amount incurred under the applicable Contract directly by the Owner on full or partial surrenders made by the Owner prior to the Preliminary Approval Date and prior to the death of the Owner or the Annuitant, and shall be equivalent to (1) 30% of such Surrender Reduction Amount for 65-and-Over Contracts, and (2) 16% of such Surrender Reduction Amount for Contracts that are not 65-and-Over Contracts.

c.      If the score is "3", the aggregate payment will be a dollar amount calculated by reference to the Surrender Reduction Amount incurred under the applicable Contract directly by the Owner on full or partial surrenders made by the Owner prior to the Preliminary Approval Date and prior to the death of the Owner or the Annuitant, and shall be equivalent to (1) 20% of such Surrender Reduction Amount for 65-and-Over Contracts, and (2) 12% of such Surrender Reduction Amount for Contracts that are not 65-and-Over Contracts.

d.      If the score is "2", the aggregate payment will be a dollar amount calculated by reference to the Surrender Reduction Amount incurred under the applicable Contract directly by the Owner on full or partial surrenders made by the Owner prior to the Preliminary Approval Date and prior to the death of the Owner or the Annuitant, and shall be equivalent to (1) 15% of such Surrender Reduction Amount for

65-and-Over Contracts, and (2) 8% of such Surrender Reduction Amount for Contracts that are not 65-and-Over Contracts.

e.      If the score is "1", the aggregate payment will be a dollar amount calculated by reference to the Surrender Reduction Amount incurred under the applicable Contract directly by the Owner on full or partial surrenders made by the Owner prior to the Preliminary Approval Date and prior to the death of the Owner or the Annuitant, and shall be equivalent to (1) 7% of such Surrender Reduction Amount for 65-and-Over Contracts, and (2) 5% of such Surrender Reduction Amount for Contracts that are not 65-and-Over Contracts.

f.      If the score is "0", no payment will be made.

2.      For a Claim receiving a score of "5" or "4", the payment will be made to the Claimant (being the Owner who incurred the Surrender Charges) in three, equal, annual installments, without interest, or (at Defendants' sole discretion) in a lump sum.  For a Claim receiving a score of "3", "2", or "1", the payment will be made to such Claimant in a lump sum.  If the score assigned to the corresponding Claim by the Claim Scorer is not contested, the payment (or the first installment payment, if applicable) will be mailed not later than 60 days after the date of the written notice to the Claimant of the score assigned by the Claim Scorer, as called for by Section V.A.4.a.  If the score assigned to the corresponding Claim by the Claim Scorer is contested, the payment (or the first installment payment, if applicable) will be mailed not later than 30 days after the date of the notice to the Claimant of the score assigned to the Claim by the Arbitrator, as called for by Section V.A.4.d.

59

3.      If a Contract was jointly owned when the Surrender Charges were incurred, the payments required to be made to a Claimant pursuant to Section VI.B.1 will be made payable jointly to all persons and entities that were Owners of the Contract when the Surrender Charges were incurred: provided, however, that in the event of the death of any such Owner, the payment may be made payable to the surviving such Owner(s) upon presentation of proper proof of death.

C.      **Bonus On Accumulation Value**

1.      Contracts In Deferral:  For each Contract In Deferral, in the event of and upon the effective date of the request by the Owner to implement the relief provided in this paragraph as specified in Section VI.C.1.c below, (a) the Accumulation Value of the Contract will be credited with a bonus equal to the then-applicable Accumulation Value multiplied by the applicable CPR Bonus Percentage (as determined pursuant to Section VI.D below), and (b) the Annuitant under such Contract will receive such Accumulation Value, as so increased by the bonus, in equal annual (or monthly, if the Owner so specifies when making the election to implement the relief) installments over the applicable CPR Payment Period (as determined pursuant to Section VI.E below); provided, however, that if the Owner makes the election to implement relief before the first anniversary of the issue date of the corresponding Contract, such bonus shall not be calculated, and the CPR Payment Period shall not commence, until such first anniversary. No Surrender Charges shall apply on an Owner's election to implement the relief provided in this paragraph.  If the Contract includes a market value adjustment endorsement or rider, or an equivalent provision in the express terms of the base policy,

60

no such market value adjustment shall apply on an Owner's election to implement the relief provided in this paragraph.

        a.        If a monetary payment was awarded to the current Owner pursuant to Section VI.B with respect to the Contract In Deferral, upon such Owner's timely request to implement the relief provided in Section VI.C.1, such Owner will have the option to pay into the Contract an amount equal to (1) the aggregate net amount (but before any withholding of taxes) received by such Owner on the corresponding surrender(s) plus (2) the amount of the monetary payment awarded to such Owner pursuant to Section VI.B.  If the Owner exercises such option, the Contract's Accumulation Value will be increased prior to the calculation of the bonus by the amount so paid in by the Owner, and the CPR Bonus Percentage will then be applied to the Accumulation Value, as so increased, to determine the bonus.

        b.        The amount of the installment payments to be made for a Contract In Deferral as to which the Owner timely requests to implement the relief provided in Section VI.C.1 will be determined as of the implementation date of the relief applying the interest rate then used by the issuing Company for calculating annuity payments offered to the general public over a period comparable to the applicable CPR Payment Period, but in no event shall such interest rate be less than 2.0% or the minimum corresponding interest rate for the calculation of annuity payments specified in the applicable Contract, whichever is greater.

        c.        To implement the relief described in Section VI.C.1, the Owner must submit a written implementation request to the issuing Company, which

61

request must be received by the issuing Company not later than 60 days after the date of the notice given to the Owner pursuant to Section V.A.4.a (or 60 days after the date of the notice given to the Owner pursuant to Section V.A.4.d if the corresponding Claim was referred to the Arbitrator).  No extension of this implementation request deadline shall be made absent the approval of the issuing Company granted in its sole discretion.

        2.      <u>Contracts In Annuitization</u>.  For each Contract In Annuitization, in the event of and upon the effective date of the request by the Owner to implement the relief provided in this paragraph as specified below in this paragraph, a bonus equal to the CPR Bonus Percentage multiplied by the Accumulation Value at the time the Contract was annuitized (or, in the case of a Contract that was categorized as a Contract In Annuitization because it was surrendered and exchanged for a SPIA that is in force as of the applicable categorization date, a bonus equal to the CPR Bonus Percentage multiplied by the amount received on the surrender of the Contract and paid in as premium for the SPIA) will be paid, along with the remaining annuity payments, in equal installments (without interest) over the applicable CPR Payment Period.  To implement the relief provided in this paragraph, the Owner must submit a written implementation request to the issuing Company, which request must be received by the issuing Company not later than 60 days after the date of the notice given to the Owner pursuant to Section V.A.4.a (or 60 days after the date of the notice given to the Owner pursuant to Section V.A.4.d if the corresponding Claim was referred to the Arbitrator).  No extension of this implementation request deadline shall be made absent the approval of the issuing Company granted in its sole discretion.

3.     <u>Fully Annuitized Contracts</u>.  For each Fully Annuitized Contract, a bonus equal to the CPR Bonus Percentage multiplied by the Accumulation Value at the time the Contract was annuitized will be paid, at the time specified in the following sentence, in a lump sum to the Owner of the Contract at the time the Contract was annuitized.  If the score assigned to the corresponding Claim by the Claim Scorer is not contested, the payment will be mailed not later than 60 days after the date of the written notice to the Claimant of the score assigned by the Claim Scorer, as called for by Section V.A.4.a.  If the score assigned to the corresponding Claim by the Claim Scorer is contested, the payment will be mailed not later than 30 days after the date of the notice to the Claimant of the score assigned to the Claim by the Arbitrator, as called for by Section V.A.4.d.  If the Contract was jointly owned when it was annuitized, the payment will be made payable jointly to all person and entities that were Owners of the Contract when it was annuitized; <u>provided</u>, <u>however</u>, that in the event of the death of any such Owner, the payment may be made payable to the surviving such Owner(s) upon presentation of proper proof of death.

4.     <u>Surrendered Contracts.</u>  For each Surrendered Contract, the Owner of the Contract when it was finally surrendered will have the option, exercisable by submitting the written implementation request described below in this paragraph, (a) to pay to the Company that issued the Surrendered Contract an amount not to exceed the amount (before any withholding of taxes) received by such Owner on the corresponding final surrender, and (2) if the Owner makes such payment to the issuing Company, thereafter to receive from the issuing Company an amount equal to such payment,

63

increased by the CPR Bonus Percentage, paid in equal annual (or monthly, if the Owner so specifies when making the request to implement the relief) installments over the applicable CPR Payment Period (as determined pursuant to Section VI.E below).  The amount of the installment payments will be determined as of the implementation date of the relief applying the interest rate then used by the issuing Company for calculating annuity payments offered to the general public over a period comparable to the applicable CPR Payment Period, but in no event shall such interest rate be less than 2.0%.  If the Owner does not makes such payment to the issuing Company, the bonus will not be made available.  To implement the relief provided in this paragraph, the Owner must submit a written implementation request to the issuing Company, which request must be received by the issuing Company not later than 60 days after the date of the notice given to the Owner pursuant to Section V.A.4.a (or 60 days after the date of the notice given to the Owner pursuant to Section V.A.4.d if the corresponding Claim was referred to the Arbitrator).  No extension of this implementation request deadline shall be made absent the approval of the issuing Company granted in its sole discretion.

**D.      Calculation Of CPR Bonus Percentage**

The CPR Bonus Percentage for a specific Contract will range from 0% to 2.25%, and will depend the score assigned to the corresponding Claim in the Claim Review Process and whether the Contract is a 65-and-Over Contract, as follows:

1.      If the score is "5", the CPR Bonus Percentage will equal 2.25% for 65-and-Over Contracts and 0.80% for Contracts that are not 65-and-Over Contracts.

2.      If the score is "4", the CPR Bonus Percentage will equal 1.70% for 65-and-Over Contracts and 0.60% for Contracts that are not 65-and-Over Contracts.

