**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

# NOTICE OF CLASS ACTION,
## PROPOSED SETTLEMENT, AND FAIRNESS HEARING

**If you own or previously owned a deferred annuity from American Investors Life Insurance Company or AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company) that was issued between January 1, 1998, and July __, 2009 {insert Preliminary Approval Date}, you may be entitled to benefits from a class action settlement.**

A United States District Court authorized this Notice.  This is not a solicitation from a lawyer.  **You are not being sued.**

You received this Notice because you are listed as being a current or former owner of a deferred annuity policy that is included in the proposed settlement of a class action lawsuit.  The Court directed that this Notice be sent to you because you have a right to know about the proposed settlement, and your rights and options under the proposed settlement, before the Court decides whether to approve it.  This Notice explains the lawsuit, the proposed settlement, your legal rights under the settlement, what settlement benefits are included in the proposed settlement, who is eligible for the proposed settlement benefits, and how the settlement benefits can be obtained if the Court approves the settlement.  Please provide a copy of this Notice to any additional or former owners of your policy if they have not already received it.

**You should consult your own tax advisor regarding the tax consequences to you of the proposed settlement, including, without limitation, the tax consequences of any payments, credits, and payment periods provided for under the proposed settlement, and any tax reporting obligations you may have.**

**QUESTIONS?** CALL 1-8XX-XXX-XXXX (1-8YY-YYY-YYYY FOR THE HEARING-IMPAIRED)
FROM MONDAY THROUGH [_____]
9:00 A.M. (EASTERN) TO [_____] P.M. (EASTERN)

**YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR DO NOT ACT.**

**PLEASE READ THIS NOTICE CAREFULLY AND KEEP IT WITH YOUR POLICY.**

Terms used in this Notice that appear in **bold print** are explained in the "List of Key Terms" included in Appendix A at the back of this Notice.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **DOING NOTHING IN RESPONSE TO THIS NOTICE** | If your **policy** is categorized for purposes of the settlement as **in deferral**, **in annuitization**, or **fully annuitized**, and you do nothing in response to this Notice, that **policy** will be eligible for the *basic* General Policy Relief, subject to certain terms and conditions explained below under question 12 of this Notice. If your **policy** is categorized for purposes of the settlement as **fully surrendered** or a **death benefit policy**, and you do nothing in response to this Notice, you will not receive any settlement benefit. |
| | Regardless of the status or disposition of your **policy**, if you do nothing in response to this Notice, you will give up all rights to sue any of the Defendants in this case – American Investors Life Insurance Company, AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company), AmerUs Group Company (now known as Aviva USA Corporation), AmerUs Annuity Group Co., Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc. – as well as the person(s) who sold your **policy** and certain other released parties included as "Releasees" in the Stipulation of Settlement, concerning the **policy** or the manner in which it was marketed or sold, or any other legal claims that were made or could have been made in this case, as more fully described in the Stipulation of Settlement. The Stipulation of Settlement is the agreement that sets out the terms and conditions of the proposed settlement. A copy of the Stipulation of Settlement is available at www._____ and can also be obtained by contacting the Settlement Administrator at the address and toll-free telephone numbers listed below under question 29 of this Notice. |
| **OBTAINING THE BASIC GENERAL POLICY RELIEF** | If your **policy** is categorized for purposes of the settlement as **in deferral**, **in annuitization**, or **fully annuitized**, that **policy** will be eligible for the *basic* General Policy Relief. This relief gives the **owner** of an eligible **policy** the opportunity to have the annuitant (or the **owner**, in the case of a **fully annuitized** policy) receive a bonus based in most cases on the **policy's** accumulation value and, for a **policy in deferral**, to have annuity payments to the annuitant begin at any time after the first anniversary of the **policy's** issue date and while the **policy** remains **in deferral**. |
| | For a **policy in deferral**, the bonus is received as a credit to the accumulation value, but ***only if*** the **owner** contacts the Company that issued the **policy** to request implementation of the relief. The **policy** is then taken out of deferral and the annuitant receives the accumulation value through periodic annuity payments (with interest) starting as soon as reasonably practicable after the Company receives the paperwork required for implementation, and continuing generally over a period of 4 years if the **policy** has been in effect for at least 5 years, or 7 years if it has not. |

| | |
|---|---|
| **OBTAINING THE BASIC GENERAL POLICY RELIEF (CONTINUED)** | For a **policy in annuitization**, the bonus is paid in equal installments with the remaining annuity payments to the annuitant, again *if* the **owner** contacts the Company that issued the policy to request implementation of the relief. For a **fully annuitized policy**, the bonus is paid in a lump sum to the person who was the **owner** of the **policy** when it was annuitized; no request for implementation is required. This is all explained in more detail under question 12 of this Notice.

The amount of the bonus, and how and when it is received, are additional **policy** benefits that may be available to you under the settlement, that will vary depending on the status of the **policy**, and that can affect the amount of annuity payments and when such annuity payments are received. Therefore, if your **policy** is categorized as **in deferral** or **in annuitization**, and you decide that you want the *basic* General Policy Relief applied to your **policy**, you will need to contact the Company that issued your **policy** to request implementation of the relief. However, you do *__not__* have to implement the relief and can always keep your **policy in deferral** or **in annuitization** as is. Doing so, however, will result in no bonus being received for that **policy**.

The *basic* General Policy Relief will **NOT** be available if you or another **owner** (if any) of your **policy** (1) requests to be excluded from the settlement, or (2) submits an Election Form for the enhanced General Policy Relief or a Claim for Claim Process Relief, as described below. |
| **OBTAINING ENHANCED GENERAL POLICY RELIEF** | If your **policy** is categorized for purposes of the settlement as **in deferral**, **in annuitization**, or **fully annuitized** *__and__* is a **65-and-Over Contract** – meaning that each original **owner** of the **policy** when it was issued (or the annuitant of the **policy** if no original owner was a natural person) was at least 65 years of age when the **policy** was issued – you may complete and return (by U.S. mail) Part I of the enclosed Election Form for *enhanced* General Policy Relief. The postmark deadline for mailing Part I of the Election Form is **November 26, 2009**.

The *enhanced* General Policy Relief for an eligible **65-and-Over Contract** is the same as the *basic* General Policy Relief, except that the amount of the bonus may be higher. The bonus amount will depend on certain information concerning the age and liquid net worth of the original owner(s) of the **policy**, which you must provide in the Election Form. As with the *basic* General Policy Relief, you will need to contact the Company that issued your **policy** if you want to implement the *enhanced* General Policy Relief for a **policy in deferral** or a **policy in annuitization**. This is all explained in more detail below under question 12.

The *enhanced* General Policy Relief will **NOT** be available if you or another **owner** (if any) of your **policy** (1) requests to be excluded from the settlement, or (2) submits an Election Form to participate in the Claim Review Process for Claim Process Relief, described below. |

| | |
|---|---|
| **SUBMITTING A CLAIM FOR CLAIM PROCESS RELIEF** | Through the Claim Review Process, you may submit and attempt to prove a Claim for the Claim Process Relief described under question 13 of this Notice. To participate in this process, you must complete and return (by U.S. mail) Part II of the enclosed Election Form and, later, a Claim Form that will be sent to you if and after the Court gives final approval to this settlement. The postmark deadline for mailing Part II of the Election Form is **November 26, 2009**.<br><br>You **CANNOT** participate in the Claim Review Process for your **policy** if you or another **owner** (if any) of the **policy** requests to be excluded from the settlement. If you submit a Claim for Claim Process Relief for your **policy**, it will **NOT** be eligible for any General Policy Relief. |
| **EXCLUDING YOURSELF** | You may exclude yourself from the proposed settlement. If you exclude yourself, you will receive no settlement benefits whatsoever. This is the only option that allows you ever to be part of any other lawsuit against any of the Defendants or other released parties included as "Releasees" in the Stipulation of Settlement about your **policy** or the manner in which it was marketed or sold, or to make any other legal claims that were or could have been made in this case against any of the Defendants and other Releasees. All exclusion requests must be submitted by U.S. mail to the address listed below under question 17 of this Notice – postmarked no later than _____ __, 2009 {**insert date that is 45 days after date of Notice appearing on last page**}. |
| **OBJECTING** | If you do not like the proposed settlement and you do not exclude yourself, you may write to the Court to object and explain why. All objections must be submitted by U.S. mail to the addresses listed below under question 22 of this Notice, postmarked no later than _____ __, 2009 {**insert date that is 45 days after date of Notice appearing on last page**}. If you submit a written objection, the Court will take it into account in considering whether to approve the settlement. |
| **SPEAKING AT THE FAIRNESS HEARING** | You may ask to speak in Court about the fairness of the settlement at the Fairness Hearing set for **November 6, 2009**, but **ONLY** if you do not exclude yourself from the settlement **AND** you properly and timely submit a written objection and a notice of intention to appear, as instructed under questions 22 and 26 of this Notice. |

These rights and options – and the procedures and deadlines to exercise them – are explained in more detail below. Please note, however, that this Notice is only a summary of the terms and conditions of the proposed settlement. For a complete description of the terms and conditions of the proposed settlement, you should read the agreement called the Stipulation of Settlement, which was filed with the Court and is available at the following web site: www._____. A copy of the Stipulation of Settlement also can be obtained by contacting the Settlement Administrator at the address and toll-free telephone numbers listed below under question 29 of this Notice.

The Court in charge of this case still has to decide whether to approve the settlement. **Settlement benefits will be available only if and after the Court approves the settlement.** Please be patient.

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ............................................................ PAGE 7
1. Why did I get this Notice?
2. What is this lawsuit about?
3. Why is this a class action?
4. Why is there a settlement?

**WHO IS COVERED BY THE SETTLEMENT?** ............................................ PAGE 8
5. How do I know if I am part of the settlement Class?
6. Are there exceptions to being included in the settlement Class?
7. Are there exceptions to being eligible for settlement benefits?
8. Are beneficiaries under the policies entitled to relief?
9. Can I participate in the settlement if I live outside the United States?
10. I'm still not sure if I am included in the settlement.

**THE SETTLEMENT BENEFITS – WHAT YOU CAN GET** ........................... PAGE 10
11. What benefits does the settlement generally provide?
12. What is General Policy Relief, and how can I obtain it?
13. What is Claim Process Relief, and how can I obtain it?
14. When would I get my settlement benefit?
15. What am I giving up to get a settlement benefit or stay in the Class?
16. What is the non-economic settlement relief?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ............................... PAGE 21
17. How do I get out of the settlement?
18. If I don't exclude myself, can I sue the Defendants for the same thing later?
19. If I exclude myself, can I get any benefit from this settlement?

**THE LAWYERS REPRESENTING YOU** ..................................................... PAGE 22
20. Do I have a lawyer in the case?
21. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ......................................................... PAGE 23
22. How do I tell the Court that I don't like the settlement?
23. What's the difference between objecting and excluding myself?

**THE COURT'S FAIRNESS HEARING** ....................................................... PAGE 24
24. When and where will the Court decide whether to approve the settlement?
25. Do I have to come to the hearing?
26. May I speak at the hearing?

**IF YOU DO NOTHING** ......................................................................... PAGE 25
27. What happens if I do nothing at all in response to this Notice?

**GETTING MORE INFORMATION** ............................................................ PAGE 25
28. Are more details about the settlement available?
29. How do I get more information?

