UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re AMERICAN INVESTORS LIFE ) <br> INSURANCE CO. ANNUITY ) <br> MARKETING AND SALES PRACTICES ) <br> LITIGATION ) <br> ) | MDL Docket No. 1712 |

**RESPONSE OF CLASS MEMBER
MARTHA MICHAEL TO PLAINTIFFS'
MOTION FOR FINAL APPROVAL
AND WITHDRAWAL OF HER INTENT TO APPEAR AT THE FAIRNESS HEARING**

Unless and until a fair and adequate settlement can be structured for the class members, the Court should not grant Plaintiffs' Motion for Final Approval of Settlement, Class Certification, and Award of Attorney fees and Costs and Incentive Payments. Toward that end, the Objection of Martha Michael should be sustained and the Plaintiffs' Motion denied. In further support of her Objection, Ms. Michael, through her attorneys of record, state the following:

**I. The proposed settlement is not fair and adequate because its Claims Review Process is too complicated and fails to offer the appropriate and reasonable remedy of rescission and refund of premiums**.

Determining fairness and adequacy of the proposed settlement by comparing it to the Minnesota settlement is appropriate. Indeed, class counsel points to other settlement classes in their effort to persuade the Court that the proposed settlement should be approved. Ms. Michael maintains that the Minnesota settlement is the best and most appropriate point of comparison because it involves the same defendants, identical claims and will operate side-by-side with the proposed settlement if it is approved. In her Objection, Ms. Michael argued that the Claim

Review Process should operate consistent with the process used in the Minnesota Settlement because claimants there are entitled to seek rescission and a full refund of premium (with interest). Minnesota residents are entitled to the refund, if they can demonstrate that they had been defrauded or that the annuity they purchased was unsuitable for them. By the terms of the settlement, claims are to be liberally construed in favor of the claimants.

Similarly, the Claims Review Process of the proposed settlement allows class members to demonstrate that they have been defrauded and that the annuities sold to them were unsuitable.[1] In the Claims Review Process, however, an individual adjudication of each class member's claims will occur as a prerequisite to an award of 'class' relief to that claimant. Each claim will be individually scrutinized to see if the evidence presented by the claimant meets one of four different evidentiary standards, and to see if it fits into any of several different factual scenarios. After a determination of the merits of each individual claim is made, the class member may be awarded a small increase to the 'bonus' enhancement, or receive a slightly greater fraction of the surrender charge the Defendants have already levied on those claimants who (were clearly convinced) they had been misled or sold an unsuitable annuity. Under the proposed settlement, the best outcome for a claimant who proves her legal claim by clear and convincing evidence is

---

[1] Class Counsel explains the process:

> The Claim Process Relief, and the related Claim Review Process, is intended for Class Members who believe that they can prove that they have been harmed by the way a policy was marketed and sold and/or because the policy was unsuitable for the original owner. The Claim Review Process allows participating Class Members to submit a Claim Form and proof of alleged misconduct by Defendants or the salespersons involved in the sale. Class Members who participate in the Claim Review Process must prove their claim in order to receive any Claim Process Relief.

Plaintiffs Memorandum in Support of Approval, p. 10.

far less than what she would be entitled to under the basic contract law of every state (i.e. rescission).

The Minnesota settlement presents a more desirable and more efficient alternative to the proposed Claims Review Process. In it, rather than have multiple tiers applying differing evidentiary standards and considering a myriad of factual scenarios, the claimants were allowed to request a full refund of their premiums if they believed they had been defrauded or if the annuity sold to them was unsuitable. Claims are to be construed liberally in favor of the claimants and the same standard applies to all claimants. The Minnesota settlement presents a much more efficient and desirable process than the proposed settlement.

At bottom, the proposed settlement and its Claim Review Process is neither fair nor adequate because it places a higher burden of proof on the Claimant, and yet (when the higher burden of proof is met) awards less relief than that available to Minnesota residents having the same claims.[2] Additionally, administration of the Minnesota settlement is in place and will continue to be carried out contemporaneously with this settlement (if this settlement is approved). Failing to incorporate the remedies of the Minnesota settlement into the relief available to the class as a whole makes the proposed settlement unfair and inadequate.

## II. In addition to the concerns over fairness and adequacy, the proposed Claims Review Process also calls into question any finding that the class action meets the predominance and superiority requirements of Rule 23 (B)(3).

If the class action meets the requirement of predominance, the Court must find that common questions of law and fact predominate over individualized issues. Predominance

---

[2] The claims of Minnesota residents are included in the class, but any recovery obtained by them through the Minnesota settlement effectively makes them ineligible for class relief).

requires that "[i]ssues common to the class must predominate over individual issues." <u>In re Hydrogen Peroxide</u>, 552 F.3d 305, 311 (3d Cir. December 20, 2008). Issues are common or individual based on the nature of evidence that will suffice to resolve the issue. <u>Id.</u> Thus "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." <u>Id.</u> (internal quotation marks omitted). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 172 (3d Cir.2001). Therefore, "the task for plaintiffs at class certification is to demonstrate that [each] element ... is capable of proof at trial through evidence that is common to the class rather than individual to its members." <u>In re Hydrogen Peroxide</u>, 552 F.3d at 311-12. The relevant question is not whether each element can be proved but whether such proof will require evidence individual to class members.

