# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re AMERICAN INVESTORS LIFE INSURANCE CO. ANNUITY MARKETING AND SALES PRACTICES LITIGATION<br><br>This Motion Relates to:<br><br>Stein v. Amerus Group Company, et al. | MDL Docket No. 1712 |

## CLASS PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO ENFORCE THIS COURT'S FINAL ORDER APPROVING THE SETTLEMENT AND FOR RELATED RELIEF

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………………...1

I.     OBJECTOR WILL NOT EVEN OBEY THE BRIEFING ORDER ON THIS MOTION, AND NOW STANDS IN CONTEMPT OF THAT COURT MANDATE AS WELL….…..……………………………………………….1

II.    THE CASES APPLYING FED. R. CIV. P. 62 ARE INAPPOSITE BECAUSE IN EACH OF THEM, NO SPECIFIC COURT ORDER HAD REQUIRED THE FILING OF A MOTION FOR STAY AND COUNSEL PRESSING THE OBJECTIONS SUFFERED FROM NO CONFLICT OF INTEREST…………………..2

III.   OBJECTOR HAS OFFERED NO ARGUMENT IN OPPOSITION TO CLASS PLAINTIFFS' CONTENTION THAT THE ISSUES SHE PROPOSES TO RAISE ON APPEAL ARE FRIVOLOUS…………………………………………………..4

IV.   OBJECTOR OFFERS NO SUBSTANTIVE RESPONSE TO CLASS PLAINTIFFS' DEMONSTRATION THAT HER COUNSEL SUFFER FROM A CONFLICT OF INTEREST BY REPRESENTING BOTH A MEMBER OF THE CLASS AND OPT-OUTS…………………………………………………………………………..7

V.    THE ONLY REMAINING QUESTION IS WHETHER THIS COURT HAS THE POWER TO PROTECT THE CLASS, AND ITSELF, FROM BEING TOYED WITH...9

CONCLUSION………………………………………………………………………………..11

**TABLE OF AUTHORITIES**

**Cases**

*Allapattah Services, Inc. v. Exxon Corp.*,
    2006 U.S. Dist.LEXIS 88829 (S.D. Fla. April 7, 2006)……………………………….10

*Chambers v. Nasco, Inc.*,
    501 U.S. 32 (1991)……………………………………………………………………….10

*In re School Asbestos Litigation*,
    842 F.2d 671 (3d Cir. 1988)……………………………………………………………3

*Jackshaw Pontiac v. Cleveland Press Pub. Co.*,
    102 F.R.D. 183 (N.D.Ohio 1984)………………………………………………………7

*Kuper v. Quantum Chemical Corp.*,
    145 F.R.D. 80 (S.D. Ohio 1992)……………………………………………………….7

*Kurczi v. Eli Lilly & Co.*,
    160 F.R.D. 667 (N.D. Ohio 1995)……………………………………………..……7

*O'Keefe v. Mercedes-Benz USA LLC*,
    214 F.R.D. 266  (E.D. Pa. 2003)……………………………………………….…..11

*Roe v. Operation Rescue*,
     54 F.3d 133 (3d Cir. 1995)…………………………………………………………2

*Shaw v. Toshiba Am. Infor. Sys., Inc.*,
    91 F. Supp.2d 942 (E.D. Tex. 2000)………………………………………………..11

*Sullivan v. Chase Investment Services of Boston, Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978)……………………………………………………….8

*Varacallo v. Mass. Mut. Life Ins. Co.*,
    226 F.R.D. 207(D. N.J. 2005)………………………………………………………11

*Zebrowski v. Altomare*,
    973 F.2d 1001 (1st Cir. 1992)……………………………………………………….10

**Statutes**

28 U.S.C. §1927……………………………………………………………………………….10

**Rules of Procedure**

Fed. R. Civ. P. 11……………………………………………………………………………...10

Fed. R. Civ. P. 23…………………………………………………………………………...3, 10

**Other**

*The End of Objector Blackmail?* 62 Vand. L. Rev. 1623 (Nov. 2009)…………………………11

## INTRODUCTION

Objector Michael's brief in opposition to the Class Plaintiffs' Motion to Enforce this Court's Final Order provides a great deal of additional confirmation that Plaintiffs' concerns about the Objector, and her counsel, are well-founded, and that the motion should be granted. Objector Michael refuses to obey even this Court's scheduling order. She and her counsel decline to respond to the questions Class Plaintiffs have raised about the conflict of interest between counsel's representation of Objector Michael and their simultaneous representation of 39 opt-outs from the class. She refuses to respond to most of the other substantive arguments Class Plaintiffs provided to demonstrate the frivolousness of the Objectors' appeal. Surprisingly, she defends counsel's involvement in another class action, settled on precisely the same terms as they challenge here, solely with the argument that no-one objected to it.

