IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE: AMERICAN INVESTORS       :
LIFE INSURANCE CO. ANNUITY      :     MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES   :
LITIGATION                      :


MEMORANDUM

McLaughlin, J.                              February 22, 2010


        The plaintiffs are a class of annuities holders who
brought suit against the defendants, the annuities companies,
alleging violations of the Federal Racketeer Influenced and
Corrupt Organizations Act ("RICO") and various state laws.  The
plaintiffs' claims against the defendants were settled by the
Court's order and judgment certifying the class and approving the
parties' settlement ("final order").  One class member, Martha
Michael, who objected to the settlement, filed a notice of appeal
of the final order.  In response, the plaintiffs filed the
instant motion before the Court to enforce the Court's final
order and for related relief with respect to Ms. Michael's
appeal.

        In their motion, the plaintiffs request that the Court
order Ms. Michael to post a bond for $569,618,666.70 to effect a
stay, as an appropriate bond, and as a sanction for her contempt
of the Court's final order to the extent that Ms. Michael failed
to comply with the appeal procedures outlined therein.  In the

alternative, they request a cost bond for $12.75 million.  The plaintiffs also urge the Court to order Ms. Michael's counsel to demonstrate that the counsel made certain disclosures of representation to clients allegedly affected by a conflict of interest.

The Court ordered expedited briefing and supplemental briefing on the plaintiffs' motion.  Upon consideration of the parties' briefs and an on-the-record telephone conference attended by the plaintiffs' counsel, the defendants' counsel, and Ms. Michael's counsel, the Court will grant in part and deny in part the plaintiffs' motion.

I.  Background

The underlying action was a multidistrict litigation involving six consolidated putative class action lawsuits that were transferred to this Court on October 26, 2005.  Over the course of four years, the plaintiffs and defendants actively litigated this matter through motions to dismiss, a motion for class certification, and a motion for summary judgment.  After protracted negotiations that lasted almost one year, the parties reached a settlement and filed their settlement stipulation with the Court on July 19, 2009.  On July 28, 2009, the Court preliminarily approved the parties' settlement stipulation and notice.  Eight hundred forty class members were excluded from the settlement and twelve class members, including Ms. Michael,

objected.  Of those who opted out of the settlement, thirty-nine are represented by Ms. Michael's counsel.[1]

The Court held a fairness hearing on November 6, 2009. No class members appeared to voice objections to the settlement. Although counsel for Ms. Michael filed a notice of appearance for the fairness hearing, they withdrew their notice on November 5, 2009.

On December 18, 2009, The Court issued a memorandum and order that certified the class and approved the class settlement valued at $185,250,000 to $549,250,000.  The Court analyzed the objections from the twelve class members, including Ms. Michael, and the concerns raised by the Pennsylvania and Texas Attorneys General.  See Memorandum Dec. 18, 2009, 33-40.[2]  After careful analysis, the Court found the objections and concerns unpersuasive and the settlement to be fair.

Within the final order, the Court included specific provisions with respect to any appeal:

> Any appeal from this Final Order and Judgment must be preceded by (i) a timely objection to the Settlement filed in accordance with the requirements of the Settlement Stipulation and Preliminary Approval Order or a request

---

[1] The plaintiffs present this figure in their motion to enforce the Court's final order, and Ms. Michael's counsel confirmed its accuracy during the on-the-record telephone conference.  Pls.' M. 1-2; Conf. Tr. 12:16-19 (Feb. 11, 2010).

[2] This analysis included the objections Ms. Michael raised on October 13, 2009, and on November 5, 2009.

> to intervene upon a representation of
> inadequacy of counsel, (ii) a request for a
> stay of implementation of the Settlement, and
> (iii) posting of an appropriate bond.  Absent
> satisfaction of all three of these
> requirements, Defendants are authorized, at
> their sole option and in their sole
> discretion, to proceed with implementation of
> the Settlement, even if such implementation
> would moot any appeal.

Final Order § 10.

