```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE: AMERICAN INVESTORS         :
LIFE INSURANCE CO. ANNUITY        :    MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES     :
LITIGATION                        :
```

MEMORANDUM

McLaughlin, J.                                        June 2, 2010

The defendants, AmerUs Group Company,[1] AmerUs Annuity Group Company, American Investors Life Insurance Company, AmerUs Life Insurance Company,[2] Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc., move the Court to enforce its final order and judgment against class member Joseph L. Zaher.  The defendants seek to permanently enjoin Mr. Zaher from litigating a civil action he instituted in 2007 against Defendant AmerUs Annuity Group Company in the Superior Court for Middlesex County, Massachusetts, styled <u>Joseph L. Zaher v. AmerUs Annuity Group Co.</u>, Civil Action Number 07-4556.  The Court will grant the defendants' motion.

I.  Facts

The final order and judgment at issue in the defendants' motion pertains to a multidistrict litigation

---

[1] AmerUs Group Company is now known as Aviva USA Corporation.

[2] AmerUs Life Insurance Company is now known as Aviva Life and Annuity Company.

proceeding involving six consolidated putative class action lawsuits, the oldest of which had been pending before the Court since 2004.  In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig. (In re Am. Investors), 263 F.R.D. 226, 228-29 (E.D. Pa. 2009).  In their pleadings, the plaintiffs claimed that the defendants perpetrated a scheme to sell investments to the class through misrepresentations and omissions about the characteristics of the investments.  They alleged that the defendants targeted and induced the class to buy complex, long-term deferred annuities that lacked liquidity.  Id. at 230.

After years of litigation, on July 16, 2009, the plaintiffs filed their unopposed motion for preliminary approval of a class-wide settlement, certification of a class, and an order directing issuance of notice to the class.  They attached to their motion the parties' stipulation of settlement ("stipulation of settlement" or "settlement stipulation") and proposed form of class notice.  On July 28, 2009, the Court issued an order preliminarily approving the settlement and the notice.  Id. at 229.

To facilitate notice of the settlement, counsel in the action retained Rust Consulting, Inc., a settlement administrator specializing in class action notification and settlement administration.  Id. at 232.  On August 28, 2009, the settlement administrator disseminated 387,263 copies of the Court-approved

class notice to the last known addresses of the class members via first-class, postage prepaid mail.  The notice described the action, the applicable terms, the class claims, and the forms of relief available.  It discussed the class members' right to be heard at the fairness hearing, their right to exclude themselves from or object to the settlement, and the procedure to effectuate an exclusion or objection.  Id.  It also discussed the binding effect of the settlement for those who chose not to opt out by October 13, 2009.  Id.; see Notice at 2, 3, 15, 16, Attach. 5 to Pls.' Unopposed M. for Final Approval of Settlement, Class Certif., & Award of Attys' Fees & Costs & Incentive Payments.

Specifically, the notice explained multiple times throughout that if a recipient of the notice did not properly exclude him or herself, then he or she could not bring suit against the defendants.  For example, in the section entitled "Summary of Your Legal Rights and Options in this Settlement," the notice explained:

> [I]f you do nothing in response to this Notice, you will give up all rights to sue any of the Defendants in this case . . . as well as the person(s) who sold your policy and certain other released parties included as "Releasees"[3] in the Stipulation of

---

[3] The stipulation of settlement defines "Releasees" as:

> [I]ndividually and collectively, the Defendants and Other Defendants and the Defendants' and Other Defendants' respective past, present, and future parent companies,

3

>     Settlement, concerning the policy or the
>     manner in which it was marketed or sold, or
>     any other legal claims that were made or
>     could have been made in this case, as more
>     fully described in the Stipulation of
>     Settlement.[4]

Notice at 2. In response to the question, "What am I giving up to get a settlement benefit or stay in the Class?", the notice answered:

>     Unless you properly exclude yourself, you are
>     staying in the Class, and that means: (1)
>     that you can't sue, continue to sue, or be

---

>     subsidiaries, affiliates, predecessors,
>     successors and assigns, together with each of
>     the Defendants' and Other Defendants'
>     respective past, present, and future
>     officers, directors, employees,
>     representatives, attorneys, and agents
>     (including, without limitation, those acting
>     on behalf of Defendants and within the scope
>     of their agency), all Agents, including,
>     without limitation, IMOs and other marketing
>     organizations involved in any way, directly
>     or indirectly, in the marketing, sale, and
>     servicing of Company Annuities, and all of
>     such Releasee's heirs, administrators,
>     executors, insurers, predecessors, successors
>     and assigns, or any of them, and including
>     any person or entity acting on behalf or at
>     the direction of any of them.

