IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: AMERICAN INVESTORS      :
LIFE INSURANCE CO. ANNUITY     :    MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES  :
LITIGATION                     :

MEMORANDUM

McLaughlin, J.                                September 16, 2011

The defendants, AmerUs Group Company,[1] AmerUs Annuity Group Company, American Investors Life Insurance Company, AmerUs Life Insurance Company,[2] Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc., move the Court to enforce its final order and judgment against Orlis M. Charboneau ("Charboneau"), executor of the estate of class member Paul Eugene Charboneau. The defendants' motion seeks an injunction barring Charboneau from litigating a civil action against Aviva USA Corporation in the District Court for the Thirteenth Judicial District, Civil Department, Butler County, Kansas, styled Orlis M. Charboneau ex rel. Estate of Paul Eugene Charboneau v. Aviva USA Corporation, No. 11-79 ("Kansas Action"). The Court will deny the defendants' motion.

---

[1] AmerUs Group Company is now known as Aviva USA Corporation.

[2] AmerUs Life Insurance Company is now known as Aviva Life and Annuity Company.

I.   <u>Facts</u>

        The final order and judgment at issue in the defendants' motion relates to a multidistrict litigation proceeding that consolidated six putative class action lawsuits. The plaintiff class alleged that the defendants misrepresented the characteristics of complex, long-term deferred annuities and targeted their sale to class members despite their lack of liquidity.  <u>In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.</u> (<u>In re Am. Investors</u>), 263 F.R.D. 226, 228-30 (E.D. Pa. 2009).

        The plaintiffs filed an unopposed motion on July 16, 2009 for preliminary approval of a class-wide settlement, class certification, and an order directing an issuance of notice to the class, to which they attached a proposed form of class notice and the parties' Stipulation of Settlement ("settlement stipulation").  The Court preliminarily approved the notice and settlement on July 28, 2009.  <u>Id.</u> at 229.  The settlement stipulation provided for a broad release of claims relating to the transactions that were the subject of the class complaint.[3]

---

        [3] The settlement stipulation defines "Released Transactions" to include:

        (a) the design, development, marketing, offer, solicitation, application, underwriting, acceptance, issuance, sale (including, without limitation, in connection with the issuance of a Company Annuity as a replacement for a non-Company annuity or another Company Annuity), presentation,

Following a fairness hearing on the proposed class settlement during which counsel for both the plaintiffs and the defendants appeared and spoke on behalf of their clients, the Court certified the class and approved the settlement as compliant with the United States Constitution and Rule 23 of the Federal Rules of Civil Procedure on December 18, 2009.  Id. at 234.  The Court's final order and judgment incorporated the release and waiver included in the settlement stipulation.  The release in the settlement stipulation read, in relevant part:

----

> illustration, projection, purchase, operation, performance, interest crediting, charges, administration, servicing, retention, and/or replacement (by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of any annuity) of or in connection with (1) the Contracts or (2) any annuity sold or to be sold or offered in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Contracts, or external or internal replacements of annuities issued by the Companies, (b) the marketing, sale, delivery, and/or performance of any products, plans, or services in connection with, or relating to or allegedly relating to, the marketing, purchase, or sale of a Contract, and (c) any and all matters concerning or relating to this Settlement (including, without limitation, the award, election, and/or implementation of any Settlement Relief with respect to a Contract).

Settlement Stip. X.A.2, Attach. 1 to Pls.' Unopposed Mot. for Prelim. Approval of Settlement, Certif. Of Settlement Class, and Order Directing Issuance of Notice to the Class.  The definition was incorporated into the Court's final order and judgment.  In re Am. Investors, 263 F.R.D. at 247-48.

