```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


IN RE: AMERICAN INVESTORS        :
LIFE INSURANCE CO. ANNUITY       :   MDL DOCKET NO. 1712
MARKETING AND SALES PRACTICES    :
LITIGATION                       :
```

MEMORANDUM

McLaughlin, J.                                    December 6, 2011

       The defendants, AmerUs Group Company,[1] AmerUs Annuity Group Company, American Investors Life Insurance Company, AmerUs Life Insurance Company,[2] Creative Marketing International Corporation, and Insurance Agency Marketing Services, Inc., move the Court to enforce its final order and judgment against class member Alvany E. Wilson. The defendants move to have the Court permanently enjoin Wilson from litigating a civil action against them that she instituted in the Circuit Court, Hillsborough County, Florida, styled Wilson v. Albertson, et al., No. 11-7478 (the "Florida Action"). Ms. Wilson, the plaintiff, cross-moves for relief from judgment under Rule 60(b). The Court will grant the defendants' motion and deny the plaintiff's motion.

I. Background

       The final order and judgment at issue in the

---

[1] AmerUs Group Company is now known as Aviva USA Corporation.

[2] AmerUs Life Insurance Company is now known as Aviva Life and Annuity Company.

defendants' motion pertains to a multidistrict litigation proceeding involving six consolidated putative class action lawsuits, the oldest of which had been pending before the Court since 2004. In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig. (In re Am. Investors), 263 F.R.D. 226, 228-29 (E.D. Pa. 2009). In their pleadings, the plaintiffs claimed that the defendants perpetrated a scheme to sell investments to the class through misrepresentations and omissions about the characteristics of the investments. They alleged that the defendants targeted and induced the class to buy complex, long-term deferred annuities that lacked liquidity. Id. at 230.

After years of litigation, on July 16, 2009, the plaintiffs filed their unopposed motion for preliminary approval of a class-wide settlement, certification of a class, and an order directing issuance of notice to the class. They attached to their motion the parties' stipulation of settlement ("stipulation of settlement" or "settlement stipulation") and proposed form of class notice. On July 28, 2009, the Court issued an order preliminarily approving the settlement and the notice. Id. at 229.

To facilitate notice of the settlement, counsel in the action retained Rust Consulting, Inc., a settlement administrator specializing in class action notification and settlement administration. Id. at 232. On August 28, 2009, the settlement

administrator disseminated 387,263 copies of the Court-approved class notice to the last known addresses of the class members via first-class, postage prepaid mail.  The notice described the action, the applicable terms, the class claims, and the forms of relief available.  It discussed the class members' right to be heard at the fairness hearing, their right to exclude themselves from or object to the settlement, and the procedure to effectuate an exclusion or objection.  <u>Id.</u>  It also discussed the binding effect of the settlement for those who chose not to opt out by October 13, 2009.  <u>Id.</u>; <u>see</u> Notice at 2, 3, 15, 16, Attach. 5 to Pls.' Unopposed M. for Final Approval of Settlement, Class Certif., & Award of Attys' Fees & Costs & Incentive Payments.

Specifically, the notice explained multiple times throughout that if a recipient of the notice did not properly exclude him or herself, then he or she could not bring suit against the defendants.  For example, in the section entitled "Summary of Your Legal Rights and Options in this Settlement," the notice explained:

> [I]f you do nothing in response to this Notice, you will give up all rights to sue any of the Defendants in this case . . . as well as the person(s) who sold your policy and certain other released parties included as "Releasees"[3] in the Stipulation of

---

[3] The stipulation of settlement defines "Releasees" as:

> [I]ndividually and collectively, the Defendants and Other Defendants and the

> Settlement, concerning the policy or the manner in which it was marketed or sold, or any other legal claims that were made or could have been made in this case, as more fully described in the Stipulation of Settlement.[4]

Notice at 2. In response to the question, "What am I giving up to get a settlement benefit or stay in the Class?", the notice answered:

> Unless you properly exclude yourself, you are

---

> Defendants' and Other Defendants' respective past, present, and future parent companies, subsidiaries, affiliates, predecessors, successors and assigns, together with each of the Defendants' and Other Defendants' respective past, present, and future officers, directors, employees, representatives, attorneys, and agents (including, without limitation, those acting on behalf of Defendants and within the scope of their agency), all Agents, including, without limitation, IMOs and other marketing organizations involved in any way, directly or indirectly, in the marketing, sale, and servicing of Company Annuities, and all of such Releasee's heirs, administrators, executors, insurers, predecessors, successors and assigns, or any of them, and including any person or entity acting on behalf or at the direction of any of them.