3.      If the score is "3", the CPR Bonus Percentage will equal 1.30% for 65-and-Over Contracts and 0.40% for Contracts that are not 65-and-Over Contracts.

4.      If the score is "2", the CPR Bonus Percentage will equal 1.00% for 65-and-Over Contracts and 0.20% for Contracts that are not 65-and-Over Contracts.

5.      If the score is "1", the CPR Bonus Percentage will equal 0.75% for 65-and-Over Contracts and 0.15% for Contracts that are not 65-and-Over Contracts.

6.      If the score is "0", the CPR Bonus Percentage will equal 0%; provided, however, that on a case-by-case basis the Arbitrator shall have the discretion to award a CPR Bonus Percentage of (a) 0.40% for a Claim relating to a 65-and-Over Contract that receives a score of "0" from the Arbitrator, or (b) 0.15% for a Claim relating to a Contract that is not a 65-and-Over Contract that receives a score of "0" from the Arbitrator.

### E.      CPR Payment Period

1.      Contracts In Deferral.  The CPR Payment Period for a Contract In Deferral will be the life of the Annuitant with 10 years certain.

2.      Contracts In Annuitization.  The CPR Payment Period for a Contract In Annuitization will be the remaining annuity payment period under the Contract; provided, however, that for a Contract In Annuitization that was so categorized because it had been exchanged for a SPIA that is in force as of the applicable categorization date,

the CPR Payment Period will be five years or the remaining payment period under the corresponding SPIA, whichever is longer.

        3.    <u>Surrendered Contracts</u>.  The CPR Payment Period for a Surrendered Contract as to which the Owner decides to implement the relief provided for in Section VI.C.4 will be four years if the Contract was finally surrendered on or after the fifth anniversary of the issue date of the Contract or seven years if the Contract was finally surrendered before the fifth anniversary of the issue date of the Contract.

        4.    <u>Beneficiary Designation</u>:  The beneficiary(ies) named in the corresponding Contract (or in the corresponding SPIA in the case of a Contract In Annuitization that was so categorized because it had been exchanged for a SPIA that is in force as of the applicable categorization date) shall be the beneficiary(ies) in respect of the periodic payments to be made over the CPR payment period unless the Owner otherwise directs the issuing Company in writing in accordance with the Company's applicable procedures.

## VII.  NOTICE TO THE CLASS AND COMMUNICATIONS WITH CLASS MEMBERS

### A.    Overview – Class Notice Package

        1.    Subject to the requirements of any orders entered by the Court, and no later than 70 days before the Fairness Hearing, Defendants shall cause the Settlement Administrator to send a Class Notice Package by first-class mail (or comparable postal method for Class Members with an address outside of the United States of America and its territories), postage prepaid, to the last known address of each reasonably identifiable

66

person and entity in the Class and, in cases of pending litigation against Defendants

relating to the Released Transactions, also to any legal counsel (other than Plaintiffs'

Counsel) known by Defendants as of the Preliminary Approval Date to represent a person

or entity in the Class with respect to a Contract.  The Class Notice Package shall include:

      a.      a cover letter in the form of Exhibit B attached hereto;

      b.      the Class Notice described below; and

      c.      the Election Form.

2.      The mailing of a Class Notice Package to a person or entity that is

not in the Class, as defined herein, shall not render such person or entity a part of the

Class or otherwise entitle such person to participate in this Settlement.

**B.**    **Class Notice**

Each Class Notice Package shall contain a Class Notice, which shall:

1.      contain a short, plain statement of the background of the Action and

the proposed Settlement;

2.      describe the category of persons and entities in the Class, as defined

herein, and inform such persons and entities that, if they do not exclude themselves from

the Class, they may be eligible to receive relief under the proposed Settlement;

3.      describe the proposed General Policy Relief;

4.      describe the proposed Claim Review Process and Claim Process

Relief;

5.      explain the procedures for participating in the Claim Review

Process, including the Election Filing Deadline and the Claim Filing Deadline;

6.      explain that if persons and entities in the Class, as defined herein, do nothing in response to the Class Notice Package, they will be eligible only for the basic General Policy Relief as their Settlement Relief for Contracts that are Contracts In Deferral, Contracts In Annuitization, and Fully Annuitized Contracts as of the Final Settlement Date, but not for any other Contracts, including, without limitation, Surrendered Contracts and Death Benefit Contracts;

7.      explain that the General Policy Relief contemplates two levels of potential relief for certain 65-and-Over Contracts – basic and enhanced – and that to qualify an eligible 65-and-Over Contract for the enhanced General Policy Relief, a Class Member must submit a properly completed and signed Election Form, including certain information concerning the original Owner of the applicable Contract as specified in the Election Form, by U.S. mail postmarked no later than the Election Filing Deadline specified in the Election Form, which deadline shall be 20 days after the date of the Fairness Hearing;

8.      explain the impact of the proposed Settlement on any pending litigation, arbitration, or other legal proceeding;

9.      describe the effect of the release included in the proposed Settlement;

10.     explain that persons and entities in the Class, as defined herein, may exclude themselves from the Class by submitting a written exclusion request by U.S. mail postmarked no later than 45 days after the date of the Class Notice;

11.     explain that if more than one person or entity has or had rights as an Owner of a Contract, if one such Owner excludes himself or herself from the Class, that Contract shall be excluded from the Settlement Relief, regardless of whether other Owners of the Contract exclude themselves;

12.     explain that a Class Member may not exclude from this Agreement and this Settlement some, but not all, Contracts in which he/she claims an interest as an Owner, and that any attempt by a Class Member to exclude from this Agreement and this Settlement some, but not all, Contracts in which he/she claims an interest as an Owner shall be deemed ineffective, resulting in such person or entity remaining a Class Member and no such Contracts being excluded from this Agreement and the Settlement.

13.     explain that any person or entity in the Class, as defined herein, who has not submitted a written request for exclusion may, if he or she desires, object to the proposed Settlement by submitting to the Settlement Administrator, the Court, and Parties' Counsel a written statement of objections by U.S. mail postmarked no later than 45 days after the date of the Class Notice;

14.     explain that a Class Member who has filed and served a written objection to the proposed Settlement may appear at the Fairness Hearing, either personally or through counsel, provided that notice of the intention to appear must be sent to the Settlement Administrator, the Court, and Parties' Counsel by U.S. mail postmarked no later than 45 days after the date of the Class Notice;

15.     explain that any judgment entered in the Action, whether favorable or unfavorable to the Class, shall include, and be binding on, all Class Members, even if

69

they have objected to the proposed Settlement and even if they have any other claim,

lawsuit, or proceeding pending against Defendants;

16.     explain that persons and entities in the Class, as defined herein,

should consult their own tax advisors regarding the tax consequences of the proposed

Settlement, including, without limitation, any payments, credits, and payment periods

provided hereunder, and any tax reporting obligations they may have with respect thereto;

17.     state that any relief to Class Members is contingent on the Court's

final approval of the proposed Settlement; and

18.     state that Defendants will pay the attorneys' fees, expenses, and

costs awarded by the Court as part of the Settlement in accordance with Section XI, and

that individual Class Members will be responsible themselves for the fees and costs of

any persons they may retain to represent them for any reason, including, but not limited

to, counsel retained in connection with the Fairness Hearing.

The Class Notice shall conform to all requirements of the United States

Constitution (including the Due Process Clause) and any and all other applicable law, and

shall otherwise be in the manner and form agreed on by the Parties and approved by the

Court.  The form of the Class Notice agreed on by the Parties is attached hereto as

Exhibit C.

### C.     Election Form

Each Class Notice Package shall include an Election Form in the form attached hereto as

Exhibit D.

### D.     Address Verification; Remailing

Prior to the mailing of the Class Notice, the mailing list for the Class Notice shall be run through the U.S. Postal Service's National Change of Address Database for verification and correction of addresses, at Defendants' expense, to attempt to reduce the number of returned mail items.  In the case of Class Notices undelivered and returned by the U.S. Postal Service, the Settlement Administrator shall:  (1) remail any Class Notice so returned with a forwarding address, and (2) make reasonable efforts to attempt to find an address for any returned Class Notice that does not include a forwarding address, or retain a commercial address verification service selected by the Settlement Administrator for this purpose and provide a copy of such returned Class Notices to the address verification service as soon as practicable following receipt.  Any retained address verification service shall provide to the Settlement Administrator in connection with each such returned Class Notice provided to it, as soon as is practicable, either an updated address or a statement that, following due research, it has been unable to obtain an updated address.  The Settlement Administrator shall remail the Class Notice to every person and entity in the Class for which it or the address research service provides an updated address.

### E.     Internet Site

1.     The Settlement Administrator shall maintain an internet web site concerning the Settlement containing the following information:

a.     a brief description of the Action;

b.     a copy of the Class Notice Package;

       c.      a copy of the order entered by the Court giving preliminary approval to the proposed Settlement (if and when the Court issues such an order);

       d.      a copy of the order granting final approval of the Settlement (if and when the Court issues such an order);

       e.      a copy of an Election Form;

       f.      a copy of a Claim Form;

       g.      contact information for the toll-free Class call center;

       h.      contact information for Plaintiffs' Counsel;

       i.      any information identified as being available on the Settlement internet web site in any of the Exhibits hereto; and

       j.      any other information agreed to by the Parties or Parties' Counsel.

       2.      The Settlement internet web site shall be maintained by the Settlement Administrator from the date of mailing of the Class Notice until the Claim Review Completion Date.

       3.      No text, documents, or information shall be posted on the Settlement internet web site maintained by the Settlement Administrator without the approval of Plaintiffs' Counsel and counsel for Defendants.