**APPENDIX A: LIST OF KEY TERMS** ..................................................... PAGE 27
**APPENDIX B: POLICIES COVERED BY THE SETTLEMENT** ...................................... PAGE 29
**APPENDIX C: ENHANCED GENERAL POLICY RELIEF TABLE** ................................ PAGE 35
**APPENDIX D: SCORING GUIDELINES AND SCORING FACTORS** ............................ PAGE 36
**APPENDIX E: INSTRUCTIONS FOR IMPLEMENTING GENERAL POLICY RELIEF** ..... PAGE 39

# BASIC INFORMATION

## 1. Why did I get this Notice?

You received this Notice because you are listed as being a current or former **owner** of an annuity policy that is included in the proposed settlement of a class action lawsuit. The Court directed that the parties send you this Notice because you have a right to know about the proposed settlement, and about your rights and options under the proposed settlement, before the Court decides whether to approve it.

The Court in charge of the case is the United States District Court for the Eastern District of Pennsylvania, and the case is known as *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*, MDL Docket No. 1712. The people who sued are called the Plaintiffs, and the companies they sued – American Investors Life Insurance Company, AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company), AmerUs Group Company (now known as Aviva USA Corporation), AmerUs Annuity Group Co., Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc. – are referred to in this Notice as the Defendants.

If the Court approves the settlement, the Defendants will provide the settlement relief benefits provided for in the approved settlement.

## 2. What is this lawsuit about?

The case covered by the proposed settlement involves several putative class action complaints that were brought against the Defendants and others. These complaints alleged, among other things, that sales agents, marketing organizations, trust attorneys, and annuity companies marketed and sold annuity policies that were unsuitable given the circumstances of the purchasers or the annuitants under the policies, and that those marketing and sales efforts in some cases included the provision of estate or financial planning services. These complaints also alleged that the defendants named therein failed to disclose substantial surrender charges associated with the annuities sold; failed to disclose that the annuities had maturity dates beyond the annuitants' life expectancies; collectively represented the annuities as suitable investments for the purchasers notwithstanding the alleged fact that, because of various factors including the illiquidity of the annuities and the actual rate of return on purchasers' funds, the annuities were unsuitable investments for the purchasers; and failed to fully and accurately represent to purchasers the benefits under the annuities. Certain of these complaints also alleged that some defendants engaged in churning activities by persuading purchasers to surrender existing annuities and investments or to borrow against the cash value in existing insurance policies, and that such defendants failed to train and supervise their annuity sales force. Several of the complaints further alleged that the sales of certain annuities were improper because, given the ages of the purchasers or the annuitants, their normal life expectancies were shorter than the surrender charge and deferral periods under the annuities, rendering the annuities per se unsuitable.

The Defendants dispute all of these claims. The Defendants deny that they did anything wrong in the sale of the annuity policies, and maintain that they have designed, produced, marketed, and administered the annuity policies correctly, in accordance with their terms and all applicable laws.

## 3. Why is this a class action?

In a class action, one or more people, called Class Representatives (in this case, Richard M. and Dena F. Stein and nine other persons), sue on behalf of people who allegedly have similar claims. All of these people together are a class. One court resolves the issues for all members of the class, except for those who exclude themselves from the class. Although this case has been brought as a class action, the Court in charge of the case has preliminarily certified a Class only for the purposes of settlement, and has not otherwise decided whether it should be certified as a class action.

## 4. Why is there a settlement?

The Court did not decide in favor of the Plaintiffs or the Defendants. Instead, both sides agreed to a settlement before the case proceeded to a trial. The Class Representatives and their attorneys think the settlement is best for all members of the proposed settlement Class.

# WHO IS COVERED BY THE SETTLEMENT?

To determine if you can get any settlement benefits from this settlement if the Court approves it, you first have to establish that you are a member of the settlement Class.

## 5. How do I know if I am part of the settlement Class?

The Class for this settlement includes every person or entity that, during the Class Period, was a purchaser or an **owner** of a deferred annuity policy having a product name or a policy form number listed in Appendix B to this Notice that was issued during the Class Period by either American Investors Life Insurance Company or AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company), or one of their respective predecessor companies listed in Appendix B, and that was not returned and/or cancelled pursuant to any applicable "free-look" provision. The Class Period is the period commencing on January 1, 1998, and ending on July __, 2009 {insert Preliminary Approval Date}. The deferred annuity policies described in this paragraph are referred to in this Notice as the **policies**.

## 6. Are there exceptions to being included in the settlement Class?

Yes. The following persons and entities are not included in the Class: (1) officers, directors, or employees of any Defendant; (2) the affiliates, legal representatives, attorneys, or assigns of any Defendant; (3) any judge, justice, or judicial official presiding over this lawsuit and the staff and immediate family of any such judge, justice, or judicial official; (4) persons who score the Claims submitted to the Claim Review Process, persons who serve as the Claim Review Process arbitrator, and members of their respective immediate families; and (5) all persons and entities included in, and who did

not exclude themselves from, the settlement class in the action styled "Cheves, et al. v. American Investors Life Insurance Company, Inc., et al.," Case No. 031024, which action was previously pending in the Superior Court of the State of California. In addition, all persons or entities that receive this Notice and fall under the definition of the Class but submit a valid written request to be excluded from the Class will thereafter not be included in the Class. In this Notice, the term "Class Member" is used to describe all persons and entities that fall under the definition of the Class and do not submit a valid written request to be excluded from the Class.

## 7. Are there exceptions to being eligible for settlement benefits?

Yes. Your eligibility for General Policy Relief or Claim Process Relief, and the specific nature of the relief, will depend on the status of your **policy**, as described in this Notice. In addition, if at the time any of the settlement relief is otherwise to be implemented for your **policy** you previously signed or are bound by a release of claims relating to one or more of the Defendants in connection with your **policy**, that **policy** will not be entitled to receive any settlement relief unless the previous settlement otherwise expressly provides. Furthermore, if your **policy** is otherwise entitled to receive settlement relief but you already received a credit to the value of your **policy** or a cash payment relating to your **policy** as a result of a complaint you submitted or any claim, action, or proceeding brought against a Defendant by anyone, the amount of that credit or cash payment will be deducted from the settlement relief, if any, for your **policy**. You will be notified of any deduction of this kind relating to your **policy** if and when settlement relief is implemented for that **policy**. If the amount of that credit or cash payment exceeds the value of any settlement relief applicable to your **policy**, no settlement relief will be given for that **policy**.

## 8. Are beneficiaries under the policies entitled to relief?

No. Beneficiaries under the **policies** are not included in the Class, and the proposed settlement relief is not available to any such beneficiaries. The rights under the proposed settlement of a deceased **owner** of a **policy**, however, may be exercised by the estate of the **owner**, upon reasonable showing of proof of authority from the purported representative of the estate.

## 9. Can I participate in the settlement if I live outside the United States?

Yes. A Class Member who lives outside the United States of America or its territories can still participate in the settlement. The only difference is that if that Class Member wants to submit an item described in this Notice (for example, an Election Form, a request for exclusion from the settlement, or an objection to the settlement), the Class Member will not be required to send the item by U.S. mail. Instead, a Class Member residing outside the United States of America or its territories may send the item by other governmental postal service or private international delivery service, but in each such case the item <u>must</u> bear a stamped postmark or similar mark showing when it was sent because all of the postmark deadlines explained in this Notice will still apply.

**10. I'm still not sure if I am included in the settlement.**

If you're not sure whether you are included in the settlement, call the American Investors Annuity Class Action Information Center at 1-8xx-xxx-xxxx (1-8yy-yyy-yyyy for the hearing-impaired) for more information.

## THE SETTLEMENT BENEFITS – WHAT YOU CAN GET

**11. What benefits does the settlement generally provide?**

The proposed settlement provides for General Policy Relief and allows for participation in a Claim Review Process through which Claim Process Relief may be available. General Policy Relief and Claim Process Relief are different – and mutually exclusive – alternatives. A **policy** may receive General Policy Relief or Claim Process Relief, but not both. These two types of settlement relief are described below. **Please note, however, that none of these benefits will be available for a policy if any current or former owner of the policy excludes himself or herself from the settlement, or if the Court does not give final approval to the proposed settlement.**

**12. What is General Policy Relief, and how can I obtain it?**

If the Court approves the proposed settlement, General Policy Relief will be available for **policies** that are categorized for the purposes of the settlement as **in deferral**, **in annuitization**, or **fully annuitized** as of the **Final Settlement Date**. General Policy Relief will not be available for any other **policies**, including, without limitation, **policies** categorized as **surrendered policies** and **death benefit policies**. (**Surrendered policies** and **death benefit policies** may be eligible for Claim Process Relief, as described under question 13 below.) In any case, if a Class Member elects to participate in the Claim Review Process for a **policy**, that **policy** will not be eligible for any General Policy Relief.

As explained in more detail below, the General Policy Relief includes two different levels – *basic* and *enhanced*. Also, for a **policy** categorized as **in deferral** or **in annuitization**, the **owner** will have the right to keep the **policy** in effect as is under its current terms and conditions. Therefore, **owners** of **policies** categorized as **in deferral** or **in annuitization** will need to affirmatively request implementation of the General Policy Relief if they want it for their **policies**, and they may do so generally at any time that the **policies** remain **in deferral** or **in annuitization**. This is also explained in more detail below.

►*What is the **basic** General Policy Relief?*

If a **policy** is eligible for General Policy Relief and the **owner** does not submit the Election Form for *enhanced* General Policy Relief or a Claim for Claim Process Relief, that **policy** will be eligible for the *basic* General Policy Relief. The *basic* General Policy Relief gives the **owner** of an eligible **policy** the opportunity to have the annuitant (or the **owner**, in the case of a **fully annuitized** policy) receive a bonus based in most cases on the **policy's** accumulation value. For a **policy in deferral**, receiving the bonus requires that the **policy** be taken out of deferral, and the General Policy Relief gives the **owner** the

opportunity to request that this be done at any time after the first anniversary of the **policy's** issue date and while the **policy** remains **in deferral**. If this request is made, annuity payments to the annuitant would begin as soon as reasonably practicable after the Company receives the required paperwork and continue generally over 4 or 7 years, depending on when the **policy** was issued. In any case, for each eligible **policy**, the amount of the bonus, and how and when it is received, varies depending on the status of the **policy**, as explained in the following paragraphs.

▪*How much is the bonus?*

For a **policy** eligible for *basic* General Policy Relief that also is a **65-and-Over Contract** – meaning that each original **owner** of the **policy** when it was issued (or the annuitant of the **policy** if no original **owner** was a natural person) was at least 65 years of age when the **policy** was issued – the bonus percentage is 0.40%. For other **policies** eligible for *basic* General Policy Relief, the bonus percentage is 0.15%.

For a **policy** categorized as **in deferral**, the amount of the bonus equals the applicable bonus percentage multiplied by the accumulation value of the **policy** if and when the **owner** decides to implement the relief. For a **policy** categorized as **in annuitization**, the amount of the bonus equals the applicable bonus percentage multiplied by the accumulation value of the **policy** when it was **annuitized**. However, in the case of a **policy** that was categorized as **in annuitization** because it was fully surrendered and exchanged for a single-premium immediate annuity (known as a "SPIA") that was still active and the subject of continuing annuity payments as of the Final Settlement Date, the amount of the bonus equals the applicable bonus percentage multiplied by the amount received on the surrender of the **policy** and paid in as premium for the SPIA. For a **policy** categorized as **fully annuitized**, the amount of the bonus equals the bonus percentage multiplied by the accumulation value of the **policy** when it was **annuitized**.

▪*How and when is the bonus received?*

How and when the bonus is received under the *basic* General Policy Relief will vary depending on the status of the **policy**.