The Claim Review Process in its proposed form demonstrates the lack of predominance of questions of law and fact common to all class members. Indeed, the Process is designed to adjudicate *individual* claims, on an *individual* basis, and to determine to what extent each claim differs from the others. The variety of claims based on a variety of factual scenarios to be considered in the Claims Review Process have varying evidentiary standards applied during the individual adjudication of a class member's claims (i.e. "clear and convincing evidence", "preponderance of the evidence", "substantial evidence"). Therefore, the Process does not demonstrate that common questions of law and fact predominate over individualized issues.

If the instant class action satisfies the predominance and superiority requirements of Rule 23(B)(3), the more appropriate remedy should be consistent with the Minnesota settlement where

4

the claims review process applies a single standard that can be easily met by class members and provides the same fair and adequate relief to all class members.

### III. The proposed settlement is unfair and unreasonable if it is funded at the expense of class members.

The proposed settlement should be rejected if the Court cannot independently verify that the costs of the settlement will not be ultimately borne by the class members. Ms. Michael objected "to the extent the 'bonus' will be funded through internal manipulations of crediting rates and spreads—resulting in the cost of the class relief being borne by the class members." Michael Objection at p. 5. Plaintiffs did not respond to this objection and have not disclosed how the "bonus" will be funded. To this point, no party has represented that the settlement funds will not be recouped from the class members. Notably, there is no settlement fund identified by the Parties.

As the Court is likely aware, "bonuses" in the deferred annuity context have been both heavily scrutinized and criticized. Many believe the bonuses to be inherently deceptive and of little or no real value to annuity purchasers to whom they are offered as inducements. See e.g. Negrete v. Allianz Life Insurance Co. of N. America, 238 F.R.D. 482 (C.D. Calif. 2006)(*cited by the Plaintiffs in their Memorandum in Support of Approval*). In general terms, many allege that the recipient of an annuity bonus, in fact, receive nothing of any additional or extra value as the term "bonus" would suggest. Moreover, it is alleged that the companies who 'give' the bonuses, actually recoup the cost of them from the annuity purchasers to whom they are given. In other words, the cost of the bonus is ultimately borne by the purchaser. Recoupment of the costs of the bonus, it is generally alleged, may be accomplished by internally manipulating the interest rates to be credited to annuity holders. If the 'bonuses' to be paid as class relief were funded in

5

the same way, the monetary relief to Class members would be entirely illusory. If approved, such a settlement would be unfair.

The parties' silence on this point is both concerning and telling. Given their silence, this objection is all the more pressing and the Court should take action to ensure that the interests of the absent class members are properly protected. The Court should postpone its ruling on Plaintiffs' motion for final approval until an independent expert can be appointed by the Court to evaluate the proposed monetary relief and suggest safeguards to guarantee that the class members will not ultimately bear the costs of the settlement.

Support for this course of action by the Court is found in Grove v. Principal Mutual Life Ins. Co., 200 F.R.D. 434, 441-442 (S.D.Iowa,2001)(*also cited by the Plaintiff*) where the court recognized that the "…case embraced a number of complex subject areas, including: individual deferred annuity contracts; cash value life insurance products; and a range of complex actuarial methodologies, accounting practices, and financial theories." Id. The Grove court noted that "…it would have been an abdication of the Court's role in the settlement process to blindly approve of an agreement, the basis of which it knew little about." Id. In support for its decision to appoint independent experts to analyze the settlement, the Grove court explained:

> In addition to ensuring the requirements of Rule 23 certification are met, one of the Court's central obligations is to determine whether this settlement is fair, reasonable, and adequate. *See* In re Prudential, 148 F.3d at 316 ("Rule 23(e) imposes on the trial judge the duty of protecting absentees, which is executed by the court's assuring the settlement represents adequate compensation for the release of the class claims.") (citation omitted). The Court's oversight *442 duty is fiduciary in nature. *See Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir.), *cert. denied,* 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975) ( "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members.... [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate."). This task, which the Court undertakes at Part V of this Order, is not taken lightly as a substantial number of individuals, if the settlement is approved, will be deemed to have surrendered once and for all their rights for individual redress against the Defendant. *See*

> 2 *Newberg on Class Actions* (3d ed.1992) § 11.41 (Rule 23(e) requires courts to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished") (citation omitted). As the Supreme Court observed, class actions poised for settlement "demand undiluted, even heightened, attention" from the district court. *Amchem,* 521 U.S. at 620, 117 S.Ct. 2231; *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 849, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (discussing judicial scrutiny in a mandatory settlement class context). Where, as here, the parties seek certification and settlement approval simultaneously, the Court is required "to be even more scrupulous than usual" when examining the fairness of the proposed settlement. *In re Prudential,* 148 F.3d at 317 (citation omitted); *see also Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 68 (D.Mass.1997)(court "has an obligation to consider the substantive fairness of the relief made available to settling class members, and this presumption [of fairness that exists with arms-length agreements] will not stand if the court determines that the substance of the agreement is not in fact fair and adequate").