Objector does raise one valid point: the Notice disseminated to the Class directed that the Clerk be served by mail to the Class Action Service Center. Objector complied with that directive. Class Plaintiffs' challenge to the objection on that ground is withdrawn.

**I.  OBJECTOR WILL NOT EVEN OBEY THE BRIEFING ORDER ON THIS MOTION, AND NOW STANDS IN CONTEMPT OF THAT COURT MANDATE AS WELL**

While Objector Michael has filed a paper in response to Class Plaintiffs' Motion on the day it was due, she expressly refuses to address most of the issues set forth in the brief to which this Court directed her to respond on that date. Instead, she "respectfully" proposes that she submit briefing on the issues some other day, apparently to be identified later, in some procedure that is apparently also to be identified at some other time, by someone yet unnamed. See Objector's Response to Motion to Enforce Final Order (hereinafter "Obj. Mem.") at 11.

1

Contempt, as Class Plaintiffs reminded the Court in their opening brief, consists of the breach of a valid Order of Court of which the contemnor had knowledge. *Roe v. Operation Rescue*, 54 F.3d 133, 137 (3d Cir. 1995). Here the Court issued as simple an Order as could be imagined: provide your response to the Class Plaintiffs' Motion by February 3, 2010. Objector refused – though she did not bother to ask for additional time, or to suggest that the Court's scheduling order was improper or should be altered in any way. She just ignored its directive.

Instead, when she filed her opposition brief, Objector suggested that perhaps she would address the substantive arguments in Class Plaintiffs' brief on some other day. It is as if this Court's scheduling order were an opening bid, to which Objector has now made a counterproposal (albeit a very indefinite one).

No further proof should be necessary that this litigation process is being used for gamesmanship rather than the resolution of a genuine legal claim – or that Objector is interested primarily in delay. Not only did she fail to respond to the Court's scheduling order quickly, but she did so without so much as a phone call to Class Counsel to request their consent for additional time. Nor, in her brief did she even bother to request a specific amount of additional time, let alone suggest why it was necessary to marshal her arguments.

For all these reasons, Objector is now also in contempt of this Court's Order setting a briefing schedule on the Class Plaintiffs' Motion to Enforce this Court's Final Order.

**II.   THE CASES APPLYING FED. R. CIV. P. 62 ARE INAPPOSITE BECAUSE IN EACH OF THEM, NO SPECIFIC COURT ORDER HAD REQUIRED THE FILING OF A MOTION FOR STAY AND COUNSEL PRESSING THE OBJECTIONS SUFFERED FROM NO CONFLICT OF INTEREST**

In the only serious legal argument she advances on any issue, Objector brings a series of cases discussing Federal Rule of Civil Procedure 62, which note that that Rule itself does not require the filing of a motion for stay by a party seeking to appeal. The holding is both correct

2

and irrelevant. Here, in contrast to those cases, Class Plaintiffs do not invoke Rule 62 as the source of Objector's duty to file a motion for stay. Instead, we invoked the very clear provision of this Court's Final Order. As Objector does not dispute, that Order *mandates* that any objector who seeks to appeal "*shall*" file a motion for stay and *shall* post an appropriate bond.

The cases are also inapplicable here because in those cases the Objector was not represented by counsel who also simultaneously represented opt-outs. In this case, the class is being held up – in more than one sense of that term – by people who are not members of the class, using the Objection of one person deployed solely for that purpose. No opinion cited by Objector stands for the proposition that this Court is powerless to protect the certified class from such abuse.

The only question one might raise – left unasked by Objector, and therefore waived – is whether this Court had the power to mandate such a filing. We spoke to that question in note 6 of our opening brief, in which we reminded the Court that Rule 23(d) authorizes the Court to make such orders as it deems necessary to protect the class. As the Third Circuit held in *In re School Asbestos Litigation*, 842 F.2d 671, 680 (3d Cir. 1988), "Rule 23 specifically empowers courts to issue orders to prevent abuse of the class action process." As with virtually all actual legal arguments advanced by Class Plaintiffs, Objector simply ignores this, and neither parses our authority nor provides any contrary authority of her own.