On January 18, 2010, Ms. Michael filed a notice of appeal of the Court's final order.  She did not request a stay and she did not post a bond of any amount.  On January 27, 2010, the plaintiffs filed the instant motion.  At the request of plaintiffs' counsel, the Court ordered expedited briefing.  Counsel for Ms. Michael filed their opposition on February 3, 2010.[3]  The plaintiffs' counsel filed their reply on February 8, 2010.  The Court held an on-the-record telephone conference with counsel for the plaintiffs, defendants, and Ms. Michael on February 11, 2010.  During the call, the Court ordered the plaintiffs and Ms. Michael to file a supplemental brief with respect to the components and value of an appeal bond, and both complied.

## II.  Analysis

The plaintiffs move the Court to enforce its final

---

[3]  Counsel for Ms. Michael supplemented their opposition on February 8, 2010, with exhibits that counsel referenced in their opposition, but inadvertently omitted from the filing.

order and for miscellaneous relief.  They request that the Court

order Ms. Michael to comply with paragraph ten of the Court's

final order, namely to request a stay of implementation of the

settlement and to post an appropriate bond.  They argue that a

supersedeas bond in the amount of $569,618,666.70 is appropriate

to effect a stay and because Ms. Michael's appeal is frivolous

and meant to obtain leverage for the thirty-nine individuals

represented by Ms. Michael's counsel who opted out of the

settlement.  They also urge the Court to issue the sanction of a

supersedeas bond upon finding Ms. Michael and her counsel in

contempt of the Court's final order for their failure to comply

with the order's outlined appeal procedures.  They argue in the

alternative for a cost bond totaling $12.75 million, based on the

plaintiffs' and defendants' attorneys' fees for the appeal and

the benefits of the settlement lost to the class because of the

delay incident to the appeal.  Finally, alleging a conflict of

interest of Ms. Michael's counsel with respect to their

representation of Ms. Michael and thirty-nine individuals who

opted out of the class, the plaintiffs request the Court order

Ms. Michael's counsel to demonstrate that all necessary

disclosures were made to, and consents were obtained from, the

affected clients.

    A.    <u>A Supersedeas Bond Is Inappropriate</u>

       The plaintiffs seek a supersedeas bond pursuant to

Federal Rule of Civil Procedure 62(d) and the Court's final

order.  Rule 62(d) states:

> If an appeal is taken, the appellant may
> obtain a stay by supersedeas bond . . . .
> The bond may be given upon or after filing
> the notice of appeal or after obtaining the
> order allowing the appeal.  The stay takes
> effect when the court approves the bond.

Fed. R. Civ. P. 62(d).

A supersedeas bond provides an appellant with a manner

to stay the judgment.  Without a stay, a pending appeal does not

prevent the judgment creditor from enforcing the judgment.  11

Charles Alan Wright, Arthur R. Miller, & Mary Kaye Kane, <u>Federal</u>

<u>Practice & Procedure</u> § 2905 (2d ed. 1995).  A supersedeas bond

also protects the interests of the judgment creditor by ensuring

the availability of the judgment upon a denial of the appeal.  12

James W. Moore, et al., <u>Moore's Federal Practice Civil</u> § 62.03

(2010).  The bond is retrospective, covering the value related to

the merits of the underlying judgment.  <u>Adsani v. Miller</u>, 139

F.3d 67, 70 n.2 (2d Cir. 1998).

Nothing in the rule indicates that an appellee may move

the court for imposition of a supersedeas bond.  Courts have

rejected such motions from appellees in similar situations.

<u>E.g.</u>, <u>In re Diet Drugs Prods. Liab. Litig.</u>, No. MDL 1203, 2000 WL

1665134, at *1-3 (E.D. Pa. Nov. 6, 2000) (denying plaintiffs'

motion for supersedeas bond for appellant-objectors to a

settlement despite the alleged frivolity and leverage of

6

appellants' appeal because appellants did not move for a stay); O'Keefe v. Mercedes Benz USA, L.L.C., No. 01-cv-2902, 2003 U.S. Dist. LEXIS 9838, at *12-17 (E.D. Pa. June 5, 2003) (denying plaintiffs' motion for supersedeas bond for appellant-objectors because appellants had not moved for a stay). Because Ms. Michael did not move for a stay by posting a supersedeas bond, a supersedeas bond pursuant to Rule 62(d) is inapplicable.