Settlement Stip. X.A.1, Attach. 1 to Pls.' Unopposed M. for Prelim. Approval of Settlement, Certif. of Settlement Class, & Order Directing Issuance of Notice to the Class. This definition was incorporated into the Court's final order and judgment. In re Am. Investors, 263 F.R.D. at 247.

[4] The notice explained that the stipulation of settlement was available on the settlement informational website, www.MDL1712settlement.com, and a copy could be obtained by contacting the settlement administrator at the address and toll-free telephone numbers provided in the notice.

4

part of or receive any benefits in or from
any other lawsuit, arbitration,
administrative or regulatory proceeding,
order, or other legal proceeding anywhere
against the Defendants, the persons who sold
your policy, and/or certain other released
parties included as "Releasees" under the
Stipulation of Settlement, about your policy
or the manner in which it was marketed or
sold, or any other legal claims that were or
could have been made in this case against the
Defendants and/or the other Releasees; and
(2) that you give up, or release, any and all
claims against the Defendants and/or the
other Releasees – regardless of whether they
are presently known or suspected, presently
unknown or unsuspected, presently existing,
or might exist in the future – falling under
the "Released Transactions,"[5] as defined in

---

[5] The stipulation of settlement defines "Released Transactions" as:

> (a) the design, development, marketing,
> offer, solicitation, application,
> underwriting, acceptance, issuance, sale
> (including, without limitation, in connection
> with the issuance of a Company Annuity as a
> replacement for a non-Company annuity or
> another Company Annuity), presentation,
> illustration, projection, purchase,
> operation, performance, interest crediting,
> charges, administration, servicing,
> retention, and/or replacement (by means of
> surrender, partial surrender, loans
> respecting, withdrawal and/or termination of
> any annuity) of or in connection with (1) the
> Contracts or (2) any annuity sold or to be
> sold or offered in connection with, or
> relating in any way directly or indirectly to
> the sale or solicitation of, the Contracts,
> or external or internal replacements of
> annuities issued by the Companies, (b) the
> marketing, sale, delivery, and/or performance
> of any products, plans, or services in
> connection with, or relating to or allegedly
> relating to, the marketing, purchase, or sale

the Stipulation of Settlement.

Notice at 15. In response to the question, "If I don't exclude myself, can I sue the Defendants for these kinds of claims later?", the notice explained:

> No. Unless you validly exclude yourself, you give up the right to sue the Defendants, the persons who sold your policies, and other parties included as "Releases" . . . for the claims and legal issues that this settlement resolves. If you have a pending lawsuit, speak to your lawyer in that lawsuit about this Notice immediately. You must exclude yourself from ***this*** Class to continue your own lawsuit.

Notice at 18 (emphasis in original).

On the same day that Rust Consulting, Inc., disseminated the class notice, defense counsel sent a letter to Richard J. Sinnott, Mr. Zaher's attorney in the Massachusetts state action, alerting him to the Court's preliminary settlement approval and class notice mailing. Defense counsel included a copy of the class notice package in the letter to Attorney Sinnott. Defs.' M. Ex. B.

On November 6, 2009, the Court held a fairness hearing

---

> of a Contract, and (c) any and all matters concerning or relating to this Settlement (including, without limitation, the award, election, and/or implementation of any Settlement Relief with respect to a Contract).

Settlement Stip. X.A.2. This definition was incorporated into the Court's final order and judgment. In re Am. Investors, 263 F.R.D. at 247-48.

on the proposed class settlement.  In re Am. Investors, 263 F.R.D. at 233.  Counsel for both the plaintiffs and the defendants appeared at the fairness hearing and spoke on behalf of their clients.  Id. at 234.  No class members or objectors made an appearance at the hearing.  Id.