3

1. . . . [t]he Named Plaintiffs and all Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person or entity purporting to claim on their behalf, hereby expressly and generally release and discharge the Releasees from any and all causes of action, . . . whether such claims are based on federal, state, or local law, statute, ordinance, or regulation . . ., contract, common law, or any other source, relating to any Company Annuities and that were or could have been asserted against Defendants in the Complaint or any other complaint encompassed in the Action, or that could have been asserted against Defendants . . . , or relating in any way to the Released Transactions. . . .

3. Nothing in this Release shall be deemed to alter the contractual rights and benefits of a Named Plaintiff or any other Class Member for the express written benefits that are due or will become due in the future pursuant to the express written terms of a Contract, except to the extent that such rights are altered or affected by the award, election, and/or implementation of Settlement Relief under this Agreement.

Settlement Stip. X.B. The Court entered a permanent injunction barring class members from filing, commencing, prosecuting, and maintaining any lawsuit relitigating the causes of action, or facts and circumstances related to the cause of action. The Court also retained jurisdiction for, among other things, all matters relating to the enforcement and interpretation of the settlement stipulation and final order and judgment. In re Am. Investors, 263 F.R.D. at 250-52.

The class is defined as "[a]ll persons and entities

4

that purchased Company Annuities issued during the Class Period [from January 1, 1998, up to and including July 28, 2009] and all persons and entities to which an ownership interest in such Company Annuities was subsequently assigned or transferred, or that otherwise held any interest as an Owner in Such Company Annuities, during the Class Period." Id. at 230-31.

Charboneau's Petition in the Kansas Action ("Charboneau Pet."), attached to the defendants' motion as an exhibit, seeks payment of the cash surrender value of Paul Charboneau's annuity contract with Aviva USA.  The Petition alleges that Paul Charboneau and his wife, Carrie Charboneau, entered into an annuity contract with American Investors Life Insurance Company, Inc. on September 23, 2006; the contract provided that it could be surrendered during the lifetime of either annuitant for a Cash Surrender Value.  Charboneau Pet. ¶¶ 5, 9.  The parties do not dispute that Paul Charboneau was a member of the settlement class, and that Orlis Charboneau, as executor of his estate, is thus bound by the terms of the Release to the extent they apply to his claims.

Charboneau asserts that on October 10, 2007, Avis A. Deck, acting under power of attorney for Paul Charboneau, contacted Aviva USA to surrender the annuity contract and request payment of the proceeds of the contract to Paul Charboneau. Charboneau alleges that Aviva USA received notice of the request

by October 11, 2007 and was thus aware of its obligation to remit the cash surrender value of the contract.  Instead, upon learning of the deaths of Carrie Charboneau (which occurred on August 25, 2007) and Paul Charboneau (which occurred on October 12, 2007), Aviva USA paid a death benefit to the named beneficiary on the contract on February 14, 2008.  Charboneau Pet. ¶¶ 12-19.

Charboneau asserts that upon Aviva USA's receipt of Ms. Deck's letter, Paul Charboneau was entitled to benefits due under the annuity contract, i.e., the cash surrender value, and that that right passed to his estate upon his death.   The Kansas Action asserts that the payment of death benefits to the named beneficiary in lieu of paying the cash surrender value to Paul Charboneau's estate is a breach of the annuity contract. Id.; id. ¶ 20.

II.  Analysis

The motion presents two related questions: (a) whether the conduct alleged in Charboneau's Kansas Action for breach of contract falls within the settlement stipulation's definition of "Released Transactions,"; and (b) if so, whether Charboneau's claim in the Kansas Action is exempted by Section X.B.3 of the settlement stipulation ("exemption").  The Court answers both questions in the affirmative.

The settlement stipulation defines "Released Transactions" to include, among other things, claims relating to

6

the "operation," "performance," "administration," or "servicing"
of annuity contracts at issue in the multidistrict litigation.
Paul Charboneau entered into his annuity contract with American
Investors Life Insurance Company within the class period in
September 2006, and his estate's claim for breach of that annuity
contract otherwise relates to the "performance" or
"administration" of that contract according to his terms.  The
settlement stipulation, as incorporated into the court's final
order and judgment of December 18, 2009, permanently "bar[s] and
enjoin[s]" class members from "filing, commencing, prosecuting,
maintaining . . . any lawsuit . . . based on or relating to the
Released Transactions."  <u>In re Am. Investors</u>, 263 F.R.D. at 250.