Settlement Stip. X.A.1, Attach. 1 to Pls.' Unopposed M. for Prelim. Approval of Settlement, Certif. of Settlement Class, & Order Directing Issuance of Notice to the Class. This definition was incorporated into the Court's final order and judgment. In re Am. Investors, 263 F.R.D. at 247.

[4] The notice explained that the stipulation of settlement was available on the settlement informational website, www.MDL1712settlement.com, and a copy could be obtained by contacting the settlement administrator at the address and toll-free telephone numbers provided in the notice.

staying in the Class, and that means: (1) that you can't sue, continue to sue, or be part of or receive any benefits in or from any other lawsuit, arbitration, administrative or regulatory proceeding, order, or other legal proceeding anywhere against the Defendants, the persons who sold your policy, and/or certain other released parties included as "Releasees" under the Stipulation of Settlement, about your policy or the manner in which it was marketed or sold, or any other legal claims that were or could have been made in this case against the Defendants and/or the other Releasees; and (2) that you give up, or release, any and all claims against the Defendants and/or the other Releasees – regardless of whether they are presently known or suspected, presently unknown or unsuspected, presently existing, or might exist in the future – falling under the "Released Transactions,"[5] as defined in

---

[5] The stipulation of settlement defines "Released Transactions" as:

(a) the design, development, marketing, offer, solicitation, application, underwriting, acceptance, issuance, sale (including, without limitation, in connection with the issuance of a Company Annuity as a replacement for a non-Company annuity or another Company Annuity), presentation, illustration, projection, purchase, operation, performance, interest crediting, charges, administration, servicing, retention, and/or replacement (by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of any annuity) of or in connection with (1) the Contracts or (2) any annuity sold or to be sold or offered in connection with, or relating in any way directly or indirectly to the sale or solicitation of, the Contracts, or external or internal replacements of annuities issued by the Companies, (b) the marketing, sale, delivery, and/or performance of any products, plans, or services in

the Stipulation of Settlement.

Notice at 15.  In response to the question, "If I don't exclude myself, can I sue the Defendants for these kinds of claims later?", the notice explained:

> No.  Unless you validly exclude yourself, you give up the right to sue the Defendants, the persons who sold your policies, and other parties included as "Releases" . . . for the claims and legal issues that this settlement resolves.  If you have a pending lawsuit, speak to your lawyer in that lawsuit about this Notice immediately.  You must exclude yourself from *this* Class to continue your own lawsuit.

Notice at 18 (emphasis in original).  Wilson does not dispute that she received the Class Notice or that she did not exclude herself from the class in October 2009.  Aff. of Alvany E. Wilson, Pl. Mot. Ex. ("Wilson Aff.") (ECF No. 541); Pl. Mot. ¶ 1.

On November 6, 2009, the Court held a fairness hearing on the proposed class settlement.  In re Am. Investors, 263 F.R.D. at 233.  Counsel for both the plaintiffs and the defendants appeared at the fairness hearing and spoke on behalf

---

> connection with, or relating to or allegedly relating to, the marketing, purchase, or sale of a Contract, and (c) any and all matters concerning or relating to this Settlement (including, without limitation, the award, election, and/or implementation of any Settlement Relief with respect to a Contract).

Settlement Stip. X.A.2.  This definition was incorporated into the Court's final order and judgment.  In re Am. Investors, 263 F.R.D. at 247-48.

of their clients.  Id. at 234.  No class members or objectors made an appearance at the hearing.  Id.

On December 18, 2009, the Court certified the class and approved the settlement, holding that the class and settlement met the requirements of Rule 23 of the Federal Rules of Civil Procedure and comported with the United States Constitution.  The settlement stipulation included a release and waiver, which the Court expressly incorporated into its final order and judgment. In specific part, it read:

> The Named Plaintiffs and all Class Members, on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person or entity purporting to claim on their behalf, hereby expressly and generally release and discharge the Releasees from any and all causes of action, . . . whether such claims are based on federal, state, or local law, statute, ordinance, or regulation . . ., contract, common law, or any other source, relating to any Company Annuities and that were or could have been asserted against Defendants in the Complaint . . . based on or related to the facts alleged in the Complaint.

Id. at 248.  The release also noted that the plaintiffs

> agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, . . . any action or proceeding of any kind against the Releasees asserting causes of action . . . that are based on or related to the facts alleged in the Complaint.

Id. at 249.