**F.    Post-Settlement Mailing**

       1.      Not later than 90 days after the Approval Date, subject to the requirements of any order entered by the Court, Defendants shall send (or cause the Settlement Administrator to send) a mailing to all Class Members who properly elected to

participate in the Claim Review Process.  The mailing shall include a cover letter in the

form of Exhibit E to this Agreement and a Claim Form in the form of Exhibit F to this

Agreement.

       **G.**    **Settlement Administrator**

       1.    Tasks to be performed by the Settlement Administrator shall include:

       a.    verifying the mailing list for the Class Notice prior to the

mailing of the Class Notice;

       b.    preparing and mailing the Class Notice;

       c.    handling returned mail, address investigation, and remailings;

       d.    maintaining an informational web site in accordance with

Section VII.E;

       e.    preparing and mailing the Post-Settlement Mailing;

       f.    receiving requests for exclusion, objections, Election Forms,

and Claim Forms, providing copies of such items to Parties' Counsel, and giving notice

of or requesting any required cures or clarifications as deemed necessary by the

Settlement Administrator, or as directed jointly by Parties' Counsel;

       g.    giving notices to Claimants of scores assigned to their

respective Claims in the Claim Review Process and receiving written objections to Claim

scores and providing copies thereof to Claimants, the Claim Scorer, Parties' Counsel, and

Defendants' designee;

       h.    receiving any other written correspondence or communication

concerning the Settlement from persons and entities in the Class, providing copies of

such correspondence to Parties' Counsel, and sending any responses to such

correspondence and communications as directed jointly by Parties' Counsel, until the

Claim Review Completion Date;

        i.      arranging for, staffing, and maintaining a toll-free call center

to respond to questions from persons and entities in the Class (in accordance with a

question-and-answer sheet approved by Parties' Counsel), which shall be open to receive

calls until the Claim Review Completion Date;

        j.      assisting persons and entities in the Class that contact the

Settlement Administrator for assistance in completing Election Forms and Claim Forms

(in each case, in accordance with a question-and-answer sheet approved by Parties'

Counsel);

        k.      making any additional mailings required by this Agreement;

and

        l.      other tasks agreed on by Plaintiffs' Counsel and counsel for

Defendants.

        2.      Defendants shall pay the reasonable fees and expenses of the

Settlement Administrator.

        3.      Plaintiffs' Counsel and counsel for Defendants, and/or their

respective designees, shall be entitled to observe and monitor the performance of the

Settlement Administrator.

4.      The contract governing the engagement of the Settlement Administrator shall obligate each such Settlement Administrator to abide by the following performance standards:

a.      The Settlement Administrator shall accurately and neutrally describe, and shall train and instruct its employees and agents to accurately and neutrally describe, the provisions of this Agreement in communications with persons and entities in the Class.

b.      The Settlement Administrator shall provide prompt, accurate, and neutral responses to inquiries from Plaintiffs' Counsel and Defendants and/or Defendants' counsel.

c.      If, in the course of any communication with a person or entity in the Class, the person or entity requests that the Settlement Administrator and/or its agent or employee refer the communication to Plaintiffs' Counsel or Defendants, then the Settlement Administrator and/or its agent or employee shall promptly fulfill such request.

d.      If, in the course of any communication with a person or entity in the Class, an agent or employee of the Settlement Administrator reasonably concludes that the person or entity is not satisfied with the information and/or assistance provided, the communication shall promptly be referred to a supervisor on duty.

## H.      Communication With Class Members, Claimants, And Contract Owners

1.      Defendants may not be privy to or respond to inquiries between Class Members and their counsel (including Plaintiffs' Counsel).  However, Defendants

75

reserve the right to communicate with, and to respond to inquiries directed to them from, Contract Owners and Class Members, orally and/or in writing, regarding matters in the normal course of administering the Contracts or otherwise in the ordinary course of business, and may do so through any appropriate agents or agencies.  If, however, a Defendant receives any inquiry from a Class Member relating to the Settlement, the Defendant shall refer the Class Member to the Settlement Administrator or Plaintiffs' Counsel, as the Defendant deems appropriate.  Prior to the Election Filing Deadline (and except for the mailing of the Class Notice Package and communications between Plaintiffs' Counsel and Named Plaintiffs), Plaintiffs, Plaintiffs' Counsel, Defendants, and counsel for Defendants, or anyone acting on their respective behalf, shall not directly or indirectly initiate contact with any Plaintiff regarding the Settlement.  Nothing in this paragraph, however, shall preclude Parties' Counsel or Defendants from responding to inquiries from Class Members as contemplated by and in accordance with this Agreement or from communicating with attorneys representing any Plaintiffs.

       2.     Parties' Counsel shall jointly:  (a) train the personnel manning the call center maintained by the Settlement Administrator on the background of the Action, the concepts relevant to the proposed Settlement, and the notice, terms, and chronology of the proposed Settlement; (b) train such call center personnel on answering inquiries from persons and entities in the Class, Claimants, and other Contract Owners, to refer inquiries concerning Contract values and general Contract administration and servicing to the appropriate issuing Company, and otherwise to refer inquiries to Plaintiffs' Counsel (or their designee) if the person or entity in the Class so requests or where otherwise

76

appropriate; (c) prepare, approve, and provide question-and-answer sheets for such call center personnel to use in answering inquiries from persons and entities in the Class, Claimants, and other Contract Owners; and (d) take other steps to promote accurate and efficient communications with persons and entities in the Class, Claimants, and other Contract Owners.  If such call center personnel receive questions that are not covered by a jointly approved question-and-answer sheet, such questions shall be referred to Parties' Counsel.

        3.    Parties' Counsel may monitor and participate in the education and training of the Settlement Administrator and its employees relating to this Settlement. Parties' Counsel shall jointly prepare and approve all question-and-answer sheets and other training materials to be used by the Settlement Administrator and its employees and agents relating to this Settlement prior to their use.  Any changes, modifications, or additions to the question-and-answer sheets or other written training materials proposed by or on behalf of Plaintiffs or Defendants must be provided to the other Party with sufficient time to provide meaningful comment prior to its proposed use.  Parties' Counsel shall negotiate in good faith concerning any such changes, modifications, or additions to facilitate a means of providing clear, understandable, and complete information to persons and entities in the Class.

        4.    Not later than the date the Class Notice is mailed, Defendants will send a written communication, a copy of which shall be provided to Plaintiffs' Counsel, to Agents that continue to be authorized to sell Company-issued annuity products (a) instructing that they not discuss the merits of the proposed Settlement with any Class

77

Member or otherwise make any recommendation to Class Members relating to the proposed Settlement, (b) providing the toll-free telephone number for the call center maintained by the Settlement Administrator and instructing that any inquiries from Class Members concerning the proposed Settlement received by such Agents be referred to the such call center, and (c) instructing such Agents that original documents or records shall not be taken from persons and entities in the Class (but copies may be made and taken).

5. Defendants may continue to process and respond to Contract Owner complaints, including complaints submitted to Defendants by regulators, notwithstanding that some complaints may originate with Class Members and may concern claims relating to Contracts that otherwise could be eligible for relief under the Settlement; provided, however, that, after the Class Notice mailing and before the implementation of Settlement Relief for a particular Contract, any offer of relief by a Defendant in response to any such complaint concerning such Contract shall be accompanied by a description of the proposed Settlement and a statement explaining to the Class Member that acceptance of the Defendant's offer may bar or otherwise affect the Class Member's rights to participate in the proposed Settlement.  If a Defendant makes an offer of relief with respect to any such written complaint after the Class Notice is mailed and before the implementation of Settlement Relief for the subject Contract, and the offer of relief differs from the Settlement Relief, a copy of the written complaint and the Defendant's offer of relief shall be provided to Plaintiffs' Counsel.

## I.     Media Communications

Plaintiffs' Counsel and Defendants agree to cooperate in good faith to ensure that any comments about or descriptions of the proposed Settlement in the media or in any other public forum are balanced, fair, and accurate and will attempt in good faith to agree on valuation, costs, and terms of the Settlement to be communicated in joint and/or unilateral statements.  Joint or unilateral press releases referring or otherwise related to the Settlement proposed to be made by any Party before the first anniversary of the Final Settlement Date shall be provided to Plaintiffs' Counsel and counsel for Defendants prior to dissemination or publication so as to allow for a reasonable period of time for review prior to dissemination or publication.

## VIII.   REQUESTS FOR EXCLUSION

A.     Any person or entity in the Class, as defined herein, that wishes to be excluded from the Class must submit to the Settlement Administrator a written request for exclusion sent by U.S. mail and postmarked no later than 45 days after the date of the Class Notice.  A list reflecting all valid requests for exclusion shall be filed with the Court at or before the Fairness Hearing.

B.     Exclusion requests must clearly state that the applicable person or entity desires to be excluded from the Class and must be signed by such person or entity or by a person providing a valid power of attorney to act on behalf of such person or entity.

C.     A Class Member may not exclude from this Agreement and this Settlement some, but not all, Contracts in which he/she claims an interest as an Owner.  Any attempt

by a Class Member to exclude from this Agreement and this Settlement some, but not all, Contracts in which he/she claims an interest as an Owner shall be deemed ineffective, resulting in such person or entity remaining a Class Member and no such Contracts being excluded from this Agreement and the Settlement.

      D.     The Settlement Administrator shall establish and maintain the Post Office Box to which exclusion requests are required to be sent, maintain a log listing the postmark date for each exclusion request received, and provide copies of all exclusion requests received and such corresponding log to Plaintiffs' Counsel and to counsel for Defendants.

      E.     Every person and entity in the Class, as defined herein, that does not file a timely written request for exclusion in accordance with this Section VIII shall be bound by all subsequent proceedings, orders, and judgments in this Action, even if such person or entity has any litigation, arbitration, regulatory complaint, or other legal proceeding pending, or subsequently initiates any litigation, arbitration, regulatory complaint, or other legal proceeding, against any Defendant(s) or Releasee(s) relating to a Contract and the claims and transactions released in this Action pursuant to this Settlement.