Policies in deferral: If the **policy** is categorized as **in deferral**, and the **owner** requests implementation of the relief (which may be done at any time after the first anniversary of the **policy's** issue date and while the policy remains **in deferral**), the applicable bonus is added to the accumulation value of the **policy**, the **policy** ceases to be **in deferral**, and the accumulation value then starts to be paid to the annuitant under the **policy** in equal installments over a defined payment period (described in the next paragraph) that differs from the annuity payment period specified in the **policy**. The amount of the installment payments is determined when the relief is implemented applying the interest rate then used by the issuing Company for calculating annuity payments offered to the general public over a period comparable to the applicable payment period, but in no event would that interest rate be less than 2.0% or the minimum corresponding interest rate for the calculation of annuity payments specified in the applicable **policy**, whichever is greater. No surrender charges will apply on an election to implement this relief. If the policy includes a market value adjustment endorsement or rider, or an equivalent provision in the base policy, no such market value adjustment will apply on an election to implement this relief.

If this relief is implemented on or after the fifth anniversary of the issue date of the **policy**, the payment period for the installment payments is four years or, if shorter, the amount of time remaining in the **surrender charge** schedule under the **policy** at the time of implementation. However, the payment

period will never be shorter than two years. If this relief is implemented after the first anniversary of the issue date of the **policy** but before the fifth anniversary of the issue date, the payment period for the installment payments is seven years. This relief cannot be implemented before the first anniversary of the issue date of the **policy**.

Alternatively, instead of taking one of the fixed periods described above, the **owner** has the option when requesting implementation of the relief to request that the installment payments be made over the life of the annuitant.

In any case, the installment payments are made on an annual basis, unless the **owner** requests monthly installment payments when implementation of the relief is requested.

**REQUESTING IMPLEMENTATION OF THIS RELIEF FOR A POLICY IN DEFERRAL MAY BE DONE AT ANY TIME AFTER THE FIRST ANNIVERSARY OF THE POLICY'S ISSUE DATE AND WHILE THE POLICY REMAINS IN DEFERRAL, BUT DOING SO MEANS THAT THE OWNER IS THEN READY FOR THE POLICY TO BE TAKEN OUT OF DEFERRAL AND FOR THE ANNUITANT TO START RECEIVING THE FULL ACCUMULATION VALUE OF THE POLICY THROUGH ANNUITY PAYMENTS OVER THE TIME PERIODS EXPLAINED ABOVE. YOU SHOULD NOT REQUEST IMPLEMENTATION OF THIS RELIEF IF YOU ARE NOT YET READY FOR THIS TO HAPPEN AND WANT YOUR POLICY TO CONTINUE TO ACCUMULATE IN DEFERRAL.**

Policies in annuitization: If the **policy** is categorized as **in annuitization**, and the **owner** requests implementation of the relief, the applicable bonus is paid to the annuitant under the **policy**, along with the remaining annuity payments, in equal installments (without interest) at the times and over the remaining annuity payment period specified in the **policy**. However, if the **policy** was categorized as a **policy in annuitization** because it was surrendered and exchanged for a SPIA as described above, the bonus and the remaining annuity payments under the corresponding SPIA are paid in equal installments (without interest) over five years or the remaining payment period under the SPIA, whichever is longer.

Fully annuitized policies: If the **policy** is categorized as **fully annuitized**, the **owner** of the **policy** at the time it was **annuitized** receives the applicable bonus amount in a lump-sum payment. The payment would be mailed not later than 90 days after the **Final Settlement Date**.

As explained below, the current **owner** of the **policy** will need to contact the Company that issued the **policy** to request implementation of the *basic* General Policy Relief for **policies in deferral** and **policies in annuitization**. For **fully annuitized policies**, the **owner** will not need to take any action.

▪**Does the basic General Policy Relief provide any other benefits?**

Yes. For each **policy in deferral** the *basic* General Policy Relief also includes a benefit calculated as being equivalent to a 50% reduction in the amount of **surrender charges** (if any) that otherwise would apply under the **policy** on or in connection with a future **death benefit** payable upon the death of the **owner** or the annuitant. If you own a **policy in deferral** and the Court approves the settlement, you will not need to take any action, and you will not need to request implementation of any other General Policy Relief, to get this benefit for your **policy**.

**►** *What is the* <u>*enhanced*</u> *General Policy Relief?*

The *enhanced* General Policy Relief is available only for **policies** categorized as **in deferral**, **in annuitization**, or **fully annuitized** as of the **Final Settlement Date** that are **65-and-Over Contracts**.

The *enhanced* General Policy Relief for an eligible **65-and-Over Contract** is the same as the *basic* General Policy Relief, except that the amount of the bonus may be higher, ranging from 0.40% to 2.0%, depending on two factors: (a) whether, and the extent to which, the original **owner's** remaining life expectancy exceeded the **surrender charge** period under the **policy**; and (b) how large a fraction of the original **owner's** liquid net worth was used to purchase the **policy**. In general, the shorter the original **owner's** life expectancy as compared to the **surrender charge** period, and the more of the original **owner's** liquid net worth used to purchase the **policy**, the higher the potential bonus. However, for an eligible **65-and-Over Contract** to qualify for a bonus that is higher than that available for it under the *basic* General Policy Relief, the ratio of the original **owner's** remaining life expectancy to the length of the surrender charge period must be less than 110%.

In the case of jointly-owned **policies**, the remaining life expectancy of the youngest original **owner**, and the combined liquid net worth of all original **owners**, is used. In the case of a **policy** having no natural person as an original **owner**, the remaining life expectancy and liquid net worth of the annuitant are used. For these calculations, liquid net worth is determined in accordance with the definition stated in the Election Form included with this Notice. The specific bonus percentage is determined in accordance with a table that is set forth in the Stipulation of Settlement. A copy of that table is also provided in Appendix C to this Notice.

The *enhanced* General Policy Relief will be available for an eligible **65-and-Over Contract** only if its **owner** completes and signs Part I of the Election Form included with this Notice and returns Part I of the Election Form by U.S. mail postmarked no later than **November 26, 2009**. The signature(s) on the Election Form must be notarized or, in lieu of notarization, each person signing the Election Form must include with it a legible photocopy of a form of government-issued identification that includes the person's photograph and signature, such as a driver's license or passport. If your physical condition prevents you from obtaining notarization and you cannot provide a photocopy of a government-issued identification that includes your photograph and signature, you can request to be excused from this requirement by including with the Election Form a written request that explains your circumstances in sufficient detail. Class Counsel (see question 20 below) and the Defendants will consider each request and determine whether an exception is fair and appropriate under the circumstances. However, there can be no assurance that an exception will be granted. If you make a request to be excused from this requirement, the Settlement Administrator will notify you if it is denied.

The specific bonus percentage for *enhanced* General Policy Relief is calculated based on information called for in the Election Form, and it is up to you to provide the required information. If the necessary calculations cannot be completed because you do not provide the required information in the Election Form, the bonus percentage for eligible **65-and-Over Contracts** under the *enhanced* General Policy Relief will be 0.40% (which equals the bonus percentage available for eligible **65-and-Over Contracts** under the *basic* General Policy Relief).

You may call the toll-free phone number listed under question 29 of this Notice if you have questions regarding completion of the Election Form.

Class Members who submit the Election Form for *enhanced* General Policy Relief for eligible **65-and-Over Contracts** will receive written notice of the bonus percentages for their **policies** that will be available if the relief is implemented.  As explained below, the current **owner** of the **policy** will need to contact the Company that issued the **policy** to implement the *enhanced* General Policy Relief for **policies** categorized as **in deferral** or **in annuitization**.  For **fully annuitized policies**, the **owner** will not need to take any action to receive the applicable lump sum payment.

►*How do I request implementation of the General Policy Relief if I want it?*

**YOU ARE NOT REQUIRED TO IMPLEMENT THE GENERAL POLICY RELIEF FOR POLICIES IN DEFERRAL OR IN ANNUITIZATION, AND YOU DO NOT NEED TO DO ANYTHING IF YOU PREFER TO KEEP YOUR POLICY IN DEFERRAL OR POLICY IN ANNUITIZATION AS IS.  IN ADDITION, THE GENERAL POLICY RELIEF BENEFITS, AND THE TAX AND OTHER CONSEQUENCES TO YOU OF RECEIVING THE BENEFITS, MAY VARY DEPENDING ON WHEN THE RELIEF IS IMPLEMENTED.  YOU MAY WANT TO CONSULT WITH A TAX OR OTHER ADVISOR BEFORE MAKING YOUR DECISIONS AS TO WHETHER AND WHEN TO IMPLEMENT THE GENERAL POLICY RELIEF.**

If you want to have the General Policy Relief implemented for a **policy in deferral** or a **policy in annuitization**, contact the Company that issued your **policy** by telephone during the timeframes explained in the "*Implementation Period*" paragraph below.  The Company will then provide you with information relating to what would happen with your **policy** if you decide to go ahead with implementing the General Policy Relief, including: (1) then-current policy values; (2) the approximate amount of the applicable bonus; (3) for a **policy in deferral**, the five-year anniversary date of the **policy**; (4) the estimated amount of the annuity installment payments, including, for a **policy in deferral** that has not yet reached the five-year anniversary date, the estimated amount of the annuity installment payments if the General Policy Relief is implemented immediately, and the estimated amount of the annuity installment payments if the General Policy Relief is implemented upon reaching the five-year anniversary date; and (5) when and how long the annuity installment payments would be made.  If you contact the issuing Company about implementing the General Policy Relief, the Company will mail this information to you as soon as reasonably practicable after your request.

If you contact the issuing Company and tell the Company representative that you want to go ahead with implementing the General Policy Relief, the Company will send you the required paperwork.

*Implementation Period***:**  To implement the General Policy Relief for a **policy in deferral**, you may contact the issuing Company at any time after the first anniversary of the **policy's** issue date but ***no later than*** the annuitization date or maturity date specified in the **policy.**  However, because implementing the relief will mean that the **policy** will cease to be **in deferral**, you should not instruct the Company to implement the relief before the time you want the **policy** to be taken out of deferral and the annuity installment payments to the annuitant to begin.  To implement the General Policy Relief for a **policy in annuitization**, you may contact the issuing Company and instruct it to implement the relief at any time while the **policy** remains active and is still the subject of continuing payments.  The telephone numbers for contacting your issuing Company are:

[telephone #s for implementation requests]

Please keep in mind that to implement the General Policy Relief the required paperwork will have to be properly completed and returned to the Company by U.S. mail with a postmark that falls within the applicable period explained in the preceding paragraph.

General Policy Relief will not be implemented for **policies in deferral** and **policies in annuitization** unless the **policy owner** contacts the Company and submits the required paperwork as explained above. This means that no bonus will be credited or paid on your **policy in deferral** or **policy in annuitization** under the General Policy Relief unless you contact the Company to request implementation of the relief and submit the required paperwork within the specified time periods. In addition, even if the Court approves the settlement, no settlement relief, including General Policy Relief, will be implemented until after the **Final Settlement Date**. If you contact the Company to implement General Policy Relief before the **Final Settlement Date**, the Company will not send you information or the paperwork required to implement the relief until after the Final Settlement Date.

For **fully annuitized policies**, the General Policy Relief will be implemented for applicable **policies** automatically after the **Final Settlement Date**, so you will not need to take any action to receive it, if applicable to your **policy**.