Grove at 441-442.

In the alternative or in addition to the appointment of experts to analyze the fairness and adequacy of the settlement, the Court should require a settlement fund to be funded by Defendants and maintained by an independent trustee. This fund should contain all the potential monetary relief. Approved claims would have their monetary relief be paid out of this fund directly to class members at the appropriate time. Otherwise, the monetary relief is simply a line item on class members' accounts which Defendants can easily nullify by manipulating other variables within their control.

### IV. The Proposed Settlement is Unfair Because it Releases Independent Agents Not Before The Court.

As discussed in Ms. Michael's objection, the proposed settlement releases independent agents who are not before the Court from claims which have not been asserted. Plaintiffs respond that releasing the agents is proper because their liability arises from "the same course of conduct alleged in the complaint." Plaintiffs' Memorandum at p. 30. This misses the point. In

certain circumstances, courts may release claims not asserted if they arise from the same nexus of facts—just as a judgment may preclude future litigation of such claims if they arose from the same nexus of facts. The issue is not the claims, but rather the parties being released. The Court may not release persons who are not parties to this action, regardless of what claims might be alleged against them.

Plaintiffs argue that "the release in the Settlement merely releases claims which arise out of the same course of conduct alleged in the Complaint," and point to Varacallo v. Mass Mutual Life Insurance Co., 226 F.R.D. 206 (D.N.J. 2005) and the cases cited therein. Plaintiffs' Memorandum at p. 30. This case, and every case cited therein, addresses the release of **unnamed claims** from **named defendants**. Here, Plaintiffs are attempting to release **unnamed defendants**.

Moreover, no consideration is being received from the independent agents. As noted in Ms. Michael's objection, if a contract is premised on mutually bargained for legal detriment, then the Settlement is unenforceable by the released agents as they incur absolutely no detriment. The Second Circuit in National Super Spuds, Inc. v. New York Mercantile Exchange, 660 F.2d 9 (2nd Cir. 1981) rejected a class settlement in part because it gave away claims possessed only by absent class members in exchange for no new consideration. "An advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class." Id. at 19. This is largely because "fundamental principles underlying class actions limit the powers of the representative parties to the claims they possess in common with other members of the class." Id. at 16. Here, Plaintiffs are attempting to release claims against

independent agents which they do not possess. This release garners nothing in return and renders the proposed settlement unfair and inadequate.

### V. Ms. Michael's counsel withdraws the previously filed Notice of Intent to Appear at the Fairness Hearing.

The undersigned counsel for Ms. Michael previously filed a Notice of Intent to Appear at the Fairness Hearing. Counsel will not attend the Fairness Hearing of November 6, 2009, and asks that the Court consider Ms. Michael's Objection in its written form, along with this filing. Ms. Michael also adopts and incorporates all other objections made to the proposed settlement in the above-styled action which do not conflict with the objections set forth herein.

### V. Conclusion

The settlement as currently proposed is patently unfair and presents the potential for future abuses by Defendants. The Claims Review Process should be simplified and rescission and refund of premiums should be made available as a remedy. Unnamed agents who are not a party to this action should not be released. The Court should also delay its ruling on the proposed settlement until an independent expert can be appointed to ensure that the method and type of relief can be properly executed as discussed herein.

Respectfully submitted:

  s/  P. Michael Yancey                                  .
P. Michael Yancey
Attorney for Objector Martha Michael
(policy # 44106)

**OF COUNSEL:**

**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Avenue South
Birmingham, Alabama 35205
(205) 939-0199 - telephone
(205) 939-0399 – facsimile

# CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Office of the Clerk of Court
c/o American Investors Annuity
Class Action Information Center
P.O. Box 2226
Faribault, MN  55021-1726

James F. Jordan, Esq.
Jason H. Gould, Esq.
Jordan Burt LLP
1025 Thomas Jefferson Street, N.W.
Ste. 400 East
Washington, DC  2007-5208

Marcus & Auerbach LLC
P.O. Box 96
Wyncote, PA  19095

John R. Hargrove
Hargrove Pierson & Brown
21 Southwest 5th Street, Suite 200
Boca Raton, FL  33432

                                                           s/ P. Michael Yancey
                                                          OF COUNSEL