The significance of the issue for the instant motion cannot be overstated. There is no room for dispute that an Order of this Court mandated that Objector take two steps *before* she filed a Notice of Appeal. There is no room for dispute that Objector did not take either of those steps. While one might have attacked the validity of the Court's order, (a) Objector did not bother to do so, and (b) if she had bothered she would have failed, because the Court acted

3

within its powers by issuing the order.  QED:  Objector is in contempt of a valid Order of this Court.  She should be punished – and yet the "punishment" Class Plaintiffs seek is as mild as can be:  we ask only that Objector be ordered  (again) to do what she has already been ordered to do, namely post an appropriate bond.

### III.   OBJECTOR HAS OFFERED NO ARGUMENT IN OPPOSITION TO CLASS PLAINTIFFS' CONTENTION THAT THE ISSUES SHE PROPOSES TO RAISE ON APPEAL ARE FRIVOLOUS

This Court's Final Order, issued after it had reviewed all objections, and so knew the scope of possible issues to be raised on appeal, was made to protect against frivolous appeals.  We have exactly such an appeal here, as Objector has not seriously disputed.

Indeed, Objector has deigned to defend the substance of only one of the six objections she proffered to this Court, and whose frivolousness Class Plaintiffs demonstrated in their opening brief.  And even that defense is (a) entirely beside the point and (b) incorrect.

To support her contention that release of agents was a concession made without consideration, Objector advances one argument:  she points to a brief – one that postdates her objection and this Court's overruling of it, and so *dehors* the record on the objection, or on the appeal, and thus completely irrelevant – in which American Investors Life takes the unsurprising litigation position that the agents' misrepresentations are solely the agents' responsibility and not the company's.  The fact that AILIC would argue this simply does not have any bearing on whether class members' release of the agents is without consideration.

The argument was apparently raised in a case in which Objector's counsel represents the plaintiff, Paul P. Mayo, an opt-out from the instant class.  While the dispute is in a state court, the docket of which Class Plaintiffs cannot quickly access, it seems likely that Objectors'

4

counsel took the opposite position – namely, that AILIC *is* responsible for the agent's misrepresentations.

We pass without comment the inconsistency between the position Objector's Counsel are taking in that individual case and the one they are taking here, and proceed to the point: settling a lawsuit means standing down on all disputed issues. Plaintiffs have been compensated for doing that, by a company whose net worth is adequate to provide relief to all members of the class, because that company has given each member of the class more liquidity in their policies than the policies themselves allowed. In exchange, all other claims, including individual claims against agents of unknown net worth, that would have to be prosecuted on an individual basis, are waived.

That trade is obviously not without consideration, regardless of what litigation position the company took in an individual case: indeed, the Company took a similar position in this case when it answered the Second Amended Complaint. *See* Defendants' Seventeenth Affirmative Defense to Second Amended Complaint (". . . losses were proximately caused . . . by agents or employees of one of the AmerUs defendants acting outside of the scope of their agency or employment with AmerUs. . .") The fact that the Company has taken that litigation position, and been willing nonetheless to pay plaintiffs in the form of increased liquidity even though they contended they could in some cases escape liability by pinning the error on a (likely impecunious) individual agent, does not begin to constitute proof that the settlement is void for want of consideration.

Objector does not respond to any other argument advanced by Class Counsel to demonstrate that her objections, and therefore her appeal, are frivolous. We briefly review here the arguments thus ignored.

- We said that review of the Notice, for clarity, would be on an abuse-of-discretion basis, and that the Notice was clear, so that that objection could not possibly be upheld on appeal. Objector says nothing in response.

- We said that the Settlement could not be upended on the ground that more relief should have been obtained, or by pointing to the Minnesota Attorney General's settlement, both because the Minnesota AG did not get the relief Objector claims she got and because even if she had, it could possibly serve as the basis for overturning this Court's decision – again, reviewed on an abuse-of-discretion basis – to approve the settlement. Again, Objector says nothing in response.

- And the same again for Objector's complaint that the non-economic relief had no enforcement mechanism: we showed it did; we showed Objector had no standing to complain about this anyway; and we showed that even if it didn't, this could not be the basis for overturning the settlement. Yet again, Objector says nothing in response.

- And the same again for Objector's contention that the settlement relief can be funded by defendants' manipulation of the interest rate on the policies at issue. We offered proof that this is wrong, and showed that the proof is in the Notice itself. Objector ignores the whole issue.

This is not the serious prosecution of a serious appeal. It is, instead, of a piece with the conduct of Objector and her counsel since they first appeared in this case: of a piece, that is to

6

say, with the submission of objections, with no evidence in support, and then not bothering to show up to argue them.