The plaintiffs argue that although Rule 62(d) may be inapplicable, a supersedeas bond is appropriate pursuant to the Court's final order. They argue that the final order required an appellant to first request a stay and post an appropriate bond before appealing the Court's decision, and Ms. Michael failed to satisfy these requirements. They argue that Ms. Michael should post a supersedeas bond: (1) to effect a stay, (2) as an appropriate bond, and (3) as a sanction for her contempt of the Court's final order.

The Court will not require Ms. Michael to post a supersedeas bond to effect a stay. First, although the Court's final order required an appellant to move for a stay, it did not require that the stay be achieved through a supersedeas bond. Such a requirement would be inappropriate because an objector has no obligation to ensure the availability of the judgment; the defendants, and not the objector, are charged with implementing the settlement. Further, with a settlement valued to range from

$185.25 million to $549.25 million, a stay by supersedeas bond would moot all appeals of the Court's final order.

Second, the defendants have exercised their right under the settlement stipulation to cease implementation of the settlement upon an appeal, effectively staying the judgment. <u>See</u> Settlement Stipulation §§ XIV.B, I.A.41(b), Ex. 1 to Pls.' Unopposed M. for Preliminary Approval of Settlement;[4] Conf. Tr. 5:12-21. Because there is a de facto stay in effect, it is unnecessary for the Court to order Ms. Michael to move for a stay

---

[4] Settlement Stipulation § XIV.B reads:

> The Parties may agree to implement the terms of the Settlement prior to the Final Settlement Date in accordance with the terms, conditions, dates, and time periods specified in this Agreement; <u>provided</u>, <u>however</u>, that (1) the Claim Review Process and all related procedures and matters shall be suspended upon the filing of a Notice of Appeal of the Final Order and Judgment that meets the requirements of the Final Order and Judgment or is otherwise judicially determined as being a valid Notice of Appeal; and (2) Defendants shall in no event have any obligation to pay, credit, implement, or otherwise effect any Settlement Relief prior to the Final Settlement Date.

Settlement Stipulation § XIV.B (emphasis in original).

The settlement stipulation defines the "final settlement date" upon an appeal as "the date on which all appeals therefrom, including petitions for rehearing or reargument, petitions for rehearing *en banc*, and petitions for certiorari or any other form of review, have been fully disposed of in a manner that affirms the Final Order and Judgment." Settlement Stipulation § I.A.41(b) (italics in original).

and to do so via a supersedeas bond.

The Court will also not order Ms. Michael to post a supersedeas bond as an "appropriate bond" under the terms of the final order, despite any frivolity of Ms. Michael's appeal and the harm to plaintiffs caused by the delay incident to the appeal. As stated above, a supersedeas bond is posted by appellants as a means to effect a stay on the execution of a judgment. See Fed. R. Civ. P. 62(d). It should not be confused with a cost bond, which is prospective and relates to the potential expenses of litigating an appeal. Adsani, 139 F.3d at 70 n.2. Because plaintiffs' counsel seeks costs related to the appeal, and not the underlying judgment, it appears that they request a cost bond.[5]

The plaintiffs cite to Allapattah Services, Inc. v. Exxon Corporation, No. 91-0986, 2006 U.S. Dist. LEXIS 88829 (S.D. Fla. Apr. 7, 2006), for the proposition that a supersedeas bond is appropriate upon a frivolous appeal that delays a settlement's implementation. See Conf. Tr. 9:8-10:22. In Allapattah Services, the district court certified a class and approved a settlement, overruling the objections of a lone objector for

---

[5] The plaintiffs explain in their supplemental memorandum that a "bond requirement is intended to . . . forc[e] an appellant to consider the cost to other affected parties of the appeal, to ensure that the appeal is taken only if at least the appellant believes it worthwhile given the total cost to be borne by all concerned." Pls.' Supp. 1. The bond plaintiffs reference thus appears to be a cost bond, not a supersedeas bond.