On December 18, 2009, the Court certified the class and approved the settlement, holding that the class and settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure and comported with the United States Constitution.  The settlement stipulation included a release and waiver, which the Court expressly incorporated into its final order and judgment.  In specific part, it read:

> The Named Plaintiffs and all Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person or entity purporting to claim on their behalf, hereby expressly and generally release and discharge the Releasees from any and all causes of action, . . . whether such claims are based on federal, state, or local law, statute, ordinance, or regulation . . ., contract, common law, or any other source, relating to any Company Annuities and that were or could have been asserted against Defendants in the Complaint . . . based on or related to the facts alleged in the Complaint.

Id. at 248.  The release also noted that the plaintiffs

> agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, . . . any action or proceeding of any kind against the Releasees asserting

7

>               causes of action . . . that are based on or
>               related to the facts alleged in the
>               Complaint.

Id. at 249.

The Court entered a permanent injunction barring class members from filing, commencing, prosecuting, and maintaining a lawsuit that would relitigate the causes of action, or the facts and circumstances related to the causes of action. It also retained jurisdiction for all matters relating to the administration, consummation, enforcement and interpretation of the settlement stipulation and final order and judgment. Id. at 250-51, 252.

The class is defined as: "All persons and entities that purchased Company Annuities issued during the Class Period and all persons and entities to which an ownership interest in such Company Annuities was subsequently assigned or transferred, or that otherwise held any interest as an Owner in such Company Annuities, during the Class Period." The class period is from January 1, 1998, up to and including July 28, 2009, and it consists of approximately 387,000 individuals. Id. at 230-31.

As evident from his complaint, and as seemingly uncontested in his opposition brief, Mr. Zaher is a member of the settlement class. His complaint alleges that in 2005, Defendant AmerUs Annuity Group Company "fraudulently enticed" him "into placing his life savings in annuities which are unsuitable for

8

his circumstances." Defs.' M. Ex. A.

Mr. Zaher also does not appear to contest that his state action asserts claims that are barred by the release and waiver. Rather, through his conservator Edward Galotta, he argues that the Court should deny the defendants' motion because the settlement class opt-out period coincided with the pendency of Mr. Galotta's appointment as conservator. After Mr. Zaher filed his Massachusetts action in 2007 through Attorney Sinnott, Mr. Galotta began the process of becoming Mr. Zaher's conservator because of Mr. Zaher's diminished capacity. He petitioned for appointment on May 20, 2009, and on December 14, 2009, he was appointed. Defs.' M. Ex. C; Zaher's Opp. at 1 & Exs. 1 & 2.

II. Analysis

The All Writs Act empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; In re Diet Drugs Products Liab. Litig., 369 F.3d 293, 305 (3d Cir. 2004). The Anti-Injunction Act, however, limits a district court's authority to enjoin state court proceedings to three exceptions: (1) when authorized by congress, (2) to aid in its jurisdiction, or (3) to protect or effectuate its judgments. 28 U.S.C. § 2283; Diet Drugs, 369 F.3d at 305.

The Court has authority to enjoin Mr. Zaher from litigating his Massachusetts action in order to aid in the

9

Court's jurisdiction. The Court of Appeals for the Third Circuit has held that a federal court may enjoin state court proceedings to protect its jurisdiction when it is "entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts." Diet Drugs, 369 F.3d at 306; see In re Prudential Ins. Co. of Am. Sales Practices Litig. (Prudential II), 314 F.3d 99, 104-05 (3d Cir. 2002) (affirming injunction barring litigation of plaintiffs' state law claims based on "in aid of jurisdiction" exception). District courts that oversee complex federal litigation "are especially susceptible to disruption by related actions in state fora." Prudential II, 314 F.3d at 104.

Here, the Court retained its jurisdiction over this complex, multidistrict litigation "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Stipulation and of this Final Order and Judgement." The settlement and final order released the defendants from pending and future actions involving claims related to those alleged in the class complaint, such as those asserted by Mr. Zaher. Although Mr. Zaher's action would not necessarily vitiate the class settlement on its own, "permitting this kind of action would open up the possibility of a large, or even an overwhelming, number of collateral attacks on the

10

settlement itself," provided the 387,000 member class.  See id. at 104.