      Charboneau asserts that the allegations in the Kansas
Action have "nothing to do with" those of the class in the
multidistrict litigation because he does not challenge the way in
which the annuity contract was sold to Paul and Carrie Charboneau
or its suitability as an investment.  Resp. of Orlis Charboneau
to Defs'. Mot. to Enforce Order and Judgment ("Charboneau Resp.")
at 2.  Although the malfeasance alleged in the Kansas Action is
not identical to that originally alleged by the class prior to
settlement, it does relate to the performance of an annuity
contract, that is, the failure to pay surrender value according
to its terms.

      The Third Circuit follows other circuits in its policy

favoring "comprehensive settlements." <u>In re Prudential Ins. Co.</u>
<u>Of Am. Sales Practices Litig.</u>, 261 F.3d 355, 366 (3d Cir. 2001)
(internal quotations omitted); <u>see also</u> <u>Berardinelli v. Gen. Am.</u>
<u>Life Ins. Co.</u>, 357 F.3d 800, 805 (8th Cir. 2004) ("There is no
impropriety in including in a settlement a description of claims
that is somewhat broader than those that have been specifically
pleaded."). The Court accordingly approved a settlement that
encompassed claims beyond those asserted by the class, and the
notice mailed to class members prior to the Court's approval of
the settlement thus provided: "Plaintiffs understand and agree
that this Release is, and is intended to be, a broad, general
release of the Releasees" of past, present, and future claims
within its scope. <u>In re Am. Investors</u>, 263 F.R.D. at 249.
Indeed, class members released the defendants from claims that
"were or could have been asserted" in the class complaint and
from claims "based on or related to the facts alleged in the
Complaint . . . or relating in any way to the Released
Transactions." <u>Id.</u> at 248.

The Court concludes that Charboneau's claims in the
Kansas Action do relate in some way to the Released Transactions.
The parties do not dispute that Charboneau's estate received
notice of the settlement and did not elect to opt out of the
class certified for settlement. Thus, in the absence of any
other provision exempting his claim from the scope of the Court's

8

injunction, Charboneau would be barred from continuing with the Kansas Action.  The Court turns to the exemption in Section X.B.3 of the settlement stipulation.

Section X.B.3 provides that claims "for express written benefits that are due . . . under the express written terms of a Contract" will not be barred by the terms of the Release.  The defendants argue that this clause "simply refers to the settlement not altering contractual rights except to the extent provided in the settlement; it does not create an exception to either the definition of 'Released Transactions' or the Court's permanent injunction."  Defs.' Mem. at 15 n.4.  They argue that the effect of the clause is to make clear that "[c]lass members' *post*-settlement claims, and other claims truly outside the Release, are not barred."  Defs'. Reply at 4 (emphasis in original).  Such a reading effectively renders Section X.B.3 superfluous; it would require the Court to find that the exemption states that contractual rights are not altered except to the extent they are altered.

The defendants argue that this and other district courts have found language in similarly broad releases to bar later actions under similar circumstances.[4]  The cases cited by

_____

[4]  The Court held that another class member's state court action was barred under the terms of the injunction in this case, despite that plaintiff's argument that the timing of the appointment of his conservator prevented him from electing to opt out of the settlement.  See In re Am. Investors Life Ins. Co.

the defendants in support of their motion are distinguishable because neither of those cases involves the assertion of a claim as directly exempted by the terms of a release as here.