7

The Court entered a permanent injunction barring class members from filing, commencing, prosecuting, and maintaining a lawsuit that would relitigate the causes of action, or the facts and circumstances related to the causes of action. It also retained jurisdiction for all matters relating to the administration, consummation, enforcement and interpretation of the settlement stipulation and final order and judgment. Id. at 250-51, 252.

The class is defined as: "All persons and entities that purchased Company Annuities issued during the Class Period and all persons and entities to which an ownership interest in such Company Annuities was subsequently assigned or transferred, or that otherwise held any interest as an Owner in such Company Annuities, during the Class Period." The class period is from January 1, 1998, up to and including July 28, 2009, and it consists of approximately 387,000 individuals. Id. at 230-31.

In the Florida Action, Wilson has brought claims against her insurance agent Paula Albertson, Albertson's advisory company, Aviva, and several other life insurance companies. Wilson alleges that Albertson misled her as to the nature and suitability of certain investments, forged her signature on certain instruments, and fraudulently converted funds that Wilson had entrusted to Albertson. Compl. ¶¶ 12-35, Wilson v. Albertson, No. 11-7478 (Fla. Cir. Ct.), Def. Mot. Ex. 1 ("Fla.

Compl.").

The complaint in the Florida Action alleges that "in June 2008" several of Ms. Wilson's annuities were replaced and the proceeds used to fund an American Investors Life Insurance Company annuity, dated July 9, 2008. Fla. Compl. ¶¶ 27-28.

In the Florida Action, Wilson asserts five causes of action against Aviva based upon the sale of her annuity: (1) common law fraud; (2) breach of fiduciary duty; (3) unjust enrichment; (4) negligence and gross negligence and negligent supervision; and (5) exploitation under Fla. Stat. § 415.102 et seq. Fla. Compl. These causes of action arise from allegations that Aviva failed to review the annuity application or recklessly disregarded its suitability; negligently failed to require that Albertson explain the reason for replacing the annuities; failed to properly supervise Albertson or intercede when she made unsuitable recommendations; and made misrepresentations of material information regarding the nature and sale of the annuities. Fla. Compl. ¶¶ 29, 32, 42, 51.

Although Wilson acknowledges that she received the Class Notice and failed to exclude herself from the class, she moves under Fed. R. Civ. P. Rule 60(b)(6) for relief from judgment to permit her to opt out of the settlement class. Wilson argues that she was "constructively prevented from knowing and exercising her right to opt out" because Albertson, in

addition to the fraudulent behavior outlined in the complaint, "constructively prevented" Wilson from "knowing and exercising her right to opt out." Pl. Mot. 4. In addition, the plaintiff argues that during the time period where she was required to opt out of the settlement class, she was "suffering from a serious heart condition that affected my capacity to function in the tasks of daily living." Wilson Aff. ¶ 7. She argues that this constitutes "extraordinary circumstances" justifying relief from judgment under Rule 60(b)(6).[6]

## II. Analysis

The All Writs Act empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; In re Diet Drugs Products Liab. Litig., 369 F.3d 293, 305 (3d Cir. 2004). The Anti-Injunction Act, however, limits a district court's authority to enjoin state court proceedings to three exceptions: (1) when authorized by Congress,

---

[6] The defendants argue that Wilson's motion is improperly brought under this Rule because her affidavit raises only excusable neglect, and thus her motion should instead be analyzed as one under Rule 60(b)(1), which would be time-barred. See Fed. R. Civ. P. 60(c)(1) (providing that motions under Rule 60(b)(1) must be brought within one year after the entry of judgment, while those under Rule 60(b)(6) must be brought "within a reasonable time"). Where a party avers that circumstances beyond her control, rather than mere negligence, resulted in her failure to file on time, her motion may be treated as brought under subsection (b)(6). See Pioneer Inv. Svcs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 394-95 (1993).

10

(2) to aid in its jurisdiction, or (3) to protect or effectuate its judgments.  28 U.S.C. § 2283; Diet Drugs, 369 F.3d at 305.

The Court has authority to enjoin Wilson from litigating the Florida Action against the defendants here in order to aid in the Court's jurisdiction.  The Court of Appeals for the Third Circuit has held that a federal court may enjoin state court proceedings to protect its jurisdiction when it is "entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts."  Diet Drugs, 369 F.3d at 306; see In re Prudential Ins. Co. of Am. Sales Practices Litig. (Prudential II), 314 F.3d 99, 104-05 (3d Cir. 2002) (affirming injunction barring litigation of plaintiffs' state law claims based on "in aid of jurisdiction" exception).  District courts that oversee complex federal litigation "are especially susceptible to disruption by related actions in state fora."  Prudential II, 314 F.3d at 104.