      F.     Named Plaintiffs and their successors, heirs, and assigns, in their individual and representative capacities, shall not exclude themselves from the Settlement.

## IX.    OBJECTIONS TO THE SETTLEMENT

      A.     Any person or entity in the Class that has not filed a timely written request for exclusion and that wishes to object to the fairness, reasonableness, or adequacy of this

Agreement or the proposed Settlement, or to the Stipulated Fees and Costs, must submit
to the Court, the Settlement Administrator, and Parties' Counsel a statement of objection
by U.S. mail postmarked no later than 45 days after the date of the Class Notice.  Each
such statement of objection must: (1) set forth the Class Member's full name, current
address, telephone number, and applicable Contract number(s); (2) state that the Class
Member objects to the Settlement, in whole or in part; (3) set forth a statement of the
legal and factual basis for the objection; and (4) be accompanied by copies of any and all
documents that the objecting Class Member has and will submit in support of his/her
position.  A Class Member who does not submit a timely objection in accordance with
this Settlement Agreement and the Class Notice, and as otherwise ordered by the Court,
shall not be treated as having filed a valid objection to the Settlement.  The Class Notice
shall inform the Class of this requirement.  The Settlement Administrator will
immediately provide complete copies of any such objections it receives to Parties'
Counsel.  Parties' Counsel will ensure that copies of all objections are filed with the
Clerk prior to the Fairness Hearing, so that the Court may appropriately consider them.
Class Members may so object either on their own or through an attorney hired at their
own expense.  If a Class Member hires an attorney to represent him or her, the attorney
must (i) file an entry of appearance with the Clerk of the Court no later than 45 days after
the date of the Class Notice, and (ii) send a copy of the same to Plaintiffs' Counsel and
counsel for Defendants by U.S. mail postmarked no later than 45 days after the date of
the Class Notice.

B.     Any Class Member who files and serves a written objection, as described in Section IX.A, may appear at the Fairness Hearing, either in person or through a personal attorney hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the Stipulated Fees and Costs, provided that notice of the intention to appear and object is given as specified in this paragraph.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must send a notice of intention to appear, by U.S. mail postmarked no later than 45 days after the date of the Class Notice, to Plaintiffs' Counsel and counsel for Defendants, and file said notice with the Court no later than 45 days after the date of the Class Notice.  A Class Member who appears at the Fairness Hearing will be permitted to argue only those matters that were set forth in a written objection filed by such Class Member in accordance with Section IX.A.  No Class Member shall be permitted to raise matters at the Fairness Hearing that the Class Member could have raised in such a written objection, but failed to do so, and all objections to the Settlement that are not set forth in such a written objection are deemed waived.  Any Class Member who fails to comply with the applicable provisions of this Agreement and the Class Notice, and as otherwise ordered by the Court, shall be barred from appearing at the Fairness Hearing.

C.     Any Class Member who fails to comply with the provisions of the preceding paragraphs of this Section IX shall waive and forfeit any and all rights he or she may have to appear separately and/or object, and shall be bound by all the terms of this Agreement and by all proceedings, orders, and judgments in the Action.

D.     A Class Member's objection to the Settlement shall not affect his or her

rights to Settlement Relief.

E.     Named Plaintiffs and their successors, heirs, and assigns, in their individual

and representative capacities, shall not object to this Settlement.

F.     The Parties may serve and file responses to written objections any time

prior to the Fairness Hearing, or as otherwise directed by the Court.

## X.     RELEASE AND WAIVER; ORDER OF DISMISSAL

Plaintiffs agree to a full and complete general release, waiver, and dismissal with

prejudice as follows:

### A.     Release And Waiver - Definitions

For purposes of this release and waiver (the "Release"):

1.     The term "Releasees" means, individually and collectively, the

Defendants and Other Defendants and the Defendants' and Other Defendants' respective

past, present, and future parent companies, subsidiaries, affiliates, predecessors,

successors and assigns, together with each of the Defendants' and Other Defendants'

respective past, present, and future officers, directors, employees, representatives,

attorneys, and agents (including, without limitation, those acting on behalf of Defendants

and within the scope of their agency), all Agents, including, without limitation, IMOs and

other marketing organizations involved in any way, directly or indirectly, in the

marketing, sale, and servicing of Company Annuities, and all of such Releasee's heirs,

administrators, executors, insurers, predecessors, successors and assigns, or any of them, and including any person or entity acting on behalf or at the direction of any of them.

2.      The term "Released Transactions" means (a) the design, development, marketing, offer, solicitation, application, underwriting, acceptance, issuance, sale (including, without limitation, in connection with the issuance of a Company Annuity as a replacement for a non-Company annuity or another Company Annuity), presentation, illustration, projection, purchase, operation, performance, interest crediting, charges, administration, servicing, retention, and/or replacement (by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of any annuity) of or in connection with (1) the Contracts or (2) any annuity sold or to be sold or offered in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Contracts, or external or internal replacements of annuities issued by the Companies, (b) the marketing, sale, delivery, and/or performance of any products, plans, or services in connection with, or relating to or allegedly relating to, the marketing, purchase, or sale of a Contract, and (c) any and all matters concerning or relating to this Settlement (including, without limitation, the award, election, and/or implementation of any Settlement Relief with respect to a Contract).

3.      The term "Other Defendants" means the following persons and entities that are named as defendants in the complaints filed in the putative class actions described in Section I.A.2 but are not named as defendants in the Complaint: Brian J. Newmark, Estate Planning Advisors Corp., BEN Consulting Corp., Funding & Financial Services Corp., Victoria Larson, Kenneth Krygowski, National Western Life Insurance

84

Company, American Equity Investment Life Insurance Company, The Patriot Group,

Addison Group, Stephen Strope, American Investors Sales Group, Inc., Senior Benefit

Services of Kansas, Inc.; provided, however, that the Release provided for herein shall

not be construed to apply to claims that do not relate in any way to a Company Annuity

or a Released Transaction made by any Plaintiffs against such Other Defendants in any

lawsuit that was filed directly by any Plaintiffs against, and served on, such Other

Defendants prior to the Execution Date.

       4.    All other capitalized terms used in this Section X shall have the

meanings ascribed to them in Section II or elsewhere in this Agreement.

**B.    Release And Waiver**

       1.    In consideration of the promises and covenants of settlement

between and among the Parties and as further contained in this Settlement Agreement

(including, without limitation, the consideration to the Named Plaintiffs and Class

Members, the fairness and adequacy of which is hereby acknowledged), the Named

Plaintiffs and all Class Members, on behalf of themselves, their heirs, assigns, executors,

administrators, predecessors, and successors, and any other person or entity purporting to

claim on their behalf, hereby expressly and generally release and discharge the Releasees

from any and all causes of action, claims, allegations of liability, damages, restitution,

equitable, legal and administrative relief, interest, demands or rights whatsoever,

including, without limitation, for all claims of actual monetary damages, for claims of

injunctive or equitable type of relief, and for claims of mental anguish and/or punitive or

exemplary damages, whether such claims are based on federal, state, or local law, statute,

ordinance, or regulation (including, without limitation, federal or state insurance laws or regulations, RICO type laws, and securities laws or regulations), contract, common law, or any other source, relating to any Company Annuities and that were or could have been asserted against Defendants in the Complaint or any other complaint filed in the Action, or that could have been asserted against Defendants before any court, arbitration panel, or regulatory or administrative agency based on or related to the facts alleged in the Complaint or any other complaint filed in the Action, or relating in any way to the Released Transactions, and whether or not brought directly, indirectly, on a representative basis, or otherwise, including, but not limited to, actions brought on behalf of the Named Plaintiffs and/or Class Members by any state or federal government officials or agencies.

        2.      Plaintiffs hereby expressly further agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, on their own behalf, on behalf of a class, or on behalf of any other person or entity, any action or proceeding of any kind against the Releasees asserting causes of action, claims, allegations of liability, damages, restitution, injunctive, equitable, legal or administrative relief, interest, demands or rights, including, without limitation, claims for actual monetary damages, claims of injunctive or other equitable type of relief, and claims for mental anguish and/or punitive or exemplary damages, whether based on federal, state or local law, statute, ordinance, or regulation (including, without limitation, federal or state insurance laws or regulations, RICO type laws, and securities laws or regulations), contract, common law, or any other source, that are based on or related to the facts

alleged in the Complaint or any other complaint filed in the Action, or that relate in any way to the Released Transactions, and that were or could have been asserted against Defendants in the Complaint or any other complaint filed in the Action, or that could have been asserted against Defendants in an amended complaint in the Action or before any court, arbitration panel, or regulatory or administrative agency, or in any other complaint or claim.

3.      Nothing in this Release shall be deemed to alter the contractual rights and benefits of a Named Plaintiff or any other Class Member for the express written benefits that are due or will become due in the future pursuant to the express written terms of a Contract, except to the extent that such rights are altered or affected by the award, election, and/or implementation of Settlement Relief under this Agreement.

4.      In connection with this Release, Plaintiffs acknowledge that they are aware that they may hereafter discover claims or damage presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true, with respect to the Released Transactions or claims released herein, or with respect to their Contracts.  Nevertheless, Plaintiffs understand and agree that this Release is, and is intended to be, a broad, general release of the Releasees, and Plaintiffs agree that this Release fully, finally, and forever shall settle and release all claims and causes of action whatsoever, and all claims relating thereto, and which now exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding) that are within the scope of Section X.B.1 and/or 2.