**YOU SHOULD KEEP THIS NOTICE WITH YOUR POLICY SO YOU WILL KNOW HOW TO REQUEST IMPLEMENTATION OF THE GENERAL POLICY RELIEF IF IT APPLIES TO YOUR POLICY AND YOU DECIDE TO DO SO. FOR YOUR CONVENIENCE AND SAFEKEEPING, THE INSTRUCTIONS FOR IMPLEMENTING THE GENERAL POLICY RELIEF ARE ALSO PROVIDED IN APPENDIX E TO THIS NOTICE.**

## 13. What is Claim Process Relief, and how can I obtain it?

The Claim Process Relief, and the related Claim Review Process, is intended for Class Members who believe that they can prove that they have been harmed by the way a **policy** was marketed and sold and/or because the **policy** was unsuitable for the original **owner**. The Claim Review Process allows participating Class Members to submit a Claim Form and proof of alleged misconduct by Defendants or the salespersons involved in the sale. To participate in the Claim Review Process, the **owner** of a **policy** must complete and sign Part II of the Election Form included with this Notice and return Part II of the Election Form by U.S. mail so that it is postmarked no later than **November 26, 2009**. If the Court approves the settlement, Class Members who elected to participate in the Claim Review Process will be sent a Claim Form, which they will then have to complete and return by a specified date.

When all relevant information about a Claim is assembled, the Claim will be evaluated and scored by Claim Scorers to be designated by the Defendants and jointly trained by Class Counsel and counsel for the Defendants. A Class Member submitting a Claim will be notified in writing of the score assigned to the Claim and will have the right to contest that score, with the assistance of Class Counsel if the Class Member requests it. The Defendants also may contest the score. If a score is contested, the Claim will be given to a neutral and independent arbitrator, who will evaluate it and assign a final score. The Claim scoring guidelines and related Claim scoring factors are set out in the Stipulation of Settlement. These scoring guidelines and scoring factors also are provided for your information in Appendix D to this Notice.

The Claim Process Relief consists of two general components. The first general component is a cash payment that will be calculated based on **surrender charges**, if any, that were incurred by an **owner** of the **policy** prior to July __, 2009 {Preliminary Approval Date}. The second general component is a bonus payment that in most cases is based on the **policy's** accumulation value and paid with annuity payments over a specified payment period. The specific nature of the Claim Process Relief for a particular **policy** varies depending on the status of that **policy** and the score assigned to the corresponding Claim, as described below.

### ►Cash Payments Relating To Previously Incurred Surrender Charges

For all **policies** as to which **surrender charges** were incurred by an **owner** on a full or partial surrender prior to July __, 2009 {Preliminary Approval Date}, the Claim Process Relief includes the opportunity to receive a cash payment. These cash payments, however, will not be made with respect to any **surrender charges** incurred in connection with a **death benefit** paid as a result of the death of the **owner** or the annuitant of a **policy**.

The amount of the cash payment varies depending on the score assigned to the corresponding Claim in the Claim Review Process and whether the **policy** is a **65-and-Over Contract**. The specific dollar amount of the payment is calculated by reference to the **surrender charges** incurred on the surrender and, if the policy included a market value adjustment endorsement or rider, or an equivalent provision in the base policy, the corresponding market value adjustment applied on the surrender. This means that if the policy included such a market value adjustment provision, the amount of any negative market value adjustment applied on the surrender will be added to the amount of the surrender charges, and the amount of any positive market value adjustment applied on the surrender will be subtracted from the surrender charges, when calculating the amount of the cash payment.

The specific dollar amount is equivalent to the percentage of the applicable **surrender charges** (as so increased or decreased by the market value adjustment, if applicable) corresponding to the score assigned to the Claim as set forth in the following table. (For example, if the Claim receives a score of "3" and the corresponding **policy** is a **65-and-Over Contract**, the payment is calculated as equivalent to 20% of the applicable **surrender charges** (as decreased or increased by the market value adjustment, if applicable).)

| Claim Score | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|
| Applicable percentage for eligible **policies** that are **65-and-Over Contracts** | 65.0% | 30.0% | 20.0% | 15.0% | 7.0% | 0% |
| Applicable percentage for eligible **policies** that are not **65-and-Over Contracts** | 20.0% | 16.0% | 12.0% | 8.0% | 5.0% | 0% |

For a Claim receiving a score of "5" or "4", the payment is made to the claimant(s) (being the **owner** who incurred the applicable **surrender charges**) in three equal, annual installments, without interest or (at the Company's discretion) in a lump sum. For a Claim receiving a score of "3", "2", or "1", the payment is made to the claimant(s) in a lump sum. If the score assigned to the Claim by the Claim Scorer is not contested, the payment (or the first installment payment, if applicable) would be mailed not later than 60 days after the date of the notice to the claimant(s) of the score assigned by the Claim Scorer. If the score assigned to the Claim by the Claim Scorer is contested, the payment (or the first installment payment, if applicable) would be mailed not later than 30 days after the date of the notice to the claimant(s) of the score assigned to the Claim by the Arbitrator.

►**Bonus Amounts**

The Claim Process Relief also gives the current **owners** of **policies** categorized as **in deferral**, **in annuitization**, **fully annuitized**, and **fully surrendered** the opportunity to receive or to have annuitants receive (depending on the status of the **policy**) a bonus that in most cases is based on the **policy's** accumulation value. The amount of the bonus is calculated using a bonus percentage determined in accordance with the following table, depending on the score assigned to the Claim and whether the **policy** is a **65-and-Over Contract**.

| Claim Score | 5 | 4 | 3 | 2 | 1 | 0 |
|---|---|---|---|---|---|---|
| Applicable percentage for eligible **policies** that are **65-and-Over Contracts** | 2.25% | 1.7% | 1.3% | 1.0% | 0.75% | 0% |
| Applicable percentage for eligible **policies** that are not **65-and-Over Contracts** | 0.80% | 0.60% | 0.40% | 0.20% | 0.15% | 0% |

How and when the bonus is received varies depending on the status of the **policy** as categorized when the specific Claim Process Relief is implemented for that **policy**, and in most cases requires the current **owner** to make a written request to implement the relief, as described below.

Policies in deferral: If the **policy** is categorized as **in deferral**, and the **owner** requests implementation of the relief, the accumulation value of the **policy** is increased by the applicable bonus percentage, the **policy** is taken out of deferral, and the accumulation value then starts to be paid to the annuitant under the **policy** in equal installments over the life of the annuitant with 10 years certain. The installment payments are made on an annual basis, unless the **owner** requests monthly installment payments when implementation of the relief is requested. The amount of the installment payments is determined when this relief is implemented applying the interest rate then used by the issuing Company for calculating annuity payments offered to the general public over a period comparable to the applicable payment period, but in no event would that interest rate be less than 2.0% or the minimum corresponding interest rate for the calculation of annuity payments specified in the applicable **policy**, whichever is greater. No surrender charges will apply on an election to implement this relief. If the policy includes a market value adjustment endorsement or rider, or an equivalent provision in the base policy, no such market value adjustment will apply on an election to implement this relief.

To implement this relief for a **policy in deferral**, the current **owner** must submit a written request to the Company that issued the **policy**, using a request form that will be included with the notice to the **owner** of the score assigned to the corresponding Claim. The request form must be sent by U.S. mail and postmarked not later than 60 days after the date of the notice relating to the final score assigned to the Claim. If the score assigned to the Claim by the Claim Scorer is not contested, the 60 days will begin to run on the date of the notice to the **owner** of the score assigned by the Claim Scorer. If the score assigned to the Claim by the Claim Scorer is contested, the 60 days will begin to run on the date of the notice to the **owner** of the score assigned to the Claim by the Arbitrator. Because the **owner** will have the right to maintain the **policy** as is without taking the Claim Process Relief, even if this Claim Process Relief is awarded, it will not be implemented unless this request form is properly completed and submitted by U.S. mail postmarked within the 60-day period described in this paragraph.

**REQUESTING IMPLEMENTATION OF THIS RELIEF FOR A POLICY IN DEFERRAL MEANS THAT THE OWNER IS THEN READY FOR THE POLICY TO BE TAKEN OUT OF DEFERRAL AND FOR THE ANNUITANT TO START RECEIVING THE FULL ACCUMULATION VALUE OF THE POLICY THROUGH ANNUITY PAYMENTS OVER THE TIME PERIODS EXPLAINED ABOVE. YOU SHOULD NOT REQUEST IMPLEMENTATION OF THIS RELIEF IF YOU ARE NOT YET READY FOR THIS TO HAPPEN AND WANT YOUR POLICY TO CONTINUE TO ACCUMULATE IN DEFERRAL. YOU ARE NOT REQUIRED TO IMPLEMENT THIS RELIEF, AND YOU DO NOT NEED TO DO ANYTHING IF YOU PREFER TO KEEP YOUR POLICY IN DEFERRAL AS IS. BECAUSE THE TAX AND OTHER CONSEQUENCES OF IMPLEMENTING THIS RELIEF WILL DEPEND ON YOUR PARTICULAR CIRCUMSTANCES, YOU MAY WANT TO CONSULT WITH A TAX OR OTHER ADVISOR BEFORE MAKING YOUR DECISION AS TO WHETHER TO IMPLEMENT THE RELIEF.**

If the Claim Process Relief awarded to the current **owner** of the **policy in deferral** includes a cash payment with respect to **surrender charges** previously incurred by such **owner**, the current **owner** also would have the option when they request implementation of the relief to pay into the **policy** an amount equal to (a) the aggregate amount (net of **surrender charges**, but before any withholding of taxes) received by them on the corresponding surrender(s) <u>plus</u> (b) the amount of the cash payment awarded to them with respect to **surrender charges** previously incurred. If the **owner** exercises such option, the **policy's** accumulation value would be increased prior to the calculation of the bonus by the amount so paid in by the **owner**, and the applicable bonus percentage would then be applied to the accumulation value, as so increased, to determine the bonus amount.

<u>Policies in annuitization</u>: If the **policy** is categorized as **in annuitization**, and the **owner** requests implementation of the relief, the bonus is paid to the annuitant under the **policy**, along with the remaining annuity payments, in equal installments (without interest) at the times and over the remaining annuity payment period specified in the **policy**. The amount of the bonus equals the applicable bonus percentage multiplied by the **policy's** accumulation value when it was **annuitized**. However, in the case of a **policy** that was categorized as a **policy in annuitization** because it was fully surrendered and exchanged for a single-premium immediate annuity (known as a "SPIA") that was still active and the subject of continuing annuity payments when this relief is implemented, the amount of the bonus equals the applicable bonus percentage multiplied by the amount received on the surrender of the **policy** and paid in as premium for the SPIA, and the resulting bonus and the remaining annuity payments under the SPIA are paid in equal installments (without interest) over five years or the remaining payment period under the SPIA, whichever is longer.

To implement this relief for a **policy in annuitization**, the current **owner** must submit a written request to the Company that issued the **policy**, using a request form that will be included with the notice to the **owner** of the score assigned to the corresponding Claim. The request form must be sent by U.S. mail and postmarked not later than 60 days after the date of the notice relating to the final score assigned to the Claim. If the score assigned to the Claim by the Claim Scorer is not contested, the 60 days will begin to run on the date of the notice to the **owner** of the score assigned by the Claim Scorer. If the score assigned to the Claim by the Claim Scorer is contested, the 60 days will begin to run on the date of the notice to the **owner** of the score assigned to the Claim by the Arbitrator. Because the **owner** will have the right to maintain the **policy** as is without taking the Claim Process Relief, even if this Claim Process

Relief is awarded, it will not be implemented unless this request form is properly completed and submitted by U.S. mail postmarked within the 60-day period described in this paragraph.