IV.  **OBJECTOR OFFERS NO SUBSTANTIVE RESPONSE TO CLASS PLAINTIFFS' DEMONSTRATION THAT HER COUNSEL SUFFER FROM A CONFLICT OF INTEREST BY REPRESENTING BOTH A MEMBER OF THE CLASS AND OPT-OUTS**

In our opening brief, Class Plaintiffs cited two disciplinary rules, and cases applying the principle enforced by those rules, demonstrating that Objectors' Counsel suffer from a conflict of interest because they represent both a member of the Class – who has (so we are to pretend) chosen to remain a member of this class because she wishes, once her objection is resolved, to share in its benefits -- and opt-outs, who have taken the position that the class settlement is inadequate.  We brought other cases showing that there is in inherent conflict when the same lawyer represents parties in different positions in a class action, such that the interests of one client or group might be traded off to the defendants in exchange for the interests of the other. *See* Plaintiffs' Opening Br. at 13-14, citing *Kurczi v. Eli Lilly & Co.*, 160 F.R.D. 667, 679; 1995 U.S. Dist. LEXIS 3342 (N.D. Ohio 1995) (holding that a potential conflict existed where class counsel was also counsel for individual plaintiffs in individual cases pending against the same defendant, because class members were at risk that counsel would "sell out" or trade off the interests of some clients to the detriment of others); *Kuper v. Quantum Chemical Corp.,* 145 F.R.D. 80, 83 (S.D. Ohio 1992) (where class counsel representing plaintiffs in two different class actions against the same defendant was found to be inadequate because, in light of counsel's commitment to zealously represent classes vying for relief from the same limited source, there was a very real possibility that counsel would impair the ability of one class to recover); *Jackshaw Pontiac v. Cleveland Press Pub. Co.,* 102 F.R.D. 183, 192 (N.D. Ohio 1984) (Where District Court found the fact that counsel for the potential class representatives also served as

7

counsel in a state court action against the same defendants created an intolerable conflict of interest); *Sullivan v. Chase Investment Services of Boston, Inc.,* 79 F.R.D. 246, 258 (N.D. Cal. 1978) ("counsel cannot represent different plaintiffs with conflicting claims against the same defendants without violating the ABA Code of Professional Responsibility. . . The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel.").

We also called the Court's attention to the fact that the objections pressed include the contention that common issues do not predominate, and that if this objection were sustained no class at all could be certified. We pointed out that this objection cannot possibly be in the interest of the Objector, who could have had her own individual case for the asking simply by choosing to opt out.

To this attack Objector's counsel has nothing substantive to say. They completely ignore the Disciplinary Rules cited. They ignore the cases marshaled by Class Plaintiffs, saying nothing about them, and offer none of their own. Class Plaintiffs asked whether the requisite disclosure of a conflict of interest had been made to the clients, and the requisite waivers obtained; to this as well Objector and her counsel have nothing to say. They don't say the disclosure was made, and they don't say, or offer any authority for the proposition, that it was unnecessary.[1] To the fact that the objection cannot be in the objector's interest, because at best it could only procure for her relief she could have had for the choosing -- i.e., the ability to litigate her case individually -- Objector's counsel again have not a word to say. (If ever a litigation step was taken without consideration, the prosecution of this objection, ostensibly on behalf of someone who cannot possibly benefit from its being sustained, would have to be it.)

---

[1] By asserting, on the strength of nothing, that they have no conflict of interest (see Obj. Mem. at 14), Objector's counsel appear to admit that they made no disclosure of a conflict to any of their clients, and that no client waived any such conflict.

8

In perhaps the clearest instance of thumbing their nose at this Court, Objector's counsel acknowledge that the objection they pressed the hardest – individual issues predominate because agents are released, and relief offered that is calibrated to each class member's circumstances – was ignored at their own instance, in a different class action in which they represented the class. We urge the Court to savor their response: yes, Objector's counsel admit, we did there exactly what Class Counsel have done here, and about which we object. But "there was no objection lodged." Obj. Br. at 14, n.5. And therefore what? Therefore we got away with it? Therefore it was permissible because nobody noticed (including the federal judge who approved the settlement)?

The people who proffer to this Court such an answer are supposed to be officers of the Court. They signed a brief representing as fair, adequate and reasonable precisely the same structure and form of relief they now tell this Court requires a year-or-more long appeal and the upending of a settlement reached after 5 ½ years of litigation. All so that no class can be certified and no class relief granted – to a class of over 387,000 people, including the person on behalf of whom they pretend to be acting.