frivolousness. 2006 U.S. Dist. LEXIS 88829, at *55-56. The
court then held that if the objector chose to appeal the court's
decision, it would be required to post a bond for $13.5 million
because an appeal would be detrimental to the class. Id. at *57-
58. Although the Allapattah Services court termed this bond
"supersedeas," it is not. See id. at 57. The full amount of the
settlement was over $1 billion dollars, not the $13.5 million
that the objector would be required to post. Id. Further, the
court noted that the bond was calculated from the costs to cover
the appeal, not the final judgment award. Id. at *61.[6]

Finally, the Court will not impose a supersedeas bond
on Ms. Michael as a sanction for contempt. The plaintiffs argue
that Ms. Michael is in contempt of the Court's final order for
failing to comply with the appeal procedures outlined therein,
and a supersedeas bond is an appropriate sanction. Although the
Court requires the parties before it to adhere to its orders, the
Court finds a sanction, let alone that of a supersedeas bond,
inappropriate. Ms. Michael did file her objections in accordance
with the final order, as the plaintiffs admit. See Pls.' Reply
1. Although Ms. Michael did not move for a stay, the settlement

---

[6] The plaintiffs admit that the bond in Allapattah Services
is a cost bond. Conf. Tr. 30:9-21. They seem to argue, however,
that, were the Court to consider the frivolity of the objections
and delay of settlement benefits to the class, as the Allapattah
Services court did, a supersedeas bond of $569,618,666.70 would
be appropriate. Conf. Tr. 9:22-10:18.

implementation was effectively stayed by the defendants.
Further, the Court will order Ms. Michael to post a cost bond,
pursuant to the Court's final order and Federal Rule of Appellate
Procedure 7.  If Ms. Michael fails to post such a bond, the
plaintiffs may move for sanctions at that time.[7]

B.    Ms. Michael Must Post a Cost Bond of $25,000

Federal Rule of Appellate Procedure 7 authorizes a
district court to order an appellant to post a bond covering the
costs of appeal: "In a civil case, the district court may require
an appellant to file a bond or provide other security in any form
and amount necessary to ensure payment of costs on appeal."  Fed.
R. App. P. 7.  Such a bond is often termed a "cost bond" or an
"appeal bond."  Adsani, 139 F.3d at 70 n.2.

The plaintiffs argue in their supplemental memorandum
that the Court should order a cost bond for $12.75 million.  They
calculate their figure based on the plaintiffs' anticipated
attorney's fees of $100,000; the defendants' anticipated
attorneys' fees of $150,000; and the loss of settlement benefits
to the class for a 14.7 month period, the average length of an

---

[7]  The plaintiffs also argue that Ms. Michael failed to
comply with this Court's expedited briefing order because Ms.
Michael "requests an opportunity to submit additional briefing"
in support of the merits of her objections.  See Michael Opp.
11.  The Court finds Ms. Michael to have sufficiently complied
with its expedited briefing order because it did not require her
to address the merits of her objections.

11

appeal in the Court of Appeals for the Third Circuit, totaling $12.5 million. Ms. Michael argues that attorneys' fees and damages to the class should not be included in the cost bond.

There is no binding authority for the Court to follow to determine the "costs of appeal" for a bond issued under Federal Rule of Appellate Procedure 7. Circuit courts are divided as to whether to look to Federal Rule of Appellate Procedure 39(e) or to the underlying statute on which the plaintiff's claim is based in order to determine costs, and specifically whether attorneys' fees are among those "costs." Because the Court finds that attorneys' fees are unavailable under either approach, the Court will not include attorneys' fees in Ms. Michael's appeal bond, and it need not resolve the split in authority. Further, the Court will not include as costs any damages to the class incident to the appeal or an amount for the alleged frivolousness of the appeal.

### 1. Attorneys' Fees as "Costs"

The U.S. Court of Appeals for the D.C. Circuit has held that Federal Rule of Appellate Procedure 39(e) provides an exhaustive list of the costs to be included in a Rule 7 cost bond. In re Am. President Lines, Inc., 779 F.3d 714 (D.C. Cir. 1985). Rule 39(e) states:

> The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1)

> the preparation and transmission of the
> record; (2) the reporter's transcript, if
> needed to determine the appeal; (3) premiums
> paid for a supersedeas bond or other bond to
> preserve rights pending appeal; and (4) the
> fee for filing the notice of appeal.