The Court is also empowered to enjoin Mr. Zaher from litigating his Massachusetts action under the Anti-Injunction Act exception allowing district courts to protect or effectuate their judgments.  This exception, founded on the concepts of res judicata and collateral estoppel, was designed to permit a federal court to prevent state litigation of an issue that it previously decided.  In re Prudential Ins. Co. of Am. Sales Practices Litig. (Prudential I), 261 F.3d 355, 364 (3d Cir. 2001) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988)).  As the Court of Appeals for the Third Circuit has noted, "It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action."  Id. at 366.

Here, Mr. Zaher's annuities and the sales transactions associated with them fall within the scope of the settlement stipulation's release and waiver.  His claims replicate those found in the class complaint, alleging the fraudulent sale of long-term deferred annuities that lack liquidity.  Pursuant to the release and waiver, Mr. Zaher released the defendants from "any and all causes of action, . . . whether such claims are based on federal, state, or local law, statute, ordinance, or regulation, . . . relating to any Company Annuities and that were

11

or could have been asserted against Defendants in the Complaint . . . based on or related to the facts alleged in the Complaint." In re Am. Investors, 263 F.R.D. at 248. The class notice advised the class of this consequence, and Mr. Zaher does not appear to contest that his claims are subject to the release. The release and waiver was incorporated into the Court's final order and judgment, and it has claim preclusive and issue preclusive effect. See Prudential I, 261 F.3d at 367.

Mr. Zaher argues through his conservator that he was unable to opt out of the class because his conservator appointment occurred in December 2009, after the opt-out deadline. Because Mr. Zaher was represented by counsel in his Massachusetts action, the Court finds that the conservator appointment does not impact Mr. Zaher's class member status.

Under Massachusetts law,[6] an attorney may exercise a client's rights when the client is incompetent to do so. "When a client is suffering from a mental disability and 'has no guardian or legal representative, the lawyer often must act as de facto guardian.'" Commonwealth v. Nieves, 846 N.E.2d 379, 386 (Mass. 2006) (quoting Mass. R. Prof'l Conduct 1.14 cmt. 2). Pursuant to

---

[6] The defendants explain that the professional obligations and standards created by Massachusetts Rule of Professional Conduct 1.14 are indistinguishable from those created by Pennsylvania Rule of Professional Conduct 1.14, such that there is no conflict of law issue. To the extent that there is any conflict, the defendants note, and Mr. Zaher does not contest, that Massachusetts law should govern. Defs.' M. at 15 n.8.

Rule 1.14 of the Massachusetts Rules of Professional Conduct:

> When the lawyer reasonably believes that the client has diminished capacity that prevents the client from making an adequately considered decision regarding a specific issue that is part of the representation, . . . the lawyer may take reasonably necessary protective action in connection with the representation, including consulting with individuals or entities that have the ability to take action to protect the client.

Mass. R. Prof'l Cond. 1.14(b). Attorney Sinnott could have, on his own or in consultation with those able to protect Mr. Zaher, excluded Mr. Zaher from the class settlement.

To any extent that Attorney Sinnott was unable to exclude Mr. Zaher, he could have sought leave from the parties or the Court to extend the opt-out deadline. The settlement stipulation allows the parties to make changes to the settlement without Court approval, provided that the changes are consistent with the Court's final order and judgment. Settlement Stip. § XIV. The Court is empowered to modify the terms of the class action settlement, including deadlines set in the settlement. See In re Cendant Corp. PRIDES Litig., 233 F.3d 188, 194-95 (3d Cir. 2000). Indeed, the Court granted the request of another class member who sought an extension for class settlement exclusion. In view of the fact that the parties notified Mr. Zaher of the class action settlement, and that the defendants sent a personal letter to Attorney Sinnott about the settlement's

13

preliminary approval,[7] the Court finds that enforcement of its final order and judgment is proper.

III. Conclusion

For the reasons herein stated, the defendants' motion to enforce the final order and judgment is granted. An appropriate order shall issue separately.

---

[7] Mr. Zaher asserts in his opposition that the defendants "withheld information during discovery about the class action and other litigation similar to Mr. Zaher's." Zaher Opp. at 2 & Ex. 3. To the extent that this is true, it does not alter the fact that the parties mailed the class notice to Mr. Zaher and the defendants sent a personal letter and class notice package to Attorney Sinnott. These actions provided sufficient notice of the class action, the settlement, and the actions necessary to effectuate an exclusion.