The defendants cite Greene v. Metropolitan Insurance and Annuity Company, No. 07-2903, 2009 WL 1045016 (D.N.J. Apr. 20, 2009), where the court found that misrepresentations on an insurance contract alleged by the plaintiff constituted a "Released Transaction" within the terms of the settlement in that case.  The plaintiff argued that his action was not barred because he did not allege the same type of misrepresentations as in the settled case, and that his claim arose after the period covered by the settlement.  The court rejected both arguments, finding that the alleged misrepresentations happened when his policy was marketed or sold and were sufficiently similar to those in the class complaint.  Greene, 2009 WL 1045016, at *8-9. In addition, Green argued that his claim fell within an exemption for certain "claim[s] for any benefits . . . payable under the express terms of the policies." Id. at *9 (internal quotations omitted).  The court barred the plaintiff's action because it found that the complaint had alleged the same kind of policy cancellation malfeasance at issue in the settled case and was

Annuity Mktg. & Sales Practices Litig., 715 F. Supp. 2d 610 (E.D. Pa. 2010).

10

thus a "Released Transaction."[5]

   <u>Greene</u> is inapposite.  Mr. Greene's claim was one alleging misrepresentations as to the character of his insurance policy and the nature of premium adjustments in the future.  In contrast, Charboneau's claim in the Kansas Action is plainly one for benefits he alleges are owed to the estate under the annuity contract.  The <u>Greene</u> court found that the plaintiff did not seek benefits due under the express written terms of his policy, as Charboneau seeks in his Kansas Action.

   The defendants similarly cite <u>Ross v. Metropolitan Life Insurance Company</u>, 411 F. Supp. 2d 571 (W.D. Pa. 2006), in support of their motion.  The <u>Ross</u> court barred another <u>In re MetLife</u> class member from asserting his claim in state court because it was covered by the MDL settlement.  The court rejected Ross' argument that a provision in the release relating to "unknown claims"[6] permitted him to pursue an action in state court because he was unaware of the alleged misrepresentation until after the class settlement was finalized, and directed Ross to

---

  [5] The final order and judgment at issue in <u>Greene</u> is <u>In re Met. Life Ins. Co. Sales Practices Litig.</u>, No. MDL 1091, 1999 WL 33957871 (W.D. Pa. Dec. 28, 1999) ("<u>In re MetLife</u>").

  [6] The "unknown claim" exception provided that the release would not "prevent a Class Member from submitting a claim [to the settlement's claim-processing body] . . . so long as the Class Member did not discover the facts forming the basis of the claim—and could not, with reasonable care, have discovered them—before [the deadline set in the agreement]."  <u>Ross</u>, 411 F. Supp. 2d at 578.

seek relief through the methods established in the settlement agreement.  Ross, 411 F. Supp. 2d at 575-79.

Like the Greene plaintiff and unlike Charboneau, Ross did not seek benefits under the express written terms of his policy.  Further, the defendants argue by analogy to Ross that Section X.B.3 merely directs class members to pursue their "preserved" contract remedies through the processes established in the settlement stipulation.  See Defs.' Mem. at 15 n.4.  The Court is unconvinced.  No analogous comprehensive claims-processing body was established by the Court in its final order and judgment through which Charboneau would be able to vitiate his claims.  See In re Am. Investors, 263 F.R.D. at 231 (describing the limited role of the "claim process relief" option).  Moreover, unlike the parties in Ross, neither Charboneau nor the defendants argues that the processes established by the Court are a suitable forum for the resolution of the estate's claims.  See Ross, 411 F. Supp. 2d at 579 n.4.

The Court finds that the Kansas Action is a claim for express written benefits under the annuity contract entered into by the defendants with Paul and Carrie Charboneau.  Section X.B.3 exempts such claims from the otherwise broad release of claims in the settlement stipulation incorporated into the Court's final order and judgment on December 18, 2009.  Thus, Charboneau's state court action is not barred and the Court will not exercise

12

its power, pursuant to its retention of jurisdiction, to enjoin
him from proceeding.

A separate order follows.