Here, the Court retained its jurisdiction over this complex, multidistrict litigation "as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement Stipulation and of this Final Order and Judgement."  The settlement and final order released the defendants from pending and future actions involving claims related to those alleged in the class complaint, such as those

asserted by Wilson. Although permitting the Florida Action to proceed would not necessarily vitiate the class settlement on its own, "permitting this kind of action would open up the possibility of a large, or even an overwhelming, number of collateral attacks on the settlement itself," provided the 387,000 member class. See id. at 104.

The Court is also empowered to enjoin Wilson from litigating the Florida action against the defendants under the Anti-Injunction Act exception allowing district courts to protect or effectuate their judgments. This exception, founded on the concepts of res judicata and collateral estoppel, was designed to permit a federal court to prevent state litigation of an issue that it previously decided. In re Prudential Ins. Co. of Am. Sales Practices Litig. (Prudential I), 261 F.3d 355, 364 (3d Cir. 2001) (quoting Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147 (1988)). As the Court of Appeals for the Third Circuit has noted, "It is now settled that a judgment pursuant to a class settlement can bar later claims based on the allegations underlying the claims in the settled class action." Id. at 366.

Here, Wilson's annuities and the sales transactions associated with them fall within the scope of the settlement stipulation's release and waiver. Her claims replicate those found in the class complaint, alleging the fraudulent sale of long-term deferred annuities that were inappropriate investments

for her.  Pursuant to the release and waiver, Wilson released the defendants from "any and all causes of action, . . . whether such claims are based on federal, state, or local law, statute, ordinance, or regulation, . . . relating to any Company Annuities and that were or could have been asserted against Defendants in the Complaint . . . based on or related to the facts alleged in the Complaint."  In re Am. Investors, 263 F.R.D. at 248.  The class notice advised the class of this consequence, and Wilson does not contest that her claims are subject to the release.  The release and waiver was incorporated into the Court's final order and judgment, and it has claim-preclusive and issue-preclusive effect.  See Prudential I, 261 F.3d at 367.

Rule 60(b)(6) permits a district court to enter relief from judgment "under extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur." Sawka v. Healtheast, Inc., 989 F.2d 138, 140 (3d Cir. 1993).  The party seeking relief has the burden of showing that such hardship will result in the absence of relief.  Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 978 (3d Cir. 1978).

The plaintiff has not met that burden here.  The averments of her affidavit and motion demonstrate that she received the Class Notice, which the Court identified as the best practicable notice under the circumstances, and failed to submit a timely request for exclusion from the settlement class.  Her

illness did not preclude her from conducting business with Albertson's tax preparer, including sending her "all documents relating to the annuities" at issue in the class settlement. Wilson Aff. ¶ 3. The Court cannot conclude that Wilson lacked the capacity to opt out of the settlement class. Courts that have relieved parties from final judgments under Rule 60(b)(6) where illness is alleged have relied upon additional factors constituting extraordinary circumstances, such as near-total incapacitation or incarceration and poverty resulting in default judgment. See, e.g., City of Phila. v. Stone Int'l Res., Inc., No. 95-5362, at *4 (E.D. Pa. Oct. 9, 1996) (relieving party from default judgment where she made repeated requests to delay proceedings due to her husband's illness and death); FDIC v. Alker, 30 F.R.D. 527, 532 (E.D. Pa. 1962), aff'd, 316 F.2d 236 (3d Cir. 1963) (collecting cases).

In addition, the misleading conduct of Albertson or Aviva in preventing Wilson from learning of the effect of the judgment cannot justify relief under subsection (6) of the Rule. The provisions of Rule 60(b)(6) and its other subsections "are mutually exclusive." Pioneer Investment Svcs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993). Allegations of "fraud . . . , misrepresentation, or misconduct by an opposing party" are properly brought as a motion under subsection (3) within one year of the entry of judgment. Wilson is thus unable

to use Rule 60(b)(6) to circumvent the filing requirements of Rule 60(b)(3).

Nor will "extreme and unexpected hardship" result from the Court's refusal to reopen its judgment. Wilson may avail herself of the claims process set forth in the class settlement, and continue to pursue her claims against Albertson, Albertson's advisory firm, and the other insurance companies that are defendants in the Florida Action. After she received the Class Notice and failed to opt out of the settlement class, barring Ms. Wilson from independently litigating her claims against the defendants here is neither extreme nor unexpected.

Wilson has not shown extraordinary circumstances justifying relief from a final judgment under Rule 60(b)(6). Her motion will be denied and the defendants' motion to enforce will be granted.

An appropriate order shall issue separately.