5.      **PLAINTIFFS EXPRESSLY UNDERSTAND THAT SECTION 1542 OF THE CIVIL CODE OF THE STATE OF CALIFORNIA PROVIDES:**

**"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."**

**TO THE EXTENT THAT CALIFORNIA OR OTHER SIMILAR FEDERAL OR STATE LAW MAY APPLY (BECAUSE OF OR NOTWITHSTANDING THE PARTIES' CHOICE OF LAW IN THIS AGREEMENT), PLAINTIFFS HEREBY AGREE THAT THE PROVISIONS OF SECTION 1542 AND ALL SIMILAR FEDERAL OR STATE LAWS, RIGHTS, RULES, OR LEGAL PRINCIPLES, TO THE EXTENT THEY ARE FOUND TO BE APPLICABLE HEREIN, ARE HEREBY KNOWINGLY AND VOLUNTARILY WAIVED AND RELINQUISHED BY PLAINTIFFS, AND PLAINTIFFS HEREBY AGREE THAT THIS IS AN ESSENTIAL TERM OF THE RELEASE.**

6.      Nothing in this Release shall preclude any action to enforce the terms of this Agreement.

7.      Plaintiffs hereby agree and acknowledge that the provisions of this Release together constitute an essential term of the Agreement.

8.      Plaintiffs expressly agree that this Release shall be, and may be raised as, a complete defense to and will preclude any action or proceeding encompassed by the release of Releasees herein.

9.      It is the intention of the Named Plaintiffs, on behalf of themselves and the Class Members, in executing this Release to fully, finally, and forever settle and release all matters and all claims released under this Section X.

10.      Plaintiffs reserve the right to bring and pursue claims that persons or entities other than the Releasees are solely liable for damages, losses, costs, or expenses allegedly sustained by Plaintiffs.  It is the intention of the Parties, however, that if any such other person or entity is found to be a joint tortfeasor with any Releasees, such other person or entity shall not be obligated or required to pay more than the proportionate share of the adjudicated liability found against such person or entity, and that the Releasees be relieved from liability for contribution and/or indemnity to any such person or entity.  Therefore, as further consideration for the Settlement Relief to be provided by Defendants pursuant to this Agreement, it is hereby agreed that in the event it is determined that any such other person or entity and any Releasees are joint tortfeasors with respect to any damages, losses, costs, or expenses so claimed by any Plaintiffs: (a) Plaintiffs shall reduce their total claims against said other joint tortfeasors by the full extent of the proportionate share of liability of the Releasees as adjudicated under a final, non-appealable verdict or judgment of a court of competent jurisdiction, and (b) any recovery awarded or verdict and/or judgment entered against said other joint tortfeasors shall be reduced by the full extent of the proportionate share of the Releasees' liability to

89

the extent adjudicated as aforesaid.  It is further agreed as consideration for the

Settlement Relief to be provided by Defendants pursuant to this Agreement that in any

action in which any of the Releasees may be made a defendant or third-party defendant

together with any other alleged tortfeasors, any verdict rendered against the other alleged

tortfeasors shall be reduced by the proportionate share of the Releasees, and any

judgment on said verdict shall be in the amount of the verdict reduced by the

proportionate share of the Releasees, whether or not any of the Releasees was in fact a

joint tortfeasor.  The immediately preceding sentence is intended to obviate the necessity

and expense of any of the Releasees having to appear on the record and participate at its

or their expense in an action merely for the purpose of determining if in fact it was a

tortfeasor so as to entitle the other tortfeasors to a *pro rata* reduction of any verdict.  To

give full force and effect to the foregoing provisions of this paragraph, Plaintiffs

specifically agree to seek to structure any recovery which may be awarded, or any verdict

and/or judgment which may be entered, in any matter to ensure that the Releasees shall

never be obligated to pay to any Plaintiffs or to any other tortfeasors anything other than

the Settlement Relief afforded pursuant to this Agreement in connection with any claim

or liability within the scope of the Release herein.

### C.    Order Of Dismissal

The Parties will seek and obtain from the Court, as a condition of Settlement, a

Final Order and Judgment as further described below in Section XIII.  The Final Order

and Judgment shall, among other things, (1) approve the Agreement as fair, reasonable,

and adequate; and (2) dismiss the Action (including the Complaint and the complaints

listed in Section I.A.2) with prejudice and on the merits with jurisdiction retained to enforce the terms of this Agreement.

## XI.   ATTORNEYS' FEES, COSTS, AND EXPENSES

A.     Plaintiffs' Counsel will make, and Defendants agree not to oppose, an application for the award of attorneys' fees and costs in the aggregate amount of $18,250,000.00 (the "Stipulated Fees and Costs").

1.     Within ten (10) days after the Preliminary Approval Date (or, with the consent of Plaintiffs' Counsel or by leave of Court, such later date as may reasonably be required for the arrangements and related documentation with the financial institution(s) to be completed), Defendants shall cause the full amount of the Stipulated Fees and Costs to be deposited in an interest-bearing escrow account or accounts (a) established with a financial institution or institutions designated by Plaintiffs' Counsel, subject to the approval of Defendants, such approval not to be unreasonably withheld, and (b) otherwise maintained in accordance with the terms and conditions of an escrow agreement substantially in the form of Exhibit J, or such other form as may be agreed to by Plaintiffs' Counsel and Defendants.

2.     If the Court grants the Parties' motion for final approval of the Settlement, then not later than five (5) business days after the Final Settlement Date, the lowest of the following amounts shall be withdrawn from the escrow account(s), along with the corresponding proportion of the interest that was credited on the withdrawn amount in the escrow account(s), and paid to Plaintiffs' Counsel (or to the order of an

account designated by Plaintiffs' Counsel): (a) the Stipulated Fees and Costs; (b) the

award of attorneys' fees and costs as ultimately approved and awarded by the Court in the

Final Order and Judgment (the "Fees and Costs Award"); (c) if the Fees and Costs Award

is reduced by a court after entry of the Final Order and Judgment, the amount of the Fees

and Costs Award, as so reduced.  If any funds remain in the escrow account(s) after the

withdrawal contemplated in the immediately preceding sentence, the remaining

balance(s) in the escrow account(s) shall be withdrawn and returned to, or otherwise

transferred as directed by, Defendants.  If this Agreement is terminated pursuant to

Section XIV, then within five (5) business days after such termination the entire

aggregate balance(s) in the escrow account(s) shall be withdrawn therefrom and returned

to, or otherwise transferred as directed by, Defendants.  In any event, if the Court denies

the Parties' motion for final approval of the Settlement, then within five (5) business days

after the date of the Court's order denying such motion, the entire aggregate balance(s) in

the escrow account(s) shall be withdrawn therefrom and returned to, or otherwise

transferred as directed by, Defendants.  The escrow agreement(s) shall be consistent with

this paragraph, and the Parties and Parties' Counsel shall give instructions to the escrow

agent(s) and otherwise take actions in respect of the escrow agreement(s) that comply

with and give effect to this paragraph.

B.      Plaintiffs' Counsel will, in their sole discretion, allocate and distribute the

fees and costs that they receive pursuant to this Agreement among Plaintiffs' Counsel and

any and all other counsel for Plaintiffs.  Disagreements, if any, between Plaintiffs'

Counsel and any such other counsel for Plaintiffs in this matter relating to any such fees

and costs or the Fees and Costs Award, or to their individual shares of any such fees and costs, will have no impact on the effectiveness or the implementation of this Agreement, nor will such disagreements increase, modify, or otherwise affect the obligations imposed upon Defendants by this Agreement.  Plaintiffs' Counsel, jointly and severally, shall indemnify and hold harmless Defendants and the other Releasees for, from, and against any and all claims, actions, suits, proceedings, costs, expenses, damages, losses, and liabilities of any kind whatsoever brought against, incurred by, or sought to be imposed on Defendants and/or the other Releasees arising from or relating in any way to a claim by any such other counsel for Plaintiffs, or any other person or entity, with respect to a share of fees and costs received by Plaintiffs' Counsel pursuant to this Agreement or the Fees and Costs Award, or otherwise with respect to any fees, costs, or expenses claimed to be owed in connection with the representation of any of the Plaintiffs in or connection with the Action.

C.      Defendants will bear administrative expenses reasonably incurred after the execution of this Agreement, including:  publication, printing, and mailing costs of the Class Notice and the Post-Settlement Mailing; post-office box rental costs; processing costs for requests for exclusion; fees of and disbursements to the independent Settlement Administrator; processing costs for Election Forms; administration costs of the General Policy Relief; and administration costs of the Claim Review Process, but excluding all costs, fees (including attorneys' fees), expenses, and disbursements incurred by or for Plaintiffs or Plaintiffs' Counsel or anyone retained by Plaintiffs or Plaintiffs' Counsel. Notwithstanding anything herein, (1) the amount payable to Plaintiffs' Counsel pursuant

to Section XI.A.2 is the total amount to which Plaintiffs' Counsel and any and all other counsel for Plaintiffs will be entitled to receive from Defendants or the Releasees with respect to the Settlement, the administration of the Settlement, and all matters described in this Agreement, and (2) any and all obligations of Defendants with respect to the making of payments to Plaintiffs' Counsel and/or such other counsel for Plaintiffs for attorneys' fees, expenses, disbursements, or any other matter relating to the Settlement shall be deemed fully satisfied upon the deposit into the escrow account(s) of funds in an aggregate amount equal to the Stipulated Fees and Costs pursuant to Section XI.A.1, and Defendants shall have no obligation whatsoever to make any further deposits or to make any additional payments to Plaintiffs' Counsel and/or such other counsel for Plaintiffs for attorneys' fees, expenses, disbursements, or any other matter relating to the Settlement even if any funds deposited into the escrow account(s) are not ultimately received by Plaintiffs' Counsel due to the insolvency of the financial institution or otherwise.

D.     Plaintiffs' Counsel will make, and Defendants agree not to oppose, an application for an award of additional payments to each of the Named Plaintiffs, depending on the extent of his or her active involvement in this Action, in an aggregate amount not to exceed $115,000.00 for all Named Plaintiffs collectively.

1.     These additional payments shall be made to each of the Named Plaintiffs in addition to, and shall not diminish or prejudice in any way, any General Policy Relief or Claim Process Relief which he or she may be eligible to receive.