**YOU ARE NOT REQUIRED TO IMPLEMENT THIS RELIEF FOR A POLICY IN ANNUITIZATION, AND YOU DO NOT NEED TO DO ANYTHING IF YOU PREFER TO KEEP YOUR POLICY IN ANNUITIZATION AS IS. BECAUSE THE TAX AND OTHER CONSEQUENCES OF IMPLEMENTING THIS RELIEF WILL DEPEND ON YOUR PARTICULAR CIRCUMSTANCES, YOU MAY WANT TO CONSULT WITH A TAX OR OTHER ADVISOR BEFORE MAKING YOUR DECISION AS TO WHETHER TO IMPLEMENT THE RELIEF.**

Fully annuitized policies: If the **policy** is categorized as **fully annuitized**, the bonus is paid, in a lump sum, to the person(s) who was/were the **owner** of the **policy** at the time it was **annuitized**. The amount of the bonus equals the applicable bonus percentage multiplied by the **policy's** accumulation value when it was **annuitized**. If the score assigned to the corresponding Claim by the Claim Scorer is not contested, the payment would be mailed not later than 60 days after the date of the notice to the **owner** of the score assigned by the Claim Scorer. If the score assigned to the corresponding Claim by the Claim Scorer is contested, the payment would be mailed not later than 30 days after the date of the notice to the **owner** of the score assigned to the Claim by the Arbitrator.

Fully surrendered policies: If the **policy** is categorized as **fully surrendered**, the **owner** of the **policy** when it was finally surrendered has the option to pay to the Company that issued the **policy** an amount not to exceed the amount (net of **surrender charges**, but before any withholding of taxes) received by such **owner** on the corresponding final surrender. If the **owner** makes such payment to the issuing Company, the **owner** thereafter receives from the issuing Company an amount equal to such payment, increased by the applicable bonus percentage, paid in equal annual installments over four years if the **policy** was surrendered on or after the fifth anniversary of its issue date, or seven years if the **policy** was surrendered before the fifth anniversary of its issue date. The amount of the installment payments is determined when this relief is implemented applying the interest rate then used by the issuing Company for calculating annuity payments offered to the general public over a period comparable to the applicable payment period, but in no event would that interest rate be less than 2.0%. If such **owner** does not choose to make such payment to the issuing Company, no bonus is paid or received.

To implement this relief for a **fully surrendered policy**, the applicable **owner** must submit a written request to the Company that issued the **policy**, using a request form that will be included with the notice to the **owner** of the score assigned to the corresponding Claim. The request form must be sent by U.S. mail and postmarked not later than 60 days after the date of the notice relating to the final score assigned to the Claim. If the score assigned to the Claim by the Claim Scorer is not contested, the 60 days will begin to run on the date of the notice to the **owner** of the score assigned by the Claim Scorer. If the score assigned to the Claim by the Claim Scorer is contested, the 60 days will begin to run on the date of the notice to the **owner** of the score assigned to the Claim by the Arbitrator. Even if this Claim Process Relief is awarded, it will not be implemented unless this request form is properly completed and submitted by U.S. mail postmarked within the 60-day period described above.


Under the Claim Review Process, Claims that are better supported will generally receive higher scores than Claims that are less well supported. Nevertheless, there can be no assurance that a Claim will receive a score that results in any compensation at all. The Court is not involved directly in this process.

You may call the toll-free phone numbers listed under question 29 of this Notice if you have questions regarding completion of the Election Form or the Claim Form.

If you cannot submit an Election Form or a Claim Form by the applicable deadline because you suffer from a serious medical condition, or because your spouse or child suffers from a serious medical condition that requires your attention, you can request an extension of the deadline by submitting a written request to the Settlement Administrator at the address to which the applicable form is to be sent, postmarked no later than the applicable filing deadline for that form. The written request must explain why the deadline cannot be met and specify the number of additional days that are being requested for the extension. Class Counsel and the Defendants will consider each request and determine whether an extension is fair and appropriate under the circumstances of the medical hardship, but in no case will an extension of more than 30 days be granted. However, there can be no assurance that an extension will be granted.

You may be contacted by the Settlement Administrator if you submit an Election Form or a Claim Form that contains information that is illegible or otherwise cannot be understood or that is not signed or otherwise completed as required by the Stipulation of Settlement or the applicable form instructions for that form to constitute a valid submission.

## 14. When would I get my settlement benefit?

The Court will hold a hearing on November 6, 2009, called the Fairness Hearing, to decide whether to approve the settlement. If the Court approves the settlement, the General Policy Relief, *basic* and *enhanced*, will be effective and available for implementation not later than 90 days after the **Final Settlement Date**, subject to the terms and conditions that apply to the benefits. If the Court's approval of the settlement is appealed, when any and all appeals will finally be resolved, and when the **Final Settlement Date** will occur, are uncertain. Please be patient. Resolving appeals can take time, perhaps more than a year. Updates regarding the status of the settlement will be posted periodically as events warrant at www._____.

It is anticipated that the resolution of Claims submitted to the Claim Review Process will be completed within a year after the **Final Settlement Date**, but the timing will depend on the number of Claims received and the number of claimants who contest their scores. The proposed settlement involves several hundreds of thousands of **policies**, so, again, please be patient. The Claim Process Relief will be implemented (subject to all applicable terms and conditions) on a **policy**-by-**policy** basis after completion of the scoring of the corresponding Claims.

## 15. What am I giving up to get a settlement benefit or stay in the Class?

Unless you properly exclude yourself, you are staying in the Class, and that means: (1) that you can't sue, continue to sue, or be part of or receive any benefits in or from any other lawsuit, arbitration, administrative or regulatory proceeding, order, or other legal proceeding anywhere against the Defendants, the persons who sold your **policy**, and/or certain other released parties included as

"Releasees" under the Stipulation of Settlement, about your **policy** or the manner in which it was marketed or sold, or any other legal claims that were or could have been made in this case against the Defendants and/or the other Releasees; and (2) that you *give up*, or *release*, any and all claims against the Defendants and/or the other Releasees – regardless of whether they are presently known or suspected, presently unknown or unsuspected, presently existing, or might exist in the future – falling under the "Released Transactions," as defined in the Stipulation of Settlement, including: (a) any and all matters concerning the **policies** at issue in this case, or the manner in which those **policies** were marketed or sold, and/or (b) the marketing, sale, delivery, and/or performance of any products, plans, or services in connection with, or relating to or allegedly relating to, the purchase or sale of any of the **policies** at issue in this case, and/or (c) any and all matters concerning or relating to this settlement (including, without limitation, the award, election, and/or implementation of any settlement relief with respect to a **policy**). It also means that all of the Court's orders, whatever they provide, will apply to you and legally bind you, even if you had objected to the proposed settlement.

| 16. What is the non-economic settlement relief? |
|---|

The proposed settlement also includes certain "non-economic" relief in the form of undertakings made by the Defendants relating to the manner in which annuity and other insurance products offered by American Investors Life Insurance Company and AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company) are marketed and sold. These undertakings, which include, among other things, requirements concerning the information included in the Defendants' product disclosure materials and how agents may represent their status, are set out in detail in Section III.M of the Stipulation of Settlement.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want to be eligible for any benefits from this settlement, or you want to keep the right to sue or continue to sue the Defendants and/or the other Releasees on your own about the claims and legal issues settled in this case, then you must take steps to get out of the settlement. This is called excluding yourself – or is sometimes referred to as "opting out" of the Class.

| 17. How do I get out of the settlement? |
|---|

To exclude yourself from the settlement, you must send a letter by U.S. mail saying that you want to be excluded from the Class in *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*. You must include your name, address, telephone number, and your signature. You must submit your exclusion request by U.S. mail **postmarked** no later than _____ __, **2009 {insert date that is 45 days after date of Notice appearing on last page}**, to:

> American Investors Annuity Class Action Information Center
> P.O. Box 0000
> _____, _____ xxxxx-xxxx

You can't exclude yourself by telephone or by e-mail.

If you validly exclude yourself, you will not be eligible for any settlement relief, and you cannot object to the settlement. If you validly exclude yourself, the settlement will not affect your rights to sue the Defendants and/or the other Releasees, and you will not be legally bound by anything else that happens under the settlement.

If anyone who has or had an ownership right in a **policy** submits an exclusion request for that **policy**, that **policy** will be excluded from the settlement with respect to all persons who claim an ownership right or interest in that **policy**.

You may not exclude yourself from the settlement with respect to less than all of the **policies** in which you have or had an interest as an **owner**. Any attempt by someone in the Class to exclude from the settlement some, but not all, **policies** in which he/she/it has or had an interest as an **owner** shall be deemed ineffective, resulting in that person or entity remaining a Class Member and no such **policies** being excluded from the settlement.

| **18. If I don't exclude myself, can I sue the Defendants for these kinds of claims later?** |
| --- |

No. Unless you validly exclude yourself, you give up the right to sue the Defendants, the persons who sold your **policy**, and other parties included as "Releasees" under the Stipulation of Settlement for the claims and legal issues that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit about this Notice immediately. You must exclude yourself from *this* Class to continue your own lawsuit. Remember, the exclusion postmark deadline is **_____ __, 2009**. **{insert date that is 45 days after date of Notice appearing on last page}**

| **19. If I exclude myself, can I get any benefit from this settlement?** |
| --- |

No. If you exclude yourself, do not send in an Election Form or a Claim Form seeking any settlement relief because you will not be entitled to any benefits from this settlement.

# THE LAWYERS REPRESENTING YOU

| **20. Do I have a lawyer in this case?** |
| --- |

Yes. On June 12, 2006, the Court appointed Jerome M. Marcus, Esq., Jonathan Auerbach, Esq., and John Hargrove, Esq., as Interim Co-Lead Counsel to represent the Class. Together, these lawyers are called Class Counsel. You will not be charged for the services of these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

Class Counsel will ask the Court for an award of attorneys' fees and costs in the aggregate of $18,250,000. Class Counsel also will ask the Court to award payments to each of the 11 Class Representatives that will vary depending on the extent of their active involvement in this case, for a total payment of up to $115,000 for all Class Representatives combined. The Court may award less than these amounts. The Defendants will pay the attorneys' fees and expenses, and any payments to the Class Representatives, that the Court awards, up to the foregoing amounts. These amounts will not come out of the funds for the specific settlement benefits awarded to Class Members. The Defendants also will separately pay certain costs to administer the settlement.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

**22. How do I tell the Court that I don't like the settlement?**

If you are a Class Member, you can object to the settlement if you don't like any part of it. The Court will consider your views in connection with the Fairness Hearing described below. To object, you must submit your objection in writing, stating that you object to the proposed settlement of *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*. Your written objection must include your name, address, telephone number, **policy** number(s), and signature, the reasons you object to the settlement, and any documents that you wish to submit in support of your position. Your written objection must be submitted by U.S. mail to each of the following places, **postmarked** no later than **_____ __, 2009 {insert date that is 45 days after date of Notice appearing on last page}**:

| COURT | SETTLEMENT ADMINISTRATOR | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|---|
| {insert address} | {insert address} | {insert addresses} | {insert address} |

If you do not timely submit an objection in accordance with the above requirements, you will not be treated as having filed a valid objection to the proposed settlement.

If you hire an attorney for the purpose of objecting to any aspect of the proposed settlement, the attorney must file an entry of appearance with the Clerk of the Court no later than **_____ __, 2009**, and send a copy of such entry of appearance to the Settlement Administrator, Class Counsel, and counsel for Defendants (at the addresses listed above) by U.S. mail postmarked no later than **_____ __, 2009 {for each blank, insert date that is 45 days after date of Notice appearing on last page}**.

**23. What's the difference between objecting and excluding myself?**

*Objecting* is telling the Court that you don't like something about the settlement. You can object only if you stay in the settlement Class. *Excluding yourself* is telling the Court that you don't want to be part of the settlement Class and the proposed settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the settlement. You may attend and you may ask to speak, but you don't have to.