### V. THE ONLY REMAINING QUESTION IS WHETHER THIS COURT HAS THE POWER TO PROTECT THE CLASS, AND ITSELF, FROM BEING TOYED WITH

A clearly frivolous objection is the basis for an appeal prosecuted by counsel with an admitted, and totally undefended, conflict of interest. The prosecution of the appeal is in flat disobedience of this Court's Orders. It is pressed for no legitimate reason and cannot possibly be in the interest of the person who is used – *used* -- as the excuse for pressing it. It is manifestly against the interests of person used as an objector, and equally against the interests of the class this Court has certified, which class this Court has the right and duty to protect.

At the end of the day, Objector's counsel has one response to this Court about each one of these issues: too bad, there's nothing you can do about it.

Class Counsel have demonstrated, in this Reply Memorandum and in their Opening Brief in support of this Motion to Enforce the Final Judgment, that this Court does have the power to protect the class and to prohibit, and punish, gamesmanship. Rule 23(d) empowers this Court to issue orders to safeguard the interests of the class and to govern the prosecution of the case in this Court – and a Notice of Appeal is a filing in this Court, not the Court of Appeals. Rule 11, and 28 U.S.C. §1927, authorize the imposition of punishment for filings made for improper purposes, as the Notice of Appeal here was. Indeed, this Court's inherent power, as well, enable the Court to act to protect itself, and the legitimate interests of the litigants before it, from the naked gamesmanship and disrespectful conduct displayed by Objector's counsel. *See Chambers v. Nasco, Inc.*, 501 U.S. 32 (1991); *Zebrowski v. Altomare*, 973 F.2d 1001. 1004 (1st Cir. 1992) ("A court has inherent power to regulate the litigation before it" including protection of the parties' rights during a possible appeal).

Indeed, even the power to impose a cost-bond, under Fed. R. App. 7, can be invoked to protect against the prosecution of frivolous appeals of a class action settlement for improper purposes. Thus in *Allapattah Services, Inc. v. Exxon Corp.*, 2006 U.S. Dist.LEXIS 88829, *60-*62 (S.D. Fla. April 7, 2006), the court required a frivolous objector to post $13,500,000 cost bond to protect against the harm to the class, and waste of settlement fund, that would be caused by the mere pendency of a meritless appeal.

## CONCLUSION

The problem presented to this Court's by Objector's gamesmanship is not new. *See* Fitzpatrick, *The End of Objector Blackmail?* 62 Vand. L. Rev. 1623 (Nov. 2009). Courts, including those within the Third Circuit, have long been aware that even a single objector can, unless stopped, hold a class action settlement hostage through a frivolous appeal. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005); *O'Keefe v. Mercedes-Benz USA LLC*, 214 F.R.D. 266, 295 n. 26 (E.D. Pa. 2003); *Shaw v. Toshiba Am. Infor. Sys., Inc.*, 91 F. Supp.2d 942, 973-974 (E.D. Tex. 2000). The Plaintiffs respectfully ask that the Court use its authority to protect the Class from the waste to the settlement fund resulting from the Objector's frivolous appeal through enforcing the Final Order requiring Objector to post an appropriate bond.

Class Plaintiffs do not ask this Court to order Objector to withdraw her Notice of Appeal. Class Plaintiffs will seek that relief in the Court of Appeals, and will seek from that Court the punishment appropriate for the improper actions they have taken, and may yet take, before that Court. But the filing of the Notice in this Court is an act in this Court and within the reach of this Court, and Class Plaintiffs ask only that this Court use its powers to remedy the improper actions taken in this District Court.

Respectfully submitted,

<u>/s/ Jonathan Auerbach</u>/JA1194
Jonathan Auerbach, Esquire
Jerome M. Marcus, Esquire
MARCUS & AUERBACH LLC
400 Greenwood Avenue, Suite 200
Wyncote, PA 19095
(215) 885-2250
(888) 875-0469 (fax)

HARGROVE, PIERSON & BROWN
John R. Hargrove, Esquire
Cristina Pierson, Esquire
21 Southeast 5th Street
Suite 200
Boca Raton, FL 33432
(561) 300-3900
(561) 300-3890 (fax)


*Co-lead Class Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 8th day of February, 2010 a true and correct copy of the foregoing Reply Memorandum of Law was electronically filed and served by ECF on all counsel listed on the MDL 1712 Master Service List.


      /s/ Jonathan Auerbach/1194

      Jonathan Auerbach