Fed. R. App. P. 39(e).  In <u>In re American President Lines, Inc.</u>, 779 F.3d at 716, 717, the Court of Appeals for the D.C. Circuit held that because Rule 39 does not include attorneys' fees that may be assessed on appeal, such costs cannot be included in the appeal bond.[8]

The Courts of Appeals for the Second, Sixth, Ninth, and Eleventh Circuits have taken an alternative approach to calculate costs for appeal bonds under Rule 7.  These courts look to the statute underlying the litigation to determine whether attorneys' fees are part of the costs available to an appellee.  <u>Adsani v. Miller</u>, 139 F.3d 67 (2d Cir. 1998) (finding attorneys' fees available for appeal bond because available in underlying statute, Copyright Act); <u>In re Cardizem CD Antitrust Litig.</u>, 391 F.3d 812 (6th Cir. 2004) (finding attorneys' fees available for appeal bond because available in underlying statute under

---

[8] In <u>Hirschensohn v. Lawyers Title Insurance Corp.</u>, No. 96-7312, 1997 U.S. App. LEXIS 13793 (3d Cir. June 10, 1997), a nonprecedential opinion, the Court of Appeals for the Third Circuit followed <u>In re American President Lines</u> in holding that "costs" referred to in Rule 7 are those outlined in Rule 39, which do not include attorneys' fees.  <u>Id.</u> at *3, *5.  The court, however, also noted an alternative basis for its decision upon review of the underlying statute to the plaintiffs' claim, which foreclosed attorneys' fees for an appeal.  <u>Id.</u> at *7.

Tennessee Code); Azizian v. Federated Dep't Stores, Inc., 499
F.3d 950 (9th Cir. 2007) (finding attorneys' fees unavailable for
appeal bond by appellant-objector to settlement because
underlying statute, Clayton Act, did not authorize attorneys'
fees to be paid to plaintiffs by class-member objector); Pedraza
v. United Guar. Corp., 313 F.3d 1323 (11th Cir. 2002) (finding
attorneys' fees unavailable for appeal bond by appellant-objector
to settlement because underlying statute did not consider
attorneys' fees as costs).

The Court finds that attorneys' fees are unavailable
for inclusion in Ms. Michael's appeal bond under either approach
to calculate costs, and so it need not resolve the circuit split.
Under the Rule 39 approach, attorneys' fees would be unavailable
for inclusion in Ms. Michael's cost bond.  Rule 39 does not
include attorneys' fees in its outlined costs.  McDonald v.
McCarthy, 966 F.2d 112, 116 (3d Cir. 1992).  As such, attorneys'
fees could not be included in Ms. Michael's bond.

Under the underlying statute approach, attorneys' fees
are unavailable for cost bond inclusion.  The fee-shifting
provision of RICO allows for reasonable attorneys' fees as part
of the costs for a person injured from a RICO violation:

> Any person injured in his business or
> property by reason of a violation of section
> 1962 . . . shall recover threefold the
> damages he sustains and the cost of the suit,
> including a reasonable attorney's fee.

14

18 U.S.C. 1964(c). A plaintiff found injured because of a RICO violation may recover the attorneys' fees amassed during an appeal. See Rainier Nat'l Bank v. Hartstein, No. 91-36164, 1993 U.S. App. LEXIS 13116, at *18 (9th Cir. May 25, 1993).

No part of the RICO statute, however, indicates that a plaintiff may recover attorneys' fees from a class member who objects to and appeals from a settlement reached upon alleged RICO violations. See 18 U.S.C. 1964(c). RICO's fee-shifting provision is asymmetrical, such that attorneys' fee awards are available only to plaintiffs who prove a RICO injury. See Aetna Cas. & Sur. Co. v. Liebowitz, 730 F.2d 905, 907-09 (2d Cir. 1984) (finding attorneys' fees under RICO unavailable to plaintiff who settled RICO claims against defendant). Only a losing defendant who has violated RICO, and not a member of the plaintiffs' class, can be ordered to pay the plaintiffs' attorneys' fees. See Azizian, 499 F.3d at 953, 959-60 (finding attorneys' fees unavailable in appeal bond for class member appealing a settlement because of asymmetry in fee-shifting provision of underlying statute, Clayton Act); Aetna Cas., 730 F.2d at 907-09 (analogizing fee shifting provision of RICO to that of the Clayton Act).