94

2.      All sums to be paid to any Named Plaintiff pursuant to this Section XI.D shall be paid by Defendants within five (5) business days after the Final Settlement Date, subject to the conditions of this Section XI.

E.      Defendants shall not be liable or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person, either directly or indirectly, in connection with the Action, this Agreement, or the proposed Settlement, other than those expressly provided in this Agreement as being payable by Defendants.

## XII.   ORDER OF NOTICE, SETTLEMENT HEARING, AND ADMINISTRATION

A.      As soon as practicable after the execution of this Agreement, the Parties shall submit this Agreement, including all attached exhibits and annexes, to the Court and seek and obtain from the Court an order granting preliminary approval of the Settlement, in the form of Exhibit G, which, unless otherwise agreed to by the Parties:

1.      Preliminarily certifies the Class for Settlement purposes only;

2.      Finds that the proposed Settlement is sufficient to warrant sending notice of Settlement to the Class;

3.      Schedules the Fairness Hearing to be held on November 4, 2009, or such later date as the Court may direct, to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be approved by the Court;

4.      Approves the proposed Class Notice Package and notice methodology described in this Agreement;

95

5.     Directs Defendants or their designee(s) to cause the Class Notice Package(s) to be mailed to the last known address of each reasonably identifiable person and entity in the Class by first-class mail, postage prepaid, no later than 70 days before the Fairness Hearing, as described in this Agreement;

6.     Determines that the Class Notice Package, and the internet web site described in Section VII.E:  (a) is the best practicable notice; (b) is reasonably calculated, under the circumstances, to apprise the Class of the pendency of the Action and of their right to object to or exclude themselves from the proposed Settlement; (c) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (d) meets all applicable requirements of applicable law;

7.     Rules that the Settlement Administrator shall (a) remail any Class Notices returned by the U.S. Postal Service with forwarding addresses, (b) research any returned Class Notices that do not include a forwarding address, or retain an address research service selected by the Settlement Administrator to conduct such research and provide the addresses of any such returned Class Notices to the address research service as soon as practicable following receipt.  In addition, the order shall provide that (i) the address research service shall return to the Settlement Administrator, as soon as is practicable, either an updated address or a statement that, following due research, it has not been able to update that address; and (ii) the Settlement Administrator shall remail a Class Notice to every person and entity in the Class for which it or the address research service provides an updated address;

8.     Requires the Settlement Administrator to file proof of the mailing of the Class Notice Package at or before the Fairness Hearing;

9.     Authorizes Defendants, including Agents or other representatives and any other retained personnel, to communicate with Class Members concerning Contract values and the normal administration and servicing of the Contracts and to engage in any other communications within the normal course of Defendants' business;

10.     Requires each person and entity in the Class, as defined herein, that wishes to be excluded from the Class to submit to the Settlement Administrator an appropriate and timely submitted written request for exclusion, by U.S. mail postmarked no later than 45 days after the date of the Class Notice;

11.     Preliminarily enjoins all Class Members from (except to the extent a Class Member is entitled to seek and/or receive relief pursuant to the settlement agreement encompassed in the Consent Order for Final Judgment, effective October 22, 2008, by and among the State of Minnesota, by and through its Attorney General, Lori Swanson, Aviva USA Corporation (f/k/a AmerUs Group Co.), American Investors Life Insurance Company, Inc., and Aviva Life and Annuity Company (f/k/a AmerUs Life Insurance Company)) filing, commencing, prosecuting, maintaining, intervening in, participating in as class members or otherwise, or receiving any benefits from, any lawsuit, arbitration, administrative or regulatory proceeding or order in any jurisdiction, based on or relating to the Released Transactions or the claims or causes of action, or the facts and circumstances relating thereto, alleged in the Complaint or any other complaint filed in the Action, and preliminarily enjoining all persons from filing,

97

commencing, prosecuting, or maintaining a lawsuit as a class action (including by

seeking to amend a pending complaint to include class allegations or by seeking class

certification in a pending action in any jurisdiction) on behalf of any Class Members,

based on or relating to the Released Transactions or the claims and causes of action, or

the facts and circumstances relating thereto, alleged in the Complaint or any other

complaint filed in the Action;

12.     Requires that all Class Members who want to qualify an eligible 65-

and-Over Contract for the enhanced General Policy Relief or to participate in the Claim

Review Process with respect to any Contracts return their Election Forms contained in the

Class Notice Package, properly completed for enhanced General Policy Relief or the

Claim Review Process, as the case may be, by U.S. mail postmarked no later than 20

days after the date of the Fairness Hearing;

13.     Rules that every person and entity in the Class, as defined herein,

that does not submit a timely, written request for exclusion from the Class shall be bound

by all proceedings, orders, and judgments in the Action, even if such person or entity has

previously initiated or subsequently initiates individual litigation or other proceedings

against any Defendant(s) or Releasee(s) relating to Company Annuities issued during the

Class Period;

14.     Requires each Class Member who wishes to object to the fairness,

reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or

to the Stipulated Fees and Costs, to submit to the Clerk of the Court, the Settlement

Administrator, and Parties' Counsel, by U.S. mail postmarked no later than 45 days after

the date of the Class Notice, a statement of the objection, as well as the specific reasons

for each objection, including any legal support the Class Member wishes to bring to the

Court's attention and any evidence the Class Member wishes to introduce in support of

his or her objection, or be forever barred from separately objecting;

        15.    Requires any attorney hired by a Class Member at the Class

Member's expense for the purpose of objecting to this Agreement or the proposed

Settlement, or to the Stipulated Fees and Costs, to file an entry of appearance with the

Clerk of the Court no later than 45 days after the date of the Class Notice and to send a

copy of such entry of appearance to the Settlement Administrator and Parties' Counsel by

U.S. mail postmarked no later than 45 days after the date of the Class Notice;

        16.    Requires any Class Member who files and serves a written objection

and who intends to make an appearance at the Fairness Hearing, either in person or

through personal counsel hired at the Class Member's expense, to file with the Clerk of

the Court and to mail to the Settlement Administrator and Parties' Counsel a notice of

intention to appear at the Fairness Hearing, which must be postmarked no later than 45

days after the date of the Class Notice;

        17.    Authorizes Defendants (a) to establish the means necessary to

administer the proposed Settlement Relief, process Election Forms, and implement the

Claim Review Process in accordance with the terms of the Agreement; and (b) to retain a

Settlement Administrator in accordance with Sections III.K and VII.G;

        18.    Directs the Settlement Administrator or its designated agents to rent

one or more post-office boxes in the name of the Clerk of the Court, to be used for

receiving requests for exclusion and any other communications, and providing that, other than the Court or the Clerk of the Court, only the Settlement Administrator and its designated agents shall have access to these post-office boxes;

19.     Directs Plaintiffs' Counsel and counsel for Defendants promptly to furnish each other with copies of any and all objections or written requests for exclusion that might come into their possession; and

20.     Contains any additional provisions that might be necessary to implement and administer the terms of this Agreement and the proposed Settlement.

B.     Named Plaintiffs and their successors, heirs, and assigns, in their individual and representative capacities, shall not file an appeal from or otherwise seek review of any order approving the Settlement set forth in this Agreement.

## XIII.  FINAL APPROVAL AND FINAL ORDER AND JUDGMENT

A.     After the Fairness Hearing, and upon the Court's approval of this Agreement, the Parties shall seek and obtain from the Court a Final Order and Judgment, essentially identical to the form attached hereto as Exhibit H.  The Final Order and Judgment shall, among other things, include the elements specified below.

B.     The Final Order and Judgment shall find that the Court has personal jurisdiction over all Class Members and that the Court has subject matter jurisdiction to approve this Agreement and all exhibits hereto.

C.     The Final Order and Judgment shall finally certify the Class for Settlement purposes.

D.      The Final Order and Judgment shall approve this Agreement and the proposed Settlement as fair, reasonable, and adequate, and consistent and in compliance with the provisions of the United States Constitution and all other applicable law, as to, and in the best interests of, each of the Parties and the Class Members; direct the Parties and their counsel to implement and consummate this Agreement according to its terms and provisions; and declare this Agreement to be binding on, and to have preclusive effect in pending and future lawsuits, arbitrations, or other proceedings maintained by or on behalf of Plaintiffs, as well as their heirs, executors and administrators, successors, and assigns.

E.      The Final Order and Judgment shall find that the Class Notice Package and the internet web site and the notice methodology implemented pursuant to this Agreement:  (1) constituted the best practicable notice; (2) constituted notice that was reasonably calculated, under the circumstances, to apprise the Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Settlement, and their right to appear at the Fairness Hearing; (3) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) met all requirements of the United States Constitution and all other applicable law and procedural rules.

F.      The Final Order and Judgment shall find that Plaintiffs' Counsel adequately represent the Class for purposes of entering into and implementing the Settlement.

G.      The Final Order and Judgment shall approve the Settlement Administrator(s).

101

H.      The Final Order and Judgment shall authorize the Parties and Parties'
Counsel to communicate with Class Members and Owners as contemplated in this
Agreement.

I.      The Final Order and Judgment shall dismiss all of the putative class actions
encompassed in the Action (including the Complaint and all complaints filed in the
putative class action lawsuits listed in Section I.A.2), and all claims asserted therein or
otherwise presented thereby, on the merits and with prejudice, without fees or costs to
any party except as provided in this Agreement.

J.      The Final Order and Judgment shall incorporate the Release provisions set
forth in Section X, and forever discharge the Releasees from any and all claims and
liabilities within the scope of the Release herein.