**24. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on November 6, 2009, at 9:30 A.M., at the United States Courthouse, Philadelphia, Pennsylvania, in the courtroom of the Honorable Mary A. McLaughlin, Courtroom 13A, 601 Market Street, Philadelphia, Pennsylvania 19106. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. Judge McLaughlin may listen to people who, prior to the hearing, properly and timely requested in writing to speak at the hearing, as described under question 26 of this Notice. The Court also may decide how much Class Counsel will be paid and the amount of any payments to the Class Representatives. At or following the hearing, the Court will decide whether to approve the settlement, but we do not know exactly when that decision will be made.

**25. Do I have to come to the hearing?**

No. Class Counsel will answer questions Judge McLaughlin may have, but you are welcome to come at your own expense. You also may pay your own lawyer to attend the hearing if you so choose. If you submit a written objection, you don't have to come to Court to talk about it and you don't have to send your own lawyer. As long as you properly submitted your written objection and it was postmarked on time, the Court will consider it.

**26. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must do two things. First, you must object to the settlement in accordance with the procedures described above under question 22. Second, you must send a letter stating that it is your "Notice of Intention to Appear in *In re American Investors Life Insurance Co. Annuity Marketing and Sales Practices Litigation*." You must include your name, address, telephone number, and your signature on your Notice of Intention to Appear. Your Notice of Intention to Appear must be submitted by U.S. mail to the Clerk of the Court, Class Counsel, and Defense Counsel, at their respective addresses given under question 22, and must be

**postmarked** and received by the Court no later than <mark>_____ \_\_, **2009 {insert date that is 45 days after date of Notice appearing on last page}**</mark>.  You cannot speak at the hearing if you do not follow these procedures, or if you exclude yourself.

# IF YOU DO NOTHING

| 27.  What happens if I do nothing at all in response to this Notice? |
| --- |

If you do nothing in response to this Notice and your **policy** is categorized as **in deferral**, **in annuitization**, or **fully annuitized** as of the **Final Settlement Date**, that policy will be eligible for the *basic* General Policy Relief, subject to the terms and conditions explained under question 12 of this Notice.  If your **policy** is categorized as **fully surrendered** or is a **death benefit policy** as of the **Final Settlement Date**, and you do nothing in response to this Notice, you will not receive any settlement benefit.

Regardless of the status or disposition of your **policy**, if you do nothing, you will give up all rights *ever* to bring a lawsuit or action, to continue with a pending lawsuit or action, or to be part of any other lawsuit or action against the Defendants, the persons who sold your **policy**, and other persons and entities included as "Releasees" under the Stipulation of Settlement about the claims and legal issues covered and resolved by the settlement.

# GETTING MORE INFORMATION

| 28.  Are more details about the settlement available? |
| --- |

Yes.  This Notice and accompanying documents provide only a summary of the proposed settlement. More details are contained in an agreement between the Plaintiffs and the Defendants called the Stipulation of Settlement.  The full Stipulation of Settlement is on file with the Clerk of Court.  You can obtain a copy of the Stipulation of Settlement by writing to the Settlement Administrator, by calling the toll-free information center, or by visiting the web site that has been set up for this settlement.  The address, toll-free numbers, and web site address for obtaining the Stipulation of Settlement are given below under question 29.

For more details concerning the matters involved in this case, the Plaintiffs and the Defendants also refer you to the complaint and to the other papers and Court orders on file in the Office of the Clerk of Court, James A. Byrne Federal Courthouse, 601 Market Street, Room 2609, Philadelphia, PA 19106-1797. You may inspect these documents, as well as the full Stipulation of Settlement, at the Clerk's office at any time during normal business hours, Monday through Friday, 9:00 a.m. to 4:00 p.m., Eastern time.

## 29.  How do I get more information?

To get more information about the settlement, you can:

► Call the American Investors Annuity Class Action Information Center – where trained personnel are available to respond to questions that you may have – toll-free at 1-8xx-xxx-xxxx (1-8yy-yyy-yyyy for the hearing-impaired);

► Write to the American Investors Annuity Class Action Information Center at P.O. Box __, _____, _____ zzzzz-zzzz; or

► Visit the settlement informational web site at www._____.com, where you will find copies of the Stipulation of Settlement, Election Form, and Claim Form, and other information concerning the settlement.

**DATE: _____, __, 2009**

The following terms relating to the settlement are used in this Notice with the meanings explained below.

- **"65-and-Over Contract"**:  A **policy** is a **65-and-Over Contract** if each original **owner** of the **policy** (or the annuitant if the original **owner** was not a natural person) was 65 years of age or older when the **policy** was issued.

- **"annuitized"**:  A **policy** is deemed to have been **annuitized** if, upon reaching the annuity date or maturity date specified in the **policy** as the date on which annuity payments are to begin, benefits provided for by that **policy** (excluding, however, **death benefits** paid to a beneficiary) are taken in the form of a stream of periodic payments to the annuitant over a period of time (e.g., monthly payments over twenty years).

- **"death benefit"**:  The payment(s) from a **policy** that are made to the beneficiary(ies) designated under the **policy** upon the death of the **owner** or annuitant of the **policy**.

- **"death benefit policy"**:  A **policy** will be categorized as a **death benefit policy** if, on the applicable categorization date, a **death benefit** was paid, is being paid, or is due to be paid on that **policy**.

- **"Final Settlement Date"**:  The date on which the Court's final order and judgment giving final approval to the proposed settlement becomes final.  If no one appeals the Court's final order and judgment, **Final Settlement Date** means the date on which the time to appeal has expired.  If someone appeals the Court's final order and judgment, **Final Settlement Date** means the date on which all appeals, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been fully disposed of in a manner that affirms the Court's final order and judgment.

- **"fully annuitized"**:  A **policy** will be categorized as **fully annuitized** if, on the applicable categorization date, that **policy** was annuitized and all annuity payments due as **policy** benefits under that **policy** have been made.  **Fully annuitized policies** do not include any **death benefit policies**.

- **"fully surrendered"**:  A **policy** will be categorized as **fully surrendered** if, on the applicable categorization date, it is no longer active due to the full surrender of the **policy**.  For the purposes of the proposed settlement, a **policy** that was fully surrendered in connection with an exchange for another product issued at the time of the surrender by the same Company or one of its affiliated entities will be deemed a **fully surrendered** policy, with the exception only that a **policy** that was so exchanged for a single premium immediate annuity (known as a "SPIA") that was still active and the subject of continuing annuity payments as of the applicable categorization date will be categorized as a **policy in annuitization**.  **Fully surrendered policies** do not include any **death benefit policies**.

- **"in annuitization"**:  A **policy** will be categorized as **in annuitization** if, on the applicable categorization date, it has been annuitized and is active and the subject of continuing annuity payments.  **Policies in annuitization** do not include any **death benefit policies**.

- **"in deferral"**:  A **policy** will be categorized as **in deferral** if, on the applicable categorization date, it is active and the annuity date or maturity date specified in the **policy** as the date on which annuity payments are to begin has not yet been reached.  **Policies in deferral** do not include any **death benefit policies**.

- "**owner**": All persons or entities having an ownership interest in a **policy** under the terms of the **policy**, as reflected in the business records of the issuing Company maintained in the ordinary course of business as of the time in question.

- "**policy**": One of the annuity contracts that are subject to the proposed settlement described in this Notice, as specified under question 5 above.

- "**surrender**": To take money out of a **policy** through either (a) a full surrender of the **policy** by the **owner** for a single, lump-sum cash payment to the **owner** of the entire value of the **policy** available for withdrawal, or (b) a partial surrender of the **policy** by the **owner** for a payment to the **owner** of a portion of the value of the **policy** available for withdrawal.

- "**surrender charges**": The "Surrender Charges" or "Withdrawal Charges" under a **policy**, as such terms are defined in the **policy** in question.

# APPENDIX B
## POLICIES COVERED BY THE SETTLEMENT

The Class for this settlement includes every person or entity that, during the Class Period, was a purchaser or an **owner** of a deferred annuity policy having a product name or a policy form number listed below in this Appendix B that was issued during the Class Period by either American Investors Life Insurance Company or AmerUs Life Insurance Company (now known as Aviva Life and Annuity Company) or one of their respective predecessor companies listed below, and that was not returned and/or cancelled pursuant to any applicable "free-look" provision. The Class Period is the period commencing on January 1, 1998, and ending on July __, 2009 {insert Preliminary Approval Date}.

The policy form number for your **policy** can be found at the bottom right and/or left hand corner of the cover page of your **policy**.

**Issuing Company:  American Investors Life Insurance Company, Inc. – Product Names**

| | | |
|---|---|---|
| 2000 | Guarantor XII | Select 10 |
| 2000 Plus | Guarantor XII3 | Select 6 |
| Alliance P0 | Guarantor XVB | Select Edge |
| Alliance P2 | Guarantor XVIC | Select Edge Plus |
| Alliance P4 | Guarantor XVR | Senior Wealth Accumulator |
| Alliance Plus P0 | Guarantor XVS | SPDA 2008 |
| Alliance Plus P2 | Income Select 10 | SPDA 2008 TrueMark |
| Alliance Plus P4 | Income Select 5 | SPDA I |
| American Edge | Income Select 7 | SPDA I3 |
| BK 2007 | Income Select Bonus 10 | SPDA IR |
| BPA 12 | Income Select Platinum | SPDA IR3 |
| BPA 8 | Income Select Plus | SPDA VIIR |
| BPA 8S | Liberty Select | SPDA XR |
| BPA Select Annuity 12 | Magnum 10 | Spirit 3 |
| Bonus Select | Magnum 3 | Spirit 5 |
| Bonus Select 11 | Magnum 5 | Spirit 7 |
| Bonus Select 9 | Magnum 7 | Spirit Plus |
| C6 | Magnum Plus 3 | Spirit Xtra |
| Capital Assurance 3 | Magnum Plus 5 | Income Plus |
| Capital Assurance 5 | Performance Advantage 12 | True Gold Annuity |
| Capital Assurance 6 | Performance Advantage 15 | |
| FPDA 8 Employee | Performance Edge | |
| FPDA Employee | Performance Edge Plus | |
| FPDA P10 | Platinum Eagle | |
| Guarantor XIB | Premier Edge | |

**Issuing Company:  American Investors Life Insurance Company, Inc. – Policy Form Numbers**

| | | | | |
|---|---|---|---|---|
| 1003 (4/98) | BPASEL6 (10/07) | FPA-8(12/84)EMP | FPIAX (01/08) | SPDA-FL-1283 |
| 1003 FWD (2/99) | BPASEL12(10/07) | FPAP (08/08) | IAC(5/95) | SPDA-VII |
| 1005 (4/98) | BPASEL10(10/07) | FPAX (08/08) | P10 (12/02) | SPDA-X |
| 1005 FWD (2/99) | C6 (9/98) | FPDAP0 | P10(2/96) | SPDA-XII |
| 1007 (4/98) | EMP (1/98) | FPDAP0 (8/96) | PB11 (01/04) | SPDELA (9/96) |
| 1010 (2/96) | FDAP0 (10/02) | FPDAP2 | PB11FDB (02/05) | |
| 2001 (12/02) | FDAP2 (10/02) | FPDAP2 (8/96) | PB11FDB (09/04) | |
| 2001(2/96) | FDAP4 (10/02) | FPDAP4 | PB9 (01/04) | |
| 2008 (12/02) | FELA (02/05) | FPDAP4 (8/96) | PB9 (02/05) | |
| 2008 (12/97) NQ | FELA (10/02) | FPDELA (10/98) | PBFELA (02/03) | |
| 2008 (12/97) Q | FELA2 (02/05) | FPDELA2 (03/02) | PBFELA (02/05) | |
| BK2007 (04/00) | FELA2 (10/02) | FPDELA2B (3/02) | PBNS12 (01/05) | |
| BK2007 (12/02) | FELA2B (02/05) | FPDELAM (01/00) | PBNS15 (01/05) | |
| BK3 (6/99) | FELA2B (10/02) | FPDELAM (02/05) | PBPA12 (01/05) | |
| BK5 (6/99) | FELA2BK (12/02) | FPIA10 (06/06) | PBPA15 (01/05) | |
| BK6 (6/99) | FIA7 (04/05) | FPIA10P (06/06) | PBPA15NB(01/05) | |
| BKELA (10/99) | FPA3 (08/08) | FPIA5 (06/06) | SPDA-30 | |
| BPA12 (03/06) | FPA5 (08/08) | FPIA7 (06/06) | SPDA-31 | |
| BPA8 (03/06) | FPA7 (08/08) | FPIAR (10/07) | SPDA-32 | |