### 2. Damages to the Class as "Costs"

Beyond inclusion of attorneys' fees, the plaintiffs argue that a cost bond for Ms. Michael should include an amount

for two types of settlement benefits destroyed by the pendency of
the appeal.  They state that class members will be deprived of
the reduction in death benefits surrender charges if any class
members die during the appeal, amounting to $3.6 million of lost
benefits.  The plaintiffs also state that class members will be
deprived of the elimination of surrender charges, amounting to
$8.9 million of lost benefits.  The plaintiffs point to
Allapattah Services, 2006 U.S. Dist. LEXIS 88829, at *57-58, as
an example of a district court that ordered settlement appellants
to pay a multi-million dollar cost bond calculated in part to
include the detriment the appeal would have on the class.

        The Court will not include damages to the class as part
of the costs for the appeal bond.  First, the settlement
agreement already contemplates the harm to the class upon an
appeal because it allows the defendants to wait to implement the
settlement until all appeals are complete.  See Settlement
Stipulation § XIV.B, II.A.41(b).  It appears, then, that the
benefits to the class under the settlement already capture the
costs of delay incident to an appeal.  See Vaughn v. Am. Honda
Motor Co., 507 F.3d 295, 299 (5th Cir. 2007) ("[T]he settlement
does not become effective, by its terms, until any appeals are
concluded.  The parties to the settlement thus agreed that the
financial time-value of the benefits to be paid under the
settlement is not to be awarded to the plaintiffs.").

Second, it is the defendants, and not the objector, that "stand in the way" of settlement implementation. According to the terms of the final order, the defendants may, at their discretion, implement the settlement if an appellant does not satisfy the three prerequisites of an appeal. Final Order § 10. Here, Ms. Michael did not move for a stay and she has not yet posted a bond. The defendants, therefore, are able to implement the settlement if they choose to do so.

Third, although the court in <u>Allapattah Services</u> found inclusion of delay costs appropriate for a Rule 7 bond, the case is not binding authority, and the proposition is not widely adopted. <u>See</u>, <u>e.g.</u>, <u>In re Diet Drugs</u>, 2000 WL 1665134, at *4 (rejecting delay costs as part of Rule 7 bond calculation).

### 3. Frivolousness as "Costs"

To the extent that the plaintiffs move for a cost bond based on the alleged frivolousness of Ms. Michael's appeal, the Court will deny the plaintiffs' motion. Although the Court has already held in its final order that Ms. Michael's objections lack merit, it finds that the Court of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs. <u>See</u> <u>In re Am. President Lines</u>, 779 F.2d at 717.

For example, the plaintiffs may move for an expedited appeal to reduce the time and expense of the appeal litigation.

17

They may also move to dismiss the appeal, the "traditional countermeasure for an appeal thought to be frivolous." Id. Moreover, a court of appeals can use Federal Rule of Appellate Procedure 38 to order an appellant to pay the appellee's damages and costs, including attorneys' fees and damages incident to an appeal, if an appeal is frivolous.[9] Id.; see also In re Diet Drugs, 2000 WL 1665134 at *5 ("Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived to be frivolous. . . . [E]ven if these appeals are frivolous and solely an attempt to leverage an inventory settlement, Class Counsel has adequate remedies available to it in the court of appeals.").