K.      The Final Order and Judgment shall permanently bar and enjoin (1) all
Class Members from (except to the extent a Class Member is entitled to seek and/or
receive relief pursuant to the settlement agreement encompassed in the Consent Order for
Final Judgment, effective October 22, 2008, by and among the State of Minnesota, by
and through its Attorney General, Lori Swanson, Aviva USA Corporation (f/k/a AmerUs
Group Co.), American Investors Life Insurance Company, Inc., and Aviva Life and
Annuity Company (f/k/a AmerUs Life Insurance Company)) filing, commencing,
prosecuting, maintaining, intervening in, participating in as class members or otherwise,
or receiving any benefits from, any lawsuit (including putative class action lawsuits),
arbitration, administrative or regulatory proceeding or order in any jurisdiction, based on
or relating to the Released Transactions or the claims or causes of action, or the facts and

102

circumstances relating thereto, alleged in the Complaint or any other complaint filed in the Action; and (2) all persons from organizing any Class Members into a separate class for purposes of pursuing as a putative class action any lawsuit, arbitration, or other legal proceeding or action (including by seeking to amend a pending complaint to include class allegations, or seeking class certification in a pending action) based on or relating to the Released Transactions or the claims or causes of action, or the facts and circumstances relating thereto, alleged in the Complaint or any other complaint filed in the Action;

L.     The Final Order and Judgment shall authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of this Agreement and all exhibits attached hereto as (1) are consistent with the Final Order and Judgment, and (2) do not unreasonably limit the rights of Class Members under the Agreement.

M.     The Final Order and Judgment shall require that any appeal (1) be preceded by (a) a timely objection to the Settlement filed in accordance with the requirements of this Agreement or a request to intervene upon a representation of inadequacy of counsel, (b) a request for a stay of implementation of the Settlement, and (c) posting of an appropriate bond, and (2) absent satisfaction of each of these three requirements, shall authorize Defendants, at their sole option and in their sole discretion, to proceed with implementation of the Settlement, even if such implementation would moot the appeal.

N.     The Court shall, without affecting the finality of the Final Order and Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of this Agreement and the

103

Final Order and Judgment, and for any other necessary purpose; provided, however, that nothing in this paragraph shall restrict the ability of the Parties to exercise their rights under this Agreement that are not in conflict with the Final Order and Judgment.

O.     The Final Order and Judgment shall incorporate any other provisions, as the Court deems necessary and just.

## XIV.  MODIFICATION OR TERMINATION OF THIS AGREEMENT

A.     The terms and provisions of this Agreement may be amended, modified, or expanded by agreement of the Parties and approval of the Court; provided, however, the Parties may by agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including the exhibits hereto) without notice to or approval by the Court if such changes are consistent with the Court's Final Order and Judgment and do not unreasonably limit the rights of Class Members under this Agreement.

B.     The Parties may agree to implement the terms of the Settlement prior to the Final Settlement Date in accordance with the terms, conditions, dates, and time periods specified in this Agreement; provided, however, that (1) the Claim Review Process and all related procedures and matters shall be suspended upon the filing of a Notice of Appeal of the Final Order and Judgment that meets the requirements of the Final Order and Judgment or is otherwise judicially determined as being a valid Notice of Appeal; and (2) Defendants shall in no event have any obligation to pay, credit, implement, or otherwise effect any Settlement Relief prior to the Final Settlement Date.

C.     This Agreement shall terminate at the sole option and discretion of Defendants or Plaintiffs if:  (1) the Court, any appellate court, or any regulator rejects, objects to, modifies, alters, expands, or denies approval of any portion of this Agreement or the proposed Settlement that the terminating party in good faith reasonably determine(s) is material, including, without limitation, the terms of Settlement Relief, the findings or conclusions of the Court, the provisions relating to notice, the definition of the Class or Class Member, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or modifies, alters, or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in good faith reasonably believe(s) is material.  The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this paragraph, no later than 20 days after receiving notice of the event prompting the termination.

D.     Notwithstanding the preceding paragraph, Plaintiffs may not terminate this Agreement solely because of the amount of attorneys' fees and costs awarded by the Court or any appellate court(s).  Defendants, however, may elect to terminate this Agreement if the amount of attorneys' fees and costs awarded exceeds the Stipulated Fees and Costs.

E.     Notwithstanding anything in this Agreement, if the total number of persons and/or entities in the Class who submit requests for exclusion from the Class, or on whose behalf requests for such exclusion are submitted, exceeds the number set forth in the confidential letter agreement between the Parties executed and delivered as of the

Execution Date, Defendants shall have the option, in their sole and absolute discretion exercised no later than 14 days after the date set by the Court as the postmark deadline for the submission of requests for exclusion, to withdraw from the Settlement and terminate this Agreement.  For the purposes of this paragraph only, if more than one current or former Owner of the same Contract (referred to in this paragraph as the "first Contract") submits a request for exclusion, the requests for exclusion submitted by all such Owners shall be counted as one request for exclusion; provided, however, that if any of such Owners also is a current or former Owner of a different Contract that is or was not owned by the same persons or entities that were the Owners of the first Contract (referred to in this paragraph as a "different Contract"), it shall be deemed that an additional, separately counted request for exclusion has been submitted for each such Owner who also is a current or former owner of a "different" Contract.

F.      If an option to withdraw from and terminate this Agreement arises under the preceding paragraphs in this Section XIV:  (1) neither Defendants nor Plaintiffs are required for any reason or under any circumstance to exercise that option; and (2) any exercise of that option shall be made in good faith.

G.      If this Agreement is terminated pursuant to the preceding paragraphs in this Section XIV, then:

1.      This Agreement shall be null and void and shall have no force or effect, and no party to this Agreement shall be bound by any of its terms, except for the terms of this paragraph G in this Section XIV, the last two sentences of Section XI.A.2, and Sections XV.B, XV.C, and XV.D;

2.	All provisions of this Agreement, and all negotiations, statements, and proceedings relating to this Agreement, shall be without prejudice to the rights of Defendants, Named Plaintiffs, or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement;

3.	Releasees, including Defendants, expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action, including, without limitation, any applicable statutes of limitation and the argument that the Action may not be litigated as a class action;

4.	Plaintiffs, on behalf of themselves and their heirs, assigns, executors, administrators, and successors, expressly and affirmatively reserve and do not waive all motions as to, and arguments in support of, all claims, causes of actions, or remedies that have been or might later be asserted in the Action, including, without limitation, any argument concerning class certification, equitable tolling, and statutes of limitations;

5.	This Agreement, the fact of its having been made, the negotiations leading to it, and/or any action taken by a Party or Class Member pursuant to this Agreement shall not be admissible or entered into evidence for any purpose whatsoever in any legal proceeding; and

6.	Any order or judgment entered after the date of this Agreement, which directly or indirectly relates to this Agreement, shall be deemed vacated and shall be without any force or effect.

## XV.   GENERAL MATTERS AND RESERVATIONS

A.     The obligation of the Parties to conclude the Settlement is and shall be contingent on each of the following:

1.     Approval of the Settlement by the Boards of Directors of Defendants, which approval shall be sought prior to the filing of the motion requesting the Court's preliminary approval of the Settlement.  In addition, if this Agreement or the terms and conditions of the Settlement are modified in any material respect, the obligation of the Defendants to conclude the Settlement, as so modified, shall be subject to and contingent on approval of such modification by their respective Boards of Directors.

2.     The absence of objections to the Settlement by state insurance commissioners or other regulators having jurisdiction over any of the Defendants.

3.     Entry by the Court of the Final Order and Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s).

4.     Any other conditions stated in this Agreement.

B.     The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the motion requesting the Court's preliminary approval of the Settlement is filed; provided, however, that this paragraph shall not prevent the disclosure of such information prior to the filing of such motion to (1) regulators, rating agencies, independent accountants, advisors, financial analysts, Agents, insurers or reinsurers, Named Plaintiffs, experts, courts, co-counsel, and/or Settlement

Administrator(s) as may reasonably be required to effectuate the terms and conditions of this Agreement or as otherwise required to comply with any applicable law or regulation, or (2) any other person or entity to whom the Parties agree disclosure must be made to effectuate the terms and conditions of this Agreement.  If disclosure of the existence and/or contents of this Agreement is made pursuant to the preceding sentence, to the extent the recipient of the disclosure is not already subject to an obligation of confidentiality to the disclosing Party, such Party will make reasonable efforts to secure the recipient's undertaking to maintain the existence and contents of this Agreement strictly confidential and to use such information only for the purpose for which the disclosure is made.

C.     The Parties and their counsel agree that the Confidential Information made available to them through the discovery process was made available on the condition that neither the Parties nor their counsel may disclose it to third parties except in accordance with the terms of the Protective Order entered in this Action on June 14, 2007.

D.     The Parties and their counsel further agree that their discussions and the information exchanged in the course of negotiating this Settlement are confidential under the terms of the mediation agreement signed by the Parties in connection with the mediation commencing on July 11, 2008.  Such exchanged information was made available on the condition that neither the Parties nor their counsel may disclose it to third parties (other than experts or consultants retained by the Parties in connection with this case), that it not be the subject of public comment, and that it not be publicly disclosed or used by the Parties or their counsel in any way in the Action should it not settle, or in any

109

other proceeding; <u>provided</u>, <u>however</u>, that nothing contained herein shall prohibit the Parties from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the Settlement of the Action.

E.    The Parties will attempt to resolve any disputes that may arise concerning the interpretation of this Agreement in good faith.  If the Parties fail to resolve the dispute, the Court retains jurisdiction to resolve such disputes.

F.    Unless Plaintiffs' Counsel and Defendants agree to an extension of this deadline, and except as otherwise specified below in this Section XV.F, within 60 days after the Claim Review Completion Date (unless an appeal from an objection to the Settlement is pending, in which case the date shall be within 60 days after any appeal from an objection to the Settlement is finally disposed of) or promptly after termination of this Agreement, whichever comes first, Plaintiffs and their counsel shall either destroy or return to counsel for Defendants all documents (and all copies of such documents in whatever form made or maintained) produced by Defendants in this Action and the transcripts of any and all statements, interviews, and depositions provided by any Defendants or their current or former officers, employees, or agents, and any exhibits to those statements, interviews, and depositions.  If any such documents and materials are destroyed in lieu of return to counsel for Defendants, Plaintiffs' Counsel shall deliver to counsel for Defendants an affidavit to the effect that such documents and materials have been destroyed and identifying the destroyed documents and materials.