**Issuing Company:** **Amerus Life Insurance Company / Aviva Life and Annuity Company – Product Names**

| | |
|---|---|
| Freedom 3 | MultiChoice Elite |
| Freedom 5 | MultiChoice Elite Plus |
| Freedom 7 | MultiChoice Freedom 3 |
| Freedom Plus | MultiChoice Freedom 5 |
| Freedom Xtra | MultiChoice Freedom 7 |
| MCA 10 | MultiChoice Freedom Plus |
| MCA 10 II | MultiChoice Freedom Xtra |
| MCA 10 IV | MultiChoice Income 10 |
| MCA 6 | MultiChoice Income 5 |
| MultiChoice 7 | MultiChoice Income 7 |
| MultiChoice Bonus Master 10 | MultiChoice Income Elite |
| Advantage Bonus N | MultiChoice Income Plus |
| Advantage Bonus Q | MultiChoice Income Xtra |
| Advantage MVA N | MCA Plus |
| Advantage MVA Q | Guaranteed Annuity Gold MVA 5 N |
| Advantage Plus N | Guaranteed Annuity Gold MVA 5 Q |
| Advantage Plus Q | Guaranteed Annuity Gold MVA 6 N |
| Equity Advantage 10 N | Guaranteed Annuity Gold MVA 7 N |
| Equity Advantage 10 Q | Guaranteed Annuity Gold MVA 7 Q |
| Equity Advantage 7 N | Guaranteed Annuity Platinum 5 |
| Equity Advantage 7 Q | Guaranteed Annuity Platinum 6 |
| Equity Advantage Plus 10 Nonqualified | Guaranteed Annuity Platinum 7 |
| Equity Advantage Plus 10 Qualified | Guaranteed Annuity Platinum MVA 5 |
| Equity Advantage Plus 7 Nonqualified | Guaranteed Annuity Platinum MVA 6 |
| Equity Advantage Plus 7 Qualified | Guaranteed Annuity Platinum MVA 7 |
| Guaranteed Annuity Gold  5 Q | Performance Advantage Nonqualified |
| Guaranteed Annuity Gold 5 N | Performance Advantage Qualified |
| Guaranteed Annuity Gold 6 N | Secure Advantage Nonqualified |
| Guaranteed Annuity Gold 7 N | Secure Advantage Plus Nonqualified |
| Guaranteed Annuity Gold 7 Q | Secure Advantage Plus Qualified |
| MultiChoice Bonus Master 8 | Secure Advantage Qualified |
| MultiChoice Bonus Plus | Non-Qualified FLEX 30 |
| MultiChoice Classic | TSA Qualified FLEX 30  403(b) |
| Qualified FLEX 30 | |

**Issuing Company:  Amerus Life Insurance Company / Aviva Life and Annuity Company – Policy Form Numbers**

| | | | | |
|---|---|---|---|---|
| 13410K99 | MCA6 (02/05) | MCBP (03/03) P | MCI7 (06/06) G | 11603K96 |
| 13410K99 9/02UT | MCA6 (02/05) G | MCF3 (08/08) | MCIP (06/06) | 11621A96 |
| 13410K99P | MCA7 (02/05) | MCF5 (08/08) | MCIP (06/06) G | 11777E98 |
| 13411K99 | MCA7 (02/05) G | MCF7 (08/08) | MCIR (10/07) | 11778E98 |
| 13411K99P | MCA7NB (02/05) | MCFP (08/08) | MCIX (01/08) | 11779E98 |
| MCA10 (02/05) | MCAC (04/05) | MCFX (08/08) | MCM12 (01/05) | 11780E98 |
| MCA10 (02/05) G | MCAC (04/05) G | MCI10 (06/06) | MCM12 (01/05) G | 11791K96 |
| MCA2 (02/05) | MCANS7 (02/05) | MCI10 (06/06) G | MCM15 (01/05) | 11793K96 |
| MCA2 (02/05) G | MCBP (02/05) | MCI5 (06/06) | MCM15 (01/05) G | 11794C98 |
| MCA4 (02/05) | MCBP (02/05) G | MCI5 (06/06) G | MCMNS7 (02/05) | 11795C98 |
| MCA4 (02/05) G | MCBP (03/03) | MCI7 (06/06) | MCMNS15 (01/05) | 11796C98 |
| AAA3 (06/08) | MCF7 (08/08) | MCI10 (06/06) G | MCIX (01/08) | 11798C98 |
| AAA5 (06/08) | MCF7 (08/08) G | MCI5 (06/06) | NYMCF3 (12/08) | 9230J93 |
| AAA7 (06/08) | MCFP (08/08) | MCI5 (06/06) G | NYMCF5 (12/08) | |
| MCF3 (08/08) | MCFP (08/08) G | MCI7 (06/06) | NYMCF7 (12/08) | |
| MCF3 (08/08) G | MCFX (08/08) | MCIP (06/06) | NYMCFP (12/08) | |
| MCF5 (08/08) | MCFX (08/08) G | MCIP (06/06) G | 00-521-01 | |
| MCF5 (08/08) G | MCI10 (06/06) | MCIR (10/07) | 00-522-01 | |

**Issuing Company:  Delta Life and Annuity Company (predecessor to American Investors Life Insurance Company, Inc.) – Product Names**

| | |
|---|---|
| First Year Increase | Single Premium Income |
| Flexible Premium Front Load | Single Premium Income - PS (Preferred Series) |
| Flexible Premium Front Load Carefree Advantage | Platinum Guaranteed Rate Annuity MVA/No MVA |
| Flexible Premium No Load | Single Premium No Load - PS (Preferred Series) |
| Flexible Premium No Load - PS (Preferred Series) | Single Premium SP Access 6 |
| Gold Guaranteed Rate Annuity MVA/No MVA | Single Premium SP Bonus II |
| Guaranteed Interest | Single Premium SPDA - PSII |
| Guaranteed Rate Annuity | SP Bonus II |

**Issuing Company:  Delta Life and Annuity Company (predecessor to American Investors Life Insurance Company, Inc.) – Policy Form Numbers**

| | | |
|---|---|---|
| 12777E98 | IIAIRA 7/96 | SPQA6 10/94 |
| 12778E98 | IIAN 7/96 | SPTDA6 10/94 |
| 12779E98 | IIAQ 7/96 | SPTDABII 6/95 |
| 12780E98 | IIATSA 7/96 | |
| APDNQ 9/92 | NQSPDAPS 5/84 | |
| APN 3/91 | SPDA 6/88 | |
| APNPS 3/91 | SPDA6 10/94 | |
| APNPS 5/90 | SPDABII 6/95 | |
| APNQ 8/90 | SPDAPS 1/90 | |
| APNQ 9/92 | SPDAPS 11/92 | |
| APNQPS 5/90 | SPDAPS 12/89 | |
| DL2 (5/00) | SPDAPS 6/88 | |
| DL5 (4/00) | SPDAPS2 11/94 | |
| DLSPEL (8/00) | SPDAPS2 12/93 | |
| EIAIRA 10/95 | SPDAPS2 8/93 | |
| EIAN 10/95 | SPDAQ 1/89 | |
| EIAQ 10/95 | SPDAQPS 1/87 | |
| EIATDA 10/95 | SPDAQPS 1/90 | |
| EIATSA 10/95 | SPDAQPS 11/92 | |
| FPA 1/95 | SPDAQPS 11/94 | |
| FPA 11/84 | SPDAQPS 12/89 | |
| FPA 12/86 | SPDAQPS 7/88 | |
| FPA 2/93 | SPDAQPS 8/93 | |
| FPA 7/88 | SPDAQPS 9/92 | |
| FPAQ 12/94 | SPDAQPS2 11/92 | |
| FPAQ 9/88 | SPGA 5/91 | |
| FPIRA 7/88 | SPGAQ 5/91 | |
| FPIRA 8/88 | SPIRA6 10/94 | |
| FPTDA 3/90 | SPIRABII 6/95 | |

**Issuing Company:  Financial Benefit Life Insurance Company (predecessor to American Investors Life Insurance Company, Inc.) – Product Names**

| CHAMPION | TriBENEFIT |
|---|---|
| SENIOR ADVANTAGE | Capital Appreciation PLUS |

**Issuing Company:  Financial Benefit Life Insurance Company (predecessor to American Investors Life Insurance Company, Inc.) – Policy Form Numbers**

| ACH-0191 | FBL01 (9/96) | SENIOR-0193FY | SENIOR-0794NFY |
|---|---|---|---|
| ACH-NFY-0191 | FPDANW (4/97) | SENIOR-0193NFY | |

**Issuing Company:  Indianapolis Life Insurance Company (predecessor to Aviva Life and Annuity Company) – Product Names**

| FLEXIBLE PREMIUM DEFERRED ANNUITY I | QUALIFIED GROUP ANNUITY |
|---|---|
| FLEXIBLE PREMIUM DEFERRED ANNUITY II | QUALIFIED GROUP ANNUITY - 401(K) |
| Flexible Premium Retirement Annuity | Single Premium Deferred Annuity |
| Flexible Premium Retirement Annuity - IL | Individual Flexible Premium Annuity |
| Individual Flexible Premium Annuity - IL | Non Qual Single Premium Deferred Annuity |

**Issuing Company:  Indianapolis Life Insurance Company (predecessor to Aviva Life and Annuity Company) – Policy Form Numbers**

| A100-82 | A102-94 | A103-82 | QGA-95,GAC-95 |
|---|---|---|---|
| A102-88 w/3-102-91 | A102-94 U | FPA-95 | |

The specific bonus percentage for an eligible 65-and-Over Contract as to which a Class Member submits a valid Election Form for *enhanced* General Policy Relief will be determined by the information submitted in the Election Form and the corresponding ratios in accordance with the following table.