### 4. The "Appropriate Bond"

Pursuant to the Court's final order requiring an appropriate bond upon an appeal, and Federal Rule of Appellate Procedure 7, the Court will require Ms. Michael to post a cost bond of $25,000. The Court finds $25,000 appropriate for this multidistrict litigation appeal, upon consideration of the costs

---

[9] "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. "While both the statute and the usual rule on the subject by courts of appeals . . . speak of 'damages for delay,' the courts of appeals quite properly allow damages, attorney's fees and other expenses incurred by an appellee if the appeal is frivolous without requiring a showing that the appeal resulted in delay." Fed. R. App. P. 38 advisory committee's note.

of an appeal discussed in Federal Rules of Appellate Procedure

Rules 7 and 39.  See In re Ins. Brokerage Antitrust Litig., 2007

U.S. Dist. LEXIS, at *50-51 (ordering $25,000 cost bond for

appeal of multidistrict litigation settlement); In re Diet Drugs,

2000 WL 1665134, at *5 (same).[10]

C.    Miscellaneous Relief Related to a Conflict of Interest

In their motion, the plaintiffs also request that the

Court determine whether counsel for Ms. Michael disclosed their

representation of Ms. Michael and that of thirty-nine individuals

who opted out of the settlement to the affected clients.  The

plaintiffs state that both Alabama and Pennsylvania Rules of

Professional Conduct Rule 1.7 require counsel who represent

multiple clients with potentially divergent interests to advise

all affected clients of the potential conflict.  They argue that

Ms. Michael's interests are at odds with the opt-out clients'

interests: the opt-outs will be best served if Ms. Michael's

appeal is withdrawn upon payment of adequate compensation to the

opt-outs, and Ms. Michael is best served by prosecuting at least

some of her objections, but not others, or simply accepting the

terms of the settlement.

---

[10] Although the plaintiffs did not present the Court with a
figure based on the costs outlined in Rule 39, the Court finds
$25,000 to be an appropriate amount.  Ms. Michael noted that if
the Court were to order a cost bond, an amount of $25,000 would
be appropriate.  See Opp. 8 n.1.

The Court finds it troubling that Ms. Michael's counsel represents both Ms. Michael and a number of opt-out plaintiffs. See In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 261 n.21 (3d Cir. 2009) (finding "peculiar" that an objector appealing a class settlement had interests closely aligned with those of a nonsettling defendant). At least some of Ms. Michael's objections, specifically those questioning the certification of the class, seem to undercut her own interests. As a class member, Ms. Michael benefits from the class certification because she will receive a portion of the award. Were the class to be decertified, she would receive nothing.

The Court further questions her counsel's motives for the appeal, in view of her counsel's failure to attend the fairness hearing on November 6, 2009. Although Ms. Michael lodged several objections to the settlement, responded to class counsel's responses to her objections, and now files an appeal based on those objections, she failed to attend the fairness hearing to hear the plaintiffs' explanations and to further explain her own position.[11] Attending the hearing would have

---

[11] Ms. Michael filed a supplement to her class settlement objections on November 5, 2009, after the plaintiffs' filed their final motion for settlement approval, which responded to Ms. Michael's original objections. At the fairness hearing, the plaintiffs addressed Ms. Michael's supplemental objections. Had Ms. Michael attended the fairness hearing, she could have heard the plaintiffs' responses and voiced any remaining concerns she had.

enabled her to portray her concerns more fully before litigating them in the Court of Appeals.

The Court, however, will not grant the plaintiffs' requested relief with respect to a potential conflict of interest.  Although courts find a conflict of interest when the same lawyer represents parties in different positions in a class action, these situations typically involve class counsel's representation of the class and another party, and not an objector's counsel's representation of opt outs.  See e.g., Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 697 (N.D. Ohio 1995) (holding that potential conflict existed where class counsel was also counsel for individual plaintiffs against the same defendant); Kuper v. Quantum Chem. Corp., 145 F.R.D. 80, 83 (S.D. Ohio 1992) (finding potential conflict of interest where class counsel represented plaintiffs in two different class actions); Sullivan v. Chase Inv. Servs., Inc., 79 F.R.D. 246, 258 (N.D. Cal. 1978) (finding counsel could not represent class at issue and another class against the same defendants because the classes had conflicting interests).  The Court finds that the class does not need the protection the plaintiffs' request because it is the motives of the objector's counsel, and not that of the plaintiffs' counsel, that appear questionable.

III. Conclusion

For the reasons stated herein, the plaintiffs' motion

21

to enforce the court's final order approving the settlement and for related relief is granted in part to the extent that the Court will order a cost bond for $25,000.  The motion is denied in all other respects.

An appropriate Order shall issue separately.