1.    Notwithstanding the foregoing, Plaintiffs' Counsel may retain:

110

a.      copies of all pleadings, motions, briefs, and other materials filed with or submitted to the Court in this action, including all exhibits to such pleadings, motions, briefs, and other submissions;

b.      copies of transcripts of the depositions taken in this Action of witnesses represented by Plaintiffs' Counsel, including all exhibits to such deposition transcripts; and

c.      copies of all expert reports produced by Plaintiffs in this Action, including all exhibits and other materials produced in connection with such expert reports.

G.      By execution of this Agreement, Defendants do not intend to release any claim against any insurer for any cost or expense hereunder, including, without limitation, attorneys' fees and costs.

H.      Plaintiffs' Counsel represent that they:  (1) are authorized to enter into this Agreement on behalf of Plaintiffs, and (2) are seeking to protect the interests of the entire Class.

I.      Named Plaintiffs represent and certify that:  (1) they have agreed to serve as representatives of the Class proposed to be certified for settlement purposes herein; (2) they remain willing, able, and ready to perform all of the duties and obligations of a representative of the Class; (3) they are familiar with the allegations in this Action, including the Complaint, or have had the contents of such allegations described or conveyed to them; (4) they have consulted with Plaintiffs' Counsel about the Action (including discovery conducted in the Action), this Agreement, and the obligations of a

111

representative of the Class; (5) they have authorized Plaintiffs' Counsel to execute this Agreement on their behalf; and (6) they shall remain and serve as a representative of the Class until the terms of this Agreement are effectuated and fully implemented, this Agreement is terminated in accordance with its terms, or, with respect to an individual Named Plaintiff, the Court at any time determines that said Named Plaintiff cannot represent the Class.

J.     Counsel for Defendants represent that they are authorized to enter into this Agreement on behalf of Defendants.

K.     This Agreement, including the exhibits hereto, which are an integral part of this Agreement, sets forth the entire agreement among the Parties with respect to its subject matter, and it may not be altered or modified except by written instrument executed by Plaintiffs' Counsel and counsel for Defendants.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed or referred to in this Agreement exist among or between them.

L.     This Agreement and any ancillary agreements shall be governed by and interpreted in accordance with the laws of the State of Kansas, without reference to its choice of law or conflict of laws rules.

M.     Any action to enforce this Agreement shall be commenced and maintained only in the Court.

N.     Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by facsimile and/or next-day (excluding Saturday and Sunday) express delivery service as follows:

112

1.  If to Defendants, then to:

    James F. Jorden, Esq.
    Jason H. Gould, Esq.
    Jorden Burt LLP
    1025 Thomas Jefferson Street, N.W.
    Suite 400 East
    Washington, DC  20007-5208
    Facsimile:  (202) 965-8104

    - and –

    Anthony N. Cicchetti, Esq.
    Jorden Burt LLP
    175 Powder Forest Drive
    Suite 301
    Simsbury, CT  06089-9658
    Facsimile:  (860) 392-5058

2.  If to Plaintiffs, then to:

    Jonathan Auerbach, Esq.
    Jerome M. Marcus, Esq.
    400 Greenwood Avenue
    Suite 200
    Wyncote, PA  19095
    Facsimile:  (888) 875-0469

    - and -

    John R. Hargrove, Esq.
    21 Southeast 5th Street
    Suite 200
    Boca Raton, FL 33432
    Facsimile:  (561) 391-9448

O.  All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  Each other day of the

113

period to be computed shall be included, including the last day thereof, unless such last day is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the Clerk of the Court inaccessible, in which event the last day of the period shall be the next day that is not one of the aforementioned days.  As used in this Section XV, "legal holiday" includes New Year's Day, Martin Luther King, Jr. Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day and any other day appointed as a holiday by the President or the Congress of the United States.

P.      The Parties reserve the right to agree between themselves on any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

Q.      The Parties agree that (1) this Agreement is clear and unambiguous, has been drafted and negotiated by counsel for the Parties at arm's length, and shall not be construed more strictly against any of the Parties; and (2) no parol or other evidence may be offered to explain, construe, contradict, or clarify the terms of this Agreement, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

R.      Defendants consider it desirable for the Action to be settled and dismissed, because this Settlement will:  (1) provide substantial benefits to present and former Contract holders through processes that provide fair and adequate procedural and substantive protections both to persons and entities in the Class and to Defendants;

114

(2) finally put Plaintiffs' claims and the underlying matters to rest; and (3) avoid the substantial expense, burden, and uncertainties associated with the continued litigation of those claims.  In no event shall this Agreement, any of its provisions or any negotiations, statements, or court proceedings relating to them in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory, or other proceeding, except in a proceeding to enforce this Agreement.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as, or deemed to be evidence or an adjudication, admission, or concession of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, Defendants or Plaintiffs, or as a waiver by Defendants or Plaintiffs of any applicable claims or defenses.  Defendants contend that certification of the Class for litigation purposes would be inappropriate under Federal Rule of Civil Procedure 23.

S.      Neither this Agreement nor any of the relief to be offered under the proposed Settlement shall be interpreted to alter in any way the contractual terms of any Contract, or to constitute a novation of any Contract, except as may be expressly provided by this Agreement or the relief granted in accordance with the terms of this Agreement.  This Agreement does not, and shall not be deemed to, create any fiduciary or similar relationship between Defendants and any of their current, past, or prospective policyholders or contract owners.  This Agreement does not impose, and shall not be deemed to impose, any fiduciary or other similar duty on any of the Defendants, and the

115

Defendants expressly disclaim any fiduciary or other similar duties. The duties and obligations assumed by Defendants are limited to those expressly set forth in this Agreement.

      T.     Punitive or exemplary damages are not available to any Class Member under the proposed Settlement described in this Agreement, and none of the proposed Settlement Relief shall include or constitute, or be deemed to include or constitute, punitive or exemplary damages.

      U.     No opinion concerning the tax consequences of the proposed Settlement to any person or entity in the Class is given or will be given by Defendants, counsel for Defendants, or counsel for Plaintiffs, nor are any representations or warranties in this regard made by virtue of this Agreement. The Class Notice shall direct persons and entities in the Class to consult their own tax advisors regarding the tax consequences of the proposed Settlement, including the tax consequences of any payments, credits, and payment periods provided for hereunder, and any tax reporting obligations they may have with respect thereto. The tax obligations of each person and entity in the Class, and the determination thereof, are the sole responsibility of each such person and entity, and it is understood that the tax consequences of the Settlement may vary depending on the particular circumstances of each such person and entity.

      V.     The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

W.      The Parties, their successors and assigns, and their attorneys agree to cooperate fully with one another in seeking court approval of this Agreement and to use their commercially reasonable best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

X.      AmerUs Group Co., an Iowa corporation, changed its name to Aviva USA Corp. effective January 1, 2008.  All references herein to "AmerUs Group Co." shall include Aviva USA Corp.  AmerUs Life Insurance Company, an Iowa-domiciled stock insurance company, changed its name to Aviva Life and Annuity Company effective November 1, 2007.  All references herein to "AmerUs Life Insurance Company" shall include Aviva Life and Annuity Company.

Y.      This Agreement may be signed in counterparts, each of which shall constitute a duplicate original.

**[THE NEXT PAGE IS THE SIGNATURE PAGE]**

117

Agreed to this ____th day of July, 2009.

APPROVED AND AGREED TO BY AND ON BEHALF OF RICHARD M. AND
DENA F. STEIN, MARY LYNCH, CHARLOTTE AND BERYL PRICE, THE ESTATE
OF JOSEPH HEALY, GEORGE J. MILLER, JEAN RYLES, EVELYN K. EDWARDS,
DOROTHY EDDY, AND MICHAEL J. AND CATHERINE M. QUINN, on behalf of
themselves and the Class Members, and all others similarly situated, and their heirs,
assigns and successors-in-interest

By:   _____
        Jonathan Auerbach, Esq.

By:   _____
        Jerome M. Marcus, Esq.

By:   _____
        John R. Hargrove, Esq.

COUNSEL FOR PLAINTIFFS

APPROVED AND AGREED TO BY AND ON BEHALF OF AMERICAN
INVESTORS LIFE INSURANCE COMPANY, INC., AVIVA USA CORP. (f/k/a
AMERUS GROUP CO.), AMERUS ANNUITY GROUP CO., AVIVA LIFE AND
ANNUITY COMPANY (f/k/a AMERUS LIFE INSURANCE COMPANY), CREATIVE
MARKETING INTERNATIONAL CORPORATION, AND INSURANCE AGENCY
MARKETING SERVICES, INC.

By:   _____
        James F. Jorden, Esq.

By:   _____
        Jason H. Gould, Esq.
        JORDEN BURT LLP
        COUNSEL FOR DEFENDANTS

**Annex A**

**Complaints Filed in Constituent Putative Class Actions**

[Attached]

**Annex B**

**Third Amended Consolidated Class Action Complaint**

[Attached]

**Exhibit A**

**List of Company Annuities**

[Attached]

**Exhibit B**

**Class Notice Package Cover Letter**

[To be added as agreed to by Plaintiffs' Counsel and Defendants, or as otherwise directed by the Court]

**Exhibit C**

**Form of Class Notice**

[Attached]

**Exhibit D**

**Election Form**

[Attached]

**Exhibit E**

**Post-Settlement Mailing Cover Letter for Claim Review**

[Attached]

**Exhibit F**

**Claim Form**

[Attached]

**Exhibit G**

**Form of Order Granting Preliminary Approval of the Settlement**

[Attached]

**Exhibit H**

**Form of Final Order and Judgment**

[Attached]

**Exhibit J**

**Form of Escrow Agreement**

[Attached]

207853