| Ratio: Remaining ALE ÷ Length of Surrender Charge Period | | | | | | |
|---|---|---|---|---|---|---|
| greater than or equal to 0 and less than 40.0% | 0.81% | 1.05% | 1.25% | 1.45% | 1.70% | 2.00% |
| greater than or equal to 40.0% and less than 50.0% | 0.80% | 0.95% | 1.10% | 1.25% | 1.40% | 1.60% |
| greater than or equal to 50.0% and less than 60.0% | 0.79% | 0.85% | 0.92% | 1.00% | 1.15% | 1.25% |
| greater than or equal to 60.0% and less than 70.0% | 0.78% | 0.81% | 0.85% | 0.90% | 0.95% | 1.00% |
| greater than or equal to 70.0% and less than 80.0% | 0.77% | 0.78% | 0.79% | 0.80% | 0.81% | 0.85% |
| greater than or equal to 80.0% and less than 90.0% | 0.76% | 0.77% | 0.78% | 0.79% | 0.80% | 0.82% |
| greater than or equal to 90.0% and less than 100.0% | 0.75% | 0.76% | 0.77% | 0.78% | 0.79% | 0.80% |
| greater than or equal to 100.0% and less than 105.0% | 0.52% | 0.53% | 0.54% | 0.56% | 0.58% | 0.60% |
| greater than or equal to 105.0% and less than 110.0% | 0.50% | 0.51% | 0.52% | 0.53% | 0.54% | 0.55% |
| greater than or equal to 110.0% | 0.40% | 0.40% | 0.40% | 0.40% | 0.40% | 0.40% | |
| | less than 10.0% | greater than or equal to 10.0% and less than 20.0% | greater than or equal to 20.0% and less than 30.0% | greater than or equal to 30.0% and less than 40.0% | greater than or equal to 40.0% and less than 50.0% | greater than or equal to 50.0% | **Ratio: Premium ÷ LNW** |

# APPENDIX D
## SCORING GUIDELINES AND SCORING FACTORS

**Scoring Guidelines**

Claims for Claim Process Relief will be scored by applying the following Scoring Guidelines:

1.     A score of "5" means that the information, considered as a whole, supports the Claim by clear and convincing evidence, including clear and convincing evidence of each of the following: (a) the Agent failed to conduct a suitability assessment for the original Owner with respect to the Contract, as appropriate under then-applicable insurance laws and regulations in the jurisdiction where the Contract was sold, and the Contract was unsuitable for the original Owner under the circumstances; (b) the Agent misrepresented to the original Owner the Surrender Charge provisions of the Contract or the rate of return provided by the Contract; (c) the original Owner also purchased a living trust in connection with the sale of the Contract, and in the course of the sale of the living trust the Agent did not disclose that he or she was an insurance salesperson, falsely represented that he or she was an employee of a lawyer, or otherwise engaged in improper practices.

2.     A score of "4" means that the information, considered as a whole, supports the Claim by clear and convincing evidence, including clear and convincing evidence of two of the following: (a) the Agent failed to conduct a suitability assessment for the original Owner with respect to the Contract, as appropriate under then-applicable insurance laws and regulations in the jurisdiction where the Contract was sold, and the Contract was unsuitable for the original Owner under the circumstances; (b) the Agent misrepresented to the original Owner the Surrender Charge provisions of the Contract or the rate of return provided by the Contract; (c) the original Owner also purchased a living trust in connection with the sale of the Contract, and in the course of the sale of the living trust the Agent did not disclose that he or she was an insurance salesperson, falsely represented that he or she was an employee of a lawyer, or otherwise engaged in improper practices.

3.     A score of "3" means that that the information, considered as a whole, supports the Claim by clear and convincing evidence, including clear and convincing evidence of one of the following: (a) the Agent failed to conduct a suitability assessment for the original Owner with respect to the Contract, as appropriate under then-applicable insurance laws and regulations in the jurisdiction where the Contract was sold, and the Contract was unsuitable for the original Owner under the circumstances; (b) the Agent misrepresented to the original Owner the Surrender Charge provisions of the Contract or the rate of return provided by the Contract; (c) the original Owner also purchased a living trust in connection with the sale of the Contract, and in the course of the sale of the living trust the Agent did not disclose that he or she was an insurance salesperson, falsely represented that he or she was an employee of a lawyer, or otherwise engaged in improper practices.

4.     A score of "2" means that the information, considered as a whole, supports (a), (b), or (c) in paragraph 3 immediately above relating to the Claim by a preponderance of the evidence.

5.     A score of "1" means that the information, considered as a whole, supports (a), (b), or (c) in paragraph 3 immediately above relating to the Claim by substantial evidence, but less than a preponderance of the evidence.

6.     A score of "0" means that the information, considered as a whole, does not provide the support required for the Claim to be assigned a score of at least "1".

**Scoring Factors**

The Scoring Factors set forth below will be considered in the review and scoring of Claims.

1. The original Owner's age when the Contract was issued.

2. The Annuitant's age when the Contract was issued.

3. At the time the Contract was purchased, the original Owner's monthly income, general financial condition, and requirements for access to the funds used to purchase the Contract.

4. The original Owner's sophistication and experience regarding annuity products and other financial products and investments.

5. Whether, before buying the Contract, the original Owner had previously owned another annuity (including another Company Annuity) and whether the original Owner surrendered such other annuity.

6. The reasons and purposes for which the original Owner purchased the Contract.

7. Whether the Contract included any bonus feature and the amount of any such bonus.

8. Whether the original Owner incurred withdrawal or surrender charges or other charges or penalties in liquidating other assets, or in transferring funds from other assets or investments, to fund in whole or in part the purchase of the Contract.

9. Whether the original Owner received advice regarding the Contract from a financial advisor, investment advisor, estate planning advisor, attorney, accountant, other professional, or family member in connection with the purchase of the Contract and, if so, the substance of that advice and the role such advice played in the decision to purchase the Company Annuity, and whether any such person was present at the sales presentation.

10. The pattern of any withdrawals or attempted withdrawals from the Contract.

11. The length of time the Contract was held in deferral and/or the amount of time remaining in the deferral period under the Contract (i.e., until the specified annuity date or maturity date).

12. If the Contract was surrendered, the reason for the surrender.

13. The amount of Surrender Charges (if any) incurred by the Claimant under the Contract.

14. Whether the original Owner understood at the time he/she decided to purchase the Contract how the withdrawal features of the Contract, including the Surrender Charges, actually worked.

15. Whether, prior to making the decision to purchase the Contract, the original Owner considered purchasing any other annuity product, and the information received and considered by the original Owner relating to such other annuity product.

16. Whether the original Owner purchased a living trust in connection with the purchase of the Contract, and the circumstances in which such living trust was sold.

17. Whether any living trust was part of a broader estate plan that was recommended to the original Owner by a professional who was not affiliated with the salesperson who sold the annuity.

18. Whether any living trust was funded by the Contract or other assets.

19. Whether the original Owner received a Consumer Brochure before making the decision to purchase the Contract.

20. Any other written disclosures or other documents received and/or signed by the original Owner before making the decision to purchase the Contract or otherwise in connection with the purchase of the Contract.

21. The recollection of the original Owner, an Agent, or others relating to whether the original Owner received a Consumer Brochure before making the decision to purchase the Contract.

22. The recollection of the original Owner, an Agent, or others relating to any sales presentation, explanation, or other information provided to the original Owner about the Contract, or any of its relevant features, before the original Owner made the decision to purchase the Contract.

23. The degree to which the original Owner relied on any alleged misrepresentations by the Agent in making the decision to purchase the Contract, and the substance of any such misrepresentation.

24. The degree to which the original Owner relied on any statements made by Defendants in a Consumer Brochure, or any other statements, promises, or representations made by Defendants in making the decision to purchase the Contract, and the nature of such statements, promises, or representations.

25. Whether, prior to the filing of any action consolidated into the Action, the original Owner or the Claimant submitted a written or oral complaint to a Defendant, an Agent, or a regulatory agency, and the substance of any such complaint.

26. If the Claimant is not the original Owner, whether the Claimant has personal knowledge of the facts and circumstances covered in factors 1-6, 8, 9, 12, and 14-25, above.

27. Whether the issuing Company sent the Claimant annual statements concerning the Contracts and the number of years such statements were sent.

# APPENDIX E
## INSTRUCTIONS FOR IMPLEMENTING GENERAL POLICY RELIEF

As explained in the Notice of Class Action, Proposed Settlement, and Fairness Hearing, the proposed settlement makes available the General Policy Relief as an added benefit under certain eligible policies. These instructions tell you how you can implement the General Policy Relief for your eligible policy if you decide that you would like to do so.

YOU ARE NOT REQUIRED TO IMPLEMENT THE GENERAL POLICY RELIEF FOR POLICIES IN DEFERRAL OR IN ANNUITIZATION, AND YOU DO NOT NEED TO DO ANYTHING IF YOU PREFER TO KEEP YOUR POLICY IN DEFERRAL OR POLICY IN ANNUITIZATION AS IS. IN ADDITION, THE GENERAL POLICY RELIEF BENEFITS, AND THE TAX AND OTHER CONSEQUENCES TO YOU OF RECEIVING THE BENEFITS, MAY VARY DEPENDING ON WHEN THE RELIEF IS IMPLEMENTED. YOU MAY WANT TO CONSULT WITH A TAX OR OTHER ADVISOR BEFORE MAKING YOUR DECISIONS AS TO WHETHER AND WHEN TO IMPLEMENT THE GENERAL POLICY RELIEF.

If you want to have the General Policy Relief implemented for a **policy in deferral** or a **policy in annuitization**, contact the Company that issued your **policy** by telephone during the timeframes explained in the **"*Implementation Period*"** paragraph below. The Company will then provide you with information relating to what would happen with your **policy** if you decide to go ahead with implementing the General Policy Relief, including: (1) then-current policy values; (2) the approximate amount of the applicable bonus; (3) for a **policy in deferral**, the five-year anniversary date of the **policy**; (4) the estimated amount of the annuity installment payments, including, for a **policy in deferral** that has not yet reached the five-year anniversary date, the estimated amount of the annuity installment payments if the General Policy Relief is implemented immediately, and the estimated amount of the annuity installment payments if the General Policy Relief is implemented upon reaching the five-year anniversary date; and (5) when and how long the annuity installment payments would be made. If you contact the issuing Company about implementing the General Policy Relief, the Company will mail this information to you as soon as reasonably practicable after your request.

If you contact the issuing Company and tell the Company representative that you want to go ahead with implementing the General Policy Relief, the Company will send you the required paperwork.

***Implementation Period***: To implement the General Policy Relief for a **policy in deferral**, you may contact the issuing Company at any time after the first anniversary of the **policy's** issue date but ***no later than*** the annuitization date or maturity date specified in the **policy**. However, because implementing the relief will mean that the **policy** will cease to be **in deferral**, you should not instruct the Company to implement the relief before the time you want the **policy** to be taken out of deferral and the annuity installment payments to the annuitant to begin. To implement the General Policy Relief for a **policy in annuitization**, you may contact the issuing Company and instruct it to implement the relief at any time while the **policy** remains active and is still the subject of continuing payments. The telephone numbers for contacting your issuing Company are:

[telephone #s for implementation requests]

Please keep in mind that to implement the General Policy Relief the required paperwork will have to be properly completed and returned to the Company by U.S. mail with a postmark that falls within the applicable period explained in the preceding paragraph.

General Policy Relief will not be implemented for **policies in deferral** and **policies in annuitization** unless the **policy owner** contacts the Company and submit the required paperwork as explained above. This means that no bonus will be credited or paid on your **policy in deferral** or **policy in annuitization** under the General Policy Relief unless you contact the Company to request implementation of the relief and submit the required paperwork within the specified time periods. In addition, even if the Court approves the settlement, no settlement relief, including General Policy Relief, will be implemented until after the **Final Settlement Date**. If you contact the Company to implement General Policy Relief before the **Final Settlement Date**, the Company will not send you information or the paperwork required to implement the relief until after the Final Settlement Date.

For **fully annuitized policies**, the General Policy Relief will be implemented for applicable **policies** automatically after the **Final Settlement Date**, so you will not need to take any action to receive it, if applicable